Ben Crump (pro hac vice application forthcoming)
BEN CRUMP LAW, PLLC
633 Pennsylvania Avenue Northwest
Floor 2
Washington D.C. 20004
Telephone:      (800) 713-1222

Suzanne E. Bish (pro hac vice application forthcoming)
George Robot (pro hac vice application forthcoming)
Daniel Lewin (pro hac vice application forthcoming)
STOWELL & FRIEDMAN LTD.
303 W. Madison St., Suite 2600
Chicago, Illinois 60606
Telephone:      (312) 431-0888
sbish@sfltd.com

Sam Sani (SBN 273993)
SANI LAW, APC
15720 Ventura Blvd., Suite 405
Encino, CA 91436
Telephone:      (310) 935-0405
Facsimile:      (310) 935-0409
ssani@sanilawfirm.com

Attorneys for Plaintiff April Curley and the Putative Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| APRIL CURLEY, individually and behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Defendant. | CASE NO:<br><br>**COMPLAINT**<br><br>Class Action<br><br>Jury Trial Demanded |

## COMPLAINT

## CLASS ACTION

COMPLAINT

Plaintiff April Curley ("Curley"), individually and on behalf of all others similarly situated, by and through her attorneys, Ben Crump Law, PLLC, Stowell & Friedman, Ltd., and Sani Law, APC, hereby files this Complaint against Defendant Google, LLC ("Defendant" or "Google") and in support states as follows:

## NATURE OF THE ACTION

1.      Google famously adopted "don't be evil" as a core value in its early days. Yet as it grew into one of the world's largest corporate behemoths, Google practiced one of this nation's oldest evils—race discrimination.

2.      Pursuant to its strong, racially biased corporate culture, Google is engaged in a pattern and practice of race discrimination against its African American and Black employees. Google's centralized leadership, which is nearly devoid of Black representation, holds biased and stereotypical views about the abilities and potential of Black professionals. As a result, and pursuant to company-wide discriminatory policies and practices, Google hires few Black employees and steers those few Black employees into lower-level roles, pays them less, and denies them advancement and leadership roles because of their race. Black Google employees face a hostile work environment and suffer retaliation if they dare to challenge or oppose the company's discriminatory practices.  As a result, Black employees at Google earn and advance less than non-Black employees and suffer higher rates of attrition.

3.      Plaintiff was harmed by Google's racially hostile work environment and company-wide discriminatory practices. Due to its abysmal representation of Black professionals since its founding and growing public awareness of its lack of commitment to genuine diversity and inclusion, Google hired Plaintiff in 2014 to expand its outreach to Black college students. Like

other Black professionals, Google placed Plaintiff in a lower job grade and title than her work and responsibilities warranted and denied her pay and promotion opportunities because of her race. Plaintiff and other Black professionals were often pigeon-holed into dead-end jobs—with less visibility, lower pay, and no advancement opportunities. As Plaintiff's success in recruiting talented, well-qualified Black candidates grew, she discovered that Google was not genuinely interested in actual diversity and equal employment opportunities but wanted only to burnish its public image for marketing purposes. Google wanted Plaintiff, as an African American woman, to quietly put on a good face for the company and toe the company line. But Plaintiff was unwilling to be used as a mere marketing ploy. Plaintiff was a champion for Black employees and Black students; she vocally opposed and called for reform of the barriers and double standards Google imposed on Black employees and applicants. In response to her advocacy for herself and other Black employees subjected to Google's discriminatory practices, Google unlawfully marginalized, undermined, and ultimately terminated Plaintiff because of her race and her protected activity.

4.     Plaintiff brings this action on behalf of herself and a class of current and former Black Google employees in order to hold Google accountable for its systemic race discrimination, to redress Google's discrimination against Black professionals across the country, and to achieve necessary reforms and injunctive relief to end Google's discriminatory employment practices and provide equal opportunities for all Google employees.

