CARSON H. SULLIVAN (*admitted pro hac vice*)
carsonsullivan@paulhastings.com
MADALYN K. DOUCET (*admitted pro hac vice*)
madalyndoucet@paulhastings.com
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C. 20036
Telephone: 1(202) 551-1700
Facsimile: 1(202) 551-1705

Attorneys for Defendant
Google LLC

*(Additional counsel for Defendant Google LLC on next page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| APRIL CURLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | CASE NO. 4:22-CV-01735-YGR<br><br>**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION, PARTIAL MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>Hearing Date: November 22, 2022<br>Time: 2:00 PM<br>Courtroom: 1, 1301 Clay Street, 4th Fl., Oakland, CA 94612<br>Judge: Hon. Yvonne Gonzalez Rogers |

1    EMILY R. PIDOT (SB# 233241)
     emilypidot@paulhastings.com
2    SARA B. TOMEZSKO (*admitted pro hac vice*)
     saratomezsko@paulhastings.com
3    PAUL HASTINGS LLP
     200 Park Avenue
4    New York, New York 10166
     Telephone:  1(212) 318-6000
5    Facsimile:  1(212) 319-4090

6    FELICIA A. DAVIS (SB# 266523)
     feliciadavis@paulhastings.com
7    ANKUSH DHUPAR (SB# 307689)
     ankushdhupar@paulhastings.com
8    LINDSEY C. JACKSON (SB# 313396)
     lindseyjackson@paulhastings.com
9    PAUL HASTINGS LLP
     515 S. Flower Street
10   Twenty-Fifth Floor
     Los Angeles, California 90071-2228
11   Telephone:  1(213) 683-6000
     Facsimile:  1(213) 627-0705

12

     Attorneys for Defendant
13   Google LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1

II. ISSUES TO BE DECIDED ................................................................................. 3

III. RELEVANT FACTUAL ALLEGATIONS ........................................................ 4

    A. Google Hired Plaintiffs in Different Offices to Perform Different Roles............. 4

    B. Plaintiffs Vaguely Allege "Underleveling" and Discrimination in Pay................. 4

    C. Plaintiffs Allege No Common Practice With Regard to Promotions..................... 5

    D. Plaintiffs' Managers Assessed Their Performance in Different Ways. ................. 5

    E. Plaintiffs Allege That Their Individual Managers and Colleagues Subjected Them to Harassment and Retaliation. ....................................................................... 5

    F. Plaintiffs Curley, Mayon, and Reid Left Google under Differing Circumstances. ....................................................................................................... 6

    G. Plaintiffs Curley, Mayon, Lewis, and Reid Challenge Every Possible Employment Action on Behalf of Nearly All Black Employees at Google. .......... 7

    H. Plaintiffs Aweh and Thomas Unsuccessfully Applied for Positions at Google. ................................................................................................................... 8

IV. LEGAL STANDARDS ....................................................................................... 9

    A. The Court May Dispose of Class Allegations at the Pleading Stage. ................... 9

    B. A Court May Dismiss New York Claims for Lack of Subject Matter Jurisdiction under Rule 12(b)(1). ....................................................................... 10

V. PLAINTIFFS' PROPOSED EMPLOYEE CLASSES, ON THEIR FACE, ARE FAR TOO BROAD TO PLAUSIBLY BE CERTIFIED. ............................... 11

    A. The Proposed Employee Classes Are Facially Overbroad. ................................ 11

    B. The SAC Demonstrates on its Face that Plaintiffs Cannot Satisfy Rule 23's Requirements Because Individual Questions Predominate................................... 14

VI. PLAINTIFFS' TITLE VII AND SECTION 1981 HIRING CLASS IS SIMILARLY OVERBROAD. .......................................................................... 18

VII. PLAINTIFF CURLEY FAILS TO STATE INDIVIDUAL OR CLASS CLAIMS UNDER NEW YORK STATE AND CITY LAW. ............................................. 19

VIII. PLAINTIFF AWEH'S INDIVIDUAL AND CLASS STATE LAW HIRING CLAIMS SHOULD BE DISMISSED. ............................................................... 22

IX. THE COURT SHOULD STRIKE ALL CLASS DEFINITIONS AS TEMPORALLY OVERBROAD. ....................................................................... 24

X. CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Intel Corp.*,
   No. 18-CV-03981-LHK, 2019 WL 1369926 (N.D. Cal. Mar. 26, 2019) ............................... 23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................... 3, 9, 10

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983) ................................................................................................ 10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 3, 10

*Bennett v. Nucor Corp.*,
   656 F.3d 802 (8th Cir. 2011) .................................................................................... 14

*Beverley v. N.Y. City Health & Hosps. Corp.*,
   No. 18 CV 8486 (ER), 2020 WL 1503421 (S.D.N.Y. Mar. 30, 2020) .................................. 23

*Chen-Oster v. Goldman, Sachs & Co.*,
   325 F.R.D. 55 (S.D.N.Y. 2018) ................................................................................. 14

*Cobb v. Arc Energy Servs., Inc.*,
   No. 0:21-CV-01913-JMC, 2022 WL 970093 (D.S.C. Mar. 31, 2022) .................................. 22

*Collins v. Gamestop Corp.*,
   No. C10-1210-TEH, 2010 WL 3077671 (N.D. Cal. Aug. 6, 2010)....................................... 11

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
   140 S. Ct. 1009 (2020) ............................................................................................ 14

*Cruz v. SEIU Loc. 32BJ*,
   No. 19 CIV. 11836, 2021 WL 3604661 (S.D.N.Y. Aug. 12, 2021) ..................................... 22

*Daniels v. City of New York*,
   No. 17 CIV. 9960 (LGS), 2019 WL 251511 (S.D.N.Y. Jan. 17, 2019).......................... 20, 21

*Dodd-Owens v. Kyphon, Inc.*,
   No. C 06-3988, 2007 WL 420191 (N.D. Cal. Feb. 5, 2007)......................................... 24, 25

*Donaldson v. Microsoft Corp.*,
   205 F.R.D. 558 (W.D. Wash. 2001) ............................................................................ 14

*Duran v. U.S. Bank Nat'l Ass'n*,
   59 Cal. 4th 1 (2014) ............................................................................................... 17

*Elkins v. Am. Showa Inc.*,
219 F.R.D. 414 (S.D. Ohio 2002) ............................................................................. 15

*Eng v. New York City Police Dep't*,
No. 95 CIV. 5845, 1996 WL 521421 (S.D.N.Y. Sept. 12, 1996) ........................................ 21

*Enoh v. Hewlett Packard Enter. Co.*,
No. 17-CV-04212-BLF, 2018 WL 3377547 (N.D. Cal. July 11, 2018) ................................ 25

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982) .................................................................................... 10, 18

*Gonsalves v. Infosys Techs., LTD.*,
No. C 09-04112 MHP, 2010 WL 1854146 (N.D. Cal. May 6, 2010) .................................. 24

*Harris v. City of Chicago*,
Nos. 96 CV 3406, 96 CV 7526, 1998 WL 59873 (N.D. Ill. Feb. 9, 1998) ........................... 18

*Henderson v. Physician Affiliate Grp. of New York P.C.*,
No. 18-CV-3430 (JMF), 2019 WL 3778504 (S.D.N.Y. Aug. 12, 2019) ........................ 22, 23

*Hoffman v. Parade Publ'ns*,
15 N.Y.3d 285 (2010) .................................................................................. 11, 21

*Holloway v. Best Buy Co.*,
No. C 05-5056 PJH, 2009 WL 1533668 (N.D. Cal. May 28, 2009) ................................... 22

*Huddleston v. City & Cnty. of San Francisco*,
No. 16-cv-01998-YGR, 2016 WL 4729175 (N.D. Cal. Sept. 12, 2016) ........................... 9, 20

*Hughes v. WinCo Foods*,
No. CV11-00644 JAK, 2012 WL 34483 (C.D. Cal. Jan. 4, 2012) ..................................... 13

*Int'l Bhd. Of Teamsters v. United States*,
431 U.S. 324 (1977) ...................................................................................... 14

*Jackson v. Caribbean Cruise Line, Inc.*,
14-cv-02485, 2017 WL 9482238 (E.D.N.Y. Jan. 21, 2017) ........................................... 22

*Kassner v. 2nd Ave. Delicatessen Inc.*,
496 F.3d 229 (2d Cir. 2007) .............................................................................. 20

*Kevari v. Scottrade, Inc.*,
No. CV 18-819-JFW(GJSx), 2018 WL 6136822 (C.D. Cal. Aug. 31, 2018) ................. *passim*

*King v. UA Local 91*,
No. 2:19-CV-01115-KOB, 2020 WL 4003019 (N.D. Ala. July 15, 2020) ............................ 17

DEFENDANT'S NOTICE OF MOTION AND
PARTIAL MOTION TO DISMISS
4:22-CV-01735-YGR

*Lambui v. Collins*,
No. 14-CV-6457 (JS) (AYS), 2015 WL 5821589 (E.D.N.Y. Sept. 30, 2015) ................ 11, 21

