Ben Crump (pro hac vice)
Nabeha Shaer (pro hac vice)
BEN CRUMP LAW, PLLC
122 S. Calhoun St.
Tallahassee, FL 32301
Telephone:     (800) 713-1222
court@bencrump.com

Linda D. Friedman (pro hac vice)
Suzanne E. Bish (pro hac vice)
George Robot (pro hac vice)
Mark S. Current (pro hac vice)
STOWELL & FRIEDMAN LTD.
303 W. Madison St., Suite 2600
Chicago, Illinois 60606
Telephone:     (312) 431-0888
sbish@sfltd.com

Sam Sani (SBN 2733993)
SANI LAW, APC
15720 Ventura Blvd., Suite 405
Encino, CA 91436
Telephone:     (310) 935-0405
ssani@sanilawfirm.com
*Attorneys for Plaintiffs and the Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| APRIL CURLEY, DESIREE MAYON, RONIKA LEWIS, RAYNA REID, ANIM AWEH, and EBONY THOMAS, individually and behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Defendant. | CASE NO: 4:22-cv-01735-YGR<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS AND STRIKE** |

# TABLE OF CONTENTS

                                                                                          **Page**

I.    Introduction...........................................................................................................1

II.   Issues to be Decided.............................................................................................2

III.  Key Factual Allegations.......................................................................................2

IV.   Legal Standards....................................................................................................4

   A. Motions to Strike Class Allegations Are Disfavored and Must Be Denied
      Where No Conspicuous Pleading Defect is Apparent From the Face of the
      Pleadings ........................................................................................................4

   B. Rule 12(b) (6) Does Not Permit Dismissal of Class Allegations ...............................5

   C. Rule 8 Provides for "Liberal Treatment" of a Complaint at the Pleading Stage .......6

   D. The Court Has Subject Matter Jurisdiction Over New York Claims of Plaintiffs
      and Class Members Who Worked for or Applied to Google in New York...............6

V.    Google Has Failed To And Cannot Identify Any Conspicuous Pleading Defect
     Precluding Certification Of An Employee Class As a Matter Of Law.....................7

   A. Google Ignores Plaintiffs' Disparate Impact Claims, Which Are Proved Through
      Common Statistical and Expert Evidence and Are Thus Routinely Certified...........7

   B. Plaintiffs' Proposed Class Definition Provides No Basis for Striking the Class........8

   C. Google Fails to and Cannot Show Any Conspicuous Pleading Defect with
      Respect to Plaintiffs' Challenges to Google's Job Leveling, Job Assignment,
      and Performance Review Practices..........................................................................9

   D. Google Fails to Show that Plaintiffs' Claims Are "Mired in Conflict" ..................12

   E. Google Fails to Show that Discrimination and Hostile Work Environment
      Claims Are "Inherently Individualized" as a Matter of Law...................................13

   F. Google Fails to Show that Plaintiffs Are Incapable of Demonstrating
      Predominance..........................................................................................................16

     1. Google's Extensive Reliance on *Kevari* Is Fundamentally Flawed.....................16

     2. Plaintiffs Can Demonstrate Commonality and Predominance ...........................17

     3. Predominance Is Not Required for Plaintiffs' Rule 23(b)(2) and Rule
        23(c)(4) Classes ...............................................................................................19

VI.   Google Has Failed To Identify Any Conspicuous Pleading Defect
     Precluding Certification of a Hiring Class...............................................................19

VII.  Google Has Not Identified Any Basis for Dismissing Plaintiff Curley's
     New York Claims ...................................................................................................21

VIII. Aweh States Individual and Class Hiring Claims Based on Google's
Rejecting Her Applications in New York and California ........................................23

IX.  The Court Should Not Alter the Class's Temporal Scope ........................................24

X.   To the Extent the Court Grants the Motion in Any Part, Plaintiffs Should be
Allowed Leave to Amend ...........................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Ali v. Amazon.com, Inc.*, No. 18-CV-04086, 2018 WL 11467270 (N.D. Cal. Aug. 22, 2018) .... 30

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997).................................................................. 24

*Anderson v. HotelsAB, LLC*, No. 15-cv-712, 2015 WL 5008771 (S.D.N.Y. Aug. 24, 2015)...... 30

*Asarco, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999 (9th Cir. 2014) ......................................... 27

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 7

*Austin v. Univ. of Oregon*, 925 F.3d 1133 (9th Cir. 2019) ..................................................... 8, 29

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................... 7

*Bennett v. Nucor Corp.*, 656 F.3d 802 (8th Cir. 2011) ............................................................... 18

*Brand v. Comcast Corp.*, 302 F.R.D. 201 (N.D. Ill. 2014) ......................................................... 19

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ................................ 2, 11, 14, 26

*Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015)..................................................... 14, 18, 19

*Buchanan v. Tata Consultancy Servs., Ltd.*, No. 15-cv-01696, 2018 WL 3537083 (N.D. Cal. July
     23, 2018) ............................................................................................................................... 19

*Cahill v. Nike, Inc.*, No. 3:18-cv-1477, 2019 WL 2179575 (D. Or. Feb. 26, 2019)............. 5, 7, 14

*Chau v. Donovan*, 357 F. Supp. 3d 276 (S.D.N.Y. 2019) .............................................................. 9

*Chin v. CH2M Hill Cos.*, No. 12-cv-4010, 2012 WL 4473293 (S.D.N.Y. Sep. 28, 2012)............. 8

*Clerkin v. MyLife.com*, No. 11-cv-527, 2011 WL 3809912 (N.D. Cal. Aug. 29, 2011) ............... 7

*Collins v. Gamestop Corp.*, No. 10-cv-1210, 2010 WL 3077671 (N.D. Cal. Aug. 6, 2010) ......... 6

*Cruz v. SEIU Loc. 32BJ*, No. 19-cv-11836, 2021 WL 3604661 (S.D.N.Y. Aug. 12, 2021) ........ 29

*Ellis v. Costco Wholesale Corp.*, No. 3:04-cv-3341 (N.D. Cal. 2012) ............................ 11, 14, 24

*Ellis v. Google, LLC*, No. CGC-17-561299 (Cal. Sup. Ct).......................................... 2, 11, 12, 20

*Enoh v. Hewlett Packard Enter. Co.*, No. 17-cv-04212, 2018 WL 3377547 (N.D. Cal. July 11,
     2018) ..................................................................................................................................... 31

*Fairley v. McDonald's Corp.*, No. 20-cv-02273, 2021 WL 3054804 (N.D. Ill. July 20, 2021)6, 23

*Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024 (9th Cir. 2008)................................. 10

*German v. Mercedes-Benz, LLC*, No. 2:21-cv-09587, 2022 WL 1407944 (C.D. Cal. Feb. 14, 2022) ....................................................................................................................... 28

*Griggs v. Duke Power Co.*, 401 U.S. 424 (1971) .......................................................... 10

*Haggan v. Google, LLC*, No. 518739/2022 (N.Y. Sup. Ct.) ................................. 2, 11, 20

*Harris v. City of Chicago*, 1998 WL 59873 (N.D. Ill. Feb. 9, 1998) .......................... 22

*Hazelwood Sch. Dist. v. United States*, 433 U.S. 299 (1977) ..................................... 13

*Henderson v. Physician Affiliate Grp. of New York P.C.*, No. 18-cv-3430, 2019 WL 3778504 (S.D.N.Y. Aug. 12, 2019) ................................................................................... 5, 29

*Hill v. City of New York*, 136 F. Supp. 3d 304 (E.D.N.Y. 2015) ............................... 8, 20

*Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285 (N.Y. 2010) ............................................... 9

*Huddleston v. City & Cnty. of San Francisco*, No. 16-cv-01998-YGR, 2016 WL 4729175 (N.D. Cal. Sept. 12, 2016) ........................................................................................... 8

*Hughes v. WinCo Foods*, No. 11-cv-0644, 2012 WL 34483 (C.D. Cal. Jan. 4, 2012) ................ 17

*Husser v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 253 (E.D.N.Y. 2015) .................... 28

*In re Johnson*, 760 F.3d 66 (D.C. Cir. 2014) ............................................................... 20

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) .................................. 14

*Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161 (9th Cir. 2014) ...................................... 26

*Jones v. Bock*, 549 U.S. 199 (2007) ............................................................................ 28

*Kevari v. Scottrade, Inc.*, No. 18-cv-0819, 2018 WL 6136822 (C.D. Cal. Aug. 31, 2018) ... 20, 21

*King v. UA Local 91*, 2020 WL 4003019 (N.D. Ala. July 15, 2020) .......................... 22

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ........................................... 16

*Maduka v. Sunrise Hospitals*, 375 F.3d 909 (9th Cir. 2004) ......................................... 8

*McReynolds v. Merrill Lynch*, 672 F.3d 482 (7th Cir. 2012) .......................... 6, 10, 20, 24

*Meyer v. Nat'l Tenant Network, Inc.*, 10 F. Supp. 3d 1096 (N.D. Cal. 2014) .......... 5, 7, 22

*Morgan v. United States Soccer Fed'n, Inc.*, No. 19-cv-01717, 2019 WL 7166978 (C.D. Cal. Nov. 8, 2019) ............................................................................................................ 19

*Moussouris v. Microsoft Corp.*, No. 15-cv-1483, 2018 WL 3328418 (W.D. Wash. June 25, 2018) ............................................................................................................... 17, 26

