CARSON H. SULLIVAN (*admitted pro hac vice*)
carsonsullivan@paulhastings.com
MADALYN K. DOUCET (*admitted pro hac vice*)
madalyndoucet@paulhastings.com
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C. 20036
Telephone: 1(202) 551-1700
Facsimile: 1(202) 551-1705

Attorneys for Defendant
Google LLC

*(Additional counsel for Defendant Google LLC on next page)*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| APRIL CURLEY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>GOOGLE LLC,<br><br>        Defendant. | CASE NO. 4:22-CV-01735-YGR<br><br>**DEFENDANT GOOGLE'S REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>Courtroom:   1, 1301 Clay Street, 4th Fl., Oakland, CA 94612<br>Judge:      Hon. Yvonne Gonzalez Rogers |

EMILY R. PIDOT (SB# 233241)
emilypidot@paulhastings.com
SARA B. TOMEZSKO (*admitted pro hac vice*)
saratomezsko@paulhastings.com
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
Telephone:  1(212) 318-6000
Facsimile:  1(212) 319-4090

FELICIA A. DAVIS (SB# 266523)
feliciadavis@paulhastings.com
ANKUSH DHUPAR (SB# 307689)
ankushdhupar@paulhastings.com
LINDSEY C. JACKSON (SB# 313396)
lindseyjackson@paulhastings.com
PAUL HASTINGS LLP
515 S. Flower Street
Twenty-Fifth Floor
Los Angeles, California 90071-2228
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

Attorneys for Defendant
Google LLC

1

## <u>**TABLE OF CONTENTS**</u>

I.    Introduction ...................................................................................................... 1

II.   Plaintiffs Have Not Established That Their Overbroad Classes Are Proper. ..................... 2

    A.    Plaintiffs' Authorities Demonstrate That Their Classes Are Overbroad by
        Comparison. ........................................................................................... 2

    B.    Plaintiffs Fail to Address Their Actual Class Conflicts. ............................... 5

    C.    Plaintiffs' Reliance on *Ellis* And *Haggan* Is Factually and Legally Flawed. ......... 7

III.  Plaintiffs Have Not Plausibly Alleged Commonality and Predominance for Their
    Overbroad Classes. .............................................................................................. 8

    A.    Courts May, and Do, Address Class Allegations on a 12(B)(6) Motion. ............... 8

    B.    Plaintiffs' Attempts to Distinguish Google's Authorities Are Unavailing. ............ 8

    C.    Commonality Is Also Lacking for Plaintiffs' Disparate Impact Claims. .............. 10

IV.   Plaintiffs Fail to Adequately Address the Overbreadth of Their Nationwide Hiring
    Class. .............................................................................................................. 11

V.    The Court Should Dismiss Plaintiff Curley's New York Claims. ..................................... 12

VI.   The Court Should Dismiss Plaintiff Aweh's State Law Claims. ...................................... 14

VII.  Conclusion ....................................................................................................... 15

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ali v. Amazon.com, Inc.*,
   No. 18-cv-04086-NC, 2018 WL 11467270 (N.D. Cal. Aug. 22, 2018) ......................... 13, 15

*Alvarado v. Wal-mart Assocs, Inc.*,
   CV 20-1926, 2020 WL 6526372 (C.D. Cal. Aug. 7, 2020)....................................................... 8

*Austin v. Univ. of Oregon*,
   925 F.3d 1133 (9th Cir. 2019)............................................................................................... 14

*Brand v. Comcast Corp.*,
   302 F.R.D. 201 (N.D. Ill. 2014)........................................................................................... 4, 5

*Brown v. Nucor Corp.*,
   785 F.3d 895 (4th Cir. 2015).................................................................................................... 4

*Camacho v. Control Grp. Media Co., LLC*,
   No. 3:21-cv-1954, 2022 WL 3093306 (S.D. Cal. July 18, 2022)......................................... 2, 3

*Chen-Oster v. Goldman Sachs & Co.*,
   325 F.R.D. 55 (S.D.N.Y. 2018) ............................................................................................... 4

*Chen-Oster v. Goldman Sachs, Inc.*,
   251 F. Supp. 3d 579 (S.D.N.Y. 2017)................................................................................... 13

*Dodd-Owens v. Kyphon, Inc.*,
   No. C 06-3988, 2007 WL 420191 (N.D. Cal. Feb. 5, 2007).................................................. 15

*Donaldson v. Microsoft Corp.*,
   205 F.R.D. 558 (W.D. Wash. 2001) ........................................................................................ 5

*Ellis v. Costco*,
   285 F.R.D. 492 (N.D. Cal. 2012)........................................................................................... 10

*Ellis v. Google, Inc.*,
   No. CGC-17-561299, 2017 WL 8809439 (Cal. Sup. Ct. Dec. 4, 2017) .................................. 7

*Fairley v. McDonald's Corp.*,
   No. 20-CV-02273, 2021 WL 3054804 (N.D. Ill. July 20, 2021)............................................. 3

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.*,
   No. SACV 14-1093, 2015 WL 12912337 (C.D. Cal. Mar. 16, 2015) ...................................... 8

*Friends of Yosemite Valley v. Kempthorne*,
   520 F.3d 1024 (9th Cir. 2008)................................................................................................ 10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Gonsalves v. Infosys Techs., LTD.*,
  No. C-09-04112 MHP, 2010 WL 1854146 (N.D. Cal. May 6, 2010) .................................... 15

*Harris v. City of Chicago*,
  Nos. 96 CV 3406, 96 CV 7526, 1998 WL 59873 (N.D. Ill. Feb. 9, 1998) ............................ 10

*Heldt v. Tata Consultancy Servs.*,
  132 F. Supp. 3d 1185 (N.D. Cal. 2015) ................................................................ 3

*Holloway v. Best Buy Co.*,
  No. C 05-5056 PJH, 2009 WL 1533668 (N.D. Cal. May 28, 2009) ...................................... 14

*Hughes v. WinCo Foods*,
  No. 11-cv-0644, 2012 WL 34483 (C.D Cal. Cal. Jan. 4, 2012) ............................................ 6

*In re Hyundai and Kia Fuel Economy Litig.*,
  926 F.3d 539 (9th Cir. 2019) ................................................................................ 7

