Exhibit D

# Exhibit 2

DocuSign Envelope ID: 7A7C85CF-4BE1-4FE1-963A-4454B2C4FAB9   Case 4:22-cv-01735-KAW   Document 96-4   Filed 08/14/24   Page 3 of 30

EXECUTION VERSION

NEW YORK SUPREME COURT
KINGS COUNTY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SHEREE HAGGAN and EMI NIETFELD on
behalf of themselves and all others similarly
situated,

                                        Plaintiffs,

        v.

GOOGLE LLC,

                                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Settlement Stipulation") is made by and between the Class Representatives (as defined below), individually and on behalf of the Class Members (as defined below) (collectively, "Plaintiffs") on the one hand, and Google LLC ("Google" or "Defendant") on the other (together with Plaintiffs, "the Parties"), to fully and completely settle the above-captioned litigation, *Haggan, et al. v. Google LLC* (the "Class Litigation");

WHEREAS, on or about September 22, 2020, counsel for Plaintiffs notified Defendant of their intent to file a class action lawsuit challenging Google's pay, promotion, leveling, and performance calibration practices on behalf of employees of color and female employees working for the Alphabet family of companies in New York State ("Demand Letter");

WHEREAS, on or about October 28, 2020, counsel for the Parties executed an initial agreement to toll the statutes of limitations for the Class Representatives and certain putative class members, and thereafter amended their tolling agreement to toll the statutes of limitations for claims under federal, New York State, and local law asserted in the Demand Letter by:
(i) Class Representatives and women employed at levels 3 through 7 from October 15, 2014;
(ii) Black and Latin-X individuals employed at levels 3 through 7 from October 15, 2017; and
(iii) Native American individuals employed at levels 3 through 7 from April 22, 2018;

WHEREAS, on or about February 1, 2021, counsel for the Parties entered into a mediation confidentiality agreement to facilitate the exchange of information relevant to the Demand Letter;

WHEREAS, over the course of the following months, Google produced documents concerning its policies and processes, and employment data related to Class Members;

LEGAL_US_E # 167338876.1

Case 4.22-cv-01735-RAW    Document 96-4    Filed 08/14/24    Page 4 of 30

WHEREAS, on or about May 26, 2021, counsel for the Parties exchanged confidential mediation statements;

WHEREAS, on or about June 2, 2021, the Parties participated in the first session of a mediation, which was conducted by experienced JAMS mediator Dina R. Jansenson, Esq.;

WHEREAS, after the June 2, 2021, mediation, the Parties exchanged additional data and information concerning the Parties' statistical models for potential damages;

WHEREAS, on or about August 5, 2021, the Parties participated in a second session of mediation conducted by Ms. Jansenson;

WHEREAS, after the August 5, 2021, mediation, the Parties continued to explore potential resolution and exchanged monetary demands and proposals for programmatic relief;

WHEREAS, on April 21, 2022, the Parties participated in a third session of mediation conducted by Ms. Jansenson;

WHEREAS, at the April 21, 2022, mediation session, the Parties reached a settlement of the claims of Class Representatives and Class Members and executed a settlement term sheet;

WHEREAS, Class Representatives have asserted claims alleging violations of federal and New York State equal pay laws and Title VII and its state and local equivalents in this Class Litigation;

WHEREAS, Google denies any wrongdoing or violation of any federal, state, or local laws in connection with the claims alleged, and denies that it is liable or owes damages to anyone with respect to the alleged facts or threatened causes of action which were or could have been asserted in the Class Litigation or in any other action involving similar claims;

WHEREAS, to avoid uncertainty—including the possibility that the Class Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable; that any recovery would not occur for several years; and that there would be a risk of future decertification if certification was granted—and the expense and burdens of further litigation, after substantial, arms-length settlement negotiations, the Parties now desire to resolve the Class Litigation; and

WHEREAS, counsel for Plaintiffs and the Class Representatives believe that the terms of the Settlement Stipulation are fair, reasonable, and adequate;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Settlement Stipulation, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Class Litigation on the following terms and conditions:

1.    **Definitions.**  As used in this Settlement Stipulation, the following terms have the following meanings:

1.1     **"Attorneys' Fees and Costs"** means the amount to be paid to Class Counsel pursuant to Class Counsel's motion and subject to the Court's approval and the limitations described in Section 7 below. Attorneys' Fees and Costs includes all attorneys' fees and expenses incurred to date and to be incurred in documenting the Settlement, securing trial and appellate court approval of the Settlement, attending to the administration of the Settlement, and obtaining a dismissal of the Class Litigation, but not including litigating alleged non-compliance with the programmatic relief terms of this Settlement Stipulation.

1.2     **"Class and Collective Action Complaint"** means the complaint filed in the Class Litigation.

1.3     **"Class Counsel"** means Outten & Golden LLP, Baker Curtis & Schwartz, P.C., and Roche Freedman LLP.

1.4     **"Class Litigation"** means *Haggan, et al. v. Google LLC*, to be filed in New York Supreme Court for Kings County.

1.5     **"Class Members" or "Class"** means the Gender Class Members and the Race Class Members, together.

1.6     **"Class Representatives"** means Sheree Haggan and Emi Nietfeld, the named Plaintiffs in the Class Litigation.

1.7     **"Court"** means the New York Supreme Court for Kings County.

1.8     **"Effective Date"** means: (i) if no appeal is taken from the Final Approval Order, thirty (30) days after the Court's entry of the Final Approval Order; or (ii) if an appeal is taken from the Final Approval Order, the date on which all such appeals (including, *inter alia*, petitions for rehearing or reargument, petitions for rehearing *en banc*, and petitions for *certiorari* or any other form of review) have been finally disposed and can no longer be appealed or reviewed.

1.9     **"EPA Collective"** means the collective certified by the Court for the sole purpose of effectuating this Settlement and the release of Gender Class Members' alleged claims under the federal Equal Pay Act.

1.10     **"Final Approval Date"** means the date the Court enters the Final Approval Order.

1.11     **"Final Approval Motion"** means all papers necessary to obtain final approval of this Settlement and dismissal of the Class Litigation with prejudice.

1.12     **"Final Approval Order"** means the Court's order entered after the Final Approval Hearing, approving and granting final approval of the terms and conditions of this Settlement Stipulation, distribution of the Settlement Checks and Service Payments, and dismissal of the Class Litigation with prejudice.

DocuSign Envelope ID: 7F7EB2AA-0DE2-4FD5-A2D8-DAA9E01AB47C
Case 4:22-cv-01735-KAW    Document 96-4    Filed 08/14/24    Page 6 of 30

1.13    **"Final Approval Hearing"** means the final hearing before the Court on Plaintiffs' motion requesting approval of the Settlement, payment of Attorneys' Fees and Costs, Settlement Administrator Fees and Costs, and the Service Payments, and dismissal of the Class Litigation with prejudice.

1.14    **"Gender Class Members"** means all individuals identified as female in Google's records and employed in a Qualified Position from October 15, 2014, through the Preliminary Approval Date.

1.15    **"Gender Claims"** means any suits, actions, causes of action, complaints, charges, grievances, claims, rights, demands, debts, losses, damages, punitive or statutory damages, penalties, expenses, obligations and/or liabilities arising from alleged gender-based employment discrimination relating to pay, leveling, promotions, or performance calibration under any federal, state or local law, including but not limited to the Federal Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); New York Equal Pay Law, as amended, Labor Law § 194 ("NY EPL"); the New York State Human Rights Law, Executive Law §§ 296 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL").

1.16    **"Google's Counsel"** means Paul Hastings LLP.

