Ben Crump (pro hac vice)
Nabeha Shaer (pro hac vice)
BEN CRUMP LAW, PLLC
122 S. Calhoun St.
Tallahassee, FL 32301
Telephone:     (800) 713-1222
court@bencrump.com

Linda D. Friedman (pro hac vice)
Suzanne E. Bish (pro hac vice)
George Robot (pro hac vice)
STOWELL & FRIEDMAN LTD.
303 W. Madison St., Suite 2600
Chicago, Illinois 60606
Telephone:     (312) 431-0888
lfriedman@sfltd.com

Sam Sani (SBN 2733993)
SANI LAW, APC
595 E. Colorado Blvd., Suite 522
Pasadena, CA 91101
Telephone:     (310) 935-0405
ssani@sanilawfirm.com

*Attorneys for Plaintiffs and the Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL CURLEY, DESIREE MAYON, RONIKA LEWIS, RAYNA REID, ANIM AWEH, and EBONY THOMAS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Defendant. | CASE NO: 4:22-cv-01735-KAW<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR CLASS CERTIFICATION FOR SETTLEMENT PURPOSES AND FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**<br><br>Hearing Date: July 17, 2025<br>Time: 1:30 PM<br>Courtroom: TBD, 1301 Clay Street, Oakland, CA 94612<br>Judge: Hon. Kandis A. Westmore |

1

2

<u>**NOTICE OF MOTION, MOTION FOR CERTIFICATION FOR**</u>
<u>**SETTLEMENT PURPOSES AND MOTION FOR PRELIMINARY**</u>
<u>**APPROVAL OF SETTLEMENT AGREEMENT**</u>

3

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

4

PLEASE TAKE NOTICE THAT on July 17, 2025,[1] at 1:30 in Courtroom TBD of the

5

above-titled Court, located at 1301 Clay Street, Oakland, California 94612, Plaintiffs will move

6

the Court for an Order: (1) certifying the Settlement Class for settlement purposes, (2)

7

preliminarily approving the Settlement Agreement, (3) authorizing retention of Atticus

8

Administration, LLC, as the Claims Administrator, (4) approving the form and matter of the

9

Notice of Settlement to the Settlement Class, (5) appointing Stowell and Friedman, Ltd., and Ben

10

Crump Law PLLC as Settlement Class Counsel, (6) appointing April Curley, Ronika Lewis, and

11

Desiree Mayon as Settlement Class Representatives, and (7) setting the Final Approval Hearing

12

as well as the schedule for various deadlines in connection with the Settlement Agreement.

13

This unopposed motion is supported by the below memorandum of points and authorities,

14

the supporting declarations and exhibits attached thereto, including the Settlement Agreement, all

15

prior pleadings in this action, and such evidence or argument as the Court may request.

16

Dated: May 8, 2025                    Respectfully submitted,

17

*/s/ Linda D. Friedman*

18

Linda D. Friedman
STOWELL AND FRIEDMAN LTD.

19

303 W. Madison St., Suite 2600
Chicago, Illinois 60606

20

Telephone:    (312) 431-0888
lfriedman@sfltd.com

21

22

23

24

25

---

[1] The earliest date for a hearing compatible with both the Court's calendar and parties' schedule is
July 17, 2025, but Counsel can be available at the Court's earliest convenience for hearing on
preliminary approval.

26

1
2

**TABLE OF CONTENTS**

3
4      TABLE OF AUTHORITIES ...................................................................................... ii
       MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 1
5      I.      INTRODUCTION ....................................................................................... 1
6      II.     FACTUAL AND PROCEDURAL BACKGROUND .................................. 2
       A.     The Litigation.................................................................................... 2
7      III.    The Settlement .................................................................................. 5
8      A.     Basic Terms and Value of the Settlement ........................................ 5
9      B.     Settlement Class Definition and Scope of Release ......................... 6
       C.     Proposed Allocation Plan................................................................. 7
10     D.     Settlement Administration and Notice ............................................ 9
11     E.     Proposed Attorneys' Fees and Costs and Service Awards............... 10
12     F.     Compliance with the Class Action Fairness Act............................. 10
13     IV.     ARGUMENT............................................................................................. 10
       A.     The Settlement Class Should Be Certified for Settlement Purposes............. 10
14     B.     The Settlement Is Reasonable, Fair, and Adequate and Warrants Preliminary Approval
15     ................................................................................................................. 14
16     C.     The Proposed Notice Is Appropriate .............................................. 24
       CONCLUSION ........................................................................................................ 25

17
18
19
20
21
22
23
24
25
26

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Amador v. Baca*, No. 10-cv-1649, 2019 WL 13104946 (C.D. Cal. Sept. 23, 2019) ...................... 9

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................................. 15

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) ............................................. 14

*Bernstein v. Ginkgo Bioworks Holdings, Inc.*, No. 21-cv-08943, 2024 WL 5483605 (N.D. Cal. July 31, 2024) ................................................................................................................... 17, 19

*Betancourt v. Advantage Hum. Resourcing*, Inc., No. 14-cv-01788, 2016 WL 344532 (N.D. Cal. Jan. 28, 2016) ......................................................................................................................... 22

*Bland v. Edward D. Jone Co., L.P.*, No. 18-cv-3673 (N.D. Il. July 12, 2021) .............................. 26

*Carter v. Anderson Merchandisers, LP*, No. 08-cv-0025, 2010 WL 1946784 (C.D. Cal. May 11, 2010) ......................................................................................................................................... 24

*Chen v. W. Digital Corp.*, No. 819-cv-00909, 2020 WL 13587954 (C.D. Cal. Apr. 3, 2020) 12, 14

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ................................................ 15

*Cottle v. Plaid Inc.*, 340 F.R.D. 356 (N.D. Cal. 2021) ................................................................. 15

*Creighton v. Metropolitan Life Insurance*, 15-cv-08321 (S.D.N.Y. 2017) ..................................... 8

*del Toro Lopez v. Uber Techs., Inc.*, No. 17-cv-06255, 2018 WL 5982506 (N.D. Cal. Nov. 14, 2018) ......................................................................................................................................... 25

*Delagarza v. Tesoro Ref. & Mktg. Co.*, No. 09-cv-5803, 2011 WL 4017967 (N.D. Cal. Sept. 8, 2011) ......................................................................................................................................... 14

*Dilts v. Penske Logistics*, 267 F.R.D. 625 (S.D. Cal. 2010) ........................................................ 14

*Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326 (N.D. Cal. 2014) ............................................ 23

*Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492 (N.D. Cal. 2012) ....................................... 12, 14

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ................................................... 13

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982) ............................................................. 13

*Gruber v. Grifols Shared Servs. N. Am., Inc.*, No. 22-CV-02621, 2023 WL 8610504 (C.D. Cal. Nov. 2, 2023) ........................................................................................................................... 12

*Hadley v. Kellogg Sales Co.*, No. 16-cv-04955, 2020 WL 836673 (N.D. Cal. Feb. 20, 2020) ....... 7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................................... 16

*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010) ..................................................................... 7

*In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011) ............ 22, 27

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ........................................ 27

*Jones v. Chopra*, 18-21-32 (D.D.C. 2024) ............................................................................... 8, 25

*Kline v. Dymatize Enters., LLC*, No. 15-cv-2348, 2016 WL 6026330 (S.D. Cal. Oct. 13, 2016) . 21