**JURISDICTION AND VENUE**

5.     Plaintiff's claims arise under 42 U.S.C. § 1981, and this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, and 1343. This Court has supplemental

jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367 because they arise out of the same nucleus of operative facts.

6.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) because Google resides and maintains its principal place of business and headquarters in this District and the practices challenged by this lawsuit were issued in this District.  Venue is proper in the San Jose Division of the Northern District of California because a substantial part of the events or omissions giving rise to the claims occurred in the county of Santa Clara.

**PARTIES**

7.      Google, LLC is one of the largest companies in the world. Google develops and sells technology products and services. Google services generated over $168 billion in revenue in 2020. Google was originally incorporated as Google Inc. but in a 2015 corporate restructuring converted to an LLC. Google is now a wholly owned subsidiary of XXVI Holdings, Inc., which is incorporated in Delaware with a principal place of business in Mountain View, California. Google's publicly traded ultimate parent company, Alphabet Inc., has a market capitalization of over $1.7 trillion as of this filing, placing it third among the most valuable companies in America and fourth globally.

8.      Google maintains its corporate headquarters at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google employs over 21,000 employees at its corporate headquarters, and tens of thousands of employees across the United States.

9.      Plaintiff April Curley is an African American woman and was employed by Google as a University Programs Specialist in New York City, New York from 2014 until she was unlawfully terminated in September 2020. Throughout her employment, Curley worked

diligently and performed at a high level for Google. Nonetheless, pursuant to Defendant's nationwide pattern or practice or race discrimination, Google paid Curley lower wages and denied her advancement opportunities because of her race, and subjected her to a hostile work environment and retaliation.

## **FACTUAL ALLEGATIONS**

**Google Systematically Discriminates Against Black Employees**

10. Google is engaged in a nationwide pattern or practice of intentional race discrimination and retaliation and maintains employment policies and practices that have a disparate impact against Black employees throughout the United States.

11. Google's overwhelmingly non-Black executives hold racially biased, stereotypical, and harmful views of Black employees. Indeed, the California Department of Fair Employment and Housing is currently investigating Google for its treatment of Black female employees.[1]

12. Google's racially biased corporate culture and discriminatory practices extend far beyond its California headquarters. Pursuant to discriminatory company-wide policies and practices, Google favors white men and hires few Black employees and assigns the few Black employees it hires into lower-paying, lower-prestige roles with fewer opportunities for advancement than Google's non-Black employees.

13. When Google hired Plaintiff in 2014, for instance, only 628 of its over 32,000 employees—1.9%—identified as Black or African American. At that time, Google had only one Black or African American top-level executive out of 25. Over the next two years Google added 5 White top-level executives, but the African American count remained at one.  By 2020, despite

---

[1] https://www.nbcnews.com/news/nbcblk/california-investigates-googles-treatment-black-women-workers-rcna9154

the heroic and uphill efforts of people like Plaintiff, the overall demographics had scarcely budged. Under intense public scrutiny to address its abysmal underrepresentation of African Americans in the wake of the murder of George Floyd and ensuing national racial reckoning, Google made concerted, public-relations–driven efforts to recruit Black employees. As of 2021, Google's workforce inched up to a dismal 4.4% "Black+."[2] This seeming improvement still pales by comparison to the 2021 U.S. Bureau of Labor Statistics data, which reflects a 9.1% Black or African American representation within Google's industry classification.[3] But Google steers and traps its "Black+" hires into lower-paying and lower-prestige roles. Google's awful underrepresentation is even worse in leadership and prestigious technical roles. For instance, in 2021, Google's leadership ranks were only 3% Black and its prestigious tech workforce was only 2.9% Black.

14.     Pursuant to its racially biased corporate culture, Google segregates its workforce and workplaces, which are permeated by a racially hostile work environment. As just one illustration, Black professionals and visitors at Google's main California campus headquarters were routinely harassed and targeted based on their race, often being questioned by security or asked to show identification. Similarly, in a Google intranet document, Google employees of color shared thousands of "microaggressions" and acts of harassment they faced on a daily basis at Google offices, including being asked to serve their white colleagues or treated as outsiders who did not belong other than in a service or administrative capacity.