*Mackenzie Architects, PC v. VLG Real Estate Dev., LLC*,
No. 1:15-CV-1105, 2016 WL 4703736 (N.D.N.Y. Sept. 8, 2016) ........................................ 21

*McKinney v. Tanner*,
18-cv-10548, 2019 WL 3067116 (S.D.N.Y. July 12, 2019) ................................................... 11

*Moussouris v. Microsoft Corp.*,
No. C15-1483JLR, 2018 WL 3328418 (W.D. Wash. June 25, 2018) ................................... 13

*Noble v. Dorcy Inc.*,
No. 2:19-CV-08646-ODW-JPRX, 2020 WL 4227295 (C.D. Cal. July 23,
2020) ........................................................................................................................................ 24

*Okocha v. City of N.Y.*,
122 A.D.3d 550, 998 N.Y.S.2d 21 (1st Dep't 2014) ............................................................. 23

*Oncale v. Sundower Offshore Servs., Inc.*,
523 U.S. 75 (1998) ................................................................................................................. 14

*Pedroza v. Ralph Lauren Corp.*,
19-cv-08639, 2020 WL 4273988 (S.D.N.Y. July 24, 2020) ............................................. 11, 21

*Puffer v. Allstate Ins. Co.*,
255 F.R.D. 450, 471 (N.D. Ill. 2009) ..................................................................................... 17

*Ramirez v. Baxter Credit Union*,
No. 16-cv-03765-SI, 2017 WL 1064991 (N.D. Cal. Mar. 21, 2017) ..................................... 25

*Resendiz v. Exxon Mobil Corp.*,
No. 5:20-CV-00692-M, 2021 WL 4444718 (E.D.N.C. Sept. 28, 2021) ............................... 22

*Rhodes v. Adams & Assocs., Inc.*,
No. 2:16-CV-00494-TLN-KJN, 2018 WL 3913806 (E.D. Cal. Aug. 14, 2018) ................... 24

*Roberts v. Juliano*,
No. 9:18-CV-1434, 2020 WL 4739619 (N.D.N.Y. July 20, 2020) ........................................ 21

*Russo v. City of New York*,
No. 02 CIV. 369 (TPG), 2003 WL 1571707 (S.D.N.Y. Mar. 26, 2003) ............................... 22

*Sanders v. Apple, Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................................... 11

*Sandoval v. Ali*,
34 F. Supp. 3d 1031 (N.D. Cal. 2014) .............................................................................. 11, 19

DEFENDANT'S NOTICE OF MOTION AND
PARTIAL MOTION TO DISMISS
4:22-CV-01735-YGR

*Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*,
    No. 19-CV-6034 (JPO), 2019 WL 6916099 (S.D.N.Y. Dec. 19, 2019) .......................... 20, 23

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ................................................................................................. 19

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................................................. 12

*Stubbs v. McDonald's Corp.*,
    224 F.R.D. 668 (D. Kan. 2004) ............................................................................................. 18

*Wagner v. Taylor*,
    836 F.2d 578 (D.C. Cir. 1987) .............................................................................................. 12

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................................................................... 14, 15

**Statutes**

42 U.S.C. § 1981 ...................................................................................................................... 18, 25

ADEA ............................................................................................................................................. 22

NYCHRL ................................................................................................................................ *passim*

NYSHRL ................................................................................................................................ *passim*

Title VII ................................................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P.
    12(b)(1) ......................................................................................................................... 1, 3, 11
    12(b)(6) ............................................................................................................................... 1, 3
    12(f) ................................................................................................................... 1, 3, 10, 16
    23 ................................................................................................................................ *passim*
    23(a) ..................................................................................................................................... 15
    23(b)(3) ................................................................................................................................ 17

1    **NOTICE OF MOTION, PARTIAL MOTION TO DISMISS, AND MOTION TO STRIKE**

2    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3    PLEASE TAKE NOTICE THAT on November 22, 2022, at 2:00 p.m. in Courtroom 1, on

4    the Fourth Floor of the above-titled Court, located at 1301 Clay Street, Oakland, California,

5    Defendant Google LLC ("Google") will move the Court for an Order: (1) dismissing or striking

6    under Rule 12(b)(6) or 12(f) Plaintiffs' employee and hiring class claims for failure to adequately

7    plead the classes can satisfy Rule 23's procedural requirements; (2) dismissing Plaintiff Curley's

8    individual New York State and City claims for failure to state a claim under Rule 12(b)(6) and

9    failure to establish subject matter jurisdiction under Rule 12(b)(1); (3) dismissing Plaintiff Aweh's

10   individual California and New York State and City failure-to-hire claims under Rule 12(b)(6) for

11   failure to state a claim; (4) dismissing Plaintiff Curley's and Plaintiff Aweh's state law claims

12   asserted on behalf of a putative class under Rule 12(b)(6) for lack of an adequate class

13   representative with viable claims; (5) striking all class definitions as temporally overbroad pursuant

14   to Rule 12(f); and (6) striking the "hiring class" definitions under Rule 12(f) as inconsistent with

15   the pleadings. This Motion is based upon this Notice of Motion, the accompanying Memorandum

16   of Points and Authorities, Google's Request for Judicial Notice ("RJN") of Plaintiffs'

17   administrative charges, the complete pleadings and records on file herein, and such other evidence

18   and arguments as may be presented at the hearing.

19   **MEMORANDUM OF POINTS AND AUTHORITIES**

20   **I.    INTRODUCTION**

21   Plaintiffs' Second Amended Complaint ("SAC") as pled shows exactly why this case is not

22   appropriate for class treatment. Four employees attempt to extrapolate their individual allegations

23   of race discrimination and hostile work environment to thousands of current and former Black and

24   African American[1] employees in hundreds of different jobs, working in dozens of locations across

25   the country, and reporting to thousands of different managers across all lines of business.

26   Furthermore, Plaintiffs challenge every possible employment action, from initial job placement to

27   _____

28   [1]    Throughout this Motion, Google adopts Plaintiffs' convention of using the term "Black" to refer to Black and African American individuals.

1    termination, and everything in between. Given the breadth of these claims and the scope of

2    individuals the Plaintiffs seek to represent, the allegations in the SAC do not plausibly allege how

3    this case can proceed as a class action.

4         Plaintiffs have already amended their pleadings twice. These amendments show, however,

5    that Plaintiffs are struggling to plead facts to support a common contention, the determination of

6    which will resolve all of the various claims asserted in one stroke. The proposed nationwide

7    employee class is facially overbroad because, among other things, Plaintiffs' own allegations

8    demonstrate that the class includes the very individuals accused of discrimination and harassment.

9    Further, Plaintiffs have not sufficiently pled the prerequisites of a viable Rule 23 class action. Fact-

10   intensive, individualized questions will predominate given the sheer breadth of the putative class

11   and the claims at issue. There is no glue that binds putative class members together other than their

12   race and their employment with Google, and no amount of discovery will cure this defect.

13        The proposed New York and California employee classes, though more limited in

14   geographical scope, present the same issues that render this case inappropriate for class treatment.

15   Additionally, Plaintiff Curley cannot serve as a representative for any New York employee in that

16   proposed class. It is clear from the SAC and her administrative charge that her claims are either

17   time-barred, lack the requisite factual nexus to New York to establish subject matter jurisdiction,

18   or fail to plausibly suggest she is entitled to relief.

19        In addition, two applicants bring class claims on behalf of all Black candidates denied full-

20   time employment. Plaintiffs allege Google denies employment to "qualified" applicants, but the

21   proposed class is overbroad as to include applicants who do not meet the minimum qualifications

22   for the positions sought and, as such, are precluded from candidacy at the outset. Plaintiffs ask this

23   Court to authorize discovery into millions of applications and hiring decisions on the theory that

24   any Black individual who ever applied to work at Google is *per se* a victim of race discrimination.

25   Furthermore, while the SAC broadly challenges every conceivable step in the hiring process for all

26   positions at Google, the SAC's only particularized allegations of discrimination in hiring are

27   confined to conduct that occurs once a candidate reaches the interview phase. Plaintiffs' decision

28   to call this a "hiring" (as opposed to "applicant") class further underscores the point.

Finally, Plaintiff Aweh, a Georgia resident, seeks to represent thousands, potentially millions, of New York- and California-based applicants, but has not plausibly alleged her own individual claims. She has not pled any facts suggesting the unspecified roles "based in" New York or California were filled, that any non-class members were treated more favorably, or any facts at all to suggest that race played a role in her failure to secure interviews. She cannot represent a class if she lacks viable individual claims, nor can she represent California applicants for the separate and independent reason that she is neither a California resident nor does she allege that any discriminatory conduct occurred in the state.

Plaintiffs' SAC has not articulated what common harm all class members suffered or a theory susceptible to common proof. Allowing these class claims to proceed would lead to overbroad and invasive discovery into the personal, private information relating to millions of individuals across the country from the outset. This is precisely the type of pleading deficiency the U.S. Supreme Court rejected in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their progeny. Accordingly, Google requests that the Court dismiss, or in the alternative, strike the employee and hiring class allegations, dismiss Plaintiff Curley's and Plaintiff Aweh's individual and class claims asserted under state law, and strike the class definitions as temporally overbroad or inconsistent with the pleadings.