PLS.' RESP. IN OPP. TO DEF.'S
MOT. TO DISMISS AND STRIKE
4:22-cv-01735-YGR

*Obrey v. Johnson*, 400 F.3d 691, 694 (9th Cir. 2005) .................................................................. 13

*Pan v. Qualcomm Inc.*, No. 16-cv-01885, 2017 WL 3252212 (S.D. Cal. July 31, 2017) ............ 19

*Pena v. Taylor*, 305 F.R.D. 197 (E.D. Cal. 2015)..................................................................... 17

*Pouncy v. Danka Office Imaging*, 2009 WL 10695792 (S.D.N.Y. May 18, 2009)....................... 9

*Ramirez v. Baxter Credit Union*, No. 16-cv-03765, 2017 WL 1064991 (N.D. Cal. Mar. 21, 2017)
..................................................................................................................................................... 31

*Rees v. PNC Bank, N.A.*, 308 F.R.D. 266 (N.D. Cal. 2015) ......................................................... 27

*Regan v. Benchmark Co. LLC*, 2012 WL 692056 (S.D.N.Y. Mar. 1, 2012) ................................... 9

*Roger-Vasselin v. Marriott Int'l, Inc.*, No. 04-cv-4027, 2006 WL 2038291 (N.D. Cal. July 19,
2006) ............................................................................................................................................ 29

*Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009) ..................................................... 6

*Sandoval v. Ali*, 34 F. Supp. 3d 1031 (N.D. Cal. 2014)........................................................ 6, 20

*Sandoval v. M1 Auto Collisions Ctrs.*, 309 F.R.D. 549 (N.D. Cal. 2015) .................................. 20

*Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*, No. 19-CV-6034, 2019 WL 6916099
(S.D.N.Y. Dec. 19, 2019)........................................................................................................... 30

*Sherrard v. Boeing Co.*, No. 4:13-cv-1015, 2013 WL 5786642 (E.D. Mo. Oct. 28, 2013) ........... 6

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................................ 16, 17

*Stockwell v. San Francisco*, 749 F.3d 1107 (9th Cir. 2014) ...................................................... 22

*Sulzberg v. Happiest Minds Techs. PVT. Ltd.*, No. 19-cv-05618, 2019 WL 6493984 (N.D. Cal.
Dec. 3, 2019) ...................................................................................................................... 5, 7, 22

*Swierkiewicz v. Sorema*, 534 U.S. 506 (2002)....................................................................... 8, 28, 29

*Taylor v. City of New York*, 207 F. Supp. 3d 293 (S.D.N.Y. 2016)..................................... 17, 31

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)............................................... 24

*Wagner v. Taylor*, 836 F.2d 578 (D.C. Cir. 1987) ..................................................................... 17

*Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988) ......................................................... 10

*Yoshikawa v. Seguirant*, 41 F.4th 1109 (9th Cir. 2022)...................................................... 8, 28, 29

*Zollicoffer v. Gold Standard Baking, Inc.*, 335 F.R.D. 126 (N.D. Ill. 2020) ............................... 20

**Statutes**

42 U.S.C. § 1981……………………………………………………………………...passim

New York State Human Rights Law ("NYSHRL")……………………………17, 23, 25

New York City Human Rights Law ("NYCHRL")……………………………17, 23, 25

California Fair Employment and Housing Act ("FEHA")…………………………...17, 24, 25

Title VII………………………………………………………………………………...passim

**Other Authorities**

Fed. R. Civ. P.
  12(b)(6)……………………………………………………………………...passim
  12(f)………………………………………………………………………...passim
  23(a)…………………………………………………………………13, 14, 18
  23(b)(3)…………………………………………………………… 19, 20
  23(c)(4)…………………………………………………………………20

Cal. Code Regs. tit. 2, § 11008……………………………………………………24

Newberg on Class Actions…………………………………………………………...13

## I.    Introduction

Plaintiffs allege that Google, one of the nation's largest and most recognizable corporations, maintains uniform employment policies and practices that have an unlawful disparate impact and constitute a pattern or practice of intentional race discrimination against Black employees and applicants, diminishing their pay and opportunities. This lawsuit seeks justice for class members, including injunctive relief and reform to create a level playing field.

Facing extremely serious allegations that it systematically denied African Americans jobs, pay, and advancement, Google asks this Court to determine as a matter of law, at the pleading stage, that no class can ever be certified and that Google cannot be held accountable for systemic discrimination and an unflinchingly hostile work environment. Despite the breathtaking scope of the relief it seeks, Google's Motion is remarkably thin. Google ignores the extremely high burden for motions to strike class allegations and this Court's guidance discouraging these motions, where "[d]efendants essentially seek to litigate Rule 23 class certification prematurely." *E.g.*, *Slovin v. SunRun, Inc.*, No. 15-cv-05340, 2016 WL 5930631, at *1-2 (N.D. Cal. Oct. 12, 2016) (Rogers, J); *Heldt v. Tata Consultancy Servs.*, 132 F. Supp. 3d 1185, 1192-93 (N.D. Cal. 2015) (Rogers, J); *Simpson v. Vantage Hosp. Grp.*, No. 12-cv-04814, 2012 WL 6025772, at *4, 7 (N.D. Cal. Dec. 4, 2012) (Rogers, J). Google refuses to acknowledge the well-developed and decisive Supreme Court and Ninth Circuit class certification case-law post-dating *Dukes*. *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, (9th Cir. 2022) (en banc) [hereinafter *Olean*]; *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017); *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016). And Google asks this Court to improperly consider materials outside of the well-pleaded complaint[1] and prematurely issue rulings about ways that Google might one day defend its discriminatory nationwide policies and practices.

The inappropriateness of Google's request for a premature declaration of victory on Plaintiffs' class claims is aptly illustrated by two strikingly similar cases *against Google* where

---

[1] Plaintiffs separately filed a response in opposition to Google's request for judicial notice. (Dkt. 54)

PLS.' RESP. IN OPP. TO DEF.'S
MOT. TO DISMISS AND STRIKE
4:22-cv-01735-YGR

class certification was granted: a sex discrimination claim in California and race and sex discrimination claims in New York, in which Google itself stipulated to class certification.[2] The Court should reject Google's request to strike Plaintiffs' class allegations in their entirety, across the board, at the pleading stage. Instead, this case should proceed to discovery, so that Plaintiffs' class can gather and present evidence to allow this Court to perform the "rigorous analysis" required to decide class certification on a full record. *See, e.g.*, *Slovin*, 2016 WL 5930631, at *3.

## II.    Issues To Be Decided

The issues are whether: (1) this Court should, before discovery, strike in their entirety Plaintiffs' class allegations challenging company-wide discriminatory practices as "redundant, immaterial, impertinent, or scandalous" under Rule 12(f); (2) whether this Court should "dismiss" Plaintiffs' class claims under Rule 12(b)(6), even though there is no legal basis for "dismissing" class allegations under that rule; (3) dismiss Plaintiff Curley's New York claims, when Curley worked for Google in New York, was subjected to Google's discriminatory practices in New York, and Google admits the limitations period for her New York claims was tolled by agreement; (4) dismiss Aweh's individual and class New York and California claims even though she applied for and was rejected by Google for jobs in New York and California for which she was well qualified, pursuant to Google's uniformly discriminatory hiring practices.

## III.    Key Factual Allegations

Plaintiffs allege that Google is engaged in a pattern or practice of race discrimination through a uniform set of company-wide policies and practices that also have a disparate impact on African Americans. (¶ 2) Google maintains a strong, racially biased corporate culture, which infects its policies and personnel decisions, and is replete with harmful racial stereotypes about African Americans. (¶¶ 2, 18–20) Pursuant to company-wide discriminatory policies and practices centrally issued from its corporate headquarters, Google refuses to hire extraordinarily qualified Black applicants, systematically assigns Black professionals to lower-level roles, pays them less, unfairly rates their performance, and denies them advancement and leadership roles

---

[2] *Haggan v. Google, LLC*, No. 518739/2022 (N.Y. Sup. Ct); *Ellis v. Google, LLC*, No. CGC-17-561299 (Cal. Sup. Ct).