*Johnson v. United Cont'l Holdings, Inc.*,
  No. C-12-2730 MMC, 2013 WL 1758760 (N.D. Cal. Apr. 24, 2013) .................................. 11

*Kevari v. Scottrade, Inc.*,
  No. CV 18-819-JFW(GJSx), 2018 WL 6136822 (C.D. Cal. Aug. 31, 2018)................. 8, 9, 11

*King v. US Local 91*,
  No. 2:19-CV-01115-KOB, 2020 WL 4003019 (N.D. Ala. July 15, 2020)........................ 9, 10

*Lowe v. City of Monrovia*,
  775 F.2d 998 (9th Cir. 1985), *amended*, 784 F.2d 1407 (9th Cir. 1986) ............................... 10

*Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*,
  627 F. Supp. 2d 1187 (E.D. Cal. 2009) ................................................................ 12

*Mendez v. H.J. Heinz Co., L.P.*,
  No. CV 12-5652-GHK, 2012 WL 12888526 (C.D. Cal. Nov. 13, 2012) ................................ 8

*Moussouris v. Microsoft Corp.*,
  No. C15-1483JLR, 2016 WL 4472930 (W.D. Wash. Mar. 7, 2016)...................................... 12

*Moussouris v. Microsoft Corp.*,
  No. C15-1483JLR, 2018 WL 3328418 (W.D. Wash. June 25, 2018), *aff'd*, 799
  F. App'x 459 (9th Cir. 2019) ...................................................................................... 5, 6

*Pedroza v. Ralph Lauren Corp.*,
  No. 19-CV-08639 (ER), 2020 WL 4273988 (S.D.N.Y. July 24, 2020) ................................ 13

*Resnick v. Hyundai Motor Am., Inc.*,
  No. CV 16-00593-BRO, 2017 WL 1531192 (C.D. Cal. Apr. 13, 2017) ................................ 6

*Rodas v. Monetary Mgmt. of Cal., Inc.*,
  No. 2:14-CV-01389-TLN-AC, 2015 WL 1440602 (E.D. Cal. Mar. 27, 2015) ................... 2, 3

*Ruiz Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ........................................................................................ 11

*Sherrard v. Boeing Co.*,
  No. 4:13–CV–1015, 2013 WL 5786642 (E.D. Mo. Oct. 28, 2013) ........................................ 3

*Simpson v. Vantage Hosp. Grp., Inc.*,
  No. 12-CV-04814-YGR, 2012 WL 6025772 (N.D. Cal. Dec. 4, 2012) ................................. 3

*Sulzberg v. Happiest Minds Techs. Pvt. Ltd.*,
  No. 19-CV-05618-SVK, 2019 WL 6493984 (N.D. Cal. Dec. 3, 2019) ................................. 3

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
  505 F. Supp. 2d 609 (N.D. Cal. 2007) ............................................................................. 3

*Wal-Mart Stores v. Dukes*,
  564 U.S. 338 (2011) ...................................................................................................... 10

*Williams v. Adams*,
  No. 1:19-CV-01058, 2022 WL 3084262 (E.D. Cal. Aug. 3, 2022) ..................................... 13

*Woodburn v. City of Henderson*,
  No. 2:19-cv-01488, 2020 WL 5805503 (D. Nev. Sept. 29, 2020) .................................... 2, 3

**Statutes**

Ledbetter Act .................................................................................................................. 14

**Other Authorities**

Rule 12(b)(6) .................................................................................................................... 8

Rule 12(f) ......................................................................................................................... 8

## I.     __INTRODUCTION__

Plaintiffs' Opposition reinforces that the claims they bring cannot proceed on a class-wide basis. Plaintiffs seek to represent nationwide and statewide classes of Black employees across the company in every Google location in the United States, from entry-level positions no Plaintiff ever held (Level 2) to senior employees at Director Level 8. (SAC ¶¶ 24, 104.) These classes include not only alleged victims of discrimination, but the very managers, supervisors, Human Resources professionals, and attorneys in the legal department accused of participating in, implementing, or condoning the alleged discrimination. (*Id.* ¶ 31.)  On behalf of those overbroad classes, Plaintiffs challenge every conceivable employment practice—from hiring, initial job assignments, pay, promotions, and performance management, to demotions, constructive discharges, hostile work environment, and refusal to investigate internal complaints. (*Id.* ¶ 33.) In support of these claims, the SAC offers conclusory allegations of common "practices," and allegations of individualized harm that belie any suggestion that all Plaintiffs (let alone all absent class members) were subject to the same allegedly discriminatory conduct.

Not one of the cases Plaintiffs have cited in their Opposition challenges as many employment practices on behalf of such broad classes in a single complaint. Nowhere in their Opposition do Plaintiffs explain how they can overcome the actual and prevalent class conflicts that are evident on the face of the pleadings and in their own sworn statements to an administrative agency. Plaintiffs have not identified a single case denying motions to dismiss or strike class allegations similar in scope to those they seek to litigate here. Plaintiffs Curley and Aweh likewise fail to establish justiciable state law claims on their own behalf or on behalf of thousands of disparate employees and applicants they claim to represent.

Plaintiffs have already had two opportunities to amend their Complaint to cure these deficiencies. When given yet another opportunity—and after Google identified specific, insurmountable defects in their pleadings—Plaintiffs have refused to do so. As detailed in Google's opening brief and below, Plaintiffs' employee and hiring class claims should be dismissed, as should Plaintiff Curley's and Plaintiff Aweh's individual claims.

## II.    PLAINTIFFS HAVE NOT ESTABLISHED THAT THEIR OVERBROAD CLASSES ARE PROPER.

### A.    Plaintiffs' Authorities Demonstrate that Their Classes Are Overbroad by Comparison.

Decisions granting motions to dismiss or strike class allegations at the pleadings stage are infrequent, but this impermissibly broad complaint presents one of the rare cases warranting dismissal of class claims at the pleadings stage. The cases Plaintiffs cite in their Opposition, while denying dismissal in those instances, in fact confirm that such motions may be granted in certain cases. *See, e.g.*, *Camacho v. Control Grp. Media Co., LLC*, No. 3:21-cv-1954, 2022 WL 3093306, at *11 (S.D. Cal. July 18, 2022) ("Class allegations may be stricken at the pleading stage.") (citing *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975)); *Rodas v. Monetary Mgmt. of Cal., Inc.*, No. 2:14-CV-01389-TLN-AC, 2015 WL 1440602, at *3 (E.D. Cal. Mar. 27, 2015) ("Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, courts have granted motions to strike class allegations.") (citations omitted).