1.17    **"Gross Settlement Fund"** means the maximum payment of twenty-two million dollars and no cents ($22,000,000.00) to be made by Google to fund the Qualified Settlement Fund. The Gross Settlement Fund is inclusive of payment for (1) all settlement payments to Participating Class Members eligible for settlement payments; (2) the Service Payments (if any are awarded by the Court); (3) Class Counsel Attorneys' Fees and Costs; and (4) the Settlement Administrator Fees and Costs.

1.18    **"Individual Settlement Amount"** means the estimated proportionate share of the Net Settlement Fund for each Class Member as determined by the Settlement Administrator pursuant to the formula set forth in Section 5 below.

1.19    **"Net Settlement Fund"** means the Gross Settlement Fund less the amount of Attorneys' Fees and Costs, Settlement Administrator Fees and Costs, and Service Payments approved by the Court, and shall be the amount available for Participating Class Member Payments, and Participating Class Members' share of payroll taxes. Class Members will also be responsible for the employees' share of income and payroll taxes as described in Sections 11.10 and 11.10.5 below.

1.20    **"Notice Form"** means the Court-approved notice form attached as Exhibit A.

1.21    **"Notice Period"** means the later of: (i) the sixty (60) day period beginning immediately after the Settlement Administrator first mails and/or emails the Notice Form to any Class Member; or (ii) forty-five (45) days from the Settlement Administrator re-mailing a Notice Form that was returned as undeliverable (but in

DocuSign Envelope ID: Case 4:22-cv-01735-RAW    Document 96-4    Filed 08/14/24    Page 7 of 30

no event later than one hundred and twenty (120) days after the Settlement Administrator first mails and/or emails the Notice Form).

1.22 **"NY CPLR 901"** means Article 9, Section 901 of the New York Civil Practice Law and Rules.

1.23 "**Participating Class Member**" means a Class Member who does not opt out of the Settlement by returning a valid request for exclusion.

1.24 "**Participating Class Member Payment**" means, for each Participating Class Member, the individual settlement amount calculated by the Settlement Administrator after the Final Approval Date, as described in Section 5 below.

1.25 **"Parties' Counsel"** means Class Counsel and Google's Counsel, together.

1.26 **"Preliminary Approval Date"** means the date the Court enters the Preliminary Approval Order.

1.27 **"Preliminary Approval Motion"** means all papers necessary to obtain preliminary approval of this Settlement and certification (for the sole purpose of Settlement) of the Class and the EPA Collective.

1.28 **"Preliminary Approval Order"** means the Court's order preliminarily approving the terms and conditions of this Settlement Stipulation, and directing the manner and timing of providing Notice Forms to the Class Members.

1.29 **"Programmatic Period"** means the period of two years following the Final Approval Date during which Google agrees to comply with the programmatic relief terms set forth in Section 14.

1.30 **"Qualified Position"** means levels 3 through 7 jobs at Google LLC located in New York State, according to Google's records.

1.31 **"Qualified Settlement Fund" or "QSF"** means the account to be established and administered by the Settlement Administrator, which will consist of Attorneys' Fees and Costs (as defined below in Section 7), Service Payments to the Class Representatives (as defined below in Section 8), Settlement Administrator Fees and Costs (as defined below in Section 9.5), and the Net Settlement Fund (as defined in paragraph 1.19 above).

1.32 **"Race Class Members"** means (1) all individuals who are identified as Black+ and/or Latin-X in Google's records and employed by Google in a Qualified Position from October 15, 2017, through the Preliminary Approval Date; and (2) all individuals who are identified as Native American in Google's records and employed in a Qualified Position from April 22, 2018, through the Preliminary Approval Date.

1.33 **"Race Claims"** means any suits, actions, causes of action, complaints, charges, grievances, claims, rights, demands, debts, losses, damages, punitive or statutory damages, penalties, expenses, obligations and/or liabilities arising from alleged race-based employment discrimination relating to pay, leveling, promotions, or performance calibration under any federal, state or local law, including but not limited to Title VII; the NY EPL; the NYSHRL; and the NYCHRL.

1.34 **"Released Parties"** means Google, along with any of its past, present, and future affiliates, subsidiaries, parent corporations, divisions, joint employers, predecessors, successors, and assigns, and each of their officers, directors, board members, trustees, shareholders, members, managers, employees, agents, attorneys, auditors, accountants, benefits administrators or third-party administrators, experts, contractors, stockholders, representatives, partners, insurers, reinsurers, and other persons acting on their behalf.

1.35 **"Residual Funds"** means any portion of the Net Settlement Fund that is not claimed by Participating Class Members, including any interest accrued on amounts deposited into the QSF, and any check not cashed after the expiration of the ninety (90) days following the date on the face of the settlement checks issued to any Participating Class Members, as described in Section 11.11.

1.36 **"Service Payments"** means the payments to Class Representatives, subject to the Court's approval and the limitations/procedures described in Section 8 below.

1.37 **"Settlement"** means the settlement terms and conditions described in this Settlement Stipulation.

1.38 **"Settlement Administrator"** means the third-party administrator to be jointly designated by counsel for the Parties to administer the Settlement.

1.39 "**Settlement Administrator Fees and Costs**" means the amount to be paid to the Settlement Administrator from the Gross Settlement Fund, for administering the Settlement, subject to the Court's approval and the limitations described in Section 9 below.

1.40 **"Settlement Class Period"** means the time period of October 15, 2014, through the Preliminary Approval Date for Gender Class Members; October 15, 2017, through the Preliminary Approval Date for Black+ and Latin-X Race Class Members; and April 22, 2018, through the Preliminary Approval Date for Native American Race Class Members.

2. <u>**No Admission of Liability and No Concession as to the Merits.**</u>  Google denies that it violated the law in any manner alleged in or related to the Class Litigation.  Google further denies that the Class Representatives or Class Members were harmed as a result of any act, omission, or conduct by Google as alleged in the Class and Collective Action Complaint (or any amendments thereto) or otherwise. The Parties enter into this Settlement Stipulation to avoid the risks, uncertainty, expense and burden of further litigation.  Nothing in this Settlement Stipulation, including its exhibits, shall be

DocuSign Envelope ID: 073A7EC2-8A71-4EF1-B4E8-A98E59A3694EF

construed as, or deemed to be evidence of, an admission of any liability or wrongdoing on the part of Google, or as an admission that a class should be certified for any purpose other than settlement purposes.

3. **Process for Preliminary Approval of Settlement.**

3.1 Within ten (10) days of the complete execution of this Settlement Stipulation, Plaintiffs shall file the Class and Collective Action Complaint with the Court. Once the Court assigns an index number, Plaintiffs shall promptly submit the Preliminary Approval Motion to the Court. In connection with the Preliminary Approval Motion, Plaintiffs will submit to the Court this Settlement Stipulation; the proposed Notice Form attached hereto as Exhibit A; and a proposed Preliminary Approval Order.

3.2 Google shall have reasonable time to review and comment upon the Preliminary Approval Motion, the proposed Preliminary Approval Order and the Notice Form. Class Counsel will provide Google with copies of the Preliminary Approval Motion, proposed Preliminary Approval Order and the Notice Form, and allow seven (7) days for its review and approval. Class Counsel will consider Google's comments to the motion, forms, and order in good faith.

3.3 The proposed Preliminary Approval Order will include the findings required by CPLR 901 and CPLR 902. The Preliminary Approval Motion also will request a Final Approval Hearing for final approval of the Settlement before the Court at the earliest practicable date.