*Lopez v. Eurofins Sci., Inc.*, No. 21-cv-08652, 2023 WL 6609355 (N.D. Cal. Oct. 9, 2023) 13, 17, 24

*McReynolds v. Merrill Lynch*, 05-cv-6583 (N.D. Ill. 2014) ...................................................... 8, 26

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ............................................ 27

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) .......................................................................... 12

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ...................................................... 16

*Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................................................................................................................................................... 22

*Senegal v. JPMorgan Chase Bank, N.A.*, No. 18-cv-6006, Dkt. 40 at 5 (N.D. Ill. Dec. 20, 2018) 26

*Slaughter v. Wells Fargo Advisors, LLC*, 13-cv-6368, (N.D. Il. 2017) .................................. 8, 26

*Stemple v. RingCentral, Inc.*, No. 18-cv-04909, 2019 WL 3842091 (N.D. Cal. Aug. 15, 2019) .. 16

*Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540, 2015 WL 3776765 (N.D. Cal. June 17, 2015) ........................................................................................................................................ 19

*Vianu v. AT&T Mobility LLC*, No. 19-CV-03602-LB, 2022 WL 16823044 (N.D. Cal. Nov. 8, 2022) ........................................................................................................................................... 9

*Villafan v. Broadspectrum Downstream Servs., Inc.*, No. 18-cv-06741, 2020 WL 6822908 (N.D. Cal. Nov. 20, 2020) ................................................................................................................. 21

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................................... 16

**Statutes**

28 U.S.C. § 1715 ........................................................................................................................... 10

42 U.S.C. § 1981 ............................................................................................................................. 2

U.S.C. § 2000e ................................................................................................................................ 2

**Rules**

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................................... 18

Fed. R. Civ. P. 23(a) ................................................................................................................ 1, 10

Fed. R. Civ. P. 23(b)(2) ..................................................................................................... 1, 10, 12

Fed. R. Civ. P. 23(b)(3) ............................................................................................... 1, 10, 12, 13

Fed. R. Civ. P. 23(e) .................................................................................................................. 1, 14

Fed. R. Civ. P. 23(e)(1) ................................................................................................................. 10

Fed. R. Civ. P. 23(e)(2)(A) ........................................................................................................... 21

Fed. R. Civ. P. 30(b)(6) ................................................................................................................... 3

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs, on behalf of themselves and all others similarly situated, by and through their attorneys, Stowell & Friedman, Ben Crump Law PLLC, and Sani Law, respectfully submit their proposed class settlement (the "Settlement" or "Settlement Agreement") between the proposed Settlement Class[2] and Defendant Google, LLC ("Google"), for preliminary approval by the Court.

## I. INTRODUCTION

After over three years of contested litigation, Settlement Class Representatives[3] April Curley, Ronika Lewis, and Desiree Mayon seek class certification for settlement purposes and preliminary approval of the Settlement Agreement, which provides both non-monetary relief and $50 million in non-reversionary monetary relief for approximately 4,000 Black and Black+[4] Google employees. The proposed Settlement Class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3). The Settlement is fair, reasonable, and adequate, and meets all criteria for preliminary approval under Federal Rule of Civil Procedure 23(e).

The parties reached the Settlement only after years of litigation and extensive arm's length negotiations, supervised by experienced mediator, Hunter Hughes. The Settlement is an outstanding result for the Settlement Class. The Settlement also includes an individual dispute resolution process that allows for individual awards from competent neutrals who review claims to equitably distribute the Settlement Fund. More than substantial monetary relief, the Settlement Agreement codifies meaningful non-monetary relief.

---

[2] Unless otherwise noticed, capitalized terms have the meaning ascribed to them in the Settlement Agreement, filed concurrently herewith as Exhibit A to the Declaration of Linda D. Friedman.
[3] Plaintiffs understand that this Court has yet to decide whether they are appointed as class representatives and counsel as class counsel. In this motion, Plaintiffs use the Settlement Agreement's terms "Settlement Class Counsel" and "Settlement Class Representatives," both defined as being "subject to the approval of the Court" (Settlement § III.A), solely to avoid confusion.
[4] Google's internal designation analogous to the EEOC category of "Two or More Races" where one of the races is Black.

1

## II.     FACTUAL AND PROCEDURAL BACKGROUND

2

### A.  The Litigation

3      In 2014, Google hired Plaintiff April Curley, a Black woman, to help the company expand

4    its outreach to Black college students. (Dkt. No. 93 at ¶ 3.) Although she worked diligently and

5    performed at a high level, she was terminated six years later. (*Id.* at ¶ 4.) Curley alleged that she

6    experienced persistent discrimination because of her race and was wrongfully terminated. (*Id.*)

7    Like Plaintiffs Desiree Mayon and Ronika Lewis, Curley alleged that she had been assigned a

8    lower-level role, paid lower wages, rated unfairly on her performance, subjected to a hostile work

9    environment, and denied advancement and leadership roles because she was Black. (*Id.* at ¶¶ 3–

10   4.)

11      Believing that these experiences were consistent with companywide discriminatory

12   policies and practices, Plaintiffs retained counsel and filed this putative class action on March 18,

13   2022. (Dkt. No. 1.) After motion practice on Plaintiffs' initial pleadings, resulting in the Court's

14   dismissal of certain claims in Plaintiffs' Second Amended Complaint (Dkt. No. 83), Plaintiffs

15   filed their Third Amended Complaint on July 26, 2024 (Dkt. No. 93). Plaintiffs alleged, on behalf

16   of themselves and all other Google employees similarly situated, claims for: (1) Race

17   Discrimination and Hostile Work Environment in Violation of 42 U.S.C. § 1981; (2) Race

18   Discrimination and Hostile Work Environment in Violation of Title VII, U.S.C. § 2000e, *et seq.*;

19   (3) Race Discrimination and Hostile Work Environment in Violation of FEHA, Ca. Gov. Code &

20   45940, *et seq.*; (4) Race Discrimination and Hostile Work Environment in Violation of New York

21   State Human Rights Law; (5) Race Discrimination and Hostile Work Environment in Violation of

22   New York City Human Rights Law; and (6) Pay Discrimination in Violation of California Equal

23   Pay Act. (*Id.* at ¶¶ 132–210). Plaintiffs also alleged retaliation claims on behalf of Plaintiffs and

24   members of the putative class.

25

26

1    The parties attempted to resolve the case through mediation before embarking on formal

2    discovery. (Exhibit 1, Declaration of Linda D. Friedman (hereinafter "Friedman Decl.") ¶ 19.) To

3    that end, they began informally exchanging data and documents over the spring and summer of

4    2024. Google produced hundreds of documents regarding relevant policies as well as a significant

5    snapshot of workforce data. (*Id.*) Plaintiffs engaged an expert to analyze that production.

6    Informed by these facts and analyses, the parties engaged Hunter Hughes, an experienced

7    professional mediator who is skilled in the areas of complex class actions and employment

8    discrimination litigation, for an in-person mediation session on June 12, 2024. They engaged in

9    many follow-up meetings throughout the summer and fall to continue discussions on possible

10   settlement. During these sessions, the parties exchanged competing data analyses prepared by

11   experts. While these sessions did not resolve the case, the parties were able to frame the issues for

12   discovery and further debate. (*Id.* ¶ 20.) Throughout, Google maintained that the putative class

13   action complaint was not appropriate for class treatment, that Google did not violate any laws,

14   and that Plaintiffs and the individuals they sought to represent were not entitled to any relief.