---

[2] Google's self-reporting category "Black+" includes employees who identify as more than one race, one of which is Black.
[3] https://www.bls.gov/cps/cpsaat18.htm

15.     Google employs company-wide discriminatory pay, level and job assignment, and advancement policies and practices that systematically underpay, delay, and deny advancement to Black employees in a number of ways.

16.     Google assigns "levels" to all positions across the country. For example, Level 2 is the lowest level Google assigns to permanent, full-time employees, typically reserved for hires straight of out college. Level 3 corresponds to entry-level work, typically for recent college graduates. Google considers all employees at the same level—regardless of location in the United States—to perform substantially equal or substantially similar work. Each level is to correspond to a standardized base salary range, among other things. Google assigns Black employees to lower levels than their experience and responsibilities warrant and pays Black employees less for performing the same level of work as non-Black employees.

17.     Google's compensation policies and practices also result in racial pay disparities within levels. For example, Google's pay practices regarding bonuses and stock options harm Black employees. Among other things, Google awards bonuses and stock options to its employees with progressively increasing bonus targets depending on level. At Level 3, for instance, Google's centralized, nationwide policy establishes a bonus target of 15% of base compensation. At Level 4, the bonus target increases to 20% of the already-higher base compensation. Thus, by steering Black employees into lower levels and paying them less than non-Black employees within level, Google intentionally uses policies that compound any pay disparity between Black and non-Black employees throughout their careers. These disparities only worsen because Google rarely offers its Black employees opportunities for advancement.

18.     Google's centralized policies extend discretion to its overwhelmingly non-Black managers to set and modify compensation. These managers thus have a free hand to set discriminatory pay and use compensation, including bonus cuts, as a tool to further reduce the pay of Black employees and as a sword to retaliate against those who challenge Google's discriminatory practices.

19.     Following a nationwide pattern or practice of discrimination, Google places Black hires into lower-level positions than similarly situated non-Black hires. Within level, Google pays Black employees less within the base salary range than similarly situated non-Black employees. And Google steers Black hires into roles that lack opportunities for advancement or leadership.

20.     By assigning Black employees to lower-level positions, compensating them less within levels than similarly situated non-Black employees, and denying Black employees advancement opportunities into higher levels, under Google's centralized, nationwide policies, Black employees are paid substantially less than similarly situated non-Black employees. And under Google's cumulative advantage policies, especially given that Black employees lack opportunities for advancement, the disparity grows as time passes.

21.     Moreover, because of the racially discriminatory and hostile environment at Google, as well as the underpayment and denial of advancement, Black employees suffer above-average attrition rates at Google.

22.     Complicit in Google's pattern or practice of race discrimination and retaliation is its human resources group, which is ineffective at resolving complaints of discrimination, harassment, and retaliation. Black employees recognize the futility of lodging internal complaints. The few brave enough to come forward suffer retaliation. Google's human resources department

and legal department defend discriminators, harassers, and retaliators, and do not take adequate steps to prevent Google from retaliating against Black employees who lodge complaints.

23.     Google does not foster an environment where Black employees feel free to complain of discrimination or harassment.  Instead, Black employees often feel intimidated from coming forward and suffer retaliation.