## II.    <u>ISSUES TO BE DECIDED</u>

The issues to be decided are whether: (1) this Court should dismiss per **Rule 12(b)(6)** or strike per **Rule 12(f)** Plaintiffs' putative employee and hiring class claims because the classes are facially overbroad and the **SAC** does not plausibly allege Plaintiffs can satisfy **Rule 23's** procedural requirements; (2) this Court should dismiss Plaintiff Curley's individual New York State and City claims for failure to state a claim under **Rule 12(b)(6)** and lack of subject matter jurisdiction under **Rule 12(b)(1)** for failure to plead the requisite factual nexus to New York; (3) this Court should dismiss Plaintiff Aweh's individual New York State and City and California claims for failure to state a claim under **Rule 12(b)(6)**; (4) this Court should dismiss per **Rule 12(b)(6)** Plaintiff Curley's and Plaintiff Aweh's New York State and City and California class claims because both Plaintiffs' claims fail as a matter of law and they therefore cannot assert such claims on behalf of a putative

1  class; and (5) this Court should strike the class definitions as temporally overbroad because they

2  necessarily include individuals with time-barred claims or arez inconsistent with the pleadings.

3  **III.    RELEVANT FACTUAL ALLEGATIONS[2]**

4      **A.    Google Hired Plaintiffs in Different Offices to Perform Different Roles.**

5      Google recruited and hired Plaintiffs April Curley, Desiree Mayon, Ronika Lewis, and

6  Rayna Reid at different times, in different offices, and to perform different jobs. Google hired

7  Plaintiff Curley in 2014 as a University Programs Specialist, a level 3 role.[3] (SAC ¶¶ 38–39.) She

8  worked in New York until transferring to Washington, D.C. in December 2018. (*Id.* ¶ 38.) Plaintiff

9  Mayon was hired in 2019 as a level 4 Technical Program Manager, but does not describe the nature

10  of this work, what department she was in, or even where she worked. (*Id.* ¶¶ 53–54.) Plaintiff Reid

11  was hired in 2018 as a level 3 Staffing Channels Specialist in Austin, Texas. (*Id.* ¶¶ 81–82.) Plaintiff

12  Lewis was hired in 2020 as "Google's Head of Logistics Operations Strategy and Analytics" in

13  California, a level 7 position. (*Id.* ¶ 70.) She has held various roles at Google, including Senior

14  Program Manager, a "new regulatory compliance role," and a fourth unspecified position. (*Id.* ¶¶

15  70, 73, 75.)

16      **B.    Plaintiffs Vaguely Allege "Underleveling" and Discrimination in Pay.**

17      Plaintiffs Curley, Mayon, and Reid claim they were "under-leveled" upon hire because of

18  race. (SAC ¶¶ 39, 54, 83.) Plaintiff Lewis does not challenge her initial assignment to a more senior

19  level 7 position. Instead, she challenges her reassignment to a level 6 role after Google "eliminated

20  the position" she was hired to perform, and later to a level 5 role "in order to transfer," claiming

21  that race played a factor. (*Id.* ¶¶ 70, 73.) Each Plaintiff alleges Google "refused to place [her] at the

22  higher level warranted by her experience" or that "she deserved" throughout her tenure. (*Id.* ¶¶ 39,

23  54, 70, 83.) Only Plaintiff Reid, however, identifies anyone at Google who was allegedly assigned

24  a higher level to perform similar work, regardless of race. (*Id.* ¶ 83.)

---

25  [2]    These facts are based on allegations in the SAC and the administrative charges attached to
26  the accompanying Request for Judicial Notice filed herewith. Google generally denies the
allegations, and reserves all rights to contest the facts alleged in the SAC and the charges.

27  [3]    The SAC states broadly that Google assigns each role a "level" of seniority. (SAC ¶ 24.)
28  No Plaintiff ever held a level 2 role, yet the SAC alleges that level 2 is "the lowest level Google
assigns to permanent, full-time employees, typically reserved for hires straight out of college." (*Id.*)

Plaintiffs also allege "[e]ach level is to correspond to a standardized base salary and compensation range, among other things." (*Id.* ¶ 24.) Only Plaintiff Lewis alleges others in "her current role" were offered higher compensation packages to perform similar work, though she does not specify their race. (*Id.* ¶ 75.)

### C.  Plaintiffs Allege No Common Practice With Regard to Promotions.

Each Plaintiff alleges she was denied "advancement opportunities," but the SAC does not identify a specific common practice or policy other than "denying or delaying advancement opportunities to Black employees." (*Id.* ¶¶ 33(d), 46, 54, 70, 83.) Plaintiff Curley alleges that one of her managers "put [her] up for a level increase," which a "high-level white manager" denied. (*Id.* ¶¶ 45–46.) Plaintiff Lewis alleges she requested and was denied several promotions, that one manager told her to "take that promotion request down," and several others "promised to correct her level and increase her pay" but never did. (*Id.* ¶¶ 72–75.) She also purportedly was told she must wait two to three years for a promotion in one of her various roles. (*Id.* ¶ 75.) Neither Plaintiff Mayon nor Plaintiff Reid allege they sought and were denied a promotion.

### D.  Plaintiffs' Managers Assessed Their Performance in Different Ways.

Plaintiffs Curley's, Mayon's, and Reid's managers all purportedly placed them on performance improvement plans for various reasons, including alleged retaliation: Plaintiff Curley because of her "leadership role in [an] advocacy group" for "people of color at Google"; Plaintiff Mayon "for not being 'Googly' enough and because she 'pissed off [a level 7 manager]'"; and Plaintiff Reid for "complaining multiple times." (SAC ¶¶ 49–50, 64, 87.) Plaintiff Mayon also allegedly received a retaliatory "Needs Improvement" performance rating. (*Id.* ¶ 62.) Plaintiff Lewis, however, received positive performance reviews, earning at least one exceeds expectations performance rating and "multiple awards for her performance, including a Google Citizenship Award, an award rarely, if ever, given to new hires at Google." (*Id.* ¶¶ 71–72.)

### E.  Plaintiffs Allege That Their Individual Managers and Colleagues Subjected Them to Harassment and Retaliation.

Plaintiffs allege that they suffered a discriminatory and hostile work environment in their respective offices. Plaintiff Curley alleges she was "marginalize[d]" by "a revolving door of

1    managers" who "harbored animus toward Black employees and especially Black women." (SAC

2    ¶ 43.)[4] According to Plaintiff Curley, one of her unnamed managers is a putative class member.

3    (*Id.* ¶ 45.) Plaintiff Mayon alleges that colleagues, managers, a "Chief of Staff," and other unnamed

4    Google employees "regularly screamed at and berated her," made racist and demeaning remarks,

5    and that one manager "used his body to push Mayon back down into her chair." (SAC ¶¶ 56, 64.)

6    Though she does not provide the race of these individuals in the SAC, her charge confirms that she

7    is accusing two putative class members of harassing and discriminatory conduct. (RJN Exh. B at

8    pp. 1, 3.)

9         Plaintiff Lewis alleges that "a racially hostile colleague" stole her phone; that unspecified

10   employees subjected her to racist remarks; and that her "superiors and peers" marginalized and

11   excluded her when they "worked collaboratively in secret [without her]," "placed [her] on teams

12   that were understaffed," and gave her "work assignments [that were] constantly changing." (SAC

13   ¶¶ 76–77.) Plaintiff Reid claims her managers "subjected [her] to racial stereotypes as a Black

14   woman" by "accus[ing] her of not liking working in Austin," critiquing her for "not being 'Googly'

15   enough and 'not smiling enough,'" and posting racist imagery to social media. (*Id.* ¶¶ 84–85.) She

16   also alleges that unnamed colleagues and "a manager" made racist remarks, denied her time off,

17   and mistook her for a cafeteria worker. (*Id.* ¶ 86.)

18        Each Plaintiff allegedly reported incidents of harassment or discrimination to Human

19   Resources, "to no avail." (*Id.* ¶¶ 44, 48, 57, 61, 78, 85.) The SAC alleges, "Google's human

20   resources department and legal department" are "[c]omplicit in Google's pattern or practice of race

21   discrimination and retaliation." (*Id.* ¶ 31.) Neither Human Resources professionals nor members of

22   the Legal department are excluded from the proposed employee classes. (*Id.* ¶¶ 105, 106, 108.)

23        **F.    Plaintiffs  Curley,  Mayon,  and  Reid  Left  Google  under  Differing**

24            **Circumstances.**

25        The SAC alleges that in August 2020, Google gave Plaintiff Curley the option to go on a

26   _____

27   [4]      Plaintiff Curley also alleges she was discriminated against and harassed on the basis of sex
     and sexual orientation. (*Id.* ¶¶ 167, 181.) In her administrative charge, she alleges this conduct
28   occurred "[f]rom on or around February 2019 to on or around September 11, 2020," which was
     after she left New York. (RJN Exh. A at p. 2; SAC ¶ 38.)