PLS.' RESP. IN OPP. TO DEF.'S
MOT. TO DISMISS AND STRIKE
4:22-cv-01735-YGR

because of their race. (¶¶ 19, 23–30) As a result, Black employees at Google earn less and suffer higher rates of attrition. (¶¶ 2, 27, 30)

Google's anemic Black representation (¶ 20) is the result of uniform, company-wide discriminatory hiring practices for the recruitment, screening, interviewing, evaluation, and selection of candidates. (¶ 20) Google's hiring process disproportionately screens out and assigns lower scores to well-qualified Black applicants and relies on factors and processes that harm Black applicants and hold them to differential and higher standards than non-Black applicants, including racially biased "culture-fit" interviews. (¶¶ 5, 20-21, 93–94, 99–100, 102)

Google subjects the relatively few Black employees it does hire to uniform, discriminatory pay, level and job assignment, performance assessment, and promotion policies and practices that systematically underpay them and diminish, delay, and deny advancement. (¶¶ 23, 25-30) Google assigns "levels" to all jobs company-wide, and it considers all employees at the same level—regardless of location in the United States—to perform substantially equal or substantially similar work. (¶ 24) Google assigns Black employees to lower levels and jobs with lower pay and less advancement opportunities than their experience and responsibilities warrant. (¶¶ 25, 39, 41, 49, 54, 69-70, 73, 83) Google's Black employees are subjected to discriminatory compensation practices, including practices regarding salary, bonuses, and stock, and therefore earn less than their similarly situated non-Black peers. (¶¶ 25-27)

As Google's own internal reports analyzing racial disparities in performance ratings reveal, Google maintains discriminatory performance review and promotion practices. (¶ 23, 28–29) As a result, Black employees are denied promotions and rated lower than their performance warrants, meaning less compensation (in the form of raises, bonuses, and stock options) and disqualification from further advancement. (¶¶ 28–29, 45–47, 55, 62, 64, 72–75, 83, 87)

Finally, consistent with Google's racially biased corporate culture and pattern of discrimination, Google maintains a racially hostile work environment across its workplaces. (¶¶ 2–3, 22) Black Googlers are overpoliced and interrogated at Google campuses, and the frequent target of racist comments, posts, and conduct. (¶¶ 22, 43, 56, 76, 86) Google's racially hostile workplace is so pervasive and notorious that employees of color shared an intranet document

PLS.' RESP. IN OPP. TO DEF.'S
MOT. TO DISMISS AND STRIKE
4:22-cv-01735-YGR

with thousands of examples of racial harassment and microaggressions they face. (¶ 22) Google reinforces this hostile work environment by defending and failing to hold harassers accountable and permitting retaliation against Black employees who lodge complaints. (¶ 31, 32)

## IV.   Legal Standards

### A.   Motions to Strike Class Allegations Are Disfavored and Must Be Denied Where No Conspicuous Pleading Defect is Apparent From the Face of the Pleadings

Google glosses over the legal standards that govern the primary relief it is seeking—striking or "dismissing" Plaintiffs' class allegations in their entirety before discovery under Rule 12(f)—because those standards doom its Motion. Motions to strike are "disfavored" and are routinely and correctly denied where, as here, "[d]efendants essentially seek to litigate Rule 23 class certification prematurely." *Slovin*, 2016 WL 5930631, at *2; *accord, e.g.*, *Heldt v. Tata Consultancy Servs.*, 132 F. Supp. 3d 1185, 1192-93 (N.D. Cal. 2015) (Rogers, J); *Simpson v. Vantage Hosp. Grp.*, No. 12-cv-04814, 2012 WL 6025772, at *4, 7 (N.D. Cal. Dec. 4, 2012) (Rogers, J); *Camacho v. Control Grp. Media Co., LLC*, No. 3:21-cv-1954, 2022 WL 3093306, at *11 (S.D. Cal. July 18, 2022); *Woodburn v. City of Henderson*, No. 2:19-cv-01488, 2020 WL 5805503, at *3 (D. Nev. Sept. 29, 2020); *Sulzberg v. Happiest Minds Techs. PVT. Ltd.*, No. 19-cv-05618, 2019 WL 6493984, at *3 (N.D. Cal. Dec. 3, 2019); *Cahill v. Nike, Inc.*, No. 3:18-cv-1477, 2019 WL 2179575, at *4, 8 (D. Or. Feb. 26, 2019); *Rodas v. Monetary Mgmt. of Cal.*, No. 2:14-cv-01389, 2015 WL 1440602, at *4–5 (E.D. Cal. Mar. 26, 2015) (citing 10 more cases); *Meyer v. Nat'l Tenant Network, Inc.*, 10 F. Supp. 3d 1096, 1103-04 (N.D. Cal. 2014); *In re Wal-Mart*, 505 F. Supp. 2d 609, 614-16 (N.D. Cal. 2007); *Fairley v. McDonald's Corp.*, No. 20-cv-02273, 2021 WL 3054804, at *4, 12–16 (N.D. Ill. July 20, 2021); *Sherrard v. Boeing Co.*, No. 4:13-cv-1015, 2013 WL 5786642, at *3-4 (E.D. Mo. Oct. 28, 2013).[3]

---

[3] In *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 989–90 (N.D. Cal. 2009) the court struck plaintiffs' fraud and warranty class claims after noting that those claims are particularly problematic when pursued on a national basis. This simply is not the case with disparate impact and pattern or practice employment discrimination class claims, which are regularly certified. *See, e.g.*, *McReynolds v. Merrill Lynch*, 672 F.3d 482, 490–91 (7th Cir. 2012); *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 518 (N.D. Cal. 2012). *Sandoval v. Ali*, 34 F. Supp. 3d 1031,

Rule 12(f) allows the Court to strike "redundant, immaterial, impertinent, or scandalous matter," circumstances that even Google does not argue apply here. Motions to strike are "generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Slovin*, 2016 WL 5930631, at *1 (internal quotation omitted). In evaluating a motion to strike, the Court limits its review solely to the pleadings, *id.* at 2 & n.2, and construes them in the light most favorable to the non-moving party, *Simpson*, 2012 WL 6025772, at *4. Motions to strike class allegations are premature before discovery and class certification briefing, because the Court lacks "the necessary information to rule on the propriety of the class allegations." *Slovin*, 2016 WL 5930631, at *2 (citing *In Re Wal-Mart*, 505 F. Supp. 2d at 615-16). Thus, such motions may be granted only if a "conspicuous pleading defect" exists that is "plain from the face of the pleadings." *Cahill*, 2019 WL 2179575, at *5, 8.

## B. Rule 12(b)(6) Does Not Permit Dismissal of Class Allegations

While virtually ignoring the law governing motions to strike, Google's brief (at 3, 9-10) extensively discusses cases and standards governing motions to dismiss under Rule 12(b)(6), suggesting these as grounds to dismiss Plaintiffs' class allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). But these standards have no application to Google's effort to strike Plaintiffs' class allegations. "Rule 12(b)(6) is not a proper vehicle for dismissing class claims, for several reasons." *Sulzberg*, 2019 WL 6493984, at *2; *accord Meyer*, 10 F. Supp. 3d at 1103-04; *Clerkin v. MyLife.com*, No. 11-cv-527, 2011 WL 3809912, at *3-4 (N.D. Cal. Aug. 29, 2011).[4]  Google's desire to avoid class-wide discovery

---

1043 (N.D. Cal. 2014) is also inapposite. There, plaintiffs compensated based on a "piece rate system" brought wage claims, but sought to include employees compensated under different methods, so the court concluded that "[a]s pled, the class is inconsistent with Plaintiffs' theory of the case," but still granted plaintiffs leave to amend, and ultimately certified the class. In *Collins v. Gamestop Corp.*, No. 10-cv-1210, 2010 WL 3077671, at *2 (N.D. Cal. Aug. 6, 2010) the court struck, without opposition, nationwide class claims brought under California law, because those laws do not protect consumers outside the state.

[4] First, Rule 12(b)(6) "permits a party to argue that the opposing party has failed to state a claim upon which relief can be granted, and a class action is a procedural device, not a claim for relief." *Sulzberg*, 2019 WL 6493984, at *2 (cleaned up) (citing *Meyer*, 10 F. Supp. 3d at 1104). Second, other federal rules govern striking impertinent material (Rule 12(f)) and class certification (Rule 23). *Id.* Third, "a different standard of review applies to decisions on class certification than orders on motions to dismiss." *Id.*

PLS.' RESP. IN OPP. TO DEF.'S
MOT. TO DISMISS AND STRIKE
4:22-cv-01735-YGR

regarding Plaintiffs' extremely serious allegations cannot justify ignoring or contorting the governing civil procedure rules. *See Cahill*, 2019 WL 2179575, at *8 (rejecting arguments that "broad and disparate group of proposed plaintiffs" and potential for extensive discovery warranted striking or dismissing class allegations).

### C. Rule 8 Provides for "Liberal Treatment" of a Complaint at the Pleading Stage

Google overstates what a plaintiff must plead to satisfy Rule 8: even after *Twombly*/*Iqbal*, notice pleading is all that is required in federal court, which "provides for liberal treatment of a plaintiff's complaint at the pleading stage." *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1137 (9th Cir. 2019). Google's suggestion that employment discrimination cases are subject to heightened pleading standards is foreclosed by binding precedent.[5] *See Yoshikawa v. Seguirant*, 41 F.4th 1109, 1119 (9th Cir. 2022) (holding "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case" and affirming denial of motion to dismiss); *Maduka v. Sunrise Hospitals*, 375 F.3d 909, 1119 (9th Cir. 2004) (holding *Swierkiewicz* governs pleading standard of Section 1981 claim"); *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002). To survive a Rule 12(b)(6) motion, a complaint alleging employment discrimination "need only contain a short and plain statement under Rule 8." *Yoshikawa*, 41 F.4th at 1119; *accord Swierkiewicz*, 534 U.S. at 509, 512-13.

### D. The Court Has Subject Matter Jurisdiction Over New York Claims of Plaintiffs and Class Members Who Worked for or Applied to Google in New York

"To succeed on a motion to dismiss" asserting that a plaintiff failed to allege sufficient connections to New York to invoke the NYSHRL or NYCHRL, "a defendant must show that there is no possibility that there was an impact in New York." *Chen-Oster v. Goldman Sachs, Inc.*, 251 F. Supp. 3d 579, 594 (S.D.N.Y. 2017) (internal quotes omitted). "Those who work in New York," such as Curley, and those who applied to New York jobs, such as Aweh, (¶¶ 38, 94; *see* Sections VII–VIII, infra), "fall within the class of persons who may bring discrimination claims in New York." *Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 291 (N.Y. 2010); *Chau v.*

---

[5] Plaintiffs' fact-rich Complaint with allegations about each Plaintiff and their harm by Google's practices is opposite to the conclusory *pro se* pleading dismissed in *Huddleston v. City & County of San Francisco*, No. 16-cv-01998, 2016 WL 4729175, at *3 (N.D. Cal. Sept. 12, 2016).