Tellingly, the cases cited by Plaintiffs address much narrower proposed classes, or a more limited scope of challenged conduct. In *Cahill v. Nike, Inc.*, for example, the court denied a motion to strike a putative class limited to female employees at a single location (defendant's headquarters in Oregon) in a limited set of roles (salaried, corporate positions below the level of Vice President). No. 3:18-CV-1477-JR, 2019 WL 2179575, at *1 (D. Or. Feb. 26, 2019), *report and recommendation adopted*, No. 3:18-CV-01477-JR, 2019 WL 2176916 (D. Or. May 16, 2019). Notably, the putative class expressly excluded employees in defendant's retail, finance, legal, and human resources departments. *Id.* That case is nothing like the SAC here, which alleges proposed employee classes that include ***all*** departments and ***all*** jobs, including the legal and human resources departments that Plaintiffs allege are "complicit in Google's pattern or practice of race discrimination and retaliation." (SAC ¶ 31.)

The putative classes in Plaintiffs' other cited cases in section IV.A are similarly more limited in scope, and in no way suggest that such a diverse collection of employees with different experiences, different managers, different jobs, and in different locations can proceed as a class here. *See Woodburn v. City of Henderson*, No. 2:19-cv-01488, 2020 WL 5805503, at *3-4 (D. Nev.

Sept. 29, 2020) (asserting only claims for unpaid overtime on behalf of employees in a single location); *Sulzberg v. Happiest Minds Techs. Pvt. Ltd.*, No. 19-CV-05618-SVK, 2019 WL 6493984, at *3 (N.D. Cal. Dec. 3, 2019) (denying motion to strike class claims brought as to two employment actions only—failure to hire and termination); *Rodas*, 2015 WL 1440602, at *1 (alleging only wage-and-hour violations on behalf of employees in a single state either classified as non-exempt or who separated from employment); *Simpson v. Vantage Hosp. Grp., Inc.*, No. 12-CV-04814-YGR, 2012 WL 6025772, at *1 (N.D. Cal. Dec. 4, 2012) (asserting class claims on behalf of California residents who participated in recorded or monitored telephone conversations with a specific call center); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 613 (N.D. Cal. 2007) (asserting violations of California wage-and-hour law only); *Fairley v. McDonald's Corp.*, No. 20-CV-02273, 2021 WL 3054804, at *3 (N.D. Ill. July 20, 2021) (claims limited to those on behalf of female employees in a position below General Manager at defendant's owned and operated restaurants in a single state); *Sherrard v. Boeing Co.*, No. 4:13–CV–1015, 2013 WL 5786642, at *1 (E.D. Mo. Oct. 28, 2013) (putative classes limited to applicants "who applied to work as a mechanic and/or machinist" in the St. Louis metropolitan area only); *see also Heldt v. Tata Consultancy Servs.*, Am. Compl. (ECF 39), No. 4:15-cv-01696-YGR, at ¶ 67 (N.D. Cal. July 6, 2015) (limiting class to non-Southeast Asian employees who were either not hired or selected, demoted in title and/or responsibilities, or discharged).[1]

As Google noted in its opening brief, demonstrating intent to discriminate for each of the myriad employment actions at issue presents unique challenges in the class action context. This is especially true where, as is the case here, Plaintiffs allege claims under Section 1981, which now requires plaintiffs to both plead and prove race is a "but-for" cause of the alleged discrimination. (Def.'s Br. at 13:20-25 (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1013 (2020).) None of Plaintiffs' cited authorities granted class certification of Section 1981

---

[1] Plaintiffs' string cite also references motions decided on legal grounds wholly distinct from those Google asserts here. *Camacho*, 2022 WL 3093306, at *11 (denying motion to strike class claims where defendant claimed plaintiffs contractually waived their ability to pursue class allegations); *Woodburn*, 2020 WL 5805503, at *3-4 (denying motion to strike allegations "on the basis that some or all absent class members are bound by arbitration provisions"). In *Heldt v. Tata Consultancy Servs.*, 132 F. Supp. 3d 1185 (N.D. Cal. 2015), the defendant did not challenge the scope of the class as facially overbroad.

claims under the standard recently articulated by the Supreme Court.[2]

As to hostile work environment claims, Plaintiffs do not dispute that the court in *Chen-Oster v. Goldman Sachs & Co.*, 325 F.R.D. 55 (S.D.N.Y. 2018), refused to certify those claims precisely because they require "individualized inquiries into each incident of sexual assault, sexual harassment, stereotyping, impunity for male misconduct, and retaliation, to properly consider [the employer's] defenses. . . ." (Def.'s Br. at 14:8-12.) Plaintiffs' attempt to distract from the *Chen-Oster* court's holding on the hostile work environment claims by arguing that the court certified other claims in portions of the decision that Google did not cite. (Pls.' Opp. at 14:7-12.) They also ignore a key distinguishing fact: the certified *Chen-Oster* class was limited to women in just two corporate titles in only three of many divisions (the revenue-producing divisions, as opposed to others such as human resources, legal, and operations, to name a few). *See* 325 F.R.D. at 63. Not only do Plaintiffs' proposed classes here include human resources and legal professionals, as described above, the SAC ***specifically*** sets out allegations against individuals in these functions. (SAC ¶ 31.)

In fact, hostile work environment claims were certified in only two of the 14 cases Plaintiffs cite in section V.E of their brief, where they argue that such claims "have regularly been certified as class actions." (Pls.' Opp. at 15:10-27.) Both are distinguishable. In *Brown v. Nucor Corp.*, 785 F.3d 895, 910 (4th Cir. 2015), the class was limited to "100 class members in a single steel plant in Huger, South Carolina" who "shared common spaces" and "were in regular physical contact" with each other. The hostile work environment class in *Brand v. Comcast Corp.*, 302 F.R.D. 201, 217 (N.D. Ill. 2014), was similarly narrow, consisting of 350 employees who worked at a single facility. That is very different from Plaintiffs' putative classes, which purport to include employees in locations across the country where none of the named Plaintiffs ever worked.[3]

---

[2] The court granted class certification in *Zollicoffer v. Gold Standard Baking, Inc.*, 335 126 (N.D. Ill. 2020), eight days after *Comcast v. NAAAOM*, without addressing the "but-for" causation standard or the *Comcast* decision itself.