3.4 In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain final approval of the Settlement and dismissal of the Class Litigation that will, among other things: (1) approve the Settlement as fair, adequate and reasonable; (2) incorporate the terms of the releases described in Section 13, and otherwise described herein; (3) dismiss the Class Litigation with prejudice; (4) award Class Counsel fees and costs; and (5) award Service Payments to Class Representatives as more fully set forth herein. Google will not oppose the Preliminary Approval Motion.

3.5 If the Court denies the Preliminary Approval Motion, the Parties will work together, diligently and in good faith, to remedy any issue(s) leading to such denial, and to seek reconsideration of the ruling or order denying approval and/or Court approval of a renegotiated settlement (without any change to the Gross Settlement Fund amount or the scope of the programmatic relief sought herein). If, despite the Parties' efforts, the Court continues to deny the Preliminary Approval Motion, the Class Litigation will resume as if no settlement had been attempted. In that event, the class certified for purposes of settlement shall be decertified (either by the Court *sua sponte* or on a motion by Google, which Plaintiffs agree not to oppose), and any order entered by the Court in accordance with the terms of this Settlement Stipulation shall be treated as vacated, *nunc pro tunc*. Google retains all rights and defenses, including the right to contest whether

DocuSign Envelope ID: Case 4:22-cv-01735-KAW   Document 96-4   Filed 08/14/24   Page 10 of 30

the Class Litigation should be certified and maintained as a collective and/or class action, and to contest the merits of the claims being asserted in the Class Litigation. None of the information provided by Google or Google's Counsel to Plaintiffs or Class Counsel for purposes of negotiating the Settlement may be used by the Plaintiffs, Class Representatives, or Class Counsel in the Class Litigation or any other judicial, administrative, arbitral, or other legal proceeding.

4.   **Motion for Final Approval.**  Plaintiffs will draft the Final Approval Motion and the proposed Final Approval Order. Google shall have reasonable time to review and comment upon the Final Approval Motion and the proposed Final Approval Order.  Class Counsel will provide Google with copies of the draft Final Approval Motion and proposed Final Approval Order, and allow ten (10) days for its review and comment. Class Counsel will consider Google's comments to the motion and proposed order in good faith.

5.   **Determining the Individual Settlement Amounts and Participating Class Member Payments.**  Participating Class Member Payments shall be made from the Net Settlement Fund.

   5.1   First, minimum payments will be allocated to each Participating Class Member. All Participating Class Members will be allocated a minimum payment of $100.00 (the "Minimum Payments").

   5.2   Second, after deducting the Minimum Payments from the Net Settlement Fund, the remaining amount will be divided between Fund A and Fund B, with 80% of the remaining amount allocated to Fund A and 20% of the remaining amount allocated to Fund B.  Fund A will be distributed to Participating Class Members in the Gender Class and Fund B will be distributed to Participating Class Members in the Race Class, in each case based on the number of weeks the Participating Class Member held a Qualified Position during the Settlement Class Period.  An individual who is a Class Member of both the Gender Class and the Race Class will recover from both Fund A and Fund B. Participating Class Members will receive the applicable Minimum Payment plus the amount calculated pursuant to this Section 5. No amount will revert to Google.

   5.3   Within fourteen (14) days of receiving the Class Member information from Google as described in Section 10, the Settlement Administrator will calculate the Individual Settlement Amounts and include that information on each Class Member's Notice Form.  The Notice Form shall specify that this amount is an estimated gross payment to the Class Member subject to all applicable withholdings, and that the actual payment will vary based on several factors including the number of Class Members that exclude themselves from the Settlement.

   5.4   The Settlement Administrator will re-calculate each Participating Class Member Payment after the Final Approval Date as set forth in Section 11.9.1 below.  The Settlement

Administrator will issue checks to Participating Class Members reflecting the Participating Class Member Payment less applicable tax withholdings.

6.  **Funding the QSF.**  The Settlement Administrator will provide Google with wire transfer information within five (5) days after the Final Approval Date.  Within sixty (60) days after the Settlement Administrator provides Google with wire transfer information, Google will transfer the Gross Settlement Fund amount into the interest-bearing QSF set up by the Settlement Administrator in the name of "Haggan and Nietfeld v. Google Settlement Fund."

7.  **Attorneys' Fees and Lawsuit Costs.**

    7.1  Class Counsel shall move for Court approval of one-third (1/3) of the Gross Settlement Fund (seven million three hundred thirty-three thousand three hundred thirty-three dollars and thirty-three cents ($7,333,333.33))  for Attorneys' Fees and Costs as defined in Section 1.1, which shall be deducted from the Gross Settlement Fund.  The Attorneys' Fees and Costs awarded to Class Counsel shall be at the sole discretion of the Court, and this Settlement Stipulation is not contingent upon the Court's approval of such Attorneys' Fees and Costs.  Google shall not oppose Class Counsel's motion for the recovery of Attorneys' Fees and Costs, subject to the limitations herein, and subject to the Parties' agreement that in no event will the gross sum of payments made pursuant to this Settlement Stipulation exceed the total amount of the Gross Settlement Fund as set forth in paragraph 1.17.

    7.2  After depositing the QSF with the Settlement Administrator, Google shall have no additional liability for Class Counsel Attorneys' Fees and Costs.  The Settlement Administrator shall pay the funds to Class Counsel no later than fourteen (14) days after Google funds the QSF pursuant to Section 6.

    7.3  Payments made under this Section shall be reported to all governmental taxing authorities by the Settlement Administrator on IRS Form 1099s.

    7.4  Any portion of the Attorneys' Fees and Costs not approved by the Court shall be included in the Net Settlement Fund and available for distribution to Participating Class Members.

8.  **Service Payments.**

    8.1  Class Counsel shall move for Court approval of the payment from the Gross Settlement Fund of a Service Payment of twenty-five thousand dollars and no cents ($25,000.00) each to Class Representatives Sheree Haggan and Emi Nietfeld.  Such Service Payments shall be at the sole discretion of the Court, and this Settlement Stipulation is not contingent upon the Court's approval of such Service Payments.  Google shall not oppose Class Counsel's motion for the payment of such Service Payments, subject to the limitations herein.

Case 4:22-cv-01735-KAW   Document 96-4   Filed 08/14/24   Page 12 of 30

8.2     Any Service Payments approved by the Court in conjunction with the Settlement shall be paid from the Gross Settlement Fund and shall be in addition to each Class Representative's Participating Class Member Payments. Service Payments shall be distributed by the Settlement Administrator in separate checks mailed to the Class Representatives no later than fourteen (14) days after Google funds the QSF pursuant to Section 6. Service Payments are part of (and not in addition to) the QSF to be funded by the Gross Settlement Fund.

8.3     The Settlement Administrator shall determine the appropriate tax treatment of any Service Payments approved by the Court.

8.4     Any portion of the Service Payments not approved by the Court shall be included in the Net Settlement Fund and available for distribution to Participating Class Members.

9.      **Settlement Administrator Fees and Costs.**

9.1     The Parties shall jointly select and retain a Settlement Administrator, who shall serve as the administrator of the Settlement and perform the services described in this Settlement Stipulation and any other services mutually agreed to by the Parties.

9.2     The Parties, through their counsel, will cooperate in good faith to resolve any disputes regarding the Settlement Administrator's ability or need to perform certain duties under this Settlement Stipulation, and any unresolved disputes shall be referred to the Court. The Settlement Administrator will use the attachments to this Settlement Stipulation and records provided by Google in accordance with this Settlement Stipulation to calculate Individual Settlement Amounts and Participating Class Member Payments, and to send Notice Forms to the Class Members. The Settlement Administrator shall report on an at least bi-weekly basis, in summary or narrative form, the substance of its findings as described in Section 9.4.