15   Over the next six months, the parties vigorously litigated the case and engaged in

16   substantial fact discovery. Plaintiffs served initial disclosures and class interrogatories, issued five

17   sets of class requests for production totaling 89 requests, and noticed depositions pursuant to

18   Federal Rule of Civil Procedure 30(b)(6) covering 64 total topics. Defendant served 167 total

19   requests for production and 48 total interrogatories and noticed depositions for all six plaintiffs.

20   The Parties timely answered each other's discovery requests and issued 20 total rolling

21   productions that include nearly 200,000 pages of documents and workforce data totaling over 48

22   million records. The parties dedicated significant time and effort in obtaining, producing, and

23   reviewing these materials. (*Id.* ¶ 22.)

24   Throughout this exchange of documents and data, the parties negotiated numerous

25   discovery disputes. The Parties met and conferred extensively regarding the protective order,

26

production of electronically stored information, and discovery, including the exchange of several Rule 37 letters. (*Id.* ¶ 23.)

Near the end of 2024, the parties again agreed to engage in formal settlement discussions through mediation. Google produced another volume of data for mediation purposes. (*Id.* ¶ 24.) Plaintiffs retained an experienced labor economist to analyze both the data sets produced in advance of mediation as well as the data that had been produced pursuant to Plaintiffs' discovery requests. Combined, the data ranged from prior work experience and education history for all persons hired during the relevant period as well as comprehensive work histories for their tenure at Google, including job-title histories, job-location histories, compensation histories, bonus and equity awards, performance reviews, and demographic data. Plaintiffs' expert conducted statistical analyses including those on attrition, racial representation across various job parameters, and compensation studies, including numerous regression models. (*Id.*) Plaintiffs presented their analysis of the data to Defendant and the mediator in advance of the mediation. Defendant also presented its analysis of the same data to Plaintiffs. (*Id.*)

The parties met for an in-person mediation on January 22, 2025, again with Hunter Hughes. The extensive discovery and expert analyses of the data enabled both sides to understand the strengths and weaknesses of their positions. Armed with that information, counsel bargained vigorously on behalf of their clients, while conducting negotiations at arm's length and in good faith. Settlement Class Counsel ensured that Settlement Class Representatives were informed of the facts, law, and expert analyses, as Settlement Class Counsel had multiple information sharing and strategy meetings with Settlement Class Representatives before, during, and after the mediation sessions. (*Id.* ¶ 25.) Settlement Class Representatives appeared at the mediation, either in person or virtually, and they lent unique insight and expertise to the negotiations and settlement process, ensuring both they and Settlement Class Counsel were fully informed and serving the best interests of the class. (*Id.*)

Negotiations were hard-fought, but the parties made significant progress. At the end of a long but fruitful day of mediation, the parties had agreed, in principle, on several terms, and had greatly narrowed the distance between them on the remaining terms. Buoyed by the advancements, the parties continued settlement talks over the following days and months, and the parties ultimately reached a settlement. (*Id.* ¶ 26.)

**III. The Settlement**

**A. Basic Terms and Value of the Settlement**

The Settlement establishes a Settlement Fund of $50 million to compensate Settlement Class members; provide for any Court-approved attorneys' fees, costs, and service awards; and provide for all costs of administering the Settlement. (Settlement § VIII.B.) As explained in detail in Section II.B.5, the Settlement Fund will be distributed using an Individual Claims Resolution Process that takes into account Settlement Class Members' experiences and alleged harms.

The Settlement also provides for meaningful non-monetary relief. (*Id.* § VII.) For three years after the Effective Date, Google will continue to analyze pay to identify unexplained differences based on race before finalizing pay changes for the following year. Google will also maintain well-publicized methods for employees to report concerns related to the terms and conditions of their employment, including concerns that they have been leveled or paid incorrectly for an unlawful reason or reviewed unfairly. Google will investigate any concerns raised and take remedial action where appropriate, among other things. Google will also take steps to ensure pay transparency and fairness, including by continuing its current practices of listing salary ranges in job advertisements, consistent with state and/or local law; continuing its practice of providing current employees with access to salary ranges for the position held upon request, consistent with state or local law; and by reaffirming its commitment to not ask for or base compensation decisions at hire or the salary history of applicants. Further, through and including August 2026, Google will not require any employee to enter into mandatory arbitration

agreements for employment-related disputes or enforce existing mandatory arbitration agreements for employment-related disputes. (*Id.*)

### B. Settlement Class Definition and Scope of Release

The Settlement Class[5] to be certified for settlement purposes only under Federal Rule of Civil Procedure 23 includes:

All Google employees identified in Google's records produced to Settlement Class Counsel on November 20, 2024 as Black or Black+ who worked in job levels 3, 4, 5 and/or 6 in a job located in California at any time from March 18, 2018 through December 31, 2023, and/or job levels 3, 4, 5, and/or 6 in a job located in New York at any time from October 15, 2017 through December 31, 2023, excluding employees who (a) exclusively held a job that Google's records identified as being within a Legal job family or subfamily, or (b) are identified in Google's records as having executed a general release of claims at any time between October 15, 2017 (for New York employees) or March 18, 2018 (for California employees) and the Preliminary Approval Date.

(Settlement § III.A.) A list of the individuals who meet this definition will be included in the Settlement Class List. If an individual is not on the Settlement Class List, then that individual is presumed ineligible for an Individual Settlement Payment and will not release any claims as a result of this Settlement Agreement. (*Id.*)

Upon final approval of the Settlement, Settlement Class Members who do not opt out will release all claims of race-based employment discrimination and retaliation, including claims regarding hiring, job assignment, pay, leveling, promotions, performance reviews, transfers, terminations or constructive discharges, failure to investigate, retaliation, or hostile work environment, under any federal, state or local law. (Settlement §§ III.A, V). This release is

---

[5] The Settlement Class is modified from the class of employees pleaded in the complaint. (Plaintiffs previously moved to dismiss with prejudice claims pleaded by and on behalf of applicants. (Dkt. No. 136).) This narrower class is informed by information learned in discovery and reasoned arguments presented by Defendant. For example, as the vast majority of the pleaded class members held jobs located in California and New York, limiting the geographic scope presented a more cohesive class. (Friedman Decl. ¶ 40.) Further, the employee class as pleaded includes employees working in job levels 2, 7, and 8. As with the geographic scope, Plaintiffs analyzed the risks involved in litigating the broader class and made the informed decision to narrow the job levels included in the class. (*Id.* ¶ 41.)

appropriate as it is limited to claims based on "the identical factual predicate as that underlying the claims in the settled class action." *Hadley v. Kellogg Sales Co.*, No. 16-cv-04955, 2020 WL 836673, at *2 (N.D. Cal. Feb. 20, 2020) (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)).

Each of the three Settlement Class Representatives have pending individual claims not resolved by the Settlement Agreement. (Dkt. No. 93 at ¶¶ 144–151, 157–173, 181–189, 196–204). No negotiations have taken place with respect to these individual claims, which may continue to be litigated or be settled. Additionally, the claims of one Named Plaintiff who does not meet the settlement class definition due to her geographic location remain pending, and they may continue to be litigated or be settled. (Friedman Decl. ¶ 44.)