24.     Thus, during Plaintiff's employment, before and afterwards, Google engaged in a pattern or practice of discriminatory and retaliatory conduct toward its Black employees throughout the United States including, but not limited to the following practices:

    a.    Google employs discriminatory occupational segregation and race steering policies and practices;

    b.    Google employs discriminatory pay policies and practices, including assigning Black employees to positions at lower "levels" and to lower paying jobs than it assigns non-Black employees;

    c.    Google employs discriminatory advancement policies and practices, including placing Black employees into positions without advancement opportunities and denying or delaying advancement opportunities to Black employees;

    d.    Google fails to credit its Black employees for their experience on the same basis as non-Black employees and fails to recognize Black employees for timely promotions, pay adjustments, and title changes on the same basis as non-Black employees;

    e.    Google systematically pays its Black employees lower wages and/or denies them opportunities to increase their earnings;

    f.    Google takes adverse actions against its Black employees, such as unwarranted performance management actions, reduction in job responsibilities, demotions, transfers, constructive discharges, reduction in pay, and discharges on account of their race and/or their rejection of or unwillingness to tolerate a racially discriminatory or hostile work environment;

    g.    Google relies on race and negative stereotypes about the abilities and potential of Black employees in making employment decisions;

h.     Google denies Black employees important resources, grooming, managerial and administrative support, special project work, training, and business opportunities because of race;

i.     Google humiliates, intimidates, harasses, and demeans its Black employees and otherwise creates a hostile and offensive work environment;

j.     Google takes adverse actions against its Black employees who report, reject, oppose, or are otherwise unwilling to tolerate discrimination or racially hostile work environments;

k.     Google refuses to undergo impartial, thorough investigations or take meaningful corrective action against co-workers and managers who engage in racial harassment and racial discrimination.

25.     Google's policies and practices demonstrate that it fundamentally devalues equal employment opportunity. Google, for instance, engages in similar discrimination against other protected classes. A court certified a class of over 10,000 female California Google employees paid less than men because Google "(a) assign[s] women to lower 'Levels' (i.e. salary bands) than it assigns men; (b) assign[s] women to jobs that do not compensate as highly as those populated largely by men; (c) promot[es] women more slowly and at lower rates than it promotes men; and (d) pay[s] women less than it pays men performing similar work." (*Ellis v. Google*, No. CGC-17-561299 (Superior Ct. of S.F. Cnty.), First Amended Complaint, ¶ 3.) One of the class representatives alleges, consistent with Plaintiff's experience, that she was "placed . . . into Level 3, even though she had four years of directly relevant work experience." (*Id.* ¶ 59.)

26.     The practices described above are ongoing and constitute a continuing violation of the civil rights laws.

27.     The racially discriminatory policies and practices at Google are uniform and national in scope. Class members are relying on Plaintiff and this lawsuit to protect their rights.

**<u>Plaintiff Was Subjected to and Harmed by Defendant's Unlawful Conduct</u>**

28.     April Curley, like other class members, was subjected to a hostile work environment and harmed by Google's racially discriminatory practices throughout her tenure. When she complained, sought to change these practices, and advocated for others, she suffered retaliation.

29.     Curley worked as a People Programs Specialist I, also known as a University Programs Specialist, from 2014 until she was unlawfully terminated in 2020.

30.     Because of Google's abysmal underrepresentation of Black employees, Google recruited Curley to design and scale a program of outreach to Historically Black Colleges and Universities and to recruit Black students. When Google hired Curley, she had been successfully performing a similar role at Teach for America for three years, and held a Master's degree along with an additional two years of work experience. Yet Google "under-leveled" Curley. At the time Google hired her, her Master's degree and five years of professional experience should have corresponded to Level 5, yet Google assigned her to only Level 3—entry level post-bachelor's degree—and never promoted her or gave her merit pay increases. Indeed, Google never assigned Curley to the higher level she deserved despite her stellar qualifications and performance.

31.     Curley's talent, hard work, and experience paid off—she established a strong pipeline of talented Black engineering candidates, providing Google access to a wealth of previously untapped technical expertise and leadership potential. Thanks to Curley's efforts, Google started to see an increase in its Black technical hiring. Curley enjoyed the recognition of her peers and the acclaim of the participants in the campus experiences she created.