DEF.'S NOTICE OF MOT., PARTIAL MOT.
TO DISMISS & MOT. TO STRIKE
4:22-CV-01735-YGR

formal performance improvement plan or leave with severance. (*Id.* ¶ 50.) She chose to stay. (*Id.*) On September 11, 2020, Google terminated her, allegedly in retaliation for objecting to discriminatory hiring practices. (*Id.* ¶ 51.) Plaintiff Mayon also alleges Google terminated her for retaliatory reasons in 2021 after accusing her of misconduct. (*Id.* ¶¶ 53, 64–65.) Plaintiff Reid resigned in January 2020 after returning from medical leave, claiming a constructive discharge. (*Id.* ¶ 89.) Plaintiff Lewis remains employed at Google. (*Id.* ¶ 68.)

G.   **Plaintiffs Curley, Mayon, Lewis, and Reid Challenge Every Possible Employment Action on Behalf of Nearly All Black Employees at Google.**

Plaintiffs purport to represent a nationwide putative class of former and current Black employees in levels 2 through 8 from March 18, 2018 through the present.[5] (SAC ¶ 104.) Plaintiff Lewis and Plaintiff Curley also seek to represent putative classes of Black employees in California and New York State and City, respectively, for an unspecified period. (*Id.* ¶¶ 106, 108.) They allege that Google "engaged in a pattern or practice of discriminatory and retaliatory conduct" by: (1) "occupational segregation" and "racial steering"; (2) maintaining "discriminatory pay policies and practices"; (3) employing "discriminatory advancement policies and practices"; (4) "fail[ing] to recognize Black employees for timely promotions, pay adjustments, and title changes"; (5) maintaining "racially discriminatory performance assessment, management, and review policies and practices"; (6) relying on "race and negative stereotypes about the abilities and potential of Black employees in making employment decisions"; (7) denying "Black employees important resources, grooming, managerial and administrative support, special project work, training, and business opportunities"; (8) taking adverse actions, including "unwarranted performance management actions, reduction in job responsibilities, demotions, transfers, constructive discharges, reduction in pay, and discharges"; (9) creating a "hostile and offensive work environment"; (10) taking "adverse actions against . . . Black employees who report, reject, oppose,

---

[5]     The SAC offers no description of level 8 roles. Employees in level 8 roles are senior employees who are typically managers and hold Director-level titles.

Plaintiffs do not limit their employee classes to full-time employees, and it is unclear whether they intend to do so. (*Compare* ¶¶ 104, 106, 108 *with* ¶¶ 105, 107.) It makes little sense to treat full-time and part-time employees as comparators for purposes of alleged discriminatory pay and promotion claims.

DEF.'S NOTICE OF MOT., PARTIAL MOT.
TO DISMISS & MOT. TO STRIKE
4:22-CV-01735-YGR

or are otherwise unwilling to tolerate discrimination"; and (11) refusing to "undergo impartial, thorough investigations or take meaningful corrective action." (*Id.* ¶ 33(b)–(m).)

### H.    Plaintiffs Aweh and Thomas Unsuccessfully Applied for Positions at Google.

Plaintiff Amin Aweh is a resident of Georgia who applied to work at Google's Mental Health Initiative in Atlanta. (SAC ¶ 92; RJN Exh. C.) Google recruited her for the role, but rejected her application after four interviews and allegedly told her she did not have enough experience. (SAC ¶¶ 92–93.) Plaintiff Aweh claims she applied to "approximately ten other positions at Google relating to mental health and wellbeing, including jobs in or based out of California and New York," but did not get an interview. (*Id.* ¶ 94.) She offers no details about these roles. (*Id.*)

Google recruited Plaintiff Ebony Thomas for a recruiting role in 2021. (*Id.* ¶ 97.) After multiple interviews, "Google required her to complete a 'cultural fit' interview to assess her 'Googlyness'." (*Id.* ¶ 98.) She was then rejected. (*Id.* ¶ 99.) In her current role with a professional search firm, she alleges that she presented qualified Black candidates to Google, but none were hired. (*Id.* ¶ 102.) These candidates were either "recommended to be 'down leveled' and then rejected," or "subjected to 'cultural fit' interviews" allegedly on the basis of race. (*Id.*)

Plaintiffs Aweh and Thomas seek to represent a nationwide "hiring class" of all Black candidates who have ever applied for and were denied full-time employment with Google in the United States. (*Id.* ¶ 105.) Plaintiff Aweh also brings class claims on behalf of Black candidates who applied for and were denied full-time positions "in or based out of New York or California." (*Id.* ¶ 107.) Plaintiffs challenge "company-wide hiring policies and practices for the recruitment, screening, interviewing, evaluating, and hiring of candidates." (*Id.* ¶ 21.) The SAC specifically alleges that "Google disproportionately screens out and assigns lower scores[6] to Black applicants," subjects them to discriminatory "culture-fit" interviews to deny them employment, and that "Google interviewers 'hazed' and undermined Black candidates, regularly asking level-inappropriate questions . . . to intentionally tank their interview scores." (*Id.* ¶¶ 21, 41.)

---

[6]    A prior version of the complaint specified that Google allegedly assigned lower *interview* scores to Black applicants. (ECF 32 at ¶ 21.)

IV.    **LEGAL STANDARDS**

    A.    **The Court May Dispose of Class Allegations at the Pleading Stage.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court," using its "judicial experience and common sense," "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678–79. The complaint must contain more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement." *Id.* at 678 (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

A Court must first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then consider whether any remaining factual allegations "plausibly give rise to an entitlement to relief." *Id.* "The Court will not assume facts not alleged, nor will it draw unwarranted inferences." *Huddleston v. City & Cnty. of San Francisco*, No. 16-cv-01998-YGR, 2016 WL 4729175, at *3 (N.D. Cal. Sept. 12, 2016) (Gonzalez Rogers, J). If the facts alleged do not support a reasonable inference of liability stronger than a mere possibility, the claim must be dismissed. *Id.*

The policy behind the Supreme Court's decisions in *Twombly/Iqbal* is simple and warrants critical attention in the class action context. Before a case of this scope and size can proceed, plaintiffs must provide the necessary factual predicate to support their allegations. As the Court explained:

> It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through "careful case management," given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side. *See, e.g., Easterbrook, Discovery as Abuse*, 69 B.U.L. Rev. 635, 638 (1989) ("Judges can do little about impositional discovery when parties control the legal claims to be presented and conduct the discovery themselves"). . . . Probably, then, it is only by taking care to require allegations that reach the level suggesting [the factual predicate] that we can hope to avoid the potentially enormous expense of discovery . . . .

1    *Twombly*, 550 U.S. at 559 (citations omitted).[7]

2          *Iqbal*, *Twombly* and their progeny do not provide the only support for dismissing overly

3    broad class actions at the pleadings stage. Rule 12(f) permits courts to strike from a complaint "any

4    redundant, immaterial, or impertinent and scandalous matter." Fed. R.  Civ. P. 12(f). Courts may

5    strike class allegations before discovery "[w]here the complaint demonstrates . . . a class action

6    cannot be maintained on the facts alleged." *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 989–90

7    (N.D. Cal. 2009) (granting motions to dismiss and strike class allegations); *see also Sandoval v.*

8    *Ali*, 34 F. Supp. 3d 1031, 1043 (N.D. Cal. 2014) ("Class allegations can be stricken at the pleading

9    stage."); *Collins v. Gamestop Corp.*, No. C10-1210-TEH, 2010 WL 3077671, at *2 (N.D. Cal. Aug.

10   6, 2010) ("a court may grant a motion to strike class allegations if it is clear from the complaint that

11   the class claims cannot be maintained").

12          **B.      A Court May Dismiss New York Claims for Lack of Subject Matter**
                      **Jurisdiction under Rule 12(b)(1).**
13

14          Even a well-pled complaint cannot survive dismissal where subject matter jurisdiction is

15   lacking. Non-resident plaintiffs invoking the New York State Human Rights Law ("NYSHRL") or

16   New York City Human Rights Law ("NYCHRL") must demonstrate that the impact of the

17   discriminatory act was felt inside the bounds of the State or City. *Hoffman v. Parade Publ'ns*, 15

18   N.Y.3d 285, 292 (2010) (reinstating dismissal; plaintiffs was neither a resident of nor employed in

19   the State or City of New York, and did not allege discriminatory conduct had an impact in either

20   of those locations). These laws are explicitly designed to protect only those who "inhabit" or

21   "work" within the State or City of New York. *Id.* at 289–90. A plaintiff must affirmatively establish

22   subject matter jurisdiction to avoid dismissal. *Lambui v. Collins*, No. 14-CV-6457 (JS) (AYS),

23   2015 WL 5821589, at *3 (E.D.N.Y. Sept. 30, 2015). Courts routinely dismiss NYSHRL and

24   NYCHRL claims at the pleadings stage for lack of subject matter jurisdiction where, as here, the

25   impact of the alleged discrimination was felt outside New York. *See, e.g.*; *Pedroza v. Ralph Lauren*

---

26   [7]    *Accord Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459
27   U.S. 519, 528 n.17 (1983) ("Certainly in a case of this magnitude, a district court must retain the
     power to insist upon some specificity in pleading before allowing a potentially massive factual
28   controversy to proceed.").