*Donovan*, 357 F. Supp. 3d 276, 283–84 (S.D.N.Y. 2019) (holding plaintiff could invoke NYSHRL and NYCHRL when she was not hired for a New York job because "the conduct has affected the terms and conditions of plaintiff's employment within the city").

## ARGUMENT

## V.   Google Has Failed To And Cannot Identify Any Conspicuous Pleading Defect Precluding Certification Of An Employee Class As A Matter Of Law

### A.   Google Ignores Plaintiffs' Disparate Impact Claims, Which Are Proved Through Common Statistical and Expert Evidence and Are Thus Routinely Certified

Plaintiffs allege that Google's company-wide policies and practices governing job leveling, job assignment, performance assessment, and pay have an unlawful racially disparate impact, yet Google's brief fails to address these claims. (¶ 17, 28, 35, 125, 137, 161, 176). Google argues, incorrectly and prematurely, that Plaintiffs' claims are too individualized for class treatment. Moreover, that argument in no way applies to Plaintiffs' disparate impact claims, which target "facially neutral employment practices that have significant adverse effects on protected groups." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986-87 (1988). The focus of any disparate impact claim is on the policy, its impact, and business necessity, *not* individual actions by individual employees or supervisors. *Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971).

Every class member's disparate impact claim is proved with the same common statistical and expert evidence and dependent upon answers to the same common questions of whether (1) the policies at issue have an adverse impact (2) not justified by business necessity and (3) for which no less discriminatory alternative exists. Class treatment of Plaintiffs' disparate impact claims challenging Google's policies therefore meets the *Dukes* standard by resolving factual and legal issues "central to the validity of each one of the claims [of all class members] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see McReynolds*, 672 F.3d at 490 (reversing class certification denial because class race claim would be "efficiently determined on a class-wide basis rather than in 700 individual lawsuits"). Plaintiffs' disparate impact claims are by their very nature suitable for classwide resolution. By failing to address

Plaintiffs' disparate impact class claims in its opening brief, Google has waived any argument to the contrary. *See Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1033 (9th Cir. 2008) (finding that party waived argument not in opening brief).

### B. Plaintiffs' Proposed Class Definition Provides No Basis for Striking the Class

Google's argument (at 11) begins by attacking Plaintiffs' proposed class definition, asserting, based on a non-existent record and no legal citations, that Plaintiffs' proposed class of Black Google employees between levels 2 and 8 cannot be "adjudicated effectively." Due to Google's miserable record of hiring Black employees, (¶ 20), the potential employee class likely numbers only in the thousands, hardly an unreasonably large putative class. *See, e.g.*, *Ellis v. Google, LLC*, No. CGC-17-561299 (Cal. Sup. Ct. May 27, 2021) (certifying class of 10,800 female Google employees) (¶ 34); *Ellis v. Costco Wholesale Corp.*, No. 3:04-cv-3341 (N.D. Cal. 2012), ECF 755 at 6 (certifying class of approximately 1,300). The Ninth Circuit has recently and explicitly rejected attaching an extra-textual "administrative feasibility" prerequisite to Rule 23. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124-26 (9th Cir. 2017). The precise contours of the class definition can and should be addressed thoughtfully as proceedings continue, not haphazardly based on undeveloped arguments raised before discovery. *See Ruiz Torres*, 835 F.3d at 1136-39; *In re Wal-Mart*, 505 F. Supp. 2d at 615-16.

Moreover, the reasonableness of Plaintiffs' class definition and claims is illustrated by similar class actions against Google challenging many of the same policies and practices as Plaintiffs challenge here. In *Ellis v. Google*, a California state court granted class certification to a class of approximately 10,800 female Google employees in California who alleged Google assigned women to lower levels than men and paid them less than men in similar job codes.[6] (¶ 34) Google later agreed to settle *Ellis* for $118 million.[7] (*Id*) Just six months ago, in *Haggan v. Google*, Google agreed to certification and settlement of another similar class action in New

---

[6] *See* Ex. A, *Ellis v. Google, LLC*, No. CGC-17-561299 (Sup. Ct. Cal. May 27, 2021), Redacted Order Granting Plaintiffs' Motion for Class Certification; Joel Rosenblatt, *Women Suing Google Over Gender Bias Win Class-Action Status*, L.A. Times (May 27, 2021), at bit.ly/3XrAAwv
[7] Nico Grant, *Google Agrees to Pay $118 Million to Settle Pay Discrimination Case*, N.Y. TIMES (June 12, 2022), available at nyti.ms/3X2dM6L

PLS.' RESP. IN OPP. TO DEF.'S
MOT. TO DISMISS AND STRIKE
4:22-cv-01735-YGR

York that alleged Google discriminated in, among other things, pay, leveling, promotion, and performance reviews, against over 8,000 women, Black, Hispanic, and Native American Google employees Levels 3–7.[8] Google's argument that Plaintiffs' class claims should be entirely stricken prior to discovery because the class definition is 'overbroad' cannot be squared with the certification of similar cases *against Google itself.*

### C. Google Fails to and Cannot Show Any Conspicuous Pleading Defect with Respect to Job Leveling, Job Assignment, and Performance Review Practices

Citing no authority, Google (at 11) asks the Court to determine, as a matter of law at the pleading stage, that Plaintiffs' allegations about job leveling and assignments "cannot be adjudicated with classwide proof." This argument should be summarily rejected. Plaintiffs alleged, in considerable factual detail, that Google has uniform, company-wide employment practices that under-level Black employees, reduce their earnings, and deny them promotions. (¶¶ 19-20, 23-30, 33, 102) These are precisely practices that may be challenged as discriminatory on a classwide basis and proved largely through common, classwide statistical proof. *See, e.g.*, *Ellis*, 285 F.R.D. at 521–23 (certifying company-wide promotion class, plaintiffs "provide persuasive statistical evidence of gender disparities . . . sufficient to refute the notion that '[d]issimilarities within the proposed class . . . impede the generation of common answers.'" ); *Chen-Oster*, 325 F.R.D. at 81–82 (certifying company-wide pay, promotion, and performance review disparate treatment and impact class, finding plaintiffs "statistical evidence makes out a prima facie claim of disparate impact" and "may also be used to prove disparate treatment").

Indeed, Plaintiffs challenge and intend to prove Google's pattern or practice of discrimination in a *Teamsters* liability hearing, a method available to them both before and after *Dukes*, and which would entitle class members to a rebuttable presumption of discrimination, as set forth in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 359 (1977). *See also Dukes*, 564 U.S. at 352, n.7 (favorably citing *Teamsters*); *Cahill*, 2019 WL 2179575, at *5, 8 (denying motion to strike and citing *Teamsters*).

---

[8] *See* Exhibit B, *Haggan v. Google, LLC*, No. 518739/2022 (Sup. Ct. N.Y. June 30, 2022), Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement.

The Complaint illustrates how each Plaintiff, regardless of their location or job, was harmed in the same way by Google's employment practices, which lend strength to the commonality of the policy challenge. Pursuant to its uniform, company-wide policies and practices, Google egregiously under-leveled *every* named Plaintiff, each of whom pleaded their experiences in detail: Curley had a master's degree and years of applicable work experience, which corresponded to a Level 5, but Google instead assigned her to an entry level Level 3, and then denied her correct level and advancement. (¶¶ 38-39) Similarly, Mayon came to Google with stellar credentials: two bachelor's degrees, 18 years of relevant work experience, fluency in several languages, and the ability to code in seven languages. Nevertheless, Google assigned Mayon only a Level 4 position and denied her advancement. (¶ 54) Lewis had over 20 years of experience as a successful engineering and technology management professional, who had led multiple tech startups and earned an outstanding reputation in the industry. While she briefly was assigned a Level 7, she was quickly "down-leveled" to a Level 6 and then a Level 5, despite her spectacular work performance. (¶¶ 69-75) Reid arrived at Google from a managing director position at another firm, possessed a J.D. and law license, and had years of work experience. Yet she, like Curley, was assigned an entry-level Level 3—unlike a less qualified and experienced white male assigned Level 4—and was denied advancement to a proper level and job. (¶¶ 81-83)

Contrary to Google's argument, there is nothing "inherently individualized" about Plaintiffs' allegations that Google systematically assigned its Black employees jobs and levels far below their qualifications. On the contrary, whether Google, through its pay grade leveling policies and practices, disparately impacts or intentionally discriminates against its Black employees is exactly the kind of issue that can be proven via statistical evidence (including regression analysis) and expert testimony, once Google turns over data in discovery. "In a case in which the plaintiff has alleged that his employer has engaged in a 'pattern or practice' of discrimination, statistical data . . . can be used to establish a general discriminatory pattern in an employer's hiring or promotion practices. Such a discriminatory pattern is probative of motive and can therefore create an inference of discriminatory intent…" *Obrey v. Johnson*, 400 F.3d 691, 694 (9th Cir. 2005) (finding district court erred in excluding statistical evidence in pattern

or practice case and reversing jury verdict in favor of employer) (cleaned up); *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307–08 (1977) ("Where gross statistical disparities can be shown, they alone may in a proper case constitute prima facie proof of a pattern or practice of discrimination."); *Brown v. Nucor Corp.*, 785 F.3d 895, 900-922 (4th Cir. 2015) (reversing decertification of race discrimination class based on plaintiffs' statistical and anecdotal evidence); *Chen-Oster*, 325 F.R.D. at 72-84.