[3] Notably, despite certifying the hostile work environment class, the *Brand* court refused to certify plaintiffs' "terms and conditions," pay, promotions, and discipline/termination classes for lack of commonality. *Id.* at 226-31. The *Brand* plaintiffs' statistical and anecdotal evidence—the same type of evidence Plaintiffs claim they will rely on in this case (*see* Pls.' Opp. at 10:18-11:6)—was insufficient because statistical evidence of adverse *outcomes* sheds no light on whether there are

**B.** <u>**Plaintiffs Fail to Address Their Actual Class Conflicts.**</u>

Courts decline to certify expansive classes that include both alleged victims of discrimination and alleged perpetrators. *See, e.g., Moussouris v. Microsoft Corp.*, No. C15-1483JLR, 2018 WL 3328418, at *29 (W.D. Wash. June 25, 2018), *aff'd*, 799 F. App'x 459 (9th Cir. 2019) (denying class certification where "a 'significant number of potential class members' here participated in the very system and the very decisions that are alleged to be discriminatory") (citations omitted); *Donaldson v. Microsoft Corp.*, 205 F.R.D. 558, 568 (W.D. Wash. 2001) ("Since plaintiffs['] allegations about disparate treatment and disparate impact arise directly from the evaluation system at Microsoft, the Court is unable to envision a class which would include both those who implemented the ratings system and those who allegedly suffered under it."). Here, class conflicts are evident and undisputed at the pleading stage, and Plaintiffs cannot possibly overcome them with classwide discovery.

Plaintiff Mayon's sworn statements in her administrative charge attribute specific incidents of discrimination and harassment to her team lead and manager—both fellow class members. (*See* Def.'s Br. at 12:3-16.)[4] Plaintiff Mayon does not dispute that her alleged harassers fall within the expansive class definitions. Instead, Plaintiffs attempt to distinguish applicable case law, *Moussouris*, 2018 WL 3328418, on the ground that **Plaintiff Mayon** did not engage in discrimination. (Pls.' Opp. at 13 n.9.) In *Moussouris*, the district court denied certification of disparate treatment and disparate impact claims challenging a discriminatory performance calibration process, in part because one of the named plaintiffs **and other class members** were managers or leads who participated in the challenged process. 2018 WL 3328418 at *29. The court noted that under those circumstances, the class conflicts appeared "insurmountable." *Id. Moussouris* did not articulate a rule that conflicts arise only when the named plaintiff engaged in

[4] The SAC's attempt to obscure these conflicts by omitting these facts should fail. This Court may take judicial notice of the undisputed fact of these individuals' race. Google's arguments on this issue are set forth in its reply brief in further support of its Request for Judicial Notice, filed herewith. Google notes, however, that none of the cases Plaintiffs cite when urging this Court to constrain its review to the four corners of the SAC actually support that request.

common *reasons* for the disparity. *See* 302 F.R.D. at 227. And, as is evident from the face of the SAC here, "[m]any of the injuries within each of these classes appear, however, to have been the product of individual circumstances and decision making rather than a common policy or decision." *Id.* at 228. (*See also* Def.'s Br. at 14:1-2 (citing *id.* at 5:5-6:22).)

discriminatory conduct.

Plaintiffs' attempt to distinguish *Hughes v. WinCo Foods*, No. 11-cv-0644, 2012 WL 34483, at *7 (C.D Cal. Jan. 4, 2012), is similarly ineffective. There, non-supervisory employees alleged various labor law violations, and sought to represent a class that included the very supervisors accused of implementing the challenged meal break policies. The court denied certification in part because those two groups—non-supervisory employees and supervisors to whom "[p]laintiffs assign partial responsibility for labor law violations"—had conflicting interests. *Id.* Plaintiffs claim that *Hughes* is inapplicable because the named Plaintiffs here presumably include both supervisors and non-supervisors.[5] If that is true, then those named Plaintiffs participated in or implemented Google's allegedly discriminatory policies and practices, and *Moussouris* is directly applicable.

Plaintiffs also ignore the fact that the SAC's allegations themselves establish class conflicts. (Def.'s Br. at 12:1-3.) Plaintiff Curley attributes discriminatory and harassing conduct to her "revolving door" of managers, one of which is a putative class member. (SAC ¶¶ 43, 45.) The expansive classes by definition include employees in the human resources and legal departments, yet the SAC specifically attributes discriminatory conduct to these individuals:

> Complicit in Google's pattern or practice of race discrimination and retaliation is its human resources group, which is ineffective at resolving complaints of discrimination, harassment and retaliation. [...] Google's human resources department and legal department defend discriminators, harassers, and retaliators, and do not take adequate steps to prevent Google from retaliating against Black employees who lodge complaints.

(*Id.* ¶ 31.) Plaintiffs' opposition is silent on this point, and by failing to address it, Plaintiffs have waived any argument to the contrary. *Resnick v. Hyundai Motor Am., Inc.*, No. CV 16-00593-BRO, 2017 WL 1531192, at *22 (C.D. Cal. Apr. 13, 2017) ("Failure to oppose an argument raised in a

---

[5] Plaintiffs' Opposition states: "In *Hughes*—another class certification case decided on a full record—the problem was that none of the named plaintiffs were supervisors, but they sought to represent supervisors nonetheless. *Hughes v. WinCo Foods*, No. 11-cv-0644, 2012 WL 34482, at *7 (C.D Cal. Jan. 4, 2012). That is not the case here, and, in any event, Plaintiffs stand ready to add additional named Plaintiffs as needed." (Pls.' Opp. at 13 n.9.) Nowhere does the SAC allege that any of the named Plaintiffs were supervisors or people managers.