9.3     Google shall provide the Settlement Administrator with certain data regarding the Class Members, as described in Section 10, necessary for the Settlement Administrator to perform its duties, provided that the Settlement Administrator first executes an agreement in a form acceptable to Google agreeing to treat the data provided by Google confidentially, and prohibiting it from using or disclosing the information for any purpose except as is necessary to perform its duties under the Settlement Stipulation.

9.4     The Settlement Administrator will provide regular reports to the Parties' Counsel regarding the status of the mailing of the Notice Forms to Class Members, the Participating Class Member Payments administration process, and the distribution of Participating Class Member Payments.

9.5     The Settlement Administrator shall be paid its reasonable and actual fees and costs in connection with the Class Litigation, which shall be paid from the Gross

Settlement Fund.  The Settlement Administrator's fees and cost approved by the Court shall be paid within fourteen (14) days after Google funds the QSF pursuant to Section 6.

10.    **Information to be Provided by Google.** Google shall work cooperatively and in good faith with Class Counsel and the Settlement Administrator to facilitate the Notice Form and Participating Class Member Payment process.  Within twenty (20) days after the Preliminary Approval Date, Google will provide to the Settlement Administrator a list containing the following information, to the extent it exists in Google's records: Class Members' names, gender identity as reflected in Google's records, racial identity as reflected in Google's records, start and end dates of employment in a Qualified Position during the Settlement Class Period, current or last known mailing addresses, personal email addresses where known, and current or last known telephone numbers.

11.    **Notice of Settlement.**

11.1    Form of Notice. Notice to each respective Class Member shall inform them of the Settlement, the claims they are releasing, the formula used to calculate the payments to Class Members under the Settlement, and the Class Members' Individual Settlement Amount calculated pursuant to Section 5.

11.2    Sending the Notice Forms.  Within forty-five (45) days of the Preliminary Approval Date, the Settlement Administrator will send by first class mail and email (to the extent both addresses are available in the data described in Section 10) the Notice Form to each Class Member who can be ascertained from Google's records.

11.3    Website.  In addition to sending the Notice Form as described in Section 11.1and 11.9.3, the Parties agree that the Settlement Administrator will post links to a downloadable version of the Notice Form on a website approved by Parties' Counsel.

11.4    Returned Notices.  If a Class Member's Notice Form is returned with a forwarding address, the Settlement Administrator shall promptly re-mail the Notice to the forwarding address.  If a Class Member's Notice Form is returned without a forwarding address, the Settlement Administrator shall attempt to locate the Class Member in an effort to determine the Class Member's current address, including by calling the Class Member if a telephone number is available.  If a new address is obtained, the Settlement Administrator will promptly re-mail the Notice Form to the Class Member.  If a new address is not obtained from the U.S. Post Office, from the Class Member or, to the extent the information is available, through a standard Level 2 Skip Trace in the manner that the Settlement Administrator customarily performs such skip traces, the Settlement Administrator shall notify the Parties' Counsel, who will confer in good faith, on a case-by-case basis, regarding whether to instruct the Settlement Administrator to conduct further traces.  Any Class Member whose Notice Form is re-mailed shall have the full Notice Period to object to or be excluded from the Settlement.

Case 4:22-cv-01735-KAW    Document 96-4    Filed 08/14/24    Page 14 of 30

No Notice Forms shall be mailed after the Notice Period, unless otherwise agreed by the Parties or ordered by the Court.

11.5    Opting in to the EPA Collective.

11.5.1    With regard to Gender Class Members' EPA claims, Gender Class Members affirmatively opt in to the settlement of their EPA claims by not excluding themselves from the Settlement (as described in 11.8) and cashing a settlement check that bears the legend: "I have received and read the Class Notice in Haggan, et al. v. Google, LLC. By negotiating this check and accepting payment, I (i) consent to join in this lawsuit and the Equal Pay Act collective action, where applicable; (ii) elect to participate in the Settlement; and (iii) agree that I have waived and released the Released Parties from all Released Claims as defined in the Notice Form in this lawsuit. This Release shall become effective on the Effective Date." If the Settlement Administrator is not able to include the entire text of this legend on the settlement check, the Parties will work diligently and in good faith to include the legend on a document attached to and/or accompanying the settlement checks, and incorporate it onto the settlement check by reference.

11.5.2    Within fourteen (14) days of the last day on which any settlement check issued to Gender Class Members expires pursuant to this Settlement Stipulation, the Settlement Administrator shall provide Parties' Counsel with a list of all Gender Class Members who have opted into the EPA Collective by cashing their settlement check. On the same date, or as soon thereafter as reasonably practicable, the Settlement Administrator shall provide Google's Counsel with copies of both sides of all cashed settlement checks.

11.6    Declaration of Settlement Administrator. The Parties shall provide to the Court along with the Final Approval Motion, a declaration by the Settlement Administrator detailing its due diligence and providing proof of mailing and/or emailing the Notice Forms. The declaration will also identify the number of exclusion requests and any objections. The declaration will attach as an exhibit the list of Gender Class Members who have opted into the EPA Collective. Copies of cashed settlement checks will not be filed with the Court.

11.7    Objecting to the Settlement.

11.7.1    Class Members may object to the Settlement by following the instructions described in the Notice Form. To be valid, an objection must be received (via, for example, fax or email) by the Settlement Administrator within the Notice Period. The Settlement Administrator shall stamp the date that it received the written objection on the original document, and send to the Parties' Counsel copies of all objections within two (2) days of their receipt. Class Counsel shall file such

DocuSign Envelope ID: Case 4:22-cv-01735-KAW Document 96-4 Filed 08/14/24 Page 15 of 30

objections with the Court at the time of filing the Final Approval Motion.

11.7.2   The written objection must include the words, "I object to the class settlement in *Haggan, et al. v. Google LLC*" as well as all reasons for the objection. Any reasons not included in the written objection will not be considered by the Court. The written objection must also include the name, address, telephone number, and signature of the Class Member making the objection. The Settlement Administrator will retain the originals of all objections to the Settlement, as well as all envelopes or facsimile cover sheets accompanying the objection, until such time as the Settlement Administrator is relieved of its duties and responsibilities under the Settlement Stipulation.

11.7.3   In the event a Class Member disputes an Individual Settlement Amount under this Settlement Stipulation or contests their membership in the Class, Google will attempt to confirm the information using regularly maintained business records. If Google seeks to dispute the information or claim provided or asserted by the Class Member, it shall submit records and/or information to the Settlement Administrator and the Settlement Administrator shall consider the information submitted by Google and the Class Member before it makes a decision as to payment. In the event of a dispute between the information provided by Google and the Class Member, Google's records will control.

11.7.4   Class Members objecting to the Settlement have no right to appear at the Final Approval Hearing, either in person or through counsel, unless the objector has stated their intention to do so in writing on the written objection when submitted to the Settlement Administrator. Objectors may withdraw objections at any time. The submission of an objection does not constitute the filing of a request for exclusion from the Settlement, and, therefore, objectors continue to be Class Members.

11.8   <u>Exclusions from the Settlement</u>. Class Members may exclude themselves from the Settlement by following the instructions described in the Notice Form. To be valid, an exclusion must be received (via mail, fax or email) by the Settlement Administrator within the Notice Period. The Settlement Administrator shall stamp the date it received the written objection on the original document, and send to the Parties' Counsel copies of all exclusions within two (2) days of their receipt, and Class Counsel shall file such exclusions with the Court at the time of filing of the Final Approval Motion.