### C. Proposed Allocation Plan

The Settlement creates an individualized process for a fair and equitable allocation of the Settlement Fund. The Individual Claims Resolution Process provides Settlement Class Members a meaningful opportunity to have their claims individually assessed. Unlike many other settlements, the Individual Settlement Payments for Settlement Class Members will not be computed by formula. (Friedman Decl. ¶ 46.) Instead, Settlement Class Members can file a Claim Form and participate in a nuanced and detailed process through which they will receive an individualized assessment of their claims, including consideration of post-Google wage loss and any alleged emotional distress. (Settlement § VIII.D.) This program maintains the flexibility to compensate for damages resulting from forms of alleged discrimination beyond wage disparities, such as a hostile work environment or wrongful discharge. In this way, Settlement Class Members' Individual Settlement Payments will be directly tied to the damages they would allege from the claims they are releasing, which may extend beyond strict wage loss and encompass all forms of alleged employment-based race discrimination, the harms of which cannot be measured by time-in-job. (Friedman Decl. ¶ 48.)

1    Subject to approval of the Court, the Individual Claims Resolution Process will be

2  monitored by an experienced, well-qualified Trustee, Professor Lynn P. Cohn, Co-Director of the

3  Center on Negotiation, Mediation, and Restorative Justice at the Northwestern Pritzker School of

4  Law, who has been appointed in a similar capacity by other courts. *See, e.g.*, *Jones v. Chopra,* 18-

5  cv-2132 (D.D.C. 2024), Dkt. No. 182; *Creighton v. Metropolitan Life Insurance*, 15-cv-08321

6  (S.D.N.Y. 2017), Dkt. No. 108; *Slaughter v. Wells Fargo Advisors, LLC*, 13-cv-6368, (N.D. Il.

7  2017), Dkt. No. 109, *McReynolds v. Merrill Lynch*, 05-cv-6583 (N.D. Ill. 2014), Dkt. Nos. 585-1,

8  637. Professor Cohn will review and assess the Claim Forms and make final awards, providing

9  fairness and consistency. (Settlement § VIII.D.3.) To ensure the best-informed decisions,

10  Settlement Class Counsel will provide training for Professor Cohn and any independent, qualified

11  Neutrals who assist her. (*Id.* § VIII.D.2.) Settlement Class Counsel will also assist and provide

12  support for Settlement Class Members throughout the Individual Claims Resolution Process by

13  answering questions, advising them of their rights and options, and helping them complete and

14  submit Claim Forms.[6] (*Id.* § VIII.D.6.)

15    In no event will any portion of the Gross Settlement Fund revert to Defendant. If, after

16  distribution, there remains a Residual Fund due to uncashed or undeliverable checks, the Trustee

17  shall redistribute the Residual Fund if it is financially feasible to do so. If it is not, then any

18  _____

[6] Although it is not possible to predict the claims rate, based on past experience Settlement Class
19  Counsel estimates that as low as 50% but as high of 70% of Settlement Class Members will file
Claim Forms. (Friedman Decl. ¶ 52); *see also Amador v. Baca*, No. 10-cv-1649, 2019 WL
20  13104946, at *6 (C.D. Cal. Sept. 23, 2019) (relying on Class Counsel's estimated claims rate). In
Settlement Class Counsel's experience it is likely that persons with tenure less than one year
21  would be less likely to file claims, and here slightly 20% of the class have tenures of less than two
years as of the end of the Settlement Class period. (Friedman Decl. ¶ 52.) Without knowing the
22  number of claims filed or the level of detail Claimants will provide in their Claim Forms, it is
difficult to determine the Trustee's costs with precision. (*Id.* ¶ 53.) That said, Settlement Class
23  Counsel has taken steps to reduce costs of the Individual Claims Resolution Process, including
through designing a Claim Form that will generate data allowing the Trustee and Neutrals to sort
24  claims and through encouraging electronic submission of Claim Forms. (*Id.*) Attached as Exhibit
3 is a declaration from the proposed Trustee providing additional details about her qualifications
25  and a cost estimate. (Exhibit 3, Declaration of Lynn Cohn); *see also Vianu v. AT&T Mobility
LLC*, No. 19-CV-03602-LB, 2022 WL 16823044, at *11 (N.D. Cal. Nov. 8, 2022) (approving
26  $1.2 million in administrative costs from $14 million fund).

1    Residual Fund will be treated as unclaimed property of the corresponding Settlement Class

2    Members. (*Id.* § VIII.F.)

3        **D. Settlement Administration and Notice**

4        Settlement Class Counsel solicited bids from experienced claims administrators, and the

5    parties agreed to use Atticus Administration, LLC ("Atticus") as the Claims Administrator, whose

6    costs shall be paid from the Gross Settlement Fund and are estimated to be $39,800. (Friedman

7    Decl. ¶ 55.)

8        The Claims Administrator will distribute the Notices of Settlement via U.S. mail and

9    email, re-mail any Notices of Settlement returned as non-deliverable but with forwarding

10   addresses, and re-mail the Notices of Settlement to any new address obtained by way of skip-

11   trace. (Settlement § IV.C.1.) The Claims Administrator will maintain a website with information

12   about the action including the Class Action Complaint, the Settlement Agreement, the Notice of

13   Settlement, this Motion for Preliminary Approval, and, when they are filed, the Motion for

14   Attorneys' Fees and Costs, the Motion for Service Awards, the Motion for Final Approval, and

15   the Claim Form. (*Id.*) Further, the Claims Administrator will receive and forward to the Parties'

16   Counsel any opt outs. (*Id.* § IV.C.3.) Should the Court finally approve the Settlement, the Claims

17   Administrator will distribute the Final Notice via U.S. mail and email, re-mail any Final Notices

18   returned as non-deliverable but with forwarding addresses, and re-mail the Final Notice to any

19   new address obtained by way of skip-trace. (*Id.* § IV.D.) The Claims Administrator will receive

20   Claim Forms and supporting documentation and transmit them to the Trustee. (*Id.* § VIII.D.1.)

21   The Claims Administrator will calculate applicable payroll taxes, withholdings, and deductions,

22   and issue disbursements to Settlement Class Members, any court-approved the Service Award to

23   Settlement Class Representatives, and Attorneys' Fees and Costs as approved by the Court. (*Id.* §

24   VIII.E.)

25

26

**E.  Proposed Attorneys' Fees and Costs and Service Awards**

Settlement Class Counsel will seek attorneys' fees of up to 25% of the Settlement Fund ($12,500,000) and reimbursement for expenses, currently estimated to be $211,500.82. Settlement Class Counsel's current lodestar is estimated to be $4,769,434.18. (Friedman Decl. ¶ 62; Crump Decl. ¶ 35; Settlement § IX.) Settlement Class Counsel is committed to providing assistance to all Settlement Class Members throughout the Individual Claims Resolution Process, and, given the size of the class, expect to dedicate hundreds of additional hours to this case. (Friedman Decl. ¶ 63.) Despite this commitment, Settlement Class Counsel will not seek additional attorneys' fees for time assisting Settlement Class Members.

Settlement Class Counsel intends to apply for service awards of up to $50,000 for each of the three Settlement Class Representatives. (Settlement § X.)