32.     In her role, Curley discovered that Google was biased against and reluctant to hire Black talent, subjecting Black students to more stringent hiring practices than non-Black

candidates. Plaintiff vocally opposed Google's systemic discrimination, including the following

discriminatory employment practices, among others:

a. Google viewed Black candidates through harmful racial stereotypes and hiring managers deemed Black candidates not "googly" enough, a plain dog whistle for race discrimination;

b. Google interviewers "hazed" and undermined Black candidates, regularly asking level-inappropriate questions of Black candidates to intentionally tank their interview scores.

c. Google hired Black candidates into lower-paying and lower-leveled roles, with less advancement potential, based on their race and racial stereotypes.

33.     Curley and her Black female colleagues advocated to break down these barriers.

Google was openly hostile to this advocacy for equal employment opportunities, and made clear

to Curley that she was supposed to be only window dressing. Google expected Curley and her

Black colleagues to execute the majority-white management's marketing-focused Black

recruitment strategies and never raise any concerns while doing so. Curley and her teammates'

advocacy quickly earned them a reputation within Google's discriminatory management culture

as "difficult," "negative," and "hard to work with."

34.     Because Google intended Curley to be a marketing ploy rather than a real

champion for Black opportunity and change, Google sought at every turn to marginalize her and

prevent her from advocating for herself and other Black Google employees and applicants.

Google hired a revolving door of managers to supervise Curley, many of whom harbored animus

toward Black employees and especially Black women. Google selected managers who, among

other things:

a. Frequently mistook Curley and her two Black female colleagues for each other and called them by each other's names;

b. Called Curley and her Black female colleagues "the girls" or demeaning labels other than their names;

1

2          c.   Refused to acknowledge or let Curley and her Black female colleagues
                speak in or present during important meetings;

3          d.   Described Curley and her Black female peers' work as "low-level";

4          e.   Created work environments so hostile that Curley's female peers were
                forced to leave the company, or suffered emotional distress;

5

6          f.   Ignored and devalued Curley and her Black female peers' expertise at their
                jobs and with Black students, even though the managers lacked the same
                level of success.

7

8          g.   Refused to support or nominate Curley or her Black female colleagues for
                pay and advancement opportunities;

9          h.   Discouraged Curley and her Black female peers from challenging Google's
                racially discriminatory practices against Black students;

10

11         i.   Demeaned and sexualized Curley as a Black woman, including by asking
                her which colleagues she wanted to sleep with.

12     35.    Curley sought help and reform and reported this conduct and several managers to

13   Google's HR department and upper management. These complaints were ignored, and worse,

14   resulted in increased discrimination and harassment. Google conducted no meaningful

15   investigations and took no corrective actions. To the contrary, Google repeatedly promoted

16
     managers who discriminated, retaliated, and created a hostile work environment.
17

18     36.    Among Curley's nine supervisors, only one was a Black woman.  This manager

19   was also the only one to put Curley up for a level increase, which would have adjusted Curley's

20   pay and job level to account for the higher-level work she was already performing. Curley's pay

21   adjustment was approved, yet when the time came for her level increase to be announced, Google

22   falsely claimed it lacked the budget to adjust her pay. Curley was never considered for

23
     advancement opportunities again. Her sole African American female manager lasted less than two
24

25   years in the role.

26

37.     Curley later learned that a high-level white manager had blocked her pay and level increase. Although that manager worked on the same floor as Curley and the two enjoyed a cordial relationship, she admitted to Curley that she considered her "intimidating," "unwelcoming," and—a stereotype Black women in America are all too familiar with—"angry." She refused to consider Curley for any advancement opportunities because of her race and reports of discrimination at Google.

38.     Throughout late 2019, Google repeatedly reprimanded Curley and cut her annual compensation for speaking up in team meetings and challenging internal practices.

39.     Curley again sought help and filed an HR complaint in January 2020. Google conducted no investigation and instead the complaint doomed Curley's career at Google.

40.     In spring of 2020, a group of the dozen or so Black and Latinx employees within University Programs, including Curley, assembled to address the many issues facing people of color at Google, including but not limited to lack of advancement opportunities, exclusion from leadership, underpayment, underleveling, and high attrition. The group met several times and developed a list of desired reforms.