*Corp.*, 19-cv-08639, 2020 WL 4273988, at *4 (S.D.N.Y. July 24, 2020); *McKinney v. Tanner*, 18-cv-10548, 2019 WL 3067116, at *3 (S.D.N.Y. July 12, 2019); *Lambui*, 2015 WL 5821589, at *3.

## V.  PLAINTIFFS' PROPOSED EMPLOYEE CLASSES, ON THEIR FACE, ARE FAR TOO BROAD TO PLAUSIBLY BE CERTIFIED.

### A.  The Proposed Employee Classes Are Facially Overbroad.

The sheer breadth of the proposed nationwide employee class should give this Court pause. Plaintiffs purport to bring claims of race discrimination and hostile work environment on behalf of all those "similarly situated," but the scope of the allegations and class definition do no such thing. (SAC ¶ 104.) Counts I and III assert claims on behalf of "[a]ll Black and/or African American United States Google employees who work or worked for Defendant as a Level 2 through Level 8 employee from March 18, 2018 through the present." (*Id.*) Plaintiffs have not offered facts that plausibly allege these claims can be adjudicated effectively on behalf of such a remarkably disparate group of individuals.

*First*, Plaintiffs assert that Google allegedly "assigns the few Black employees it hires into lower-paying, lower-prestige roles with fewer opportunities for advancement than Google's non-Black employees." (*Id.* ¶ 19.) However, whether each putative class member's initial leveling and job assignments were consistent with both their credentials and those of their similarly-situated non-Black peers is an individualized assessment that cannot be adjudicated with classwide proof. This single allegation raises questions as to: (1) whether the role was, in fact, "lower prestige" or one with fewer advancement opportunities; (2) the reasons for the assignment (Plaintiffs themselves offer at least three possibilities—placement at hire, elimination of an existing position, or job transfer); (3) the universe of proper comparators; (4) Google's defenses; and (5) whether the decision was motivated by race.

*Second*, class proceedings will be mired in conflict because the class includes individuals at different levels of the employment hierarchy with conflicting interests. *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003) (recognizing that employees "at different levels of [the] employment hierarchy," such as supervisors and "rank-and-file workers" can have conflicting interests); *Wagner v. Taylor*, 836 F.2d 578, 595 (D.C. Cir. 1987) (same). These are not hypothetical

conflicts. For example, Plaintiff Curley accuses her "revolving door" of managers of discrimination and harassment, but at least one of these managers is a putative class member herself. *See* section III.E, *supra*. Plaintiff Mayon's charge also attributes harassing and discriminatory conduct to putative class members:

| SAC Allegation | Allegation in Plaintiff Mayon's Charge |
| --- | --- |
| "Mayon was subjected to racist and offensive comments by her team's lead, including being told she was 'incompetent,' 'needs to go back to grammar school'. . . ." (SAC ¶ 56.) | "[W]hen working with [Employee A] (Black Male), Engineering Manager, [Employee A] accused me of being incompetent, making up words and needing to go back to grammar school." (RJN Exh. B at p. 1.) |
| "Mayon was told she is 'loud and every stereotype of a black woman.'" (SAC ¶ 56.) | "After returning to work from my medical leave of absence, I returned to find out that I was reporting to a different manager, [Employee B] (Black, Male), Program Manager. … [Employee B] stated that I was just loud and every stereotype of an African-American woman." (RJN Exh. B at p. 3.) |
| "During her PIP evaluations, Mayon's manager regularly screamed at and berated her. . . ." (SAC ¶ 64.) | "During my PIP evaluations, [HR] sat in my meetings with [Employee B] and witnessed him screaming at me despite me informing him that it made me uncomfortable due to one of my disabilities." (RJN Exh. B at p. 3.) |

Plaintiffs also accuse Google's Human Resources and Legal departments of discriminatory and retaliatory conduct, but the expansive class they seek to represent includes individuals from these groups as well. (SAC ¶ 31); *see also* section III.E, *supra*. The internal conflicts within the class preclude class treatment. *See Moussouris v. Microsoft Corp.*, No. C15-1483JLR, 2018 WL 3328418, at *29 (W.D. Wash. June 25, 2018), *aff'd*, 799 F. App'x 459 (9th Cir. 2019) (denying class certification where "a 'significant number of potential class members' here participated in the very system and the very decisions that are alleged to be discriminatory") (citations omitted); *Hughes v. WinCo Foods*, No. CV11-00644 JAK, 2012 WL 34483, at *7 (C.D. Cal. Jan. 4, 2012) (denying class certification; plaintiffs attributed unlawful acts to supervisors in proposed class).

**Third**, Plaintiffs' alleged individual experiences themselves suggest the question "Why was I harmed?" cannot be answered with classwide proof. By way of example:

- Plaintiffs Curley, Mayon, and Reid allege they were "under-leveled" at hire because of

race, yet Plaintiff Lewis (hired at a level 7) makes a very different complaint, alleging her "under-leveling" was the result of her initial role being eliminated, and later, her transfer to a different role. *See* section III.A, *supra*. Plaintiffs therefore have not been subject to the same allegedly discriminatory conduct.

- Plaintiffs allege that Black Googlers are more likely to receive a "Needs Improvement" performance rating, but Plaintiff Lewis "earned multiple awards for her performance" and an exceeds expectations performance rating. *See* section III.D, *supra*.

- Plaintiffs assert that Google systematically denies class members advancement and promotional opportunities, but Plaintiffs have not challenged any common policy or practice related to any specific advancement or promotional opportunities, other than alleging in broad terms that Google delays or denies these opportunities to putative class members. *See* section III.C, *supra*.

If the named Plaintiffs cannot plead a consistent common experience as to themselves across the multitude of employment actions challenged here, it is unlikely they can do so for the thousands of absent class members. *See Donaldson v. Microsoft Corp.*, 205 F.R.D. 558, 568 (W.D. Wash. 2001) (denying class certification where each plaintiff described successes and failures at work, positive and negative evaluations, good and bad managers, etc.); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (noting that dissimilarities within the proposed class have the potential to impede the generation of common answers).

    *Fourth*, Plaintiff's claims of intentional discrimination and harassment raise inherently fact-based issues and require individualized inquiries into whether race motivated, or was the but-for cause, of the challenged conduct. *See, e.g., Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (to assert a Section 1981 claim, plaintiffs "must initially plead and ultimately prove that, but for race, [they] would not have suffered the loss of a legally protected right"); *Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (Title VII harassment requires plaintiffs to establish that conduct was subjectively unwelcome and occurred because of sex); *Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977) (analyzing Title VII discrimination claims and noting a showing of "discriminatory motive is critical").

1    Here, the SAC's allegations attribute discriminatory or harassing conduct to individual

2    managers. *See* sections III.C, III.D, III.E, *supra*. Even accepting these allegations as true for

3    purposes of this Motion, the personal experiences of four individuals in particular roles in particular

4    locations and the actions of their particular managers should not be extrapolated to a class of

5    thousands across nearly every role and location in the country. *Cf. Bennett v. Nucor Corp.*, 656

6    F.3d 802, 816 (8th Cir. 2011) (class certification denied; plaintiffs' evidence of discrimination arose

7    chiefly among workers in only one department of large plant, "so their observations do little to

8    advance a claim of commonality across the entire plant"); *Chen-Oster v. Goldman, Sachs & Co.*,

9    325 F.R.D. 55, 83 (S.D.N.Y. 2018) (denying certification of pattern-or-practice claim alleging

10    sexually biased workplace culture; court must conduct "individualized inquiries into each incident

11    of sexual assault, sexual harassment, stereotyping, impunity for male misconduct, and retaliation,

12    to properly consider [employer's] defenses," and individualized issues would predominate).[8]

13    The pleadings demonstrate this case is a series of individual claims. Further discovery will

14    only compound, not eliminate, these fatal defects.

15        **B.**    **The SAC Demonstrates on its Face that Plaintiffs Cannot Satisfy Rule 23's**
             **Requirements Because Individual Questions Predominate.**

16

17    Plaintiffs devote just one-half page of their 187 paragraph SAC to allege, in passing, they

18    can satisfy the requirements of Rule 23. (SAC ¶¶ 109–114.) They cannot. To maintain a class

19    action, a plaintiff must satisfy the Rule 23(a) requirements of numerosity, commonality, typicality,

20    and adequate representation and at least one 23(b) requirement. Fed. R. Civ. P. 23. Critically, a

21    class action cannot proceed unless there is a question that is capable of classwide resolution. This

22    "means that determination of its truth or falsity will resolve an issue that is central to the validity

23    of each one of the claims in *one stroke*." *Dukes*, 564 U.S. at 350 (emphasis added). What matters

---

24    [8]    Google assumes that Plaintiffs are not pursuing *class* claims for retaliation, despite

25    allegations that "Google engaged in a pattern or practice of discriminatory and *retaliatory* conduct
      toward its Black employees." (SAC ¶ 33.) If they intend to do so, they have not alleged they can

26    establish that claim on a classwide basis for the same reasons discussed above. *Cf. Elkins v. Am.
      Showa Inc.*, 219 F.R.D. 414, 425 (S.D. Ohio 2002) (denying certification of classwide retaliation

27    claims; "Defendant is entitled to establish as to each plaintiff a legitimate reason for any adverse
      action taken against that plaintiff, and each plaintiff must then have the opportunity to establish that

28    the reason offered is pretextual.").