Later in its brief (at 12-13), Google rehashes the same argument, asserting that because Plaintiffs (like all plaintiffs in employment actions) did not have factually identical experiences, the Court should summarily rule before discovery that their claims "cannot be answered with classwide proof." This argument fails for the same reasons described above. Factual distinctions between class members' individual circumstances do not automatically defeat class certification, let alone justify summarily striking class claims before discovery. For example, in *Tyson Foods*, 577 U.S. at 454-49, the Supreme Court rejected a similar argument that employees' claims were not sufficiently similar to be resolved on a classwide basis. The Supreme Court reiterated the validity of statistical proof in employment class claims, upheld class certification, and affirmed the jury verdict in favor of plaintiffs. *Id.* at 448, 459-60.

Here, all four employee-Plaintiffs pleaded specific, and egregious, facts showing that they were under-leveled based on their experience; the fact that Lewis's under-leveling occurred in a slightly different manner than the other three does not, on its face, preclude class certification. Similarly, Lewis's awards and "exceeds" performance rating do not conflict with Plaintiffs' allegations that Google systematically discriminates against Black employees in their performance reviews, and disproportionately assigns them "needs improvement" ratings. (¶ 28) Again, these class-wide allegations can be proven or disproven with statistical evidence. The presence of a Black employee who received an "exceeds expectations" on a performance review (and nonetheless had her pay dropped two levels) is not inconsistent with Plaintiffs' allegations that Black employees *disproportionately* receive worse reviews. That one named Plaintiff received a strong review (en route to a two-level pay cut) does not, as a matter of law prior to discovery, make class certification impossible or justify striking Plaintiffs' class allegations. *See,*

- 11 -

1   *e.g.*, *Ruiz Torres*, 835 F.3d at 1136 ("[T]he possibility that an injurious course of conduct may

2   sometimes fail to cause injury to certain class members" does not defeat class certification);

3   *Slovin*, 2016 WL 5930631, at *2.

**D.  Google Fails to Show that Plaintiffs' Claims Are "Mired in Conflict"**

5       Google's argument (at 11-12) that the Court should determine conclusively, based on

6   information outside of the pleadings, that Plaintiffs' class claims will inevitably be "mired in

7   conflict," is wrong procedurally, legally, and factually. In evaluating a motion to strike under

8   Rule 12(f), the Court limits its review to the four corners of the pleadings and construes them in

9   the light most favorable to the non-moving party. *Slovin*, 2016 WL 5930631, at *2 & n.2;

10  *Simpson*, 2012 WL 6025772, at *4. Google's "conflict" argument (at 12), however, asks the

11  Court to improperly rely upon materials beyond the pleadings and construe them in Google's

12  favor. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (reversing grant of motion to

13  dismiss and finding district court abused its discretion by taking judicial notice of facts not in the

14  complaint). It can be rejected for this reason alone.

15      Google's argument on this point is not just wrong, it is offensive. Playing "gotcha" with

16  Mayon's *pro se* non-class administrative charge—which was filed before she had secured

17  representation and learned that Black Google employees across the country had similar

18  experiences—Google argues that class certification is impossible because one of Mayon's

19  supervisors was Black. Plaintiffs alleged a corporate culture at Google of extreme and systemic

20  racial hostility, in which Black employees were treated as criminals on Google's campuses, and

21  regularly faced disparaging, disgusting comments and actions from colleagues and supervisors

22  without consequence. (¶¶ 21, 22) In such an openly racist environment—where "Googlyness" is

23  judged by one's willingness to tolerate, engage in, and support anti-Black discrimination, while

24  opposing discrimination is seen to be a career killer—Mayon's allegations that her Black

25  manager told her she was "just loud and every stereotype of an African-American woman"

26  strongly supports Plaintiffs' theory.

27      The legal premise of Google's argument is mistaken as well. Even after discovery, the

28  possibility of the class containing some uninjured members does not preclude class certification.

PLS.' RESP. IN OPP. TO DEF.'S
MOT. TO DISMISS AND STRIKE
4:22-cv-01735-YGR

The Ninth Circuit *en banc* recently confirmed this basic principle, confirming that "a class that potentially includes more than a de minimis number of uninjured class members" can be certified. *Olean*, 31 F.4th at 669; *accord Ruiz Torres*, 835 F.3d at 1136.

Indeed, Google's own authority defeats its argument, confirming that there is no inherent conflict where supervisors and employees are included in the same class. In *Staton v. Boeing Co.*, 327 F.3d 938, 957-59 (9th Cir. 2003), the Ninth Circuit distinguished *Wagner v. Taylor*, 836 F.2d 578, 595 (D.C. Cir. 1987), emphasizing that *Wagner* "did not adopt any per se rule concerning adequacy of representation where the class includes employees at different levels of an employment hierarchy." Rather than deciding as a matter of law that supervisors and lower-level employees have conflicting interests, the Ninth Circuit explained that "the question whether employees at different levels of the internal hierarchy have potentially conflicting interests is context-specific and depends upon the particular claims alleged in a case." *Staton*, 327 F.3d at 958.[9] Ultimately, under the circumstances of that case, the Ninth Circuit concluded that there was no conflict or adequacy-of-representation problem where the class included both supervisors and employees and held that the Rule 23(a) requirements were satisfied. *Id.* at 959; *see also Pena v. Taylor*, 305 F.R.D. 197, 214-15 (E.D. Cal. 2015) (rejecting argument that presence of employees and supervisors in class created conflict and granting class certification in part).

Google's argument that Plaintiffs' class allegations—which attack Google's nationwide, systemic practices that affect Black employees across the country—should be stricken pre-discovery because Plaintiff Mayon's individual, non-representative EEOC charge mentioned a Black manager is outrageous and contradicted by the law Google cites.

**E. Google Fails to Show that Discrimination and Hostile Work Environment Claims Are "Inherently Individualized" as a Matter of Law**

---

[9] Unlike *Moussouris*, a class certification case decided after discovery and on a full record, where the *named plaintiff* was allegedly a discriminator, Plaintiff Mayon was subjected to the discriminatory practices. *Moussouris v. Microsoft Corp.*, No. 15-cv-1483, 2018 WL 3328418, at *29 (W.D. Wash. June 25, 2018). In *Hughes*—another class certification case decided on a full record—the problem was that none of the named plaintiffs were supervisors, but they sought to represent supervisors nonetheless. *Hughes v. WinCo Foods*, No. 11-cv-0644, 2012 WL 34483, at *7 (C.D. Cal. Jan. 4, 2012). That is not the case here, and, in any event, Plaintiffs stand ready to add additional named Plaintiffs as needed.

PLS.' RESP. IN OPP. TO DEF.'S
MOT. TO DISMISS AND STRIKE
4:22-cv-01735-YGR

Google (at 13-14) asks this Court to break new, unprecedented, legal ground and rule as a matter of law that discrimination and hostile work environment claims are "inherently individualized" and therefore not susceptible to class treatment. Google provides no valid legal support for this stunning argument. Apart from cases establishing the elements of Title VII and § 1981, Google includes only two legal citations in this section of the brief: both out-of-circuit decisions decided after discovery on a full record at the class certification stage.

Google's own cases defeat its argument. In the similar case of *Chen-Oster*, the court *granted* class certification to plaintiffs, who alleged that Goldman Sachs's performance evaluation, compensation, and promotion practices discriminated against female employees. 325 F.R.D. at 782-84. The court concluded that plaintiffs could (as Plaintiffs seek to do here) rely on statistical evidence to prove on a class-wide basis that the employer's policies caused a disparate impact and that the employer's standard operating procedure was discriminatory. *Id.*

In *Bennett v. Nucor Corp.*, the Eighth Circuit reviewed a "voluminous class certification record" and reasoned "that the district court, faced with this sizable and sometimes-contradictory record" did not err "in finding that employment practices varied substantially across the plant's various production departments" 656 F.3d 802, 814 (8th Cir. 2011). In declining to hold that the district court abused its discretion based on a voluminous and contradictory record, *Bennett* lends no support for Google's "discrimination cases are inherently individualized" theory.

And Google ignores that, in *Brown v. Nucor Corp.*, the Fourth Circuit reversed the district court's denial of class certification in a race discrimination case *against the same employer*. 785 F.3d 895 (4th Cir. 2015). In *Brown*, the district court certified and then refused to decertify a racially hostile work environment class, a decision the employer elected not to appeal. *Id.* at 899-900; *see also Brand v. Comcast Corp.*, 302 F.R.D. 201, 207-08 (N.D. Ill. 2014) (certifying racially hostile work environment class). But the district court decertified claims of racial discrimination in promotion practices. *Brown*, 785 F.3d at 900. The Fourth Circuit reversed and ordered certification of plaintiffs' promotion class claim (in addition to the already-certified hostile work environment class claim), exhaustively explaining how the statistical and anecdotal evidence satisfied Rule 23 requirements, including commonality and predominance.