1    motion to dismiss constitutes waiver of that argument.")[6]

2        C.    **Plaintiffs' Reliance on *Ellis* and *Haggan* Is Factually and Legally Flawed.**

3        Plaintiffs cite no authority for their novel theory that class certification in other cases against

4    Google justifies the overbroad class claims here. Even if such legal authority existed—and it does

5    not—it would not apply because Plaintiffs' reliance on class certification in *Ellis v. Google, LLC*

6    and *Haggan v. Google, LLC* is both factually and legally flawed.

7        *First*, the certified class in *Ellis* was much narrower than those Plaintiffs propose here, and

8    was limited to women in California in just six categories of jobs: Software Engineer, Software

9    Manager, Engineer, Program Manager, Sales, and Early Childhood Education positions. *See* Am.

10   Compl., No. CGC-17-561299, at ¶ 2 (Cal. Sup. Ct. Jan. 3, 2018). Additionally, Plaintiffs have

11   neglected to mention the key fact that the Superior Court previously sustained Google's demurrer

12   as to a broader class of "all women employed by Google in California" because the proposed class

13   definition was overbroad. *Ellis v. Google, Inc.*, No. CGC-17-561299, 2017 WL 8809439, at *1

14   (Cal. Sup. Ct. Dec. 4, 2017). As the Court stated, the original class definition "[did] not purport to

15   distinguish between female employees who may have valid claims against Google based upon its

16   alleged conduct from those who do not," and the allegation that "Google implemented a uniform

17   policy of paying *all* female employees less than male employees for substantially equal or similar

18   work" was too conclusory to support a class that broad. *Id.* at *2-3. Given that overbreadth, "it [did]

19   not appear on the face of the complaint that Google's liability [could] be determined by issues

20   common to all members." *Id.* at *3.

21       *Second*, there is no legal basis for Plaintiffs to rely on certification of a settlement class in

22   *Haggan*. "A class that is certifiable for settlement may not be certifiable for litigation if the

23   settlement obviates the need to litigate individualized issues that would make a trial

24   unmanageable." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (en

25   banc). Significantly, the *Haggan* class was limited to employees in a narrower range of job levels

26   _____

27   [6] Plaintiffs' Opposition discusses the inclusion of uninjured class members in a certified class. (Pls.'
     Opp. at 12:27-13:3.) These cases fail to address the issue of class conflicts, but the employee classes
     as pled undoubtedly include more than a *de minimis* number of uninjured individuals; for instance,
28   Plaintiffs include members of Google's "prestigious tech workforce" in a class of employees
     allegedly steered into "lower-prestige roles." (*Compare* SAC ¶ 19 *with id.* ¶ 20.)

located in just **one** state (New York), not every single entry-level to senior-level Black employee across the entire company nationwide, as here. (*See* Pls.' Opp. Exh. B at 11 of 30.)

## III.   PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED COMMONALITY AND PREDOMINANCE FOR THEIR OVERBROAD CLASSES.

### A.   Courts May, and Do, Address Class Allegations on a 12(b)(6) Motion.

Plaintiffs' argument that Rule 12(b)(6) does not permit dismissal of class allegations" is wrong. (Pls.' Opp. at 5:13-20.) Numerous courts within the Ninth Circuit have dismissed class claims at the pleadings stage. *See, e.g.*, *Alvarado v. Wal-mart Assocs., Inc.*, CV 20-1926 DSF (JCx), 2020 WL 6526372, at *2 (C.D. Cal. Aug. 7, 2020) (dismissing class allegations on 12(b)(6) motion); *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, No. SACV 14-1093 AG (ANx), 2015 WL 12912337, at *4 (C.D. Cal. Mar. 16, 2015) (dismissing class claims and noting, "Courts in this district, in reviewing motions to dismiss class action complaints, have applied the *Iqbal/Twombly* standard to class claims"); *Mendez v. H.J. Heinz Co., L.P.*, No. CV 12-5652-GHK, 2012 WL 12888526, at *4 (C.D. Cal. Nov. 13, 2012) (granting 12(b)(6) motion as to class claims; plaintiff failed to plausibly allege challenged policies were implemented on statewide or nationwide basis). Google's motion to dismiss is procedurally proper.[7]

### B.   Plaintiffs' Attempts to Distinguish Google's Authorities Are Unavailing.

In *Kevari v. Scottrade, Inc.*, No. CV 18-819-JFW(GJSx), 2018 WL 6136822, at *1, *7-8 (C.D. Cal. Aug. 31, 2018), the court granted defendants' motion to strike class allegations challenging nearly as many employment actions as Plaintiffs do here (*e.g.*, compensation, assignment, performance evaluation, promotion, discipline, etc.) on behalf of a nationwide class. The court found commonality lacking on the face of the complaint because conclusory allegations of pattern or practice discrimination did not provide the sufficient "glue" to bind class members and produce common answers to the question, "Why was I disfavored?" *Id.* at *7. Just as here, the allegations in that case were of a "hodgepodge" of different policies that required a fact-intensive, individual analysis to determine the *reason* for each of the challenged actions. *Id.* Class treatment

---

[7] Even if the Court concludes that a 12(b)(6) motion is premature, Google also has moved to strike the class allegations pursuant to Rule 12(f). Plaintiffs do not challenge the procedural propriety of a Rule 12(f) motion, only its application. (Pls.' Opp. at 5:1-2.)

1   was therefore inappropriate. *Id.* (*See also* Def.'s Br. at 15:5-16:13.)