The exclusion must include the words "I opt out of the *Haggan et al. v. Google LLC* class settlement" in order to be valid. The exclusion must also contain the name, address, telephone number and signature of the Class Member to be valid. The Settlement Administrator will retain the originals of all requests for exclusion, as well as all envelopes or facsimile cover sheets accompanying such

DocuSign Envelope ID: 2E7E75A3-B4B2-49EF-A8BC-7DFC555C3A45     Case 4:22-cv-01735-KAW     Document 96-4     Filed 08/14/24     Page 16 of 30

requests, until such time as the Settlement Administrator is relieved of its duties and responsibilities under the Settlement Stipulation.

11.9   Payments to Participating Class Members.

11.9.1   Within fourteen (14) days after Google funds the QSF, the Settlement Administrator shall re-calculate each Participating Class Member's Participating Class Member Payment pursuant to Section 5 and mail to each Participating Class Member settlement checks written from the QSF's bank account and equaling the Participating Class Member Payment. Fifty percent (50%) of the Participating Class Member Payment shall be in the form of a non-payroll check from which no payroll taxes or withholdings shall be made. This payment will be reflected on an IRS 1099 Form and its state and local equivalents issued by the Settlement Administrator to the Participating Class Member at the end of the tax year. The remaining fifty percent (50%) of the Participating Class Member Payment shall be in the form of a payroll check from which the Settlement Administrator shall withhold all applicable taxes and withholdings. This payment will be reflected on an IRS Form W-2 and its state and local equivalents.

11.9.2   Unless the Settlement Administrator has received updated contact information, the settlement checks issued pursuant to this Section will be mailed by the Settlement Administrator to the Participating Class Member at the address provided by Google. If a Participating Class Member's settlement checks are returned with a forwarding address, the Settlement Administrator shall promptly re-mail the settlement checks to the forwarding address. If a Participating Class Member's settlement checks are returned without a forwarding address, the Settlement Administrator will perform a standard Level 2 Skip Trace in the manner that the Settlement Administrator customarily performs skip traces in an effort to determine the Participating Class Member's current address, and, to facilitate this process, use the Class Member's Social Security or Tax Identification number, which Google will provide, if necessary. If a new address is obtained, the Settlement Administrator will promptly re-mail the settlement checks to the Participating Class Member. If a new address is not obtained from the U.S. Post Office or through a standard Level 2 skip tracing, the Settlement Administrator shall notify the Parties' Counsel, who will confer in good faith, on a case-by-case basis, regarding whether to instruct the Settlement Administrator to conduct further traces or to contact the Participating Class Member by other means. Participating Class Members, including Participating Class Members whose checks are re-mailed, will have ninety (90) days from the date that appears on the face of the settlement checks to cash them. If a settlement check is returned as undeliverable sixty (60) days or more after it is dated and a new mailing address is obtained, the Settlement Administrator will re-issue the settlement check for that Participating Class Member. No

DocuSign Envelope ID: Case 4:22-cv-01735-RAW    Document 96-4    Filed 08/14/24    Page 17 of 30

checks will be re-issued more than ninety (90) days after the date of the first check to that Participating Class Member.

11.9.3  If a Participating Class Member reports that their settlement check was lost, stolen, or undelivered, the Settlement Administrator shall promptly issue a stop payment order on the original check and, after investigating, issue a new check to such Participating Class Member if appropriate.

11.9.4  The Settlement Administrator will send out reminders via email and First Class U.S. Mail within sixty (60) days after the initial distribution of checks to Participating Class Members reminding them to cash their checks prior to the 90-day deadline.

11.9.5  Each settlement check shall expire ninety (90) days after it is dated and the unclaimed funds shall be part of the Residual Funds and reapportioned to the Participating Class Members on a pro rata basis, unless such redistribution is impractical because the amount remaining in the Residual Settlement Fund is similar or less than the cost of a second distribution. The Settlement Administrator shall inform counsel for the Parties of any uncashed checks no later than seventy (70) days after the relevant check issue date.

11.9.6  The Settlement Administrator shall report to Parties' Counsel all checks mailed and cashed, and the dates thereof.

11.10  <u>Payroll Taxes</u>.

11.10.1  The Settlement Administrator shall act as a fiduciary with respect to the handling, management, and distribution of the Settlement, including the handling of tax-related issues and payments. Specifically, the Settlement Administrator shall be responsible for withholding, remitting, and reporting the employees' share of the payroll taxes from the Net Settlement Fund.

11.10.2  The Settlement Administrator shall be responsible to satisfy from the Net Settlement Fund any and all federal, state, and local employment and withholding taxes due on behalf of Participating Class Members, including, without limitation, federal, state, and local income tax withholding, FICA, FUTA, SUTA, Medicare, and any state and local employment taxes. The Settlement Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs subject to reporting), and any and all taxes, penalties, and other obligations with respect to payments from the Net Settlement Fund not otherwise addressed herein, except that no portion of the Net Settlement Fund will be used to satisfy employer's portion of payroll taxes applicable to the settlement payments designated as wages.

DocuSign Envelope ID: Case 4:22-cv-01735-RAW    Document 96-4    Filed 08/14/24    Page 18 of 30

11.10.3 All taxes (including estimated taxes, interest, or penalties) arising with respect to the income earned by the Gross Settlement Fund, including any taxes or tax detriments that may be imposed on Google with respect to income earned for any period during which the Gross Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes ("Settlement Fund Taxes"), and all expenses and costs incurred in connection with the operation and implementation of this Section 11.10 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) any returns described herein or otherwise required to be filed pursuant to applicable authorities) ("Settlement Fund Tax Expenses"), shall be paid out of the Net Settlement Fund. Further, Settlement Fund Taxes and Settlement Fund Tax Expenses shall be treated as a cost of the administration of the Settlement.

11.10.4 The Parties agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this Section 11.10.

11.10.5 <u>Class Members' & Class Counsel's Responsibility for Any Additional Taxes</u>. Should any government authority determine that all or any part of the payment(s) made under a Form 1099 to any Participating Class Member under this Settlement Stipulation are taxable as wages, that Participating Class Member will be solely responsible for the payment of the Class Member's share of withholding taxes, plus applicable interest. Class Counsel agrees that it will be solely responsible for the payment of any and all taxes due as a result of Class Counsel's receipt of all or any part of the payments made for Attorneys' Fees and Costs under this Settlement Stipulation.

11.11 <u>Residual Funds and Cy Pres.</u> Within twenty (20) days after the expiration of the 90-day period specified in Section 11.9.5, the Settlement Administrator shall inform Parties' Counsel of the portion of the QSF that was needed for Participating Class Member Payments and any portion of the QSF that is not needed to satisfy any of the payments required by this Settlement Stipulation. Any portion of the Settlement Fund that is not claimed by Participating Class Members, including any interest accrued on the settlement fund, and any check not cashed after the expiration of the ninety (90) days following issuance of checks to any Participating Class Members shall be redistributed pro rata to Participating Class Members who cashed or otherwise negotiated a settlement check as specified in Section 11.9.5, or, if redistribution is impractical because the amount remaining in the fund is similar to or less than the cost of a second distribution, it shall be donated to a cy pres recipient jointly selected by Class Counsel and Google and approved by the Court. The Settlement Administrator will send out reminders via email and First Class U.S. Mail within sixty (60) days after the initial distribution of checks to Participating Class Members reminding

DocuSign Envelope ID: 2B157EA1-A3EF-4A26-9E2D-4C30DA9ACB61

them to negotiate their checks prior to the 90-day deadline. The provisions of any unclaimed property statute or law do not apply to this Settlement Stipulation.

12. **Settlement Payments Do Not Trigger Additional Benefits.**  All payments to Participating Class Members shall be deemed to be paid to such Participating Class Members solely in the year in which such payments actually are received by the Participating Class Members.  The Parties agree and the Class Members acknowledge that the payments provided for in this Settlement Stipulation are the sole payments to be made to the Participating Class Members, and that the Participating Class Members are not entitled to any new or additional compensation or benefits as a result of having received the payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the period covered by this Settlement).