**F.  Compliance with the Class Action Fairness Act**

Within ten days of the filing of this motion, Google will serve the notice of the proposed Settlement, in accordance with 28 U.S.C. § 1715, upon the appropriate State and Federal officials. (Settlement § IV.C.)

**IV.    ARGUMENT**

**A.  The Settlement Class Should Be Certified for Settlement Purposes**

Plaintiffs move to certify a class of:

All Google employees identified in Google's records produced to Settlement Class Counsel on November 20, 2024 as Black or Black+ who worked in job levels 3, 4, 5 and/or 6 in a job located in California at any time from March 18, 2018 through December 31, 2023, and/or job levels 3, 4, 5, and/or 6 in a job located in New York at any time from October 15, 2017 through December 31, 2023, excluding employees who (a) exclusively held a job that Google's records identified as being within a Legal job family or subfamily, or (b) are identified in Google's records as having executed a general release of claims at any time between October 15, 2017 (for New York employees) or March 18, 2018 (for California employees) and the Preliminary Approval Date.

Before assessing whether the Settlement is within the range of reasonableness for purposes of preliminary approval, the Court conducts an independent class-certification analysis. FED. R. CIV. P. 23(e)(1). The Court should certify the Settlement Class as it meets all the requirements for certification under Federal Rule of Civil Procedure 23(a) and Rule 23(b)(2) and (b)(3) .

**1.  The Settlement Class Meets All Requirements of Rule 23(a)**

The proposed Settlement Class meets all requirements of Rule 23(a) as "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and "(4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a).

Numerosity is met as the Settlement Class includes over 4,000 members (Friedman Decl. ¶ 39), making joinder impracticable. *See, e.g.*, *Gruber v. Grifols Shared Servs. N. Am., Inc.*, No. 22-cv-02621, 2023 WL 8610504, at *4 (C.D. Cal. Nov. 2, 2023) ("Although there is no numerical cutoff for sufficient numerosity, generally 40 or more members will satisfy the numerosity requirement." (internal quotation marks omitted)).

Rule 23(a)(2) requires "questions of law or fact common to the class." "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (internal quotation marks omitted). Thus, where the circumstances of class members "vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Id.* (internal quotation marks omitted). The parties engaged in substantial discovery, including about common questions of law and fact regarding the challenged practices, which include Google's policies and practices for leveling, compensation, promotion, and performance reviews. (Friedman Decl. ¶¶ 21–23). *See Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 531 (N.D. Cal. 2012*)* (finding commonality and

certifying class where the plaintiffs "presented significant proof of companywide policies and companywide gender disparities"); *Chen v. W. Digital Corp.*, No. 19-cv-0909, 2020 WL 13587954, at *5 (C.D. Cal. Apr. 3, 2020) (finding commonality and certifying class for settlement when plaintiff alleged that defendant "systemically discriminated against Class Members in pay, promotions, and placements based on gender" and noting that "the systemic nature of the allegations lends itself to resolution on a class-wide basis").

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose of the relief sought." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted). The Settlement Class Representatives' claims are typical of the Settlement Class Claims (Friedman Decl. ¶ 42) because they, like the Settlement Class Members, are Black or Black+, meet other criteria to be members of the Settlement Class, and allege they were subjected to and harmed by the same discriminatory policies and practices challenged in this litigation. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 & 157 n.13 (1982).

Settlement Class Representatives will continue to protect the interests of the Settlement Class fairly and adequately. (Friedman Decl. ¶ 43.) They have devoted considerable time to meeting with Settlement Class Counsel and participating in the negotiation of this Settlement. (*Id.* ¶ 70.) Plaintiffs retained experienced counsel, who have regularly been appointed class counsel, including in other employment discrimination class action lawsuits. (*Id.* ¶¶ 6–9); (Exhibit 2, Declaration of Benjamin L. Crump (hereinafter "Crump Decl."), ¶¶ 15–26); *see also Lopez v. Eurofins Sci., Inc.*, No. 21-cv-08652, 2023 WL 6609355, at *4 (N.D. Cal. Oct. 9, 2023) ("Two factors are relevant to the adequacy determination: (1) whether the named plaintiffs and their counsel have potential conflicts with the other class members; and (2) whether counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the litigation.").

1    **2. The Class Meets All Requirements of Rule 23(b)(3)**

2        The Settlement Class is properly certified under Rule 23(b)(3). The common factual and

3    legal issues and proof of class-wide liability and damages this case presents are "questions of law

4    or fact common to class members" that "predominate over any questions affecting individual

5    members," and a class action is therefore "superior to other available methods for fairly and

6    efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Predominance does not require

7    "that each element of [a plaintiff's] claim [is] susceptible to classwide proof." *Amgen Inc. v.*

8    *Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (internal quotation marks and citation

9    omitted). In fact, common questions can predominate even if "certain class members'

10   circumstances varied and some of the defendant's practices would have to be proven by anecdotal

11   testimony." *Delagarza v. Tesoro Ref. & Mktg. Co.*, No. 09-cv-5803, 2011 WL 4017967, at *12

12   (N.D. Cal. Sept. 8, 2011) (citing *Dilts v. Penske Logistics*, 267 F.R.D. 625, 636–38 (S.D. Cal.

13   2010)). Here, common issues predominate because Settlement Class Representatives and the

14   Settlement Class Members allege they were subject to common policies and practices regarding

15   leveling, compensation, performance reviews, and promotions, among other things. *See Chen*,

16   2020 WL 13587954, at *7 (finding predominance when "Class Members' claims stem from

17   allegedly discriminatory *company-wide* policies, practices, and procedures concerning pay

18   levelling, stock and bonus distribution, promotions . . . , and placement practices (internal

19   quotations omitted) (modification in original)); *Ellis*, 285 F.R.D. at 538 (finding predominance

20   based on employers' common, nationwide policies).

21       Further, a class action is "superior to other available methods for fairly and efficiently

22   adjudicating" this controversy. FED. R. CIV. P. 23(b)(3). In analyzing superiority, courts focus "on

23   the efficiency and economy elements of the class action so that cases allowed under [Rule

24   23(b)(3)] are those that can be adjudicated most profitably on a representative basis." *Pan v.*

25   *Qualcomm Inc.*, No. 16-cv-01885, 2016 WL 9024896, at *5 (S.D. Cal. Dec. 5, 2016) (internal

26

quotations omitted) (alteration in original). Here, a class action is superior to thousands of individual lawsuits regarding the same challenged policies and practices. *See id.* at *6 (finding superiority in gender discrimination case challenging practices related to "compensation, salary increases or raises, job assignments, job code placements, evaluations and ratings, and promotions and demotions" because individual cases would involve litigation of the same broad-based policy and practices). The parties' Settlement is also relevant to the Rule 23(b)(3) analysis. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–20 (1997). Any manageability or predominance concerns relating to individual proceedings and defenses are satisfied by the Settlement and its Individual Claims Resolution Process. *See Cottle v. Plaid Inc.*, 340 F.R.D. 356, 370 (N.D. Cal. 2021) ("[M]anageability is not a concern in certifying a settlement class . . . ." (internal quotations omitted)).