41.     In plain retaliation for Curley's leadership role in this advocacy group, in June 2020, Google placed her on an informal performance improvement plan. Despite Curley's strong performance during the informal PIP, in early August 2020, Google intensified its retaliation, warning Curley to either accept severance immediately or be placed on a formal performance improvement plan, where it was clear that Google would terminate her employment at the end of the plan. Curley chose to fight for her job and began a formal 30-day performance improvement plan that was slated to end on September 17, 2020.

42.     While on the PIP, Curley advised Google she was preparing a detailed report about its racial bias in hiring practices. In response, Google ended Curley's PIP early and unlawfully terminated her employment on September 11, 2020, freezing out her access to the document and her ability to complete and submit her report documenting the discriminatory practices.

43.     As a result of Google's unlawful conduct, Curley, like other class members, has lost wages, promotional opportunities, and other benefits, and suffered irreparable harm to her career, emotional distress, and other nonpecuniary losses.  Google's actions have caused and continue to cause Plaintiff substantial losses in earnings and other employment benefits, in an amount to be determined by a jury.

## **CLASS ALLEGATIONS**

44.     Plaintiff files this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of Black employees who work or worked for Defendant and who were subjected to discrimination by Defendant due to their race. The putative class includes all Black employees who work or worked for Defendant in the United States, and a sub-class of all Black employees who work or worked for Defendant in New York. All requirements of class certification are met by the proposed class.

45.     The class of Black employees and former employees is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1).

46.     There are questions of law and fact common to the class, and those questions can and should be resolved in a single proceeding that furthers this litigation.  Fed. R. Civ. P. 23(a)(2).

47.     The claims alleged by Plaintiff are typical of the claims of the class.  Fed. R. Civ. P. 23(a)(3).

48.     Plaintiff will fairly and adequately represent and protect the interests of the class. Fed. R. Civ. P. 23(a)(4).

49.     The proposed class meets the requirements for certification under Rule 23(b)(2) and/or Rule 23(b)(3).  The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).

50.     Alternatively, the issues of determining liability and equitable relief are appropriate for issue certification under Rule 23(c)(4), as are other common issues.

## COUNT I

### RACE DISCRIMINATION IN VIOLATION OF
### 42 U.S.C. § 1981
### (Nationwide Class and Plaintiff)

51.     Plaintiff, individually and on behalf of all others similarly situated, realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count I of this Complaint.

52.     Under 42 U.S.C. § 1981, as amended, people of all races are guaranteed the same right to make and enforce contracts, regardless of race. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

53.     Defendant maintained a nationwide set of uniform, intentionally discriminatory employment practices, engaged in a pattern or practice of systemic race discrimination against

1 Black employees, and created a racially hostile work environment, which constitute illegal

2 intentional race discrimination in violation of 42 U.S.C. § 1981.

3 54. Plaintiff and all those similarly situated were subjected to and harmed by

4 Defendant's systemic and individual discrimination.

5

6 ### COUNT II

7 **RETALIATION IN VIOLATION OF**
**42 U.S.C. § 1981**
8 **(Plaintiff)**

9 55. Plaintiff realleges the above paragraphs and incorporates them by reference as

10 though fully stated herein as part of Count II of this Complaint.

11 56. Plaintiff engaged in protected activity and suffered retaliation by Defendant in

12 violation of 42 U.S.C. § 1981.

13 57. Plaintiff suffered harm as a result of Defendant's unlawful retaliation.

14

15 ### COUNT III

16 **RACE DISCRIMINATION IN VIOLATION OF**
**NEW YORK STATE HUMAN RIGHTS LAW**
17 **(New York Class and Plaintiff)**

18 58. Plaintiff, individually and on behalf of all others similarly situated, realleges

19 the above paragraphs and incorporates them by reference as though fully stated herein as part of

20 Count III of this Complaint.

21 59. Google maintains a substantial corporate presence in New York. Google employs

22 approximately 12,000 people, including Plaintiff until Google unlawfully terminated her

23 employment in 2020, in New York.