1   to class certification "is not the raising of common 'questions'—even in droves—but rather, the

2   capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the

3   litigation." *Id.* (citations omitted) (emphasis in original). If a complaint fails to plausibly allege the

4   necessary elements of Rule 23, dismissal or striking of class claims is warranted.

5        *Kevari v. Scottrade, Inc.*, No. CV 18-819-JFW(GJSx), 2018 WL 6136822 (C.D. Cal. Aug.

6   31, 2018) is instructive. There, plaintiff asserted pattern-or-practice claims of age and gender-based

7   discrimination on behalf of a class of female employees and employees over 40. *Id.* at *1, 10. Like

8   Plaintiffs here, the *Kevari* plaintiff challenged an extremely wide variety of employment actions,

9   including "decisions regarding compensation, assignment, selection, performance evaluation,

10  promotion, demotion, discipline, complaints, resignation, and termination, among others." *Id.* at

11  *7. The class spanned the entire nation, as does the employee class here, but the positions at issue

12  were far narrower and included managers and branch managers only. *Id.* at *10.

13       The court granted defendants' pre-discovery motion to strike the class claims pursuant to

14  Rule 12(f), finding that plaintiff failed to adequately plead commonality and predominance. *Id.* at

15  *7–8. The court first noted, "Commonality requires that class members suffer the same injury;

16  merely suffering violation of the same law is insufficient," while predominance tests "whether

17  proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* (citations

18  omitted). Plaintiff did not adequately allege either because the complaint raised an impermissible

19  number of issues requiring separate adjudication of each class member's individual claim and

20  related defenses. *Id.*

21       It is precisely so here. Plaintiffs allege, among other issues, that "Google takes adverse

22  actions against its Black employees, such as unwarranted performance management actions,

23  reduction in job responsibilities, demotions, transfers, constructive discharges, reduction in pay,

24  and discharges on accounts of their race and/or their rejections of or unwillingness to tolerate a

25  racially discriminatory or hostile work environment." (SAC ¶ 33(h).) This is exactly the

26  "hodgepodge of different alleged policies and practices that [Plaintiff says] contribute to

27  discrimination," yet lack "a common contention the truth or falsity of which will resolve the validity

28  of the class claims 'in one stroke'." *Kevari*, 2018 WL 6136822, at *7 (quoting *Ladik v. Wal-Mart*

*Stores, Inc.*, 291 F.R.D. 263, 272 (W.D. Wis. 2013)). Even if Plaintiffs alleged common *questions* applicable to all members of this nationwide employee class, thousands of mini-trials would still be necessary to *answer* those questions, as the *Kevari* court explained:

> Even assuming arguendo that the eight issues apply to all class members, separate adjudication would be required for a variety of issues, including, but not limited to, a determination of the appropriateness of Defendants' investigation of complaints of discrimination and the resolution of those complaints; the business reasons for any demotions and/or job reassignments, retention, or termination of employees which undoubtedly would include individual employees' performance; the appropriateness of male branch managers' conduct; the merit to any criticism of managers and/or lack thereof; and the reasons for class members' resignations or terminations.

*Id.* at *8. The same logic applies to the other class claims the SAC asserts, which challenge initial job and leveling assignments, pay, hostile work environment, promotions, "grooming" policies, denial of "special project work" and training, etc. (SAC ¶ 33(c), (d), (f), (k), (j).)

Critically, these challenged actions also raise as many individualized defenses as they do individualized questions. For example, how a Black employee was leveled compared to a non-Black peer may turn on numerous individual facts specific to that leveling decision, like the number of advanced degrees or prior relevant work experience. And whether the denial of a promotion was race-based may depend in part on the candidate's relevant experience and readiness for the promotion, or whether the decisionmaker or successful candidate was also a member of the putative class. Importantly, Google is entitled to assert such fact-based defenses with respect to *every single putative class member*. *See Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1, 34 (2014) ("[c]lass actions are provided only as a means to enforce substantive law," and, as precedent "make[s] clear . . . may not foreclose the litigation of relevant affirmative defenses, even when these defenses turn on individual questions."). There is no way to adjudicate these individualized defenses effectively across the entire nationwide class. *See Kevari*, 2018 WL 6136822, at *8 (Rule 23(b)(3)'s predominance requirement is not satisfied if main issues in case require separate adjudication of each class member's individual claim or defense) (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190–93 (9th Cir. 2001)); *cf. Puffer v. Allstate Ins. Co.*, 255 F.R.D. 450, 471 (N.D.

Ill. 2009), *aff'd*, 675 F.3d 709 (7th Cir. 2012) (denying certification in EPA and Title VII case where, *inter alia*, defenses would vary between class members).

Common questions cannot predominate over individual issues in class actions. Multiple courts have dismissed or struck class allegations where the lack of commonality or predominance was evident from the face of the pleading, as it is here. *See, e.g., King v. UA Local 91*, No. 2:19-CV-01115-KOB, 2020 WL 4003019, at *10 (N.D. Ala. July 15, 2020) (granting 12(b)(6) motion to dismiss class disparate treatment and disparate impact claims because, *inter alia*, "the sheer variety and inherently discretionary nature of these ostensible practices underscores the lack of commonality" among "hundreds" of challenged decisions); *Harris v. City of Chicago*, Nos. 96 CV 3406, 96 CV 7526, 1998 WL 59873, at *7 (N.D. Ill. Feb. 9, 1998) (granting 12(b)(6) motion to dismiss race discrimination class claims for failure to satisfy Rule 23's requirements; complaint challenged a "wide variety of discriminatory practices raised by many different types of . . . employees" whose only shared characteristics were race and common employer).[9]

The proposed California and New York employee classes are equally overbroad for all the reasons discussed above. Though their geographic area is more limited, the population of employees in level 2 through level 8 positions is substantial and as varied in position, type of work performed, number of individual managers, and areas of the business as the nationwide class. (*See* SAC ¶ 10 (alleging Google employs "over 21,000 employees" in just one of its California offices); *Id.* ¶ 158 (alleging Google employs "approximately 12,000 people" in New York).) The class conflicts and need for individualized inquiries inherent in the nationwide employee class are no less applicable when the class is limited to either one of these states.

---

[9]    *See also Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 675 (D. Kan. 2004) (granting 12(f) motion to strike class allegations of racial discrimination, and noting that simply alleging "pattern or practice" discrimination is insufficient to satisfy Rule 23's commonality requirement after *Gen. Tel. Co. of the Sw. v. Falcon*; "Commonality is lacking where the plaintiff seeks to represent a wide range of jobs or positions that are spread out over a large geographic area," and myriad claims of discrimination in promotions, pay, and hostile work environment involve "countless different supervisors, positions, qualifications, and experience," "different pay scales, positions, and locality pay differences," and "different environments and conditions" sufficient to defeat commonality).

## VI.   PLAINTIFFS' TITLE VII AND SECTION 1981 HIRING CLASS IS SIMILARLY OVERBROAD.[10]

Plaintiffs Aweh and Thomas assert claims for race discrimination under Title VII and Section 1981 on behalf of "[a]ll Black and/or African Americans who applied to and were denied full-time employment with Google in the United States." (SAC ¶ 105.) The scope of this proposed class is unmanageable on its face, as Google receives, quite literally, millions of applications each year. Like the facially-overbroad employee classes, the nationwide hiring class ignores the multitude of differences among class members that will make certification impracticable, including the applicants' qualifications, the positions to which they applied, the recruiters or hiring managers involved in the process, and whether the posting was even ultimately filled. Furthermore, this class is facially overbroad for at least three additional reasons.

*First*, Plaintiffs repeatedly allege that Google discriminates against *qualified* Black candidates, (*see, e.g.*, SAC ¶¶ 4, 21, 33(a), 91–93, 97–99, 102; RJN Exh. C), yet the proposed hiring class is not limited to minimally-qualified applicants. Instead, it includes every applicant for every role, nationwide, regardless of their qualifications. The Court should strike this overbroad class definition as inconsistent with the remainder of the pleadings. *See Kevari*, 2018 WL 6136822, at *10 (granting motion to strike class definition encompassing all female managers and managers over 40 as inconsistent with allegations alternatively describing class as female managers and managers over 40 *who had been replaced*); *Sandoval*, 34 F. Supp. 3d at 1043–44 (striking class allegation where proposed class was too broad and inconsistent with plaintiffs' theory of case).

**Second**, Plaintiffs have not pled particularized facts consistent with discrimination in recruiting or initial application screening. Aside from general allegations that Google does not hire Black applicants, the only specific allegations of potential discriminatory hiring center on interviewing and post-interview job selection. (*See, e.g.*, SAC ¶ 41 ("Google interviewers 'hazed' and undermined Black candidates, regularly asking level-inappropriate questions of Black

---

[10]   The proposed California and New York classes are deficient in other respects, *see* section VIII, *infra*, but are also facially overbroad for all the same reasons addressed in this section VI.

1    candidates to intentionally tank their interview scores.")); section III.H, *supra*.