PLS.' RESP. IN OPP. TO DEF.'S
MOT. TO DISMISS AND STRIKE
4:22-cv-01735-YGR

*Id.* at 902-22. Further, and of particular relevance to Plaintiffs' theory here, the Fourth Circuit held that anecdotal evidence of a hostile work environment supported Plaintiffs' promotion claims, agreeing with plaintiffs' argument that "an atmosphere of systemic tolerance of racial hostility by managers and supervisors, form[ed] part of the overall pattern or practice that infected black employees' promotion opportunities.'" *Id.* at 911-12 (internal quotations omitted); (¶¶ 41–44, 56–66, 76–79, 84–86) (describing Google's hostile work environment). Google's assertion (at 14) that Plaintiffs attribute their mistreatment only "to individual managers" is flatly wrong and inconsistent with the Complaint. Plaintiffs challenge Google's corporate policies and practices as discriminatory, not the actions of individual managers.

*Brown* and *Chen-Oster* are not outliers; discrimination claims have regularly been certified as class actions after *Dukes*. *See, e.g., Morgan v. United States Soccer Fed'n, Inc.*, No. 19-cv-01717, 2019 WL 7166978, at *10 (C.D. Cal. Nov. 8, 2019) (certifying class of women soccer players for Title VII claims of disparity in pay and working conditions); *Buchanan v. Tata Consultancy Servs., Ltd.*, No. 15-cv-01696, 2018 WL 3537083, at *1 (N.D. Cal. July 23, 2018) (certifying race and national origin discrimination class) (Rogers, J); *Pan v. Qualcomm Inc.*, No. 16-cv-01885, 2017 WL 3252212, at *7 (S.D. Cal. July 31, 2017) (approving settlement class of nearly 3,500 women for pattern and practice of gender discrimination resulting in pay and promotional disparities); *Ellis*, 285 F.R.D. at 497 (certifying disparate treatment and disparate impact class based on promotional process); *Chi. Tchrs. Union, Loc. No. 1 v. Bd. of Educ.*, 797 F.3d 426, 440 (7th Cir. 2015) (reversing denial of class certification in racial discrimination claim); *McReynolds*, 672 F.3d at 490–91 (same); *In re Johnson*, 760 F.3d 66, 76 (D.C. Cir. 2014) (denying petition for interlocutory appeal of certification of class of African Americans denied promotions); *Zollicoffer v. Gold Standard Baking, Inc.*, 335 F.R.D. 126 (N.D. Ill. 2020) (certifying § 1981 action against employer and staffing agency); *Hill v. City of New York*, 136 F. Supp. 3d 304, 354 (E.D.N.Y. 2015) (certifying § 1981 class of 911 operators based on employer's pattern and practice of discrimination); *Ellis v. Google, LLC*, No. CGC-17-561299 (Cal. Sup. Ct. May 27, 2021); *Haggan v. Google, LLC*, No. 518739/2022 (N.Y. Sup. Ct).

**F.  Google Fails to Show that Plaintiffs Cannot Meet Commonality/Predominance**

**1.  Google's Extensive Reliance on *Kevari* Is Fundamentally Flawed**

Google's Motion relies extensively on a single case from within this Circuit decided prior to discovery: *Kevari v. Scottrade, Inc.*, No. 18-cv-0819, 2018 WL 6136822 (C.D. Cal. Aug. 31, 2018).[10] Plaintiffs agree with Google that *Kevari* is "instructive"—both in the fact that it is Google's only in-circuit authority for the relief it seeks, and in showing just how extraordinarily flawed a complaint must be to strike class allegations prior to discovery. In *Kevari*, a single plaintiff alleged she was pushed out of her job due to her gender and age and personally sought to represent six subclasses of women and older employees. *Id.* at 1, 9. But the plaintiff: (1) failed to timely exhaust Title VII and ADEA administrative remedies; (2) failed to exhaust FEHA class claims; (3) failed to exhaust disparate impact claims; (4) failed to adequately allege equal pay claims; (5) failed to adequately plead Ameritrade's alter ego liability, even though it never employed her; (6) failed to respond to defendants' argument regarding predominance; (7) failed to respond to defendants' superiority argument; (8) filed a simultaneous, identical individual suit in state court; (9) was an obviously inadequate class representative because she never worked for, and did not exhaust her administrative remedies against, Ameritrade; (10) pled improper "fail safe" classes defined by defendants' liability; (11) sought to represent a nationwide class despite failing to exhaust administrative remedies or adequately plead violation of any federal law; (12) failed to respond to defendants' ascertainability argument; and (13) violated the court's local rule regarding the timing of a class certification motion, without any excuse. *Id.* at 3-12.

In sum, *Kevari* was an extraordinary case, involving extraordinary failures by the sole plaintiff who sought to represent six age and gender subclasses. On the other hand, there are countless cases, involving complaints that were not facially, completely flawed, in which courts refused defendants' invitations "to litigate Rule 23 class certification prematurely," properly applied the demanding Rule 12(f) standards, and denied defendants' motion to strike class

---

[10] Google also cites to *Sandoval v. Ali*, 34 F. Supp. 1031 (N.D. Cal. 2014), but in that case, the class definition was stricken without prejudice, and plaintiffs cured the issue and obtained class certification. *Sandoval v. M1 Auto Collisions Ctrs.*, 309 F.R.D. 549, 559-73 (N.D. Cal. 2015).

PLS.' RESP. IN OPP. TO DEF.'S
MOT. TO DISMISS AND STRIKE
4:22-cv-01735-YGR

allegations. *Slovin*, 2016 WL 5930631, at *2; *see* string cite, Section III.A, *supra*.[11] Plaintiffs respectfully submit that this case—which raises serious, detailed, and comprehensive allegations about Google's discrimination against its Black employees and job applicants—is more like the long list of cases in which motions to strike were denied than the unusually flawed *Kevari* case.

### 2.  Plaintiffs Can Demonstrate Commonality and Predominance

Quoting short snippets of *Dukes*, Google (at 14-17) rehashes its arguments that Plaintiffs cannot demonstrate commonality or predominance. Improperly importing Rule 12(b)(6) standards, Google incorrectly argues without authority that Plaintiff must "plausibly allege the necessary elements of Rule 23" to survive a motion to strike. Even though Plaintiffs have done so, Rule 12(b)(6) has no role to play in a motion to strike. *See Sulzberg*, 2019 WL 6493984, at *2; *Meyer*, 10 F. Supp. 3d at 1104. Further, as Google refuses to acknowledge, only a single common question is necessary to satisfy the commonality requirement. "[*Dukes*] instructed that, although Rule 23(a)(2) refers to common questions of law or fact in the plural, 'even a single common question will do.'" *Stockwell v. San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014) (cleaned up) (quoting *Dukes*, 564 U.S. at 359). As explained above, Plaintiffs' Complaint presents many common questions regarding Google's discriminatory employment practices.

Google does not mention the legal standards that govern predominance at the class certification stage. Predominance is a particularly fact-intensive inquiry that "generally requires consideration of the merits and the nature of the evidence, and 'some level of discovery is essential to such an evaluation.'" *Fairley*, 2021 WL 3054804, at *16 (denying motion to strike employment discrimination and harassment class claims). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important

---

[11] Google also relies on easily distinguishable out-of-circuit cases. In *King v. UA Local 91*, the court struck class allegations after declaring "the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation" and that, even at the pleading stage, "the burden of establishing a certifiable class rests on the parties advocating for the class." 2020 WL 4003019, at *7 (N.D. Ala. July 15, 2020). This is clearly not the standard or law in this Circuit. *See, e.g.*, *Slovin*, 2016 WL 5930631, at *2. The *Harris v. City of Chicago* plaintiffs challenged a "wide variety of discriminatory practices raised by many different types of" employees, unlike here, where Plaintiffs challenge a set of policies that apply to all Black Google employees. 1998 WL 59873, at *7 (N.D. Ill. Feb. 9, 1998).

PLS.' RESP. IN OPP. TO DEF.'S
MOT. TO DISMISS AND STRIKE
4:22-cv-01735-YGR

than the noncommon, aggregation-defeating, individual issues." *Olean*, 31 F.4th at 664 (cleaned up) (quoting *Tyson Foods*, 577 U.S. at 453). Here, the central issue in this case (and the questions that predominate) is plainly the issue of liability: whether Google's employment practices have an unlawful disparate impact and whether Google engaged in a pattern and practice of race discrimination. A "common answer" to those questions would determine liability for all class members, thus "fairly and efficiently adjudicating the controversy." *Dukes*, 564 U.S. at 352; FED. R. CIV. P. 23(b)(3).

Google further argues (at 16-17) that predominance is prohibited by its potential individualized defenses. First, this argument by its terms is unsupported and speculative. *See* Google. Br. at 16 ("may turn on," "may depend in part on"). In any event, Ninth Circuit and Supreme Court law defeats this argument. Even at the class certification stage, the potential existence of individualized defenses does not preclude a finding of predominance. "Nor can a district court decline to certify a class that will require determination of some individualized questions at trial, so long as such questions do not predominate over the common questions." *Olean*, 31 F.4th at 668; *Briseno*, 844 F.3d at 1131-32 (individualized defenses do not defeat class certification and can be addressed after classwide liability finding). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (quoting *Tyson Foods*, 577 U.S. at 453). Predominance is not a "matter of nose-counting," and "more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Ruiz Torres*, 835 F.3d at 1134. The fact that similar arguments were rejected on a full record in *Tyson Foods*, *Olean*, and *Ruiz Torres* eviscerates Google's argument that the Court should hold, at the pleading stage, that Plaintiffs cannot possibly demonstrate predominance.