2       Plaintiffs do not dispute the *Kevari* complaint failed to plead commonality sufficiently.

3   Instead, Plaintiffs focus their Opposition solely on other purported flaws in the complaint, none of

4   which the court considered when reaching that conclusion. (Pls.' Opp. at 16:3-20.) *See also* 2018

5   WL 6136822, at *7-8 (discussing lack of commonality in pleadings without reference to the flaws

6   enumerated in Plaintiffs' Opposition). Commonality was lacking separate and apart from these

7   defects in the complaint, not because of them. *Id.* at *6 n.4 ("Although the Court granted

8   Defendants' Motion to Dismiss with respect to all of Plaintiff's class claims, the Court also grants,

9   in the alternative, Defendants' Motion to Strike.").[8]

10      Likewise, Plaintiffs also do not address the substance of Google's other persuasive

11  authority, *King v. UA Local 91*, No. 2:19-CV-01115-KOB, 2020 WL 4003019 (N.D. Ala. July 15,

12  2020). There, plaintiffs challenged a host of "corporate policies" including but not limited to

13  "reliance upon procedures and criteria which permit and encourage the incorporation of racial

14  stereotypes and bias of the Defendants' predominantly white managerial staff" on behalf of a

15  nationwide class. *Id.* at *10.[9] The court granted defendant's 12(b)(6) motion, concluding "the sheer

16  variety and inherently discretionary nature of these ostensible practices underscores the lack of

17  commonality" across "hundreds" of decisions. *Id.* Plaintiffs' principal objections to *King* are the

18  court's dismissal of class allegations on a 12(b)(6) motion, which they claim is "clearly not the

19  standard or law in this Circuit," and its characterization of class actions as "an exception to our

20  constitutional tradition of individual litigation." (Pls.' Opp. at 17 n.11.) Not only are 12(b)(6)

21  motions directed to class claims proper, (see section III.A, *supra*), but the Supreme Court has

---

22  [8] Although the *Kevari* plaintiff did not respond to defendants' predominance arguments in her
23  opposition, the decision nonetheless contains an extended discussion regarding the lack of
    predominance on the face of the complaint equally applicable here. 2018 WL 6136822, at *7-8.
24  *Kevari* also rejects Plaintiffs' attempt to frame Google's liability as a common question. (*See* Pl.'s
    Opp. at 18:2-5 ("Here, the central issue in this case (and the questions that predominate) is plainly
25  the issue of liability: whether Google's employment practices have an unlawful disparate impact
    and whether Google engaged in a pattern and practice of race discrimination.").) The Supreme
26  Court rejected that approach in *Wal-Mart Stores, Inc. v. Dukes*. *See* 2018 WL 6136822, at *7 ("'Is
    [the alleged conduct] an unlawful employment practice?' and 'What remedies should I get?'" are
27  not common questions).

28  [9] (*Cf.* SAC ¶ 33(i) (identifying as a common practice "rel[ying] on race and negative stereotypes
    about the abilities and potential of Black employees in making employment decisions").)

---

- 9 -

1  repeatedly noted, "[t]he class action is 'an exception to the usual rule that litigation is conducted

2  by and on behalf of the individual named parties only.'" *See Wal-Mart Stores v. Dukes*, 564 U.S.

3  338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).

4      Finally, Plaintiffs attempt to dismiss another of Google's persuasive authorities, *Harris v.*

5  *City of Chicago*, Nos. 96 CV 3406, 96 CV 7526, 1998 WL 59873 (N.D. Ill. Feb. 9, 1998), because

6  in that case, "plaintiffs challenged a 'wide variety of discriminatory practices raised by many

7  different types of' employees." (Pls.' Opp. at 17 n.11.) Yet, that is precisely what Plaintiffs' SAC

8  does, as is evident from the litany of challenged "practices" and the expansive class definitions.

9  That Plaintiffs here refer to these diverse "practices" as "common policies" does not make them so,

10 and "alleged racial discrimination based solely on the class members' membership in a particular

11 group and which manifests itself in a different set of facts for each employee is not enough to satisfy

12 the commonality requirement." 1998 WL 59873, at *7.

13      **C.      Commonality Is Also Lacking for Plaintiffs' Disparate Impact Claims.**

14      Google did not "waive" an argument as to disparate impact. (*See* Pls.' Opp. at 7:8-8:3.)

15 Google clearly argued that differences in Plaintiffs' alleged experiences belie the existence of a

16 common policy or practice, the gravamen of any disparate impact claim. (*See, e.g.*, Def. Br. at

17 12:26-13:12.)[10] Google's opening brief cited cases dismissing both disparate treatment and

18 disparate impact class claims on the pleadings. *See, e.g.*, *King*, 2020 WL 4003019, at *12.

19      Regardless, where plaintiffs rely on the same alleged policies and practices to support a

20 disparate treatment and disparate impact claim (as Plaintiffs do here), challenges to commonality

21 apply with equal force to both. *See Ellis v. Costco*, 285 F.R.D. 492, 531 (N.D. Cal. 2012). This is

22 particularly true where, as here, plaintiffs claim to challenge common "policies," but their specific

23 factual allegations attribute alleged harms to actions by individual managers and coworkers. (*See*

24 Def.'s Br. at 14:1-2.) Furthermore, Plaintiffs' disparate impact arguments clearly are inapplicable

25 to their Section 1981 claims. *See Lowe v. City of Monrovia*, 775 F.2d 998, 1010 n.10 (9th Cir.

26 1985), *amended*, 784 F.2d 1407 (9th Cir. 1986) ("A plaintiff suing under section 1981 may prevail

27

28 [10] Plaintiffs' sole authority—limited to a discussion of appellate briefs and arguments that may be waived on appeal—does not apply here. *Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1033 (9th Cir. 2008).

DEF.'S REPLY IN SUPPORT OF PARTIAL
MOT. TO DISMISS AND MOT. TO STRIKE
4:22-CV-01735-YGR

only by establishing intentional discrimination, *i.e.,* disparate treatment.").

Plaintiffs' Opposition confirms that despite their conclusory allegations and statements to the contrary, their claims are, in fact, disparate treatment claims: "Google is engaged in a pattern or practice of race discrimination **through** a uniform set of company-wide policies and practices that also have a disparate impact on African Americans." (Pls.' Opp. at 2:19-21 (emphasis supplied).) This rather striking admission confirms Plaintiffs have no disparate impact claims at all. Policies that are not race-neutral or administered in an intentionally discriminatory fashion pertain to disparate treatment only, and may not support a disparate impact claim. *See Johnson v. United Cont'l Holdings, Inc.*, No. C-12-2730 MMC, 2013 WL 1758760, at *11 n.14 (N.D. Cal. Apr. 24, 2013), *on reconsideration in part*, No. C-12-2730 MMC, 2013 WL 2252030 (N.D. Cal. May 22, 2013) (alleged policies like "[r]eliance on racial stereotypes in making employment decisions," and "[m]aintenance of largely racially segregated job categories and departments" were not race-neutral and supported only claims for disparate treatment).