13. **Participating Class Member Release.**  Upon the Effective Date, and except as to such rights or claims as may be created by this Settlement Stipulation, each Participating Class Member who has not submitted a valid and timely request for exclusion as set forth in Section 11.8, all persons purporting to act on their behalf or purporting to assert a claim under or through them, including, but not limited to, their spouses, dependents, attorneys, heirs and assigns, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, and successors-in-interest, whether individual, class, collective, representative, legal, equitable, direct or indirect, or any other type or in any other capacity (collectively, the "Releasing Class Parties") fully release and discharge the Released Parties (as defined in Section 1.34) from any and all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses, and losses arising from or related to the facts alleged in the Demand Letter and the Class and Collective Action Complaint (including any amendments thereto), which include any and all Gender Claims (as defined in Section 1.15) and Race Claims (as defined in Section 1.33) through the Effective Date, including without limitation liquidated damages, interest, compensatory damages, punitive damages, penalties of any nature whatsoever, other compensation or benefits, attorneys' fees and costs, except that any Participating Class Members who did not opt into the EPA Collective by cashing their settlement check do not release their potential federal EPA claims (collectively, "Released Claims").  It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all Released Claims which were or which could have been asserted in this Class Litigation against the Released Parties, whether known or unknown, liquidated or unliquidated, relating to their employment in a Qualified Position. Releasing Class Parties may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, but upon the entry of the Judgment, Releasing Class Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or

17

DocuSign Envelope ID: Case 4:22-cv-01735-KAW    Document 96-4    Filed 08/14/24    Page 20 of 30

rule, without regard to the subsequent discovery or existence of such different or additional facts.

14.    **Programmatic Relief.**

14.1    <u>Duration of the Settlement.</u>  Google agrees to the programmatic relief described in this Section in the United States for the duration of the Programmatic Period.

14.2    <u>Leveling.</u>

14.2.1    Google will maintain robust leveling policies and practices designed to ensure that leveling decisions at hire are and remain fair, equitable, and based on legitimate, business-related criteria. Google will instruct recruiters, interviewers, and hiring committees to evaluate candidates against a consistent set of leveling dimensions (f/k/a rubrics) specific to the job level(s) and applicable role profile (f/k/a job family) associated with the opening.

14.2.2    Google will make best efforts to ensure that the makeup of interview panels and hiring committees are diverse.

14.2.3    Google will maintain accurate job descriptions based on legitimate, job-related criteria.  Google will continue to review job descriptions for accuracy.

14.2.4    Google will maintain multiple, well-publicized methods for employees to report concerns related to the terms and conditions of their employment, including concerns that they have been leveled or paid incorrectly for an unlawful reason. Google will continue making those methods accessible to current employees on internal sites accessible to Google employees. Google will work to ensure that these concerns are routed to the appropriate organization, including but not limited to investigation teams such as Employee Relations and Human Resources. Organizations responsible for investigating these concerns will take remedial action where appropriate (for example, when Google determines that its leveling dimensions were improperly applied for an unlawful reason). Employees raising concerns will be informed whether their concern was or was not substantiated and, if substantiated, what remedial action Google will take.

14.3    <u>Compensation and Pay Equity.</u>

14.3.1    During each annual compensation cycle, Google will continue to analyze pay to identify unexplained pay differences based on gender or race (including Latin-X) before finalizing any pay changes for the following year, and will make upwards compensation adjustments to address the unexplained pay differences identified after Google completes its analysis. Google will consider in good faith recommendations offered by the Labor Economist Consulting Expert (see Section 14.9). Google retains control

and flexibility over the methodology and remediation standards utilized, and reserves the right to continue to conduct these analyses under the attorney-client privilege and attorney work product doctrine.

14.3.2   Google will make best efforts to comply with the recent amendment to the New York City Human Rights Law, effective November 1, 2022, which requires employers operating in New York City to include salary ranges in job advertisements, including postings for promotions and transfers.

14.3.3   Google reaffirms its years-long commitment not to ask for or base compensation decisions at hire on the salary history of applicants.

14.4   <u>Culture and Diversity.</u>

14.4.1   Google will continue to train its employees, managers, and contingent workers on bias mitigation, anti-discrimination, and anti-harassment.

14.4.2   Google affirms that during the Programmatic Period it will not require any employee to enter into mandatory arbitration agreements for employment-related disputes or enforce existing mandatory arbitration agreements for employment-related disputes.

14.4.3   Google affirms that during the Programmatic Period it will continue its practice of administering an employee survey (Googlegeist) to collect data and employee feedback on workplace culture.

14.4.4   Google reaffirms its commitment to develop a diverse pipeline of candidates, consistent with its Racial Equity Commitments published at https://blog.google/inside-google/company-announcements/commitments-racial-equity/.

14.4.5   Google reaffirms its commitment to increase representation of Black+ employees in the workplace and within leadership roles, consistent with its Racial Equity Commitments published at https://blog.google/inside-google/company-announcements/commitments-racial-equity/.

14.4.6   Google will continue to encourage participation in its Employee Resource Groups globally to promote a sense of connection for employees in the workplace, and help them build meaningful relationships at work.

14.4.7   Google will use best efforts to explore additional ways to publicize its commitment to: making strategic, identity-focused investments as necessary (e.g., employee resource groups); affirming all employees' social identities; responding to complaints of identity threats appropriately; increasing its own and its employees' cultural competencies; and promoting psychologically-safe work environments.

14.5    <u>Retention of Equity Experts.</u> Following Final Approval, Google will timely retain
        one consulting expert specializing in industrial organizational psychology ("IOP
        Consulting Expert") and one specializing in labor economics ("Labor Economist
        Consulting Expert") (together, the "Equity Experts") for the Programmatic
        Period, specifically to conduct the work described below. Plaintiffs will work
        with Google to identify the Equity Experts with a preference for candidates with
        experience relevant to the claims at issue.  Google reserves discretion to
        determine which Equity Experts to retain.

14.6    <u>Monitor.</u>  Google will retain an external monitor ("External Monitor") to monitor
        Google's good faith compliance with the programmatic relief terms of the
        Settlement Stipulation. The External Monitor will (i) meet with a designated
        Google representative on an annual basis for the Programmatic Period to review
        information provided by Google demonstrating compliance with the terms of the
        Settlement; (ii) request information reasonably necessary to independently
        ascertain compliance with the terms of the Settlement; and (iii) meet with counsel
        for Plaintiffs and counsel for Defendant annually for the Programmatic Period to
        report on compliance with the terms of the Settlement.

14.7    <u>Leveling Recommendations.</u>  The IOP Consulting Expert will examine leveling
        policies and practices to identify variability in the criteria used for leveling
        determinations at hire, the discretion given to individual decision-makers
        (including, but not limited to, recruiters, individuals on hiring committees, and
        managers), and the fit between job responsibilities, job description, and job level.
        The IOP Consulting Expert will determine in their discretion and professional
        experience which individuals are necessary to consult in the process, if any.  To
        the extent those individuals are current Google employees, Google will make
        appropriate individuals available to the IOP Consulting Expert once quarterly
        (i.e., four times) to facilitate the IOP Consulting Expert's understanding and
        examination of the policies and practices. The IOP Consulting Expert will make
        recommendations confidentially to Google to enhance its leveling policies and
        practices and promote consistency and transparency in the leveling process for
        new hires, including practices for investigating and addressing disputes regarding
        leveling (the "Leveling Recommendations"). For the avoidance of doubt, the
        Leveling Recommendations will involve only recommendations regarding
        policies and practices, and will not involve recommendations regarding outcomes
        for specific individuals. The IOP Consulting Expert shall make these confidential
        recommendations to Google in writing within one (1) year of Google's retention
        of the IOP Consulting Expert.