### B. The Settlement Is Reasonable, Fair, and Adequate and Warrants Preliminary Approval

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiffs' fiduciary obligations to the class." *Stemple v. RingCentral, Inc.*, No. 18-cv-04909, 2019 WL 3842091, at *5 (N.D. Cal. Aug. 15, 2019). When considering whether to grant approval, courts often "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

In determining whether to preliminarily approve a proposed settlement, a court considers whether it will "likely be able to" approve the settlement under the following Rule 23(e)(2) factors: (1) "the class representatives and class counsel have adequately represented the class;" (2) "the proposal was negotiated at arm's length;" (3) "the relief provided for the class is adequate, taking into account" factors such as the costs, risks, and delay of continued litigation,

the effectiveness of the proposed method of distributing relief to the class, and the proposed award of attorneys' fees; and (4) "the proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e). In the Ninth Circuit, these factors supplement what courts refer to as the *Hanlon* or *Churchill* factors, which include: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; [and] the extent of discovery completed and the stage of the proceedings; the experience and views of counsel."[7] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *see also Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Lopez v. Eurofins Sci., Inc.*, No. 21-cv-08652, 2023 WL 6609355, at *5–6 (N.D. Cal. Oct. 9, 2023) (applying the *Hanlon* factors in addition to the Rule 23(e)(2) factors). Finally, when determining whether to preliminarily approve a class action settlement, courts consider whether the settlement falls within the range of reasonableness, taking into consideration the strengths and weaknesses of the plaintiffs' case. *See Bernstein v. Ginkgo Bioworks Holdings, Inc.*, No. 21-cv-08943, 2024 WL 5483605, at *3 (N.D. Cal. July 31, 2024).

The Settlement here easily meets those factors and falls well within the range of reasonableness, as it provides substantial and meaningful relief to the Settlement Class, was negotiated at arm's length after extensive discovery, is an outstanding result in light of the risks of proceeding through trial and appeal, and is supported by experienced counsel. Further, the proposed Attorneys' Fees and Costs and Service Awards are reasonable.

## 1. The Settlement Provides Substantial and Meaningful Relief to the Settlement Class and the Settlement Fund Will Be Equitably Distributed

The Settlement Fund of $50 million provides exceptional monetary relief to the Settlement Class Members who allege they were subjected to the policies and practices

---

[7] The factors also include "the presence of a governmental participant," which is not relevant here as there is no governmental participant," and "the reaction of the class members to the proposed settlement," which can only be analyzed after the notice period. *Hanlon*, 150 F.3d at 1026.

challenged in this litigation. Moreover, the Individual Claims Resolution Process ensures Settlement Class Members will be equitably compensated for the claims they are releasing. Settlement Class Counsel believes the Settlement Class is best served by an Individual Claims Resolution process over a per capita distribution of the fund tied to time-in-position, which is common and done with ease, pursuant to a formula. (Friedman Decl. ¶ 47.) To be sure, while the use of a formula in certain cases, such as those involving FLSA overtime claims, may fairly distribute a common fund, an individualized claims resolution process ensures that the Settlement Fund here will be distributed based on the relative merits of the released claims, as determined by a neutral Trustee. (*Id.*)

    First, taking into consideration the potential recovery and risks of continued litigation, the Settlement Fund amount is a fair and reasonable compromise to resolve the Settlement Class Claims and is well within the range of reasonableness. Google produced extensive data regarding Google employees' compensation, job level, job family and sub-family, position, tenure, performance reviews, and qualifications such as prior experience and education, among other variables, which Settlement Class Counsel retained an expert to analyze. (*Id.* ¶ 29.) Settlement Class Counsel understands that Google denied that any racial wage disparities existed based on its regression analysis of these data, which controlled for typical factors such as position held, job level, length of service, prior experience, education and performance, among other things. (*Id.* ¶ 31.) Settlement Class Counsel's expert, in contrast, estimated wage differentials at approximately $52 million when eliminating variables from the regression analysis that the Settlement Class challenged as tainted, but controlling for other variables such as job level, job sub-family, tenure, location, and prior experience and education, among other factors. (*Id.* ¶ 32.) Settlement Class Counsel believes that this equal pay analysis that compares jobs within the same level and subfamily, although not without risk, presents the most straightforward path toward class certification and class-wide recovery. (*Id.*) Yet, the Settlement Class alleged that Google's

leveling practices caused additional disparities that would not be captured by an analysis that compared jobs within the same level. Again, Google's analysis established that there were no disparities related to leveling. (*Id.* ¶ 33.) Conversely, Settlement Class Counsels' expert estimated the potential wage losses due to leveling policies and practices in a variety of ways. The highest wage loss estimated due to less favorable treatment with respect to leveling was approximately $229 million. (*Id.*) The parties understood that their methodological differences in statistical analysis would have surfaced in *Daubert* motions or at class certification and, likely, led to appellate review.

Settlement Class Counsel also reviewed extensive information and evidence—including but not limited to information obtained through interviewing putative class members and reviewing documents produced in discovery—related to other wage claims and non-wage claims pleaded in the Complaint and included in the release. (*Id.* ¶ 34.) Given the expert analysis and other evidence, Settlement Class Counsel submits that the $50 million Settlement Fund is well within the range of reasonableness given the associated risks, including the risks described below, *infra* Section IV.B.3. *See, e.g.*, *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) ("[T]he Court finds that the 10% gross and 7.3% net figures [of maximum recovery after trial] are within the range of reasonableness in light of the risks and costs of litigation." (internal quotations omitted)).

Additionally, the reasonableness of the Settlement amount is confirmed by reference to other recent employment discrimination class settlements. *See Bernstein*, 2024 WL 5483605, at *5 (N.D. Cal. July 31, 2024) (analyzing whether the settlement amount represented a reasonable recovery by comparing the settlement to other settlements in the same area of law and noting this method was appropriate given that "the total amount of damages is complex and subject to genuine dispute amongst the parties"). Reliable industry reports compile the largest employment-discrimination class action settlements by year. An analysis of these reports reveals that this

settlement ranks among the larger employment discrimination settlements in the last several years, particularly for race discrimination. (Friedman Decl. ¶ 37.)

The Settlement Fund is not only a fair result given the potential maximum recovery and in reference to other settlements of employment discrimination class actions, but it will also be fairly distributed to Settlement Class Members. The Settlement creates an individualized process for equitable allocation of the Settlement Fund. Instead of being formulaically assigned a dollar amount based on their time in the job, Settlement Class Members have a meaningful opportunity to have their claims individually assessed. (Settlement § VIII.D.) Such individual assessment is necessary to properly evaluate and compensate for claims of race discrimination, including with respect to leveling and job titles. Further, this program maintains the flexibility to compensate for damages resulting from other forms of alleged discrimination, such as a hostile work environment, retaliation, or wrongful discharge. In this way, Settlement Class Members' Individual Settlement Payments will be directly tied to the damages they would allege from the claims they are releasing, which extend beyond strict wage loss and encompass all forms of employment-based race discrimination. (Friedman Decl. ¶ 48.) If the Individual Settlement Payments were calculated formulaically using time in the job, Settlement Class Members may not be equitably compensated. For example, if there was a long-tenured employee who alleged they experienced garden variety emotional distress and a former employee who alleged they resigned due to a hostile work environment within months of hire, a formulaic calculation would give the long-tenured employee one of the largest awards and the former employee one of the smallest, even though their alleged damages suggest the opposite. (*Id.* ¶ 49.) As one court recognized in approving a similar individualized distribution process, an employment discrimination case such as this is "the kind of case where individualized assessments can and may be necessary and appropriate to award relief." (*Id.*; Friedman Decl., Exhibit D, Transcript of Proceedings at 13:10-12, *Senegal v. Chase*, No 18-cv-06006 (N.D. Il. Dec. 18, 2018). Thus, given the claims litigated

and released, the Individual Claims Resolution Process meets Rule 23's requirement of "treat[ing] class members equitably relative to each other." FED. R. CIV. P. (e)(2)(D).