24

25 60. The New York State Human Rights Law ("NYSHRL"), NY Exec. Law § 290, *et*

26 *seq.*, establishes that it is unlawful, because of an individual's race, "to bar or to discharge from

employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a).

61.     Google violated the NYSHRL by discharging Plaintiff and other class members from employment and discriminating against them in compensation and in terms, conditions, or privileges of employment, because of their race, including by creating a racially hostile work environment.

62.     Google maintained racially discriminatory employment practices and policies, including but not limited to pay, job assignment, promotion, and other practices that had a disparate impact on Black employees who worked for Google in New York.

63.     Plaintiff and class members have suffered damages as a result of Google's violation of the NYSHRL.

## COUNT IV

### RETALIATION IN VIOLATION OF
### NEW YORK STATE HUMAN RIGHTS LAW
### (Plaintiff)

64.     Plaintiff realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count IV of this Complaint.

65.     Plaintiff engaged in protected activity and suffered retaliation by Defendant in violation of NYSHRL, N.Y. Exec. Law § 296(7).

66.     Plaintiff suffered harm as a result of Defendant's unlawful retaliation.

## COUNT V

### RACE DISCRIMINATION IN VIOLATION OF
### NEW YORK CITY HUMAN RIGHTS LAW
### (New York Class and Plaintiff)

67.     Plaintiff, individually and on behalf of all others similarly situated, realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count V of this Complaint.

68.     Google maintains a substantial corporate presence in New York. Google employs approximately 12,000 people, including Plaintiff until Google unlawfully terminated her employment in 2020, in New York.

69.     The New York City Human Rights Law ("NYCHRL"), NYC Admin Code § 8-101, *et seq*., establishes that it is unlawful, because of an individual's race, "to bar or to discharge from employment such person," or to "discriminate against such person in compensation or in terms, conditions or privileges of employment." NYC Admin Code § 8-107.

70.     Google violated the NYCHRL by discharging Plaintiff and other class members from employment and discriminating against them in compensation and in terms, conditions, or privileges of employment, because of their race, including by creating a racially hostile work environment.

71.     Google maintained racially discriminatory employment practices and policies, including but not limited to pay, job assignment, promotion, and other practices that had a disparate impact on Black employees who worked for Google in New York.

72.     Plaintiff and other class members have suffered damages as a result of Google's violation of the NYCHRL.

## COUNT VI

### RETALIATION IN VIOLATION OF
### NEW YORK CITY HUMAN RIGHTS LAW

**(Plaintiff)**

73.     Plaintiff realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count IV of this Complaint.

74.     Google maintains a substantial corporate presence in New York. Google employs approximately 12,000 people, including Plaintiff until Google unlawfully terminated her employment in 2020, in New York.

75.     Plaintiff engaged in protected activity and suffered retaliation by Defendant in violation of NYCHRL, N.Y.C. Admin. Code § 8-107(7).

76.     Plaintiff suffered harm as a result of Defendant's unlawful retaliation.

## COUNT VII

**SEX AND SEXUAL ORIENTATION DISCRIMINATION IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW**
**(Plaintiff)**

77.     Plaintiff, individually, realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count VII of this Complaint.

78.     Google maintains a substantial corporate presence in New York. Google employs approximately 12,000 people, including Plaintiff until Google unlawfully terminated her employment in 2020, in New York.

79.     The New York State Human Rights Law ("NYSHRL"), NY Exec. Law § 290, *et seq.*, establishes that it is unlawful, because of an individual's sex or sexual orientation, "to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a).

80.     Google violated the NYSHRL by discharging Plaintiff, discriminating against her in compensation and in terms, conditions, or privileges of employment, including by subjecting her to a hostile work environment, because of her sex.

81.     Google maintained discriminatory employment practices and policies, including but not limited to pay, job assignment, promotion, and other practices that had a disparate impact on female and queer employees who worked for Google in New York.