2        Additionally, the SAC does not allege how Google discriminates in recruiting. Indeed,

3    every single named Plaintiff actually alleges Google actively recruited them. *See* section III.A,

4    III.H, *supra*. Plaintiff Curley further alleges that Google made "concerted" efforts to recruit Black

5    employees, she was hired specifically "to recruit Black students," and she succeeded in doing so.

6    (SAC ¶¶ 20, 39–40.) These allegations are inconsistent with and undermine Plaintiffs' class claims

7    that Google discriminates at every step in the hiring process. *See Somers v. Apple, Inc*., 729 F.3d

8    953, 964 (9th Cir. 2013) (granting 12(b)(6) motion to dismiss class claims as implausible in light

9    of other facts alleged in the complaint).

10       ***Third***, there are no allegations in the SAC identifying when applicants specify their race in

11   the hiring process or suggesting that initial screeners have access to this information. Plaintiffs

12   simply take as axiomatic that initial screeners both know the applicant's race and discriminate

13   against them on that basis. While a Court must draw all *reasonable* inferences in favor of a non-

14   moving party, it may not assume facts not alleged or draw inferences like the one Plaintiffs attempt

15   here. *See Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*, No. 19-CV-6034 (JPO), 2019 WL

16   6916099, at \*5–6 (S.D.N.Y. Dec. 19, 2019) (granting motion to dismiss failure to hire claims;

17   rejected applicant failed to allege facts suggesting defendant was aware of her protected

18   characteristic); *accord Huddleston*, 2016 WL 4729175, at \*4 (granting motion to dismiss Title VII

19   discrimination claim; plaintiff alleged she was forced into retirement because of race but failed to

20   allege facts giving rise to inference of discriminatory or retaliatory intent).

21   **VII.   PLAINTIFF CURLEY FAILS TO STATE INDIVIDUAL OR CLASS CLAIMS**

22           **UNDER NEW YORK STATE AND CITY LAW.**

23       Plaintiff Curley asserts claims for discrimination and hostile work environment under the

24   NYSHRL and the NYCHRL on behalf of herself and a class of "[a]ll Black and/or African

25   American Google employees in or based out of New York who work or worked for Defendant as

26   a Level 2 through Level 8 employee." (SAC ¶ 106 and Counts X, XIII.) She also asserts individual

27   claims for sex and sexual orientation discrimination, (Counts XI and XIV), and retaliation, (Counts

28   XII and XV), under those laws. Much of the challenged conduct is time-barred based on her

1  allegations and her intentional failure to plead relevant dates.

2      The statute of limitations to assert NYSHRL and NYCHRL race discrimination and

3  harassment claims is three years. *Daniels v. City of New York*, No. 17 CIV. 9960 (LGS), 2019 WL

4  251511, at *3 (S.D.N.Y. Jan. 17, 2019) (citing N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8–

5  502(d)). Plaintiff Curley claims she is relying on classwide tolling in the *Haggan et al. v. Google

6  LLC* matter, which tolled the limitations period for NYSHRL and NYCHRL claims as of October

7  15, 2020 for putative class members in that action. (SAC ¶ 160.) However, even if tolling permits

8  her to assert claims dating back to October 2017, any claim based on her initial leveling in 2014 is

9  clearly time-barred. (*Id.* ¶¶ 38–39.) *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 239

10 (2d Cir. 2007) (NYSHRL and NYCHRL claims based on discrete acts occurring more than three

11 years prior to filing of complaint were time-barred); *Daniels*, 2019 WL 251511, at *3 (same).

12     Additionally, it is not enough that Plaintiff Curley's remaining allegations *could* have

13 occurred within the limitations period. A claim is implausible and deficient if it omits the specific

14 dates of the alleged acts, thereby forestalling a determination of timeliness. *See Mackenzie

15 Architects, PC v. VLG Real Estate Dev., LLC*, No. 1:15-CV-1105, 2016 WL 4703736, at *8

16 (N.D.N.Y. Sept. 8, 2016) (plaintiff failed to allege dates when the defendants' obligations arose or

17 dates when defendants refused to pay, thereby failing to establish action had been timely filed).[11]

18 Intentional omission of relevant dates does not convert a time-barred claim into a timely one. *See

19 Roberts v. Juliano*, No. 9:18-CV-1434, 2020 WL 4739619, at *5 (N.D.N.Y. July 20, 2020), *report

20 and recommendation adopted*, 2020 WL 4732100 (N.D.N.Y. Aug. 14, 2020).

21     Plaintiff Curley has not alleged any *timely* conduct occurred in New York (aside from

22 alleged pay discrimination, which is deficient for other reasons discussed below). To establish

23 subject matter jurisdiction, she must plead she experienced the impact of the alleged discriminatory

24 conduct in New York. *See* section IV.B, *supra*. She alleges she left New York in December 2018.

25 (SAC ¶ 38.) Any conduct that post-dates her departure—including all acts of sex- or sexual

---

[11]    *See also Eng v. New York City Police Dep't*, No. 95 CIV. 5845, 1996 WL 521421, at *6 (S.D.N.Y. Sept. 12, 1996) (plaintiff's failure "to specify dates on which the alleged discrimination occurred, let alone whether they occurred within the [limitations] period" rendered the court "unable to determine the timeliness of the claims under Title VII").

orientation-based harassment and discrimination supporting Counts XI and XIV—is not actionable under New York law. *See Pedroza*, 2020 WL 4273988, at *4 (dismissing NYSHRL and NYCHRL claims asserted by New Jersey-based employee); *Hoffman*, 15 N.Y.3d at 292 (reinstating dismissal of plaintiff's NYSHRL and NYCHRL discriminatory termination claims where conduct occurred and impacted the plaintiff in Georgia). There are no allegations that the undated challenged conduct occurred in New York, and the Court should not infer jurisdiction where it is not affirmatively pled. *Lambui*, 2015 WL 5821589, at *3.

Finally, Plaintiff Curley's New York pay discrimination claims are insufficiently pled. She does not assert Google actually paid anyone more for the work she performed, only that Google denied her the pay and level she believes was commensurate with her experience. (SAC ¶ 39.)[12] Nor does she point to an alleged comparator who performed similar work at a higher level and therefore had greater earning potential. Plaintiff Curley does not allege anyone who fits this description actually exists. Her claims ultimately rest on conclusions alone. *See Cruz v. SEIU Loc. 32BJ*, No. 19 CIV. 11836, 2021 WL 3604661, at *6 (S.D.N.Y. Aug. 12, 2021) (granting 12(b)(6) motion to dismiss NYCHRL and NYSHRL discrimination claims; factual allegations devoid of specific instances of less favorable treatment were "too general and conclusory").; *Henderson v. Physician Affiliate Grp. of New York P.C.*, No. 18-CV-3430 (JMF), 2019 WL 3778504, at *5 (S.D.N.Y. Aug. 12, 2019) (granting 12(b)(6) motion to dismiss NYSHRL and NYCHRL discrimination claims where complaint "fails to identify *any* similarly situated comparator, alleging only 'upon information and belief' that the 'other' physicians in the Obstetrics and Gynecology Department—'none of whom were African-American or disabled, and most of whom were younger'—were treated differently").

These pleading deficiencies are fatal to both Plaintiff Curley's individual claims and the class claims she attempts to assert under New York law. As the sole representative for the New York employee class, Plaintiff Curley must establish she has justiciable claims before she can represent absent class members. If she cannot, her class claims should be dismissed. *See Russo v.*

---

[12] She does not even allege a single non-Black employee performing similar work exists; her pleading suggests that all of Curley's peers were Black women like herself. (SAC ¶ 43.)

1    *City of New York*, No. 02 CIV. 369 (TPG), 2003 WL 1571707, at *1–2 (S.D.N.Y. Mar. 26, 2003)

2    (dismissing class claims; where individual plaintiff lacks a valid cause of action against defendant,

3    "obviously he cannot act as a class representative in class claims").[13]

4    **VIII.   PLAINTIFF AWEH'S INDIVIDUAL AND CLASS STATE LAW HIRING
         CLAIMS SHOULD BE DISMISSED.**

5

6         Plaintiff Aweh claims she can represent hundreds of thousands, if not millions, of applicants

7    for jobs in California and New York. (SAC ¶ 94.) A plaintiff asserting failure to hire claims under

8    New York law must plead facts sufficient to support an inference they have been treated less well

9    at least in part *because of* a protected trait. A court may draw that inference where a plaintiff pleads

10   that the position remained open after she applied or that individuals outside her class were hired or

11   treated better. *See Okocha v. City of N.Y.*, 122 A.D.3d 550, 998 N.Y.S.2d 21, 22 (1st Dep't 2014)

12   (NYCHRL failure-to-hire claim is not viable where "the [] positions were never filled, as there was

13   no longer a need for the positions"); *accord Henderson*, 2019 WL 3778504, at *4 (plaintiff may

14   support inference of discrimination by demonstrating similarly situated employees outside

15   protected class were treated more favorably).

16        Plaintiff Aweh has done neither, nor does she plead she felt the impact of the alleged

17   discrimination in New York. Instead, she pleads only that the jobs she sought were related to mental

18   health and she was qualified; *ergo*, the reason she was denied those jobs must be because of race.