Finally, Google asserts that Plaintiffs' New York and California employee classes are "equally overbroad," because there are a lot of employees in Google's offices in those states. But

there is no "large employer" exception to the civil rights laws or Rule 23. Large classes of

employees of large corporations, including Google, have been certified post-*Dukes*. *See, e.g.*,

*Ellis*, No. CGC-17-561299 (Cal. Sup. Ct. May 27, 2021) (10,800 class) (Ex. A; ¶ 34);

*McReynolds*, No. 05-cv-6583 (N.D. Ill. Dec. 6, 2013) (1,433 class); *Ellis v. Costco Wholesale*

*Corp.*, No. 3:04-cv-3341 (N.D. Cal. 2012), ECF 755 at 6 (1,300 class members).

### 3.   Predominance Is Not Required for the Rule 23(b)(2) & Rule 23(c)(4) Classes

Further, Google ignores that Plaintiffs are not required to demonstrate predominance for

their Rule 23(b)(2) and Rule 23(c)(4) classes. First, Plaintiffs seek both a monetary damages

class under Rule 23(b)(3) *and* an injunctive/declaratory relief class under Rule 23(b)(2) (¶ 113).

Indeed, civil rights claims where plaintiffs seek to end an employer's "unlawful, class-based

discrimination," are "prime examples" of appropriate Rule 23(b)(2) class actions. *Amchem*

*Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Predominance is not a requirement for

certification under Rule 23(b)(2). Second, Plaintiffs alternatively pled a class under Rule

23(c)(4), which permits courts to proceed with class treatment of common issues. *Valentino v.*

*Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Plaintiffs intend to seek issue

certification for class-wide issues, such as liability and common damages questions. *See*

*McReynolds*, 672 F.3d at 490 (reversing denial of class certification under Rules 23(b)(2) and

(c)(4) on central liability issue of whether policy "causes racial discrimination"). Of course, at

the pleading stage it is premature to determine which procedural vehicle bests fits this case,

further highlighting the inappropriateness of Google's motion to strike.

### VI.   Google Has Failed To Identify Any Conspicuous Pleading Defect Precluding Certification Of A Hiring Class

Google also seeks (at 18-19) to strike, on the face of the pleadings and prior to discovery,

Plaintiffs' hiring class in its entirety. The flaws in Google's hiring-class arguments echo the

flaws in its employee-class arguments, and the Court should reject them. Google employs a

uniform, company-wide hiring process to screen, interview, evaluate, and ultimately hire

candidates that discriminates against Black applicants. (¶ 21) Under these corporate policies,

Google disproportionately screens out and assigns lower scores to Black applicants than

PLS.' RESP. IN OPP. TO DEF.'S
MOT. TO DISMISS AND STRIKE
4:22-cv-01735-YGR

similarly qualified and even less qualified non-Black applicants, among other discriminatory practices. (¶¶ 21, 93–94, 99–100) Google relies on factors and processes that disadvantage Black applicants and hold them to differential and higher standards than non-Black applicants. (¶¶ 20–21) Indeed, even when Black applicants "pass" the initial screens and interviews, Google employs discriminatory "culture-fit" evaluations and interviews to deny them employment, a racial dog whistle laden with racial bias and stereotypes. (¶¶ 5, 21, 99–100, 102)

First, Google appears to acknowledge (at 18-19) that, at minimum, Plaintiffs adequately pled, and supported with specific and serious factual details, that Google discriminates in "interviewing and post-interview job selection." Indeed, Plaintiffs alleged that Google still lags far behind its industry counterparts in hiring of Black candidates. (¶ 20) In her role, Curley observed that Google subjected Black candidates to "to more stringent hiring practices than non-Black candidates," including hazing them with inappropriate interview questions and subjecting them to additional, racist, "culture-fit" or "Googlyness" interviews. (¶ 41) Aweh—an associate director of a healthcare facility with a master's degree and a decade-plus as a licensed clinical social worker—was told after four interviews she lacked sufficient "experience" and her applications for 10 other positions were summarily denied. (¶¶ 91-94) And Thomas, a diversity recruiter and career coach with 20-plus years of experience, made it through multiple rounds of interviews until Google added a "culture-fit" interview to assess her "Googlyness." Google then rejected her application for lack of "Googlyness," to the shock of Google's recruiter, who had identified Thomas as a "perfect candidate" for the position. Ultimately, Thomas obtained a different job, where she tried to place numerous qualified Black candidates at Google—but all of them were rejected under Google's discriminatory hiring process. While most Black candidates' applications were summarily rejected, the few that made it to interviews were subjected to "culture-fit" interviews due to "lingering questions" about their candidacy, and then rejected, just like Thomas. (¶¶ 98-102) In sum, Plaintiffs more than adequately pleaded facts supporting their claim that Google engages in hiring discrimination against Black candidates, and there is no basis for summarily striking their class allegations under Rule 12(f).

Second, as with the employee class, Google argues that the hiring class should be stricken because Google is too big and receives too many job applications. *See* Section V.E, *supra*. But Google's unsupported speculation about the size or manageability of the potential class is not a basis for striking the class allegations on the pleadings. *See Briseno*, 844 F.3d at 1124-26 (no "administrative feasibility" prerequisite for class certification); *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014) ("Since *Dukes* and *Comcast* were issued, circuit courts including [the Ninth Circuit] have consistently held that statistical sampling and representative testimony are acceptable ways to determine liability . . . ."); *Tyson Foods*, 577 U.S. at 454-59 (rejecting employer's argument for categorical restrictions on the use of statistical or representative evidence to prove liability in class proceedings and affirming class certification).

Third, as with the employee class, Google quibbles with the scope of Plaintiffs' class definition. *See* Section V.B, *supra*. As one court aptly explained, "Plaintiffs deserve the chance to develop the facts surrounding their class definition—and if necessary, the class definition itself—through class discovery." *Moussouris v. Microsoft Corp.*, No. 15-cv-1483, 2016 WL 4472930, at *4 (W.D. Wash. Mar. 7, 2016); *see also Ruiz Torres*, 835 F.3d at 1136-39; *In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d at 615-16.

Finally, Google suggests (at 19) that it may not be aware of job applicants' races, asking the Court to make an improper and unwarranted inference in the moving party's favor. *See Slovin*, 2016 WL 5930631, at *2; *Simpson*, 2012 WL 6025772, at *4. The Named Plaintiffs more than adequately pleaded that Google was actively engaged in "diversity recruiting" and aware of their race, when they were subjected to numerous interviews, including extra "culture-fit" interviews to assess their "Googlyness." Google's half-hearted speculation about the screening process provides no basis for dismissing or striking Plaintiffs' class hiring allegations.

## VII.   Google Identifies No Basis To Dismiss Plaintiff Curley's New York Claims

Google argues that Curley's New York claims should be dismissed based on Google's statute of limitations affirmative defense. However, once again, Google ignores the law governing its procedural argument. "Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of

PLS.' RESP. IN OPP. TO DEF.'S
MOT. TO DISMISS AND STRIKE
4:22-cv-01735-YGR

the complaint." *Asarco, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (holding that dismissal based on statute of limitations defense was inappropriate). Google's own argument demonstrates that no "obvious bar to securing relief" exists. Google acknowledges (at 19-20) that Curley's New York claims were tolled beginning in October 2020, and that therefore her New York claims are timely and valid with respect to events occurring between October 2017 and December 2018, when she left New York. (¶¶ 38, 160) Google's suggestion (based on irrelevant New York district court cases[12]) that Curley had to plead around Google's affirmative defenses and identify specific dates that specific conduct occurred during the year-plus actionable time period is wrong. *Asarco*, 765 F.3d at 1004; *see also Jones v. Bock*, 549 U.S. 199, 215-16 (2007) (recognizing that plaintiffs have no affirmative obligation to plead around an affirmative defense and that dismissal is appropriate only if the allegations "suffice to establish" the defense). Similarly, the fact that Curley worked in New York for over a year during the actionable time period and alleged that Google discriminated against her "throughout her tenure" sufficiently demonstrates the Court's jurisdiction over her New York claims. (¶¶ 39-40)

Further, Google is wrong that any claim based on her pay level is "time-barred." Curley alleged that the under-leveling continued throughout her tenure and that she never received a merit pay increase or promotion. (¶ 39) In addition, the Ledbetter Act applies to her pay-based claims under the NYSHRL and NYCHRL, rendering those claims timely, as she received many paychecks infected by Google's discriminatory pay practices during the actionable time period. *See Husser v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 253, 263-65 (E.D.N.Y. 2015).