## IV.   PLAINTIFFS FAIL TO ADEQUATELY ADDRESS THE OVERBREADTH OF THEIR NATIONWIDE HIRING CLASS.

Plaintiffs' nationwide hiring class—consisting of potentially millions of applicants who applied to **any** position in **any** product area at **any** Google location in the United States—is facially overbroad. Plaintiffs repeatedly allege Google discriminates against **qualified** applicants, but their proposed class includes applicants who lack minimum qualifications. (Def.'s Br. at 18:12-21.) Plaintiffs do not dispute this discrepancy, but argue they can plead an overbroad class now and refine it later. None of their cited cases permit that approach where the class definition is inconsistent with the plaintiffs' own allegations. (Pls.' Opp. at 21:11-16.) *Cf. Kevari¸* 2018 WL 6136822, at *10 (striking class definition including all female managers and managers over 40 where plaintiff's complaint earlier alleged claims on behalf of female managers and managers over 40 "who were . . . replaced"). Moreover, the class definition in *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 (9th Cir. 2016), was not "defined so broadly as to include *a great number* of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct." (emphasis supplied). That is decidedly not the case here, given the volume of applications

1   Google receives each year. Furthermore, as noted in *Moussouris v. Microsoft Corp.*, No. C15-

2   1483JLR, 2016 WL 4472930, at *4 (W.D. Wash. Mar. 7, 2016), Plaintiffs must demonstrate "that

3   discovery is likely to produce substantiation of the class allegations." (quoting *Mantolete v. Bolger*,

4   767 F.2d 1416, 1424 (9th Cir. 1985)). No amount of discovery can possibly support the notion that

5   Google denies positions to unqualified applicants because of race.

6          Plaintiffs also accuse Google of asking the Court to draw an inference in its favor and

7   assume that the company is not aware of applicants' race. (Pls.' Opp. at 21:17-23.) There is a wide

8   conceptual gap between what Google argued and how Plaintiffs have mischaracterized it. As

9   Google stated in its opening brief, "there are no allegations in the SAC identifying when applicants

10  specify their race in the hiring process or suggesting that **initial screeners** have access to this

11  information." (Def.'s Br. at 19:10-11 (emphasis supplied).) That remains true, and on a motion to

12  dismiss, "[c]ourts will not assume that plaintiffs 'can prove facts which [they have] not alleged.'"

13  *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1194 (E.D. Cal. 2009)

14  (dismissing claim for deliberate indifference to student harassment where plaintiffs failed to plead

15  defendant was actually aware of such harassment) (quoting *Associated Gen. Contractors of Cal.,*

16  *Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)). The Court should not read this

17  unalleged fact into the SAC. Nor should it assume that a recruiter's or hiring manager's awareness

18  of Plaintiffs Aweh's and Thomas's race "when they were subjected to numerous interviews"

19  suggests that initial screeners have access to information about the race of every single candidate

20  nationwide, including those who never receive an interview. (Pls.' Opp. at 21:19-22.)[11]

21  **V.     THE COURT SHOULD DISMISS PLAINTIFF CURLEY'S NEW YORK CLAIMS.**

22         Each of Plaintiff Curley's New York claims remain insufficiently pled as either time-barred,

23  lacking subject matter jurisdiction, or failing to plausibly allege she is entitled to relief.

24         Plaintiff Curley's sex and sexual orientation claims should be dismissed because a court

25  lacks subject matter jurisdiction over New York State and City Human Rights Law claims where

26

27  [11] Google also noted the absence of particularized facts alleging discrimination in recruiting, and
    identified allegations in the SAC that suggest the exact opposite—that Google recruited every
28  single one of the Plaintiffs. (Def.'s Br. at 19:2-9.) Plaintiffs do not address this deficiency, choosing
    instead to repeat their allegations about other steps in the hiring process. (Pls.' Opp. at 19:23-21:27.)

- 12 -

the plaintiff fails to allege she felt the impact of the challenged conduct within New York. (*See* Def.'s Br. at 10:23-11:2 (collecting cases).) It is Plaintiff Curley's burden to establish jurisdiction, not Google's to disprove it. *See* 2020 WL 4273988, at *2; *Ali v. Amazon.com, Inc.*, No. 18-cv-04086-NC, 2018 WL 11467270, at *2 (N.D. Cal. Aug. 22, 2018) ("If the moving party relies on facts outside the complaint, . . . the plaintiff will have the burden of proof that jurisdiction does in fact exist.").[12] This, she cannot do. Her agency charge indisputably states that the conduct underlying these claims occurred from February 2019 through September 2020—***after*** she left New York in December 2018. (*See* Def.'s Br. at 6 n.4; SAC ¶ 38.)

Plaintiff Curley's undated allegations of discriminatory, harassing, or retaliatory conduct fail for a similar reason. Her intentional omission of relevant dates precludes this Court from assessing its subject matter jurisdiction over her New York claims. Case law is clear that plaintiffs may not ask the Court to infer jurisdiction where it is not affirmatively pled. (Def.'s Br. at 21:5-7 (citing *Lambui v. Collins*, No. 14-CV-6457 (JS) (AYS), 2015 WL 5821589, at *3 (E.D.N.Y. Sept. 30, 2015)); *see also Williams v. Adams*, No. 1:19-CV-01058, 2022 WL 3084262, at *1 (E.D. Cal. Aug. 3, 2022) ("[J]urisdiction must be shown affirmatively, and that showing cannot be made by drawing from the pleadings inferences favorable to the party asserting it."), *report and recommendation adopted*, No. 1:19-CV-01058, 2022 WL 5187530 (E.D. Cal. Oct. 5, 2022). Unless she affirmatively establishes subject matter jurisdiction with concrete allegations that she experienced discrimination while working in New York, Plaintiff Curley's purposefully ambiguous claims must be dismissed. (*See* Def.'s Br. at 21:5-7 (noting absence of allegations that undated challenged conduct occurred in New York).)