14.8    <u>Pay Equity Recommendations.</u>  The Labor Economist Consulting Expert may
        confidentially examine Google's methodology for its annual pay equity analyses.
        Google will not unreasonably withhold the Labor Economist Consulting Expert's
        access to reasonably accessible information concerning Google's annual pay
        equity analysis methodology necessary to carry out its remit under this
        Agreement. Plaintiffs understand and acknowledge that Google conducts its
        annual pay equity analyses under the attorney-client privilege and attorney work-

product doctrine. The Labor Economist Consulting Expert's work will be subject to those protections, as directed by Google's internal and/or external labor and employment counsel. The Labor Economist Consulting Expert will make privileged and confidential recommendations to Google's labor and employment counsel to modify the methodology for its annual pay equity analyses (the "Pay Equity Recommendations") within one (1) year of Google's retention of the Labor Economist Consulting Expert.

14.9 <u>Transparency.</u>

14.9.1 Within one (1) year of receiving the IOP Consulting Expert's Leveling Recommendations, Google will provide a confidential report to the IOP Consulting Expert describing recommendations adopted, recommendations rejected, and reasons for rejection. Upon request, Google will meet and confer with the IOP Consulting Expert regarding the Report. For avoidance of doubt, this obligation does not waive any applicable protection pursuant to the attorney-client privilege or the work product doctrine. At the same time as it provides its confidential report to the IOP Consulting Expert, or as soon thereafter as is reasonably practicable, Google will inform the External Monitor of any Leveling Recommendations adopted.

14.9.2 After making its privileged Pay Equity Recommendations to Google, the Labor Economist Consulting Expert will confirm to the External Monitor only that they have made the required recommendations to Google's labor and employment counsel, but will not disclose the substance or any details of the privileged work performed pursuant to this Settlement Stipulation.

14.9.3 If the parties are unable to resolve any dispute between them regarding Google's compliance with the terms of this Section 14, the parties will select Dina Jansenson, or another mutually selected JAMS mediator with experience in the relevant topic (either pay equity or industrial organizational psychology) to attempt to resolve the dispute prior to the close of the Programmatic Period. The mediation fee shall be split between the parties.

14.9.4 Communications relating to the work of the Equity Experts and reports made to the External Monitor (written or verbal) are confidential and in furtherance of effectuating the settlement and protected under all applicable federal, state, and local settlement privileges, including but not limited to Federal Rule of Evidence, Rule 408 and New York Civil Practice Law and Rules, Rule 4547.

15. **CAFA Notice.** To the extent required, Google shall provide notice to the appropriate governmental authorities in accordance with the Class Action Fairness Act ("CAFA").

Case 4:22-cv-01735-KAW   Document 96-4   Filed 08/14/24   Page 24 of 30

16.   **Public Statements.** The Parties agree that no public statements concerning this Settlement shall be made before the Class and Collective Action Complaint is filed. Class Counsel and Class Representatives will not, at any time, claim or otherwise publicly state that the Settlement represents anything other than a negotiated compromise between the Parties to resolve the matter. Nor will Class Counsel or the Class Representatives make any statements inconsistent with this Settlement Stipulation. Nothing in this Section or Settlement Stipulation shall preclude Class Counsel from posting publicly-available information about the case, including case filings on its websites.

17.   **Settlement Contingent on Court Approval.**

17.1   This Settlement Stipulation is contingent upon the Court's approval of the Settlement.  If the Court does not grant preliminary or final approval or the Effective Date does not occur, this Settlement Stipulation may be voided at either party's option, in which case this Settlement Stipulation (including its Exhibits) will become null and void, and will not be used for any purpose in connection with any further litigation in the Class Litigation or any other lawsuit, administrative, or other legal proceeding, claim, investigation, or complaint.  No Party shall be deemed to have waived any claims, objections, rights or defenses, or legal arguments or positions.

17.2   In such an event, the Parties shall resume the Class Litigation unless the Parties jointly agree to seek reconsideration or appellate review of the decision denying preliminary or final approval, or attempt to renegotiate the Settlement and seek Court approval of a renegotiated settlement (without any change to the Gross Settlement Fund amount or the scope of the programmatic relief sought herein).

17.3   In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved for any reason (or, if following approval by the Court, such approval is reversed or substantively modified on appellate review[1]), the Class Litigation will proceed as if no settlement had been attempted. In that event, any order entered by the Court in accordance with the terms of this Settlement Stipulation shall be treated as vacated, *nunc pro tunc*. Any class certified for purposes of settlement shall be decertified, and Google retains all rights and defenses, including the right to contest whether this Class Litigation should be maintained as a class or collective action and contest the merits of the claims being asserted by the Plaintiffs in this action.  The fact of certification for purposes of this Settlement shall not be cited to, used, or admissible in any judicial, administrative, arbitral, or other legal proceeding for any purpose of which respect to any issue, substantive or procedural.  Any portion of the Gross Settlement Fund deposited by Google will be returned to Google, including the interest earned through the date the Settlement is terminated (after deducting all

---

[1] An award by the Court of lesser amounts than sought for the Service Payments or Attorneys' Fees and Costs will not be a material modification of the Settlement Stipulation.

DocuSign Envelope ID: C27757E8-6772-4753-AE4F-E2A8D29836FF     Case 4:22-cv-01735-KAW     Document 96-4     Filed 08/14/24     Page 25 of 30

costs and expenses, including cost of providing notice to Class Members, paid or incurred by the Settlement Administration as of that date). None of the information provided by Google or Google's Counsel to Plaintiff or Class Counsel for purposes of negotiating the settlement may be used by the Plaintiffs, Class Representatives, or Class Counsel in the Class Litigation or any other judicial, administrative, arbitral, or other legal proceeding.

17.4    The Settlement Administrator will provide notice to Class Members in a form jointly agreed upon by the Parties' Counsel (or as ordered by the Court) that the Settlement did not receive final approval and that, as a result, no payments will be made to Class Members under the Settlement and the Settlement is null and void. Such notice shall be mailed and emailed to the Class Members using the addresses used by the Settlement Administrator in sending the Notice Forms. The Parties agree to share equally in the costs of the Settlement Administrator's fees incurred in the event that the Final Approval Order is not issued.

18.    **Confidentiality.**  Class Representatives and Class Counsel agree to keep confidential the negotiations leading up to this Settlement Stipulation, all non-public employee pay data and other non-public employment data exchanged during settlement negotiations and the settlement process, and the amount of any and all Participating Class Member Payment(s) (together, "Confidential Settlement Issues"), and that they hereafter will not disclose Confidential Settlement Issues to any person(s) or entity unless expressly permitted by this Section 18. Notwithstanding the foregoing, Class Representatives may disclose Confidential Settlement Issues to their attorneys, accountants, and immediate families; to the Court and Court personnel, as necessary to seek Court approval of this Settlement; and otherwise as required by court or governmental order, subpoena, or as otherwise directed by law. If required by court or governmental order, subpoena, or otherwise as required by law to disclose Confidential Settlement Issues, Class Representatives will notify Google through Google's Counsel prior to making such disclosure and permit Google a reasonable time to object to such disclosure.  Class Representatives and Class Counsel shall make no public statement concerning Confidential Settlement Issues other than such statements as they are contained in Court filings necessary to seek approval of this Settlement Stipulation. Nothing herein shall prohibit Class Representatives from discussing the facts underlying the Complaint.  If Class Representatives or Class Counsel violate this Section, Google may rescind the Settlement, rendering it null and void.