### 2. The Settlement Is the Product of Arm's Length, Informed Negotiations Reached After Extensive Discovery

The Settlement is the non-collusive product of litigation and mediation. These factors weigh heavily in favor of approving the Settlement. The terms of the Settlement were reached after a fulsome exchange of discovery and extensive negotiations with the assistance of an experienced mediator. The parties informally exchanged discovery over the spring and summer of 2024. They then engaged Hunter Hughes, an experienced professional mediator who is skilled in the areas of complex class actions and employment discrimination litigation, for an in-person mediation session on June 12, 2024. (Friedman Decl. ¶ 20.) Settlement Class Representatives participated fully in the mediation session, along with their counsel. The parties continued negotiating over the next several months, though the discussions were initially unsuccessful. (*Id.*) The parties then engaged in substantial fact discovery, which included Google's production of additional and substantial workforce data. (*Id.* ¶¶ 21–22.) Plaintiffs retained an experienced labor economist to analyze Google's workforce data, which included prior work experience, education history, comprehensive work histories, including job-title histories, job-location histories, pay histories, bonus and equity awards, performance reviews, and demographic data. (*Id.* ¶ 24.) The parties again engaged Hunter Hughes for a day-long mediation session on January 22, 2025. As with the first session, Settlement Class Representatives participated fully. Negotiations continued over the subsequent months, ultimately resulting in this Settlement Agreement. (*Id.* ¶ 26.)

Here, both the extensive discovery and the arms-length negotiation process weigh heavily in favor of approval. The parties engaged in extensive discovery that has enabled both sides to assess the claims and potential defenses in this action, and they "reached the settlement only after obtaining discovery sufficient to allow a robust damages assessment." *Villafan v. Broadspectrum*

*Downstream Servs., Inc.*, No. 18-cv-06741, 2020 WL 6822908, at *6 (N.D. Cal. Nov. 20, 2020). Further, "[t]hat the settlement was reached with the assistance of an experienced mediator further suggests that the settlement is fair and reasonable." *Kline v. Dymatize Enters., LLC*, No. 15-cv-2348, 2016 WL 6026330, at *5 (S.D. Cal. Oct. 13, 2016); *see also Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

Finally, the Settlement Agreement does not include any of the "subtle signs" of potential collusion raised by the Ninth Circuit in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 947 (9th Cir. 2011). Settlement Class Counsel will not receive a disproportionate distribution of the Settlement Fund; they will petition the Court for the standard 25% fee award and only receive an award with Court approval. *Id.* at 942, 947. There is no "clear sailing" agreement providing for the payment of fees "separate and apart from class funds." *Id.* at 947. Finally, none of the Settlement Fund—including any attorneys' fees sought but not awarded—will revert to the Defendant. *Id.*

### 3. The Settlement Is an Outstanding Result for the Settlement Class in Light of the Risks of Proceeding Through Trial and Appeal

Absent this Settlement, continued litigation of this action would be complex and lengthy, requiring the investment of considerable resources by both sides. The appropriateness of class certification and liability in this case is hotly contested, and Plaintiffs would face considerable risks should the litigation proceed. (Friedman Decl. ¶ 30); *see also Betancourt v. Advantage Hum. Resourcing, Inc.*, No. 14-cv-01788, 2016 WL 344532, at *4 (N.D. Cal. Jan. 28, 2016) ("Approval of a class settlement is appropriate when there are significant barriers plaintiffs must overcome in making their case." (internal quotations omitted)). For example, Plaintiffs expect Google would argue that certification is not appropriate in part because the putative class covers multiple job titles and locations, and, according to Google, the employment actions at issue here such as

compensation setting or performance reviews are the product of individual supervisors exercising their discretion as opposed to a companywide policy. (Friedman Decl. ¶ 31); *see also Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 331 (N.D. Cal. 2014) (finally approving a class action settlement and explaining that "difficulties associated with maintaining class certification weigh in favor of approving the settlement").

If this putative class were certified outside of the settlement process, Plaintiffs' counsel expects Google would file a Rule 23(f) appeal and, if necessary, a petition to the Supreme Court. Even if Plaintiffs overcame these risks—even if they obtained class certification, defeated Google's merits defenses, and obtained a favorable liability verdict on behalf of the class at trial—they still would not have been guaranteed a class-based recovery, as the Court might determine that separate individual damages trials were necessary, introducing additional risk and delay for each Settlement Class Member who sought a recovery. Thus, absent a settlement, the putative class would face a class certification fight, a potential Rule 23(f) appeal, *Daubert* motions, a motion for summary judgment, and more years of litigation before any Settlement Class Member could potentially recover on his or her claim. (Friedman Decl. ¶ 35.)

In light of the potential outcomes and risks, this Settlement is an outstanding result that will provide significant monetary relief available to each and every Settlement Class Member, even though some may not have prevailed in their individual claims in court.[8] In contrast to the complexity, delay, risk, and expense of continuing litigation, the proposed Settlement will produce prompt, certain, and substantial recovery for Settlement Class Members. (*Id.* ¶ 36.) The

---

[8] *See, e.g.*, Hon. Denny Chin, *Summary Judgment in Employment Discrimination Case: A Judge's Perspective*, 57 N.Y.L SCH. L. REV. 671, 672–73 (2013) (summary judgment is granted, in whole or in part, in employment discrimination cases approximately 77% percent of the time, a higher rate than other types of civil cases); *accord* Memorandum from Joe Cecil & George Cort, Fed. Judicial Ctr., to Judge Baylson, at 3 (Aug. 13, 2008), *available at* https://www.uscourts.gov/sites/default/files/sujulrs2.pdf (in employment discrimination cases in federal court, summary judgment motions by defendants are more common, more likely to be granted, and more likely to terminate the litigation than other case types).

Settlement is plainly in the best interests of the Settlement Class. *See Lopez*, No. 21-cv-08652, 2023 WL 6609355, at *6 (N.D. Cal. Oct. 9, 2023) (approving class settlement in part because "settlement allows payment to the Class Members now, before costly and protracted litigation").

**4.    The Settlement is Supported by Competent, Experienced Counsel and Settlement Class Representatives**

Here, the Settlement Class Representatives and Settlement Class Counsel "have adequately represented the class." FED. R. CIV. P. 23(e)(2)(A). Settlement Class Representatives took on a professional risk and dedicated substantial time and effort to prosecuting this important case on behalf of their fellow Settlement Class Members. They did much more than lend their name to a lawsuit. They have been an invaluable resource for Settlement Class Counsel, aiding counsel's investigation, helping prepare court pleadings, participating in discovery, and participating in multiple mediation sessions. (Friedman Decl. ¶ 70.)