82.     Plaintiff has suffered damages as a result of Google's violation of the NYSHRL.

<u>**COUNT VIII**</u>

**SEX AND SEXUAL ORIENTATION DISCRIMINATION IN VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW**
**(Plaintiff)**

83.     Plaintiff, individually, realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count VIII of this Complaint.

84.     The New York City Human Rights Law ("NYCHRL"), NYC Admin Code § 8-101, *et seq*., establishes that it is unlawful, because of an individual's sex or sexual orientation, "to bar or to discharge from employment such person," or to "discriminate against such person in compensation or in terms, conditions or privileges of employment." NYC Admin Code § 8-107.

85.     Google violated the NYCHRL by discharging Plaintiff, discriminating against her in compensation and in terms, conditions, or privileges of employment, including by creating a hostile work environment, because of her sex and sexual orientation.

86.     Google maintained racially discriminatory employment practices and policies, including but not limited to pay, job assignment, promotion, and other practices that had a disparate impact on female and queer employees who worked for Google in New York.

87.     Plaintiff has suffered damages as a result of Google's violation of the NYCHRL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, and all others similarly situated, respectfully request that this Court find against Defendant as follows:

a.     Certify this case, including its subclasses, as a class action;

b.     Designate Plaintiff as Class Representative and designate Plaintiff's counsel of record as Class Counsel;

c.     Declare that Defendant's acts, conduct, policies and practices are unlawful and violate 42 U.S.C. § 1981, NYSHRL, and NYCHRL;

d.     Declare that Defendant engaged in a pattern and practice of racial discrimination against African American and Black employees and employed policies and practices for New York employees that have an unlawful disparate impact on African Americans;

e.     Declare that Defendant engaged in unlawful race discrimination and retaliation against Plaintiff, and order all appropriate relief;

f.     Order Plaintiff, and all others similarly situated, reinstated to their appropriate positions, promotions and seniority, and otherwise make Plaintiff and all others similarly situated whole;

g.     Award Plaintiff and all others similarly situated the value of all compensation and benefits lost and that they will lose in the future as a result of Defendant's unlawful conduct;

h.     Award Plaintiff and all others similarly situated compensatory and punitive damages;

i.     Award Plaintiff and all others similarly situated prejudgment interest and attorneys' fees, costs and disbursements, as provided by law;

j.     Award Plaintiff and all others similarly situated such other make-whole equitable, injunctive and legal relief as this Court deems just and proper to end the discrimination and fairly compensate Plaintiff and others similarly situated; and

k.     Award Plaintiff and all others similarly situated such other relief as this Court deems just and proper.

## <u>DEMAND FOR A JURY TRIAL</u>

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure and Civil Local Rule 3-6.

Respectfully submitted on behalf of Plaintiff and those similarly situated,

STOWELL & FRIEDMAN LTD.

*/s/ Suzanne E. Bish*
Suzanne E. Bish (pro hac vice application forthcoming)
George S. Robot (pro hac vice application forthcoming)
Daniel Lewin (pro hac vice application forthcoming)
STOWELL & FRIEDMAN LTD.
303 W. Madison
Suite 2600
Chicago, Illinois 60606
(312) 431-0888
sbish@sfltd.com

1

BEN CRUMP LAW, PLLC

2

_____

3

Ben Crump (pro hac vice application forthcoming)

4

BEN CRUMP LAW, PLLC
717 D Street, N.W.

5

Suite 310
Washington D.C. 20004

6

(800) 713-1222

7

8

SANI LAW, APC

9

By: _/s/ Sam Sani_____

10

Sam Sani
SANI LAW, APC
15720 Ventura Blvd., Suite 405

11

Encino, CA 91436
Tel: (310) 935-0405

12

ssani@sanilawfirm.com

13

Attorneys for Plaintiff and the Putative Class

14

15

16

17

18

19

20

21

22

23

24

25

26