19   (SAC ¶¶ 91–94.) Such bare-bones allegations are legally deficient. *See Scalercio-Isenberg*, 2019

20   WL 6916099, at *6 (granting 12(b)(6) motion to dismiss NYSHRL and NYCHRL failure to hire

21   ---
     [13]    *See also Resendiz v. Exxon Mobil Corp.*, No. 5:20-CV-00692-M, 2021 WL 4444718, at *6

22   (E.D.N.C. Sept. 28, 2021) (dismissing Section 1981 class claims in light of named plaintiff's
     inability to assert viable individual claims); *Cobb v. Arc Energy Servs., Inc*., No. 0:21-CV-01913-

23   JMC, 2022 WL 970093, at *6 n.2 (D.S.C. Mar. 31, 2022) (same); *Kevari*, 2018 WL 6136822, at
     *3–4 (both individual and class claims under Title VII and ADEA dismissed where only

24   representative plaintiff failed to exhaust administrative remedies); *Jackson v. Caribbean Cruise
     Line, Inc.*, 14-cv-02485, 2017 WL 9482238 (E.D.N.Y. Jan. 21, 2017) (dismissing class claims for

25   lack of jurisdiction where named plaintiff dismissed individual claims with prejudice pre-
     certification); *Holloway v. Best Buy Co.*, No. C 05-5056 PJH, 2009 WL 1533668, at *11 (N.D. Cal.

26   May 28, 2009) (granting 12(c) motion for judgment on the pleadings as to untimely initial job
     assignment claims; "Here, defendants are correct in asserting that none of the named class members

27   has standing to represent unnamed class members with Title VII or FEHA 'initial job assignment'
     claims, as those claims are time-barred as to all named plaintiffs.")

28

DEF.'S NOTICE OF MOT., PARTIAL MOT.
TO DISMISS & MOT. TO STRIKE
4:22-CV-01735-YGR

claims; plaintiff "has not pleaded any facts that permit an inference that she was treated less well than other applicants to Morgan Stanley, including other unsuccessful Morgan Stanley applicants"); *Beverley v. N.Y. City Health & Hosps. Corp.*, No. 18 CV 8486 (ER), 2020 WL 1503421, at *5–6 (S.D.N.Y. Mar. 30, 2020) (dismissing NYCHRL gender discrimination claim where complaint "provide[d] no details like when [males] were hired, for what roles, and with what qualifications"), *vacated and remanded on other grounds*, 844 F. App'x 439 (2d Cir. 2021).

Her claims fare no better under California law, which similarly requires plaintiffs to plead facts suggesting a protected characteristic actually played some role in the challenged decision. *See Ali v. Intel Corp.*, No. 18-CV-03981-LHK, 2019 WL 1369926, at *4 (N.D. Cal. Mar. 26, 2019) (granting 12(b)(6) motion to dismiss FEHA and Title VII failure to hire claims where plaintiff alleged in conclusory fashion he was not hired due to national origin discrimination), *aff'd*, 797 F. App'x 325 (9th Cir. 2020); *Rhodes v. Adams & Assocs., Inc.*, No. 2:16-CV-00494-TLN-KJN, 2018 WL 3913806, at *3 (E.D. Cal. Aug. 14, 2018) (dismissing FEHA failure to hire claim where plaintiff failed to allege the position was filled by someone outside his protected class with equal or lesser experience or continued to consider other applicants after rejecting plaintiff's application), *aff'd*, 817 F. App'x 508 (9th Cir. 2020).

Plaintiff Aweh's FEHA claims fail for the additional reason that she has not pled a sufficient California connection to invoke state law protections. "FEHA does not apply uniformly 'to all California-based employers regardless of where the aggrieved employee resides and regardless of where the tortious conduct took place.'" *Noble v. Dorcy Inc.*, No. 2:19-CV-08646-ODW-JPRX, 2020 WL 4227295, at *3 (C.D. Cal. July 23, 2020) (citing *Campbell v. ARCO Marine, Inc.*, 42 Cal. App. 4th 1850, 1859 (1996)). A plaintiff must plead they were either employed in California or the alleged conduct took place within the state. *Id.* Allegations that California-based employees "participated in or ratified" conduct will not suffice, and the complaint must provide particulars "so that the Court can determine if these actions are sufficient to state a claim under FEHA." *Dodd-Owens v. Kyphon, Inc.*, No. C 06-3988, 2007 WL 420191, at *3 (N.D. Cal. Feb. 5, 2007).

Plaintiff Aweh is a Georgia resident. (*See* RJN Exh. C.) She does not allege that anyone in California rejected her application, ratified the rejection, or otherwise participated in any decision

regarding her candidacy. Her allegation that Google's "racially biased corporate culture and discriminatory practices emanate from . . . its California headquarters," does not save her claim, as general allegations of this nature are insufficient to withstand dismissal. (SAC ¶ 19.) *See Gonsalves v. Infosys Techs., LTD.*, No. C 09-04112 MHP, 2010 WL 1854146, at *6 (N.D. Cal. May 6, 2010) (granting motion to dismiss; plaintiff's allegation that California-based personnel "supported, participated in, and ratified [the] illegally discriminatory and retaliatory decision" was insufficient to invoke protection under FEHA).

For these reasons, the Court should dismiss Plaintiff Aweh's individual failure to hire claims under FEHA, the NYSHRL and the NYCHRL. The Court should also dismiss any class claims on behalf of a California or New York hiring class for the reasons stated above in section VII, *supra*. *See also Dodd-Owens*, 2007 WL 420191, at *3 ("Obviously, Plaintiffs may not bring FEHA claims on behalf of the class if they cannot state a claim under FEHA themselves.").

## IX.   THE COURT SHOULD STRIKE ALL CLASS DEFINITIONS AS TEMPORALLY OVERBROAD.

Plaintiffs purport to bring Section 1981 and Title VII claims on behalf of a nationwide class of employees "from March 18, 2018 through the present." (SAC ¶ 104, Counts I and III.) The temporal scope of the class is overbroad as to Title VII claims. Named plaintiffs "may represent only those similarly situated individuals who either have filed timely charges with the EEOC or who could have filed a timely charge on the same date as the named plaintiff." *Enoh v. Hewlett Packard Enter. Co.*, No. 17-CV-04212-BLF, 2018 WL 3377547, at *14 (N.D. Cal. July 11, 2018). Plaintiff Lewis is the only employee Plaintiff asserting Title VII class claims, and her administrative charge is dated July 1, 2022. (RJN Exh. D.) Therefore, she may only represent a class of employees with timely claims as of September 2021—not March 2018. As pled, the nationwide class includes those with untimely Title VII claims and should be stricken.[14] *Enoh*,  2018 WL 3377547, at *14; *Ramirez v. Baxter Credit Union*, No. 16-cv-03765-SI, 2017 WL 1064991, at *7–8 (N.D. Cal. Mar. 21, 2017) (granting motion to strike temporally overbroad class).

---

[14]   For the same reason, claims based on distinct acts of alleged discrimination pre-dating Plaintiff Lewis's 300-day period to file a charge with the EEOC are time-barred.

The hiring classes and state employee classes suffer from the same defect. Those class definitions include no temporal limitation, and necessarily include individuals with time-barred claims. They should be stricken. *See Kevari*, 2018 WL 6136822, at *10 (class definition that failed to identify time period at issue or purported to encompass all employees "for an indeterminate amount of time" was not "sufficiently 'precise, objective, and presently ascertainable'").

## X.   <u>CONCLUSION</u>

Google is in no way attempting to deny Plaintiffs their ability to pursue individual claims that are sufficiently pled. But that is what this case is—individual claims, based on individual allegations with no facts that would allow the Court to extrapolate the Plaintiffs' experiences to millions of individuals who applied to, were hired by, or who worked for Google.

Plaintiffs have not alleged facts suggesting that a viable Rule 23 motion for class certification is possible if this case were to proceed as pled. Google should not be required to defend every single employment decision made by thousands of supervisors, recruiters, screeners, and hiring managers over the last half-decade based on allegations of individualized harm. The class conflicts are already apparent, and it is clear from the Plaintiffs' own experiences and the breadth of claims asserted that thousands of mini-trials would be required to determine whether race played any role in any decision as to each putative class member. No amount of discovery can cure these defects, nor is it warranted where there is no class representative with justiciable claims, as is the case for the New York employee and state-specific hiring classes.

Accordingly, Google respectfully requests an order dismissing or striking the employee and hiring class claims; striking the class definitions as temporally overbroad or inconsistent with the pleadings; dismissing Plaintiff Curley's NYSHRL and NYCHRL individual and class claims; and dismissing Plaintiff Aweh's FEHA and NYCHRL individual and class claims.

DATED:  October 14, 2022

PAUL HASTINGS LLP

By:   */s/* CARSON H. SULLIVAN
                    CARSON H. SULLIVAN

Attorneys for Defendant
Google LLC

DEF.'S NOTICE OF MOT., PARTIAL MOT.
TO DISMISS & MOT. TO STRIKE
4:22-CV-01735-YGR