Finally, Google argues that Curley's pay discrimination allegations were insufficiently pled because she failed to identify a comparator. But it is axiomatic that, to survive a Rule 12(b)(6) motion, a complaint alleging employment discrimination "need only contain a short and

---

[12] The Federal Rules of Civil Procedure provide the pleading standard for cases in federal courts, and Google's authority applying New York's heightened pleading standard should be disregarded. *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 273–74 (N.D. Cal. 2015) (holding California's heightened pleading standard for punitive damages irreconcilably conflicted with Rule 8 and applying federal notice pleading at motion to dismiss); *German v. Mercedes-Benz, LLC*, No. 2:21-cv-09587, 2022 WL 1407944, at *1 (C.D. Cal. Feb. 14, 2022) (noting that "a federal court sitting in diversity applies federal procedural law and state substantive law" and that "the pleading standards under the federal rules are procedural").

plain statement under Rule 8;" a plaintiff alleging employment discrimination need not set forth a *prima facie* case of discrimination in the complaint. *Yoshikawa*, 41 F.4th at 1119; *accord Swierkiewicz*, 534 U.S. at 509, 512-13. Plaintiffs alleged that Google has a corporate practice of assigning levels to all its employees, and that Google considers all employees at the same level, regardless of location, to perform substantially equal or similar work. (¶ 24) Despite Curley's master's degree and five years of professional work experience corresponding to a Level 5 in Google's pay system, Google assigned her to a Level 3—an "entry-level post-bachelor's degree" pay level—and never changed it or promoted her during her six years at the company. (¶¶ 24, 39) Accordingly, Curley pleaded much more than was necessary to support a plausible inference that Google underpaid her based on her race.[13]

## VIII. Aweh States Individual And Class Hiring Claims Based On Google Rejecting Her New York And California Applications

Google's arguments (at 22–24) that Aweh cannot invoke, and failed to state a claim under, California and New York law for its discriminatory failure to hire her for positions in those states should be rejected. Plaintiffs can invoke FEHA for conduct "occur[ring] in California" or that was "ratified by decision makers or participants" there. CAL. CODE REGS. tit. 2, § 11008; *Roger-Vasselin v. Marriott Int'l, Inc.*, No. 04-cv-4027, 2006 WL 2038291, at *8 (N.D. Cal. July 19, 2006). The hiring policies Plaintiffs challenge were developed, administered, and monitored from Google's California headquarters. (¶ 19) Aweh alleges that pursuant to its company-wide discriminatory hiring practices, Google denied her jobs because of her race, including in California. (¶¶ 20–21, 91, 94) It is more than plausible that the decision to reject her for a California-position occurred in California, where Google's policies emanated from and where the jobs were located. Aweh does not ask the Court to apply FEHA extraterritorially,

---

[13] Both *Cruz v. SEIU Loc. 32BJ*, No. 19-cv-11836, 2021 WL 3604661 (S.D.N.Y. Aug. 12, 2021) and *Henderson v. Physician Affiliate Grp. of New York P.C.*, No. 18-cv-3430, 2019 WL 3778504 (S.D.N.Y. Aug. 12, 2019) apply a pleading standard that is not recognized in this Circuit. The Ninth Circuit considered and rejected the "Second Circuit's application of the *McDonnell Douglas* presumption at the pleading stage as contrary to Supreme Court precedent." *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1137 (9th Cir. 2019). Curley is not required to include allegations like the existence of a comparator, that would establish a prima facie case of discrimination. *Swierkiewicz*, 534 U.S. at 511–12; *Austin*, 925 F.3d at 1137 (*Swierkiewicz* controls employment discrimination pleading standard); *Yoshikawa*, 41 F.4th at 1119 (same).

PLS.' RESP. IN OPP. TO DEF.'S
MOT. TO DISMISS AND STRIKE
4:22-cv-01735-YGR

rather, seeks to apply California law to California conduct. Further, Aweh meets Rule 8's notice pleading standards by alleging Google discriminated against her through its company-wide policies and practices. *See Ali v. Amazon.com, Inc.*, No. 18-cv-4086, 2018 WL 11467270, at *3-4 (N.D. Cal. Aug. 22, 2018) (plaintiff stated FEHA hiring claim alleging employer "systematically treats" some races "more favorably than other[s]" through "biased employment practices").

Similarly, Aweh may invoke New York law because Google's discrimination impacted potential New York employment. As Google's authority provides, "when non-resident plaintiffs allege that that they were not hired for a job in New York City on a discriminatory basis, the impact requirement for both the NYSHRL and NYCHRL is met." *Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*, No. 19-cv-6034, 2019 WL 6916099, at *4 (S.D.N.Y. Dec. 19, 2019); *see also Anderson v. HotelsAB, LLC*, No. 15-cv-712, 2015 WL 5008771, at *3 (S.D.N.Y. Aug. 24, 2015). Further, Aweh again meets Rule 8's notice pleading standards with thorough allegations of Google's discriminatory hiring practice.[14] *Ali*, 2018 WL 11467270, at *3-4. Courts apply the same standard to both NYSHRL and Title VII claims (and an even lesser standard to NYCHRL ones), and, tellingly, Google does not even attempt to dismiss Aweh's Title VII claim. *See Taylor v. City of New York*, 207 F. Supp. 3d 293, 303-04 (S.D.N.Y. 2016).

## IX.   The Court Should Not Alter The Class's Temporal Scope

Plaintiffs seek to represent a class of Black Google employees from March 18, 2018 through present based on § 1981's four-year limitation period. 28 U.S.C. § 1658; *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1006 (9th Cir. 2011). This is a sensible definition, as all putative employee class members have § 1981 claims, including those who also have Title VII claims.[15] Google asks the Court to "strike" the class definition to reflect the fact that Title VII's limitations period is shorter than § 1981's. Given that the class definition is temporally appropriate with respect to the § 1981 claim, as Google concedes, it would only introduce

---

[14] As it does with Curley's New York claims, Google again relies on authority applying a Second Circuit pleading standard explicitly rejected by the Ninth Circuit. *See supra* n.13.
[15] While the Complaint does not specifically define a temporal scope for the applicant class, Plaintiffs will do so in their motion for class certification consistent with the limitations periods and temporal scope appropriate under federal, New York and California law.

PLS.' RESP. IN OPP. TO DEF.'S MOT. TO DISMISS AND STRIKE 4:22-cv-01735-YGR

confusion to "strike" or alter the class definition now. As the case progresses, and after class discovery, the class definition may be altered as appropriate. *See Ruiz Torres*, 835 F.3d at 1136-39; *In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d at 615-16.[16]

### X.   To The Extent The Court Grants The Motion In Any Part, Plaintiffs Should Be Allowed Leave To Amend

For the reasons discussed above, Plaintiffs submit that Google's Motion should be denied in its entirety. However, in the event that the Court decides to grant the Motion in any part, Plaintiffs respectfully ask the Court for leave to amend. Rule 15(a)(2) establishes that the court should "freely give leave" to amend "when justice so requires." This rule should be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation omitted). "If a court dismisses a complaint, it should give leave to amend unless the pleading could not possibly be cured by the allegation of other facts." *Ugorji v. Cnty. of Lake*, No. 4:20-cv-01448, 2020 WL 3639647, at *8 (N.D. Cal. July 6, 2020) (Rogers, J). This Motion is the first time the Court has considered Plaintiffs' complaint. Plaintiffs first amended the complaint simply to add additional named Plaintiffs and hiring claims and amended once more after administrative exhaustion and Google filed a motion asking the Court to order Plaintiffs to amend before they filed a responsive pleading. (Dkt. 33) To the extent that the Court determines that the Complaint is deficient in any manner, Plaintiffs respectfully submit that justice requires that they be given an opportunity to replead to add additional facts and/or plaintiffs and address the Court's concerns.

Dated: January 11, 2023

Respectfully submitted on behalf of Plaintiffs and those similarly situated,

By:   */s/ Suzanne E. Bish*

---

[16] In *Enoh v. Hewlett Packard Enter. Co.*, No. 17-cv-04212, 2018 WL 3377547, at *13 (N.D. Cal. July 11, 2018), the court dismissed the complaint without prejudice for improper venue. The court also noted that the ADEA and Title VII class definitions went back four years. Plaintiffs here, however, defined only their § 1981 class going back four years. In *Ramirez v. Baxter Credit Union*, No. 16-cv-03765, 2017 WL 1064991 (N.D. Cal. Mar. 21, 2017), plaintiffs proposed a class period of 6 years where the cause of action had only a 1-year statute of limitations. *Id.* at 7. The court granted the motion to strike only to the extent the class period was overbroad, but did not order the class claims in their entirety struck and the case settled shortly thereafter.

Linda D. Friedman (pro hac vice)
Suzanne E. Bish (pro hac vice)
George S. Robot (pro hac vice)
Mark S. Current (pro hac vice)
STOWELL & FRIEDMAN LTD.
303 W. Madison, Ste. 2600
Chicago, Illinois 60606
(312) 431-0888
lfriedman@sfltd.com
sbish@sfltd.com
grobot@sfltd.com
mcurrent@sfltd.com

Ben Crump (pro hac vice)
Nabeha Shaer (pro hac vice)
BEN CRUMP LAW, PLLC
122 S. Calhoun St.
Tallahassee, FL 32301
Telephone: (800) 713-1222
court@bencrump.com

Sam Sani
SANI LAW FIRM
15720 Ventura Blvd., Suite 405
Encino, CA 94612
Tel: (310) 935-0405
ssani@sanilawfirm.com

*Attorneys for Plaintiffs and the Putative Class*

PLS.' RESP. IN OPP. TO DEF.'S
MOT. TO DISMISS AND STRIKE
4:22-cv-01735-YGR