Plaintiff Curley's pay discrimination claims should also be dismissed, but for a different reason. She is a named Plaintiff seeking to represent potentially thousands of New York-based employees she claims were underpaid because of race, but she asserts no facts to support this

---

[12] Plaintiffs' sole authority to the contrary, *Chen-Oster v. Goldman Sachs, Inc.*, 251 F. Supp. 3d 579 (S.D.N.Y. 2017), articulates the incorrect standard, as later decisions indicate. *See Pedroza v. Ralph Lauren Corp.*, No. 19-CV-08639 (ER), 2020 WL 4273988, at *3 (S.D.N.Y. July 24, 2020).) (the *Chen-Oster* court "used a more lenient legal standard that placed the burden on the defendant to prove 'that there is no possibility that there was an impact in New York' to succeed on a motion to dismiss" inappropriate in the 12(b)(1) context) (citations omitted).

conclusion, *i.e.*, that **anyone** (at her same level or otherwise) earned more than she did for similar work. (Def.'s Br. at 22:8-22.) Plaintiffs' own authority affirmed dismissal of discrimination claims where plaintiffs failed to allege the existence of similarly situated individuals outside the protected class. *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 (9th Cir. 2019) (affirming dismissal based on selective enforcement theory absent "nonconclusory allegations that the male students were treated any differently than similarly situated female students based on sex").

Finally, Plaintiff Curley's initial leveling claim is untimely because she alleges Google placed her in a Level 3 role in 2014, well outside the applicable three-year statutes of limitations. (SAC ¶¶ 38-39; *see also* Def.'s Br. at 20:2-11.) In response, Plaintiffs argue the Ledbetter Act renders this claim timely because Plaintiff Curley "received many paychecks infected by Google's discriminatory pay practices during the actionable time period." (Pls.' Opp. at 22:15-20.) The Ledbetter Act does not apply to discrete employment actions like initial job assignments, however, and the claim remains time-barred. *See Holloway v. Best Buy Co.*, No. C 05-5056 PJH, 2009 WL 1533668, at *7 (N.D. Cal. May 28, 2009) (dismissing untimely initial job assignment claims; "The [Ledbetter Act] establishes that the unlawful employment practice is the payment of a discriminatory salary, not necessarily the original setting of the pay level. . . .")).

## VI.  THE COURT SHOULD DISMISS PLAINTIFF AWEH'S STATE LAW CLAIMS.

Plaintiff Aweh brings New York hiring claims on behalf of herself and others by relying on just two conclusory sentences, asserting she applied for positions in New York, she was not hired or interviewed for those jobs, and those rejections were based on her race. (SAC ¶ 94.) That is the very definition of a bare-bones allegation, as Google's authorities demonstrate. (Def.'s Br. at 22:6-23:6.) Plaintiffs argue that authorities applying New York law are inapposite, but even if that were true, decisions from California federal courts (both affirmed by the Ninth Circuit) also support dismissal. (*See* Def.'s Br. at 23:7-16 (citing *Ali v. Intel Corp.*, No. 18-CV-03981-LHK, 2019 WL 1369926, at *4 (N.D. Cal. Mar. 26, 2019) *aff'd*, 797 F. App'x 325 (9th Cir. 2020) (dismissing state and federal failure-to-hire claims premised on conclusory allegations of national origin discrimination); *Rhodes v. Adams & Assocs., Inc.*, No. 2:16-CV-00494-TLN-KJN, 2018 WL 3913806, at *3 (E.D. Cal. Aug. 14, 2018), *aff'd*, 817 F. App'x 508 (9th Cir. 2020) (dismissing

1   failure-to-hire claim absent allegations that position was filled by someone outside plaintiff's

2   protected class with equal or lesser experience).)[13]

3       As to her FEHA claims, Plaintiff Aweh must allege the challenged conduct took place

4   within California, and "must so state with specificity so that the Court can determine if these actions

5   are sufficient to state a claim under FEHA." *Dodd-Owens v. Kyphon, Inc.*, No. C 06-3988, 2007

6   WL 420191, at *3 (N.D. Cal. Feb. 5, 2007). Plaintiffs argue it was "plausible" the conduct occurred

7   in California "where Google's policies emanated from and where the jobs were located," (Pls.'

8   Opp. at 23:14-24:1), but that approach runs counter to both *Dodd-Owens* and *Gonsalves v. Infosys*

9   *Techs., LTD.*, No. C-09-04112 MHP, 2010 WL 1854146, at *6 (N.D. Cal. May 6, 2010), which

10  dismissed FEHA claims based on general allegations that California personnel "instituted,

11  approved, ratified, affirmed and/or implemented the discriminatory policies."

12      Finally, Plaintiffs do not dispute that they cannot assert state law claims on behalf of a class

13  if they lack justiciable individual claims. (*See* Def.'s Br. at 21:23-22:3, 24:8-12.)

14  **VII.   CONCLUSION**

15      For all of the reasons cited above and in Google's opening brief, the Court should dismiss

16  and/or strike the class claims, and Plaintiffs Curley's and Aweh's class and individual state law

17  claims, without leave to amend. Plaintiffs have had nearly a full year to focus their classes and

18  correct the defects in their New York and California claims, but they have not. Instead, they

19  explicitly seek an amendment to ***expand*** this already overbroad complaint "to add additional facts

20  and/or plaintiffs." (Pls.' Opp. at 25:16-20.) The Court should not give them that opportunity.

21  DATED:  January 27, 2023                      PAUL HASTINGS LLP
                                                   By:    */s/ Carson H. Sullivan*
22                                                        CARSON H. SULLIVAN

23                                                 Attorneys for Defendant
                                                   Google LLC
24

---

[13] Plaintiffs' sole contrary authority does not compel a different result. In *Ali v. Amazon.com*, the
25  plaintiff alleged not only that the employer systematically favored applicants of South Asian and
Indian decent, but also that the positions were actually offered to individuals outside his protected
26  class—the very facts the Opposition argues Plaintiff Aweh need not allege. 2018 WL 11467270, at
*1. To the extent Plaintiff Aweh relies on other allegations in the SAC to plausibly suggest she is
27  entitled to relief, the only particularized factual allegations of discrimination in hiring are limited
to interviewing and selection. (Def.'s Br. at 18:22-19:1.) Plaintiff Aweh admittedly was never
28  interviewed for a job in New York or California. (SAC ¶ 94.)