19.    **Return of Documents/Data.**  Within sixty (60) days of the Effective Date, Class Counsel agrees to return or destroy all non-public documents and information produced by Google in connection with the Demand Letter, the Parties' mediations, and the Class Litigation, other than documents and information Class Counsel is required to preserve to satisfy its professional obligations.  Class Counsel will provide written notice to Google's Counsel certifying that it has returned and/or destroyed all such documents and information.

20.    **Mutual Full Cooperation.**  The Parties will fully cooperate with each other and with the Settlement Administrator to accomplish the terms of this Settlement Stipulation, including but not limited to, the preparation and execution of documents necessary to

Case 4:22-cv-01735-KAW    Document 96-4    Filed 08/14/24    Page 26 of 30

implement this Settlement Stipulation.  The Parties will use their best efforts to effectuate this Settlement Stipulation, including during any motions for reconsideration or appeals, and will use their best efforts to obtain the Court's approval of the Settlement and to defend the Settlement from any legal challenge.

21.    **Complete Agreement.**  No representation, promise, or inducement has been offered or made to induce any Party to enter into this Settlement Stipulation, which contains the entire, complete, and integrated statement of all settlement terms and supersedes all previous oral or written agreements with regard to the subject matter contained herein.

22.    **Waivers, Modifications, and Amendments**. This Settlement Stipulation may not be amended or modified except by a writing signed by the Parties' authorized representatives. Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Settlement Stipulation shall not be deemed a waiver of future performance of the same provisions of any of the other provisions in this Settlement Stipulation.  Notwithstanding any such failure, such Party shall have the right thereafter to insist upon the specific performance of any of the provisions of this Settlement Stipulation.

23.    **Knowing and Voluntary Agreement.**  The Parties enter into this Settlement Stipulation knowingly, voluntarily, and with full knowledge of its significance.  The Parties have not been coerced, threatened, or intimidated into signing this Settlement Stipulation and have consulted with legal counsel regarding the Settlement Stipulation.

24.    **Notifications and Communications.**  Any notifications or communications made in connection with this Settlement Stipulation shall be sent to the Parties at the addresses of their respective counsel as follows:

|  |  |
|---|---|
| *For the Class Representatives and Class Members*: | *For Defendant Google LLC:* |
| | Kenneth Gage |
| Cara Greene | Emily Pidot |
| Jahan Sagafi | Sara Tomezsko |
| Outten & Golden LLP | Paul Hastings LLP |
| 685 Third Avenue, 25th Floor | 200 Park Avenue |
| New York, NY 10017 | New York, NY10166 |
| Tel: 212-245-1000 | Tel: 212-318-6000 |
| Fax: 646-509-2064 | Fax: 212-319-4090 |
| ceg@outtengolden.com | kennethgage@paulhastings.com |
| jsagafi@outtengolden.com | emilypidot@paulhastings.com |
| | saratomezsko@paulhastings.com |

25.    **Severability.**  If any part of this Settlement Stipulation is found to be illegal, invalid, inoperative or unenforceable in law or equity, such finding shall not affect the validity of any other part of this Settlement Stipulation, which shall be construed, reformed and enforced to affect the purposes thereof to the fullest extent permitted by law.

26. **Captions and Interpretations.**  Section or paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Stipulation or any provision hereof.  Each term of this Settlement Stipulation is contractual and not merely a recital.

27. **Binding on Assigns.**  This Settlement Stipulation shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors and assigns.  Class Counsel and Class Representatives, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

28. **Enforcement of Settlement Stipulation and Governing Law.**  This Settlement Stipulation will be governed by New York law, without regard to conflict of law principles.  The Parties submit to the jurisdiction of the Court for all purposes relating to the review, approval, and enforcement of this Settlement Stipulation.

29. **Settlement Stipulation Form and Construction.**

   29.1   The terms and conditions of this Settlement Stipulation are the result of lengthy, carefully considered, arms-length negotiations between the Parties and this Settlement Stipulation shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Settlement Stipulation.  All of the terms and conditions of this Settlement Stipulation are material to this Settlement Stipulation and have been relied upon by the Parties in entering into this Settlement Stipulation, unless otherwise expressly stated.

   29.2   This Settlement Stipulation may be executed in electronic counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one binding Settlement Stipulation.

   29.3   This Settlement Stipulation shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Settlement, for a complete resolution of the Class Litigation.

   29.4   If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Settlement Stipulation will remain in full force and effect.

30. **Parties' Authority.**  The signatories hereto hereby represent that they are fully authorized to enter into this Settlement Stipulation and bind the Parties hereto and the Class Members to the terms and conditions thereof.

31. **Non-Interference with Settlement**. Pending the Court's decision on the final approval of the Settlement Stipulation and entry of the Final Approval Order, Class Representatives and anyone acting on their behalf shall be barred and enjoined from: (1)

Case 4:22-cv-01735-KAW Document 96-4 Filed 08/14/24 Page 28 of 30

further litigation in the Class Litigation; (2) filing, or taking any action, directly or indirectly, to commence, prosecute, pursue, or participate, individually or on a class or collective action basis, in any action, claim, or proceeding against Google in any forum in which any of the claims to be released by the Settlement Stipulation are asserted, or which in any way would prevent any such claims from being extinguished; or (3) seeking, whether on a conditional basis or not, certification of a class or collective action that involved any such claims.

**IN WITNESS WHEREOF**, the Parties each voluntarily and without coercion have caused this Settlement Stipulation to be signed on the dates entered below:

For the Class Members:

Cara E. Greene

12/13/2022

Date

Sheree Haggan

Date

Emi Nietfeld

12/13/2022

Date

For Google LLC:

By: _____

*Title:*

Date

26

further litigation in the Class Litigation; (2) filing, or taking any action, directly or indirectly, to commence, prosecute, pursue, or participate, individually or on a class or collective action basis, in any action, claim, or proceeding against Google in any forum in which any of the claims to be released by the Settlement Stipulation are asserted, or which in any way would prevent any such claims from being extinguished; or (3) seeking, whether on a conditional basis or not, certification of a class or collective action that involved any such claims.

**IN WITNESS WHEREOF**, the Parties each voluntarily and without coercion have caused this Settlement Stipulation to be signed on the dates entered below:

For the Class Members:

_____          12/13/2022
Cara E. Greene                        _____
                                      Date

_____                12/12/2022
Sheree Haggan                         _____
                                      Date

_____          _____
Emi Nietfeld                          Date

For Google LLC:

By: _____      _____
      **Title:**                        Date

Case 4:22-cv-01735-KAW    Document 96-4    Filed 08/14/24    Page 30 of 30

further litigation in the Class Litigation; (2) filing, or taking any action, directly or indirectly, to commence, prosecute, pursue, or participate, individually or on a class or collective action basis, in any action, claim, or proceeding against Google in any forum in which any of the claims to be released by the Settlement Stipulation are asserted, or which in any way would prevent any such claims from being extinguished; or (3) seeking, whether on a conditional basis or not, certification of a class or collective action that involved any such claims.

**IN WITNESS WHEREOF**, the Parties each voluntarily and without coercion have caused this Settlement Stipulation to be signed on the dates entered below:

For the Class Members:

_____        _____
Cara E. Greene                          Date

_____        _____
Sheree Haggan                           Date

_____        _____
Emi Nietfeld                            Date

For Google LLC:

By: _____        12/13/2022
_____
    *Title:* Director, Legal - Employment    Date

26