Settlement Class Representatives also retained experienced counsel, who have extensive experience in litigating employment discrimination cases, including class actions. (*Id.* ¶¶ 6–9); (Crump Decl. ¶¶ 15–26). Based on its experience and an in-depth analysis of the merits, record, and risks of this action, Settlement Class Counsel enthusiastically recommends this Settlement to the Court for approval. (Friedman Decl. ¶ 45); *see also Carter v. Anderson Merchandisers, LP*, No. 08-cv-0025, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

**5.    The Proposed Service Awards and Attorneys' Fees Are Reasonable**

Settlement Class Counsel is proud to have advocated for the Settlement Class alongside Settlement Class Representatives and will petition the Court to award Service Awards of no more than $50,000 each to compensate Settlement Class Representatives for their considerable efforts on behalf of the Settlement Class. The Settlement Class Representatives knew that their names would be forever connected to this lawsuit and available on the internet to prospective employers.

Nonetheless, they agreed to serve as Settlement Class Representatives and to advocate zealously for absent class members. (Friedman Decl. ¶ 72.) Courts in this Circuit and around the country grant service awards of this amount and greater in employment discrimination cases in recognition of the added risks taken on by class representatives, including the "real and substantial" fear of retaliation. *Pan v. Qualcomm Inc.*, No. 16-cv-01885, 2017 WL 3252212, at *13 (S.D. Cal. July 31, 2017) (awarding $50,000 to each of the seven class representatives in race and gender discrimination action); *see also del Toro Lopez v. Uber Techs., Inc.,* No. 17-cv-06255, 2018 WL 5982506, at *3 (N.D. Cal. Nov. 14, 2018) (awarding a service award of $50,000 and $30,000 to class representatives in employment discrimination case). For example, in granting $50,000 in service awards to two class representatives as part of a $6 million race discrimination settlement, Judge Beryl Howell explained that bringing a class action lawsuit against a "big employer" (there, a federal agency) "takes enormous courage" and carries "greater risk in terms of reputational association." (Friedman Decl., Exhibit F, Transcript of Settlement Hearing at 36:11–22, *Jones v. Chopra*, No. 18-cv-2132 (D.D.C. Jan 18, 2024).) This sentiment is shared by judges throughout the country. In a case granting $150,000 service awards per class representative, one judge explained that race discrimination "litigation is something that has particular challenges for plaintiffs who put themselves at a great deal of risk, frankly, personally and professionally by associating themselves sometimes as someone who may be branded a troublemaker if they try to sue their employer based on discrimination claims." (Friedman Decl., Exhibit G, Transcript of Proceedings at 51:9–14, *Bland v. Edward D. Jones Co., L.P.*, No. 18-cv-3673 (N.D. Il. July 12, 2021).)

The amount of the Service Awards sought here is lower than those approved by other courts. (Freidman Decl. ¶ 75); *see, e.g.*, *Chen-Oster v. Goldman Sachs & Co.*, No. 10-cv-6950, 2023 WL 7325264, at *6 (S.D.N.Y. Nov. 7, 2023) (awarding $750,000 aggregate service awards from $215 million common fund); *Senegal v. JPMorgan Chase Bank, N.A.*, No. 18-cv-6006, Dkt.

No. 40 at 5 (N.D. Ill. Dec. 20, 2018), aff'd, 939 F.3d 878 (7th Cir. 2019) (approving $900,000 aggregate service award from $24 million common fund); *Slaughter v. Wells Fargo Advisors, LLC*, No. 13-cv-06368, Dkt. No. 113 at 5 (N.D. Ill. May 4, 2017) (approving $1.25 million aggregate service award from $35.5 million common fund); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 05-cv6583, Dkt. No. 616 at 5 (N.D. Ill. Dec. 6, 2013) (approving $4.25 million aggregate service awards from $160 million common fund). Finally, Settlement Class Counsel did not discuss the fact or amount of Service Awards with Settlement Class Representatives until after the parties agreed to all other material terms of the Settlement Agreement, and the parties and Settlement Class Representatives fully support this Settlement Agreement regardless of whether the Court grants Service Awards. Settlement Class Counsel and Settlement Class Representatives will provide additional information in support of Service Awards at the time the Motion for Service Awards is filed with the Court. (Friedman Decl. ¶ 76.)

No later than twenty-five days after the Notice of Settlement is distributed, Settlement Class Counsel will petition the Court for attorneys' fees of no more than 25% of the Settlement Fund and reasonable costs. (*Id.* ¶ 62.) This amount is consistent with the Ninth Circuit's "benchmark," and the timing will permit Settlement Class Members 35 days to object to the petition, which will be included on the Claims Administrator's website. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947. As with the Service Awards, the parties' and Settlement Class Representative's support of this Settlement Agreement is not contingent on the award of Attorneys' Fees and Costs. (Friedman Decl. ¶ 64.) Settlement Class Counsel will provide additional information in support of their Attorneys' Fees and Costs at the time the Motion for Attorneys' Fees and Costs is filed with the Court.

### C. The Proposed Notice Is Appropriate

"Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *In*

1
2
3
4
5

*re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019) (internal quotation marks omitted). Procedural due process does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

6
7
8
9
10
11
12
13
14

   The proposed Notice of Settlement (Friedman Decl, Exhibit B) will provide clear and adequate notice so that Settlement Class Members can make an informed choice about whether to opt out, object, and/or seek an Individual Settlement Payment. (Friedman Decl. ¶ 56.) The proposed Notice of Settlement provides Settlement Class Members a summary of the lawsuit; a definition of the Settlement Class; a summary of the Settlement's material terms; a definition of the released claims; information regarding how to object to or opt out of the Settlement Class; the date, time, and location of the fairness hearing; the identity of Settlement Class Counsel; and the provisions for Attorneys' Fees and Costs and Service Awards. It is clear, accurate, and satisfies due process.

15

## **CONCLUSION**

16
17
18
19
20
21
22
23

   For all the foregoing reasons, Plaintiffs respectfully request that the Court enter the Order attached as Exhibit 4: (1) certifying the Settlement Class for settlement purposes, (2) preliminarily approving the Settlement Agreement, (3) authorizing retention of Atticus Administration, LLC as the Claims Administrator, (4) approving the form and matter of the Notice of Settlement to the Settlement Class, (5) appointing Stowell and Friedman, Ltd., and Ben Crump Law PLLC as Settlement Class Counsel, (6) appointing April Curley, Ronika Lewis, and Desiree Mayon as Settlement Class Representatives, and (7) setting the Final Approval Hearing as well as the schedule for various deadlines in connection with the Settlement Agreement.

24
25
26

   Dated: May 8, 2025                    Respectfully submitted,

                                          */s/ Linda D. Friedman*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Linda D. Friedman (pro hac vice)
Suzanne E. Bish (pro hac vice)
George S. Robot (pro hac vice)
STOWELL & FRIEDMAN, LTD.
303 W. Madison St.
Suite 2600
Chicago, IL 60606
(312) 431-0888

Ben Crump (pro hac vice)
Nabeha Shaer (pro hac vice)
BEN CRUMP LAW, PLLC
122 S. Calhoun St.
Tallahassee, FL 32301
Telephone:    (800) 713-1222
court@bencrump.com

Sam Sani (SBN 2733993)
SANI LAW, APC
595 E. Colorado Blvd., Suite 522
Pasadena, CA 91101
Telephone:    (310) 935-0405
ssani@sanilawfirm.com

*Attorneys for Plaintiffs and the Putative Class*