# Exhibit 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Ben Crump (pro hac vice)
Nabeha Shaer (pro hac vice)
BEN CRUMP LAW, PLLC
122 S. Calhoun St.
Tallahassee, FL 32301
Telephone:     (800) 713-1222
court@bencrump.com

Linda D. Friedman (pro hac vice)
Suzanne E. Bish (pro hac vice)
George Robot (pro hac vice)
STOWELL & FRIEDMAN LTD.
303 W. Madison St., Suite 2600
Chicago, Illinois 60606
Telephone:     (312) 431-0888
lfriedman@sfltd.com

Sam Sani (SBN 2733993)
SANI LAW, APC
595 E. Colorado Blvd., Suite 522
Pasadena, CA 91101
Telephone:     (310) 935-0405
ssani@sanilawfirm.com

*Attorneys for Plaintiffs and the Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL CURLEY, DESIREE MAYON, RONIKA LEWIS, RAYNA REID, ANIM AWEH, and EBONY THOMAS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Defendant. | CASE NO: 4:22-cv-01735-KAW<br><br>**DECLARATION OF LINDA D. FRIEDMAN IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR CONDITIONAL CERTIFICATION AND PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**<br><br>Hon. Kandis A. Westmore |

I declare under penalty of perjury that the foregoing is true and correct.

1.      My name is Linda D. Friedman. I am a founding and managing partner of Stowell & Friedman, Ltd. ("Stowell & Friedman" or "the Firm"), a boutique civil rights law firm with a national practice established more than thirty-five years ago. On behalf of the *Curley v. Google* Class, I am pleased to submit to this Court the Motion for Class Certification for Settlement Purposes Preliminary Approval of the Settlement Agreement. I respectfully submit this declaration in support of that motion. I understand Ben Crump is also submitting a declaration in support of the motion, which addresses Mr. Crump's qualifications to serve as counsel and provides an estimate of Ben Crump Law's lodestar and costs.

2.      I am a 1985 graduate of DePaul University College of Law and a member in good standing of the following tribunals: Supreme Court of the United States, United States Court of Appeals (2nd, 4th, 7th, 9th and Federal Circuit), the Trial Bar for the Northern District of Illinois, and the Illinois State Bar.

3.      I began my legal career as the first law clerk to the Honorable Harry D. Leinenweber, District Court Judge for the Northern District of Illinois. Since completing my clerkship in 1987, I have consistently been employed as a lawyer representing plaintiffs in individual, group, collective, and class action civil rights claims.

4.      During the course of my career, I have been fortunate to be honored by my peers with various recognitions such as Lawdragon 500 Leading Lawyers, Super Lawyer, Law and Leading Attorneys, 10 Most Influential Women Attorneys in Illinois, *Women Employed* Champion for Change, Distinguished Alumna DePaul University Women's Law Caucus, the Alliance for Women Founders Award, and the Trailblazer Award from the Human Rights

Commission Civil Rights Summit. The National Law Journal awarded Stowell & Friedman the Elite Trial Lawyers Award for 2018 in two categories: racial discrimination and employee rights. The ACLU of Illinois recognized the Firm as a Civil Liberties Champion.

5.      I regularly speak or sit on panels for professional associations, such as the Seventh Circuit Court of Appeals Bar Association and Judicial Conference, the Equal Employment Opportunity Commission, the American Bar Association, Chicago Bar Association, Barnard College, DePaul University, Northwestern University, the Practicing Law Institute, and the National Employment Lawyers Association. I have also been interviewed or asked to comment regarding civil rights and class action topics by news stations such as CNN and CNBC and by news publications such as the New York Times, the Wall Street Journal, Fortune, Dow Jones, Reuters, Washington Post, and Bloomberg News Service, among others.

Stowell & Friedman's Experience

6.      Over the years, Stowell & Friedman has successfully recovered more than a billion dollars for victims of discrimination. The Firm prosecuted some of the earliest and most successful nationwide sex harassment and discrimination class action lawsuits involving the securities industry. *See*, *Martens v. Smith Barney*, No. 96-cv-3779 (S.D.N.Y.), and *Cremin v. Merrill Lynch*, 328 F. Supp. 2d 865, 866 (N.D. Ill. 2004). The *Cremin* settlement highlights the Firm's ability to creatively resolve cases to achieve the best outcomes for its clients. That class action case established a novel alternative dispute resolution process.  The process began with a class-wide statistical evidence hearing that was preserved for individual class members to use at mediation and then arbitration.  After prevailing in arbitration on the class-wide statistical evidence, the majority of class member claims were individually resolved and approximately

$250 million was recovered for class members.  For over 25 years, Stowell & Friedman has similarly designed claims resolution processes that reject a formulaic distribution as was done in this case.

7.     Stowell & Friedman has demonstrated its commitment to its clients regardless of the challenges or duration of the case. Some of these class cases were litigated for years, and others were defended successfully on appeal. *Biondo, et al. v. City of Chicago* offers an example of Stowell & Friedman's tenacity and trial skills. There, the Firm represented a class of Chicago firefighters for over twenty years, eventually winning a class liability jury verdict, which was upheld by the Seventh Circuit. *See Biondo v. City of Chicago*, 382 F.3d 680 (7th Cir. 2004). Following the class liability jury trial, the Firm recovered substantial damages in three separate pilot jury trials, resulting in favorable settlements for 175 class members, including back pay, promotions, retirement benefits and a common fund for a subclass. Transcript of Fairness Hearing at 21, *Gawryk, et al. v. City of Chicago*, 88-cv-3773 (N.D. Ill. Feb. 10, 2009).

8.     Similarly, Stowell & Friedman served as class counsel in the nationwide race discrimination class action *McReynolds, et al. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 05-cv-6583 (N.D. Ill.). After almost a decade of litigation, including proceedings before Judge Robert W. Gettleman, a victory in the Seventh Circuit Court of Appeals, *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482 (7th Cir. 2012), and two petitions for certiorari to the United States Supreme Court, the case settled for $160 million and significant injunctive relief to benefit a class of approximately 1,400 financial advisors. Stowell and Friedman invested over 40,000 hours of work on the *McReynolds* case. During the *McReynolds* fairness hearing, Judge Gettleman commended Stowell & Friedman on the "extraordinary job" the firm did in

litigating the case and in negotiating programmatic relief that could serve as "a good model for the entire industry, and it's certainly a good model for our country that recognizes the past vestiges of discrimination are something that we constantly have to be vigilant about combatting and providing appropriate remedies, and this case certainly does that." Transcript of Fairness Hearing at 6, 9, *McReynolds, et al. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 05-cv-6583 (N.D. Ill. Dec. 6, 2013), ECF 623.

9.     *Martens*, *Cremin*, and *McReynolds* are not unique among the Firm's success in discrimination class action lawsuits. Stowell & Friedman served as class counsel in the nationwide race discrimination class action lawsuits *Slaughter v. Wells Fargo*, No. 13-cv-6368 (N.D. Ill.), *Creighton v. Metlife*, No. 15-cv-8321 (S.D.N.Y.), *Senegal v. JPMorgan Chase Bank, N.A.*, No. 18-cv-6006 (N.D. Ill.), *Bland v. Edward Jones*, No. 18-cv-3673 (N.D. Ill.), *Randle v. Sun Trust*, No. 18-cv-1525 (D.D.C.); *Jones v. Chopra*, No. 18-cv-2132 (D.D.C).

Stowell & Friedman Practice Management

10.     The Firm is selective about the few cases it accepts and files in court. The Firm has a low volume of cases actually filed in court. Once the Firm accepts a case, it  invests fully in that case and often require clients to agree to participate in pre-filing mediation. The Firm tends to focus our practice on cases in which we believe that our experience in certain industries and in analyzing patterns and systemic obstacles facing women and minority employees can make a meaningful difference in the prosecution of the case and in achieving the most favorable results for its clients.

11.     The Firm operates primarily on a contingent fee practice, with very few exceptions over the years, in which individual clients prefer to pay hourly rates. Our standard attorneys' fees

contingent rate is one-third (33.33%) of the judgment or settlement. We believe that this approach provides access to justice for aggrieved employees who cannot afford to pay ongoing attorneys' fees and therefore could not otherwise afford an attorney; it also aligns the interests of lawyers most closely with those of clients and incentivizes achieving the best possible result for the maximum recovery.

12.     The Firm bears the costs of all class action litigation, which are considerable because of the need for broad, often nationwide discovery, electronic discovery, and the considerable statistical and social science expert analysis necessary to successfully prosecute employment discrimination class actions. The Firm regularly works with electronic discovery vendors and some of the top labor economists and social scientists across the country.

13.     The Firm's partners are deeply involved in the litigation from the outset and throughout the litigation, although the Firm's associates contribute greatly to the Firm's Success. Partners lead strategy decisions and discovery efforts, consistently attend court appearances, develop the statistical and expert evidence, and try the cases or negotiate settlements. I believe there is no substitute for a deep knowledge of the factual record from the start of a case and for a sophisticated analysis and understanding of the workforce data, including when making decisions about crafting and presenting arguments, pursuing discovery, properly engaging in informed negotiations, and developing and applying the relevant legal framework.  The Firm's partners work closely with class representatives and regularly consult, inform, and solicit input and advice from the employees who actually worked for the defendant and experienced the conduct at issue.

14.     Because of the nature of its  class action practice, the Firm often faces employers, and the Big Law firms they hire to represent them, with seemingly unlimited resources. The

Firm's opponents sometimes staff our cases with dozens of lawyers and produce millions of pages of documents and terabytes of workforce data. Stowell & Friedman typically employs around 12 full time attorneys, most of whom are former federal or appellate law clerks, or state Supreme Court law clerks. Those lawyers work long hours and at a very high level. To zealously prosecute its cases and properly respond to defense attacks, the Firm also invests in qualified staff and has a higher staff to attorney ratio than many law firms. The Firm similarly invests in infrastructure to support its large class cases, including computer systems and programs for electronic discovery, and document and data management. The Firm also employs a full-time information technology professional who is an attorney with expertise in electronic discovery.

15.     The Firm's approach to its cases demands substantial overhead and considerable costs and risk. The cost of class cases is substantial, as is the resource commitment they require for long periods of time, usually years, and occasionally, even decades. Stowell & Friedman is not a high-volume Firm. We typically have fewer than ten cases filed in court, and no more than five class cases in court at any one time. Due to the increase in arbitration agreements and class action waivers, the Firm also regularly engages in arbitration on individual claims. The long-term investment these cases demand means that the Firm must turn away other legal matters and invest case proceeds into the Firm. There is an opportunity cost associated with the all-consuming nature of larger cases.

Overview of the *Curley v. Google* Litigation and Settlement Negotiations

16.     Plaintiff April Curley filed this putative class action on March 18, 2022, alleging that she had been assigned a lower-level role, paid lower wages, rated unfairly on her performance, subjected to a hostile work environment, and denied advancement and leadership

roles because she is Black. (Dkt. No. 1.) An Amended Complaint was filed on June 30, 2022, adding the two additional Class Representatives, Ronika Lewis and Desiree Mayon. (Dkt. No. 32.)

17.    After motion practice on Plaintiffs' pleadings, resulting in the Court's dismissal of certain claims in Plaintiffs' Second Amended Complaint (Dkt. No. 83), Plaintiffs filed their Third Amended Complaint on July 26, 2024 (Dkt. No. 93).

18.    Plaintiffs alleged, on behalf of themselves and all other Google employees similarly situated: (1) Race Discrimination and Hostile Work Environment in Violation of 42 U.S.C. § 1981; (2) Race Discrimination and Hostile Work Environment in Violation of Title VII, U.S.C. § 2000e, *et seq.*; (3) Race Discrimination and Hostile Work Environment in Violation of FEHA, Ca. Gov. Code & 45940, *et seq.*; (4) Race Discrimination and Hostile Work Environment in Violation of New York State Human Rights Law; (5) Race Discrimination and Hostile Work Environment in Violation of New York City Human Rights Law; and (6) Pay Discrimination in Violation of California Equal Pay Act. (*Id.*) Plaintiffs also alleged retaliation claims on behalf of Plaintiffs and members of the putative class.

19.    The parties attempted to resolve the case through mediation before embarking on formal discovery. Toward that end, the parties began informally exchanging data and documents over the spring and summer of 2024. Google produced hundreds of documents regarding relevant policies as well as a significant snapshot of workforce data. Plaintiffs engaged an expert to analyze that production.

20.    The parties engaged Hunter Hughes, an experienced professional mediator who is skilled in the areas of complex class actions and employment discrimination litigation, for an in-

person mediation session on June 12, 2024. They engaged in many follow-up meetings throughout the summer and fall to continue discussions on possible settlement. During these sessions, the parties exchanged competing data analyses prepared by experts. While these sessions did not resolve the case, the parties were able to frame the issues for discovery and further debate.

21.    Over the next six months, the parties vigorously litigated the case and engaged in substantial fact discovery. Plaintiffs served initial disclosures and class interrogatories, issued five sets of class requests for production totaling 89 requests, and noticed depositions pursuant to Federal Rule of Civil Procedure 30(b)(6) covering 64 total topics. Defendant served 167 total requests for production and 48 total interrogatories and noticed depositions for all six Plaintiffs.

22.    The Parties timely answered each other's discovery requests and issued 20 total rolling productions that include nearly 200,000 pages of documents and workforce data totaling over 48 million records. The parties dedicated significant time and effort in obtaining, producing, and reviewing these materials.

23.    Throughout this exchange of documents and data, the parties negotiated numerous discovery disputes. The Parties met and conferred extensively regarding the protective order, production of electronically stored information, and discovery, including the exchange of several Rule 37 letters.

24.    Near the end of 2024, the parties again agreed to engage in formal settlement discussions through mediation. Google produced another volume of data for mediation purposes. Plaintiffs retained an experienced labor economist to analyze both the data sets produced in advance of mediation as well as the data that had been produced pursuant to Plaintiffs' discovery

requests. Combined, the data ranged from prior work experience and education history for all

persons hired during the relevant period as well as comprehensive work histories for their tenure

at Google, including job-title histories, job-location histories, compensation histories, bonus and

equity awards, performance reviews, and demographic data. Plaintiffs' expert conducted

statistical analyses including those on attrition, racial representation across various job

parameters, and compensation studies, including numerous regression models. Plaintiffs

presented their analysis of the data to Defendant and the mediator in advance of the mediation.

Defendant also presented its analysis of the same data to Plaintiffs.

     25.    The parties met for an in-person mediation on January 22, 2025, again with Hunter

Hughes. Counsel bargained vigorously on behalf of their clients, while conducting negotiations at

arm's length and in good faith. Class Counsel ensured that Class Representatives were informed

of the facts, law, and expert analyses, as Class Counsel had multiple information sharing and

strategy meetings with Class Representatives before, during, and after the mediation sessions.

Class Representatives appeared at the mediation, either in person or virtually, and they lent

unique insight and expertise to the negotiations and settlement process, ensuring both they and

Class Counsel were fully informed and serving the best interests of the class.

     26.    Negotiations were hard-fought, but the parties made significant progress. At the

end of a long but fruitful day of mediation, the parties had agreed, in principle, on several terms,

and had greatly narrowed the distance between them on the remaining terms. Buoyed by the

advancements, the parties continued settlement talks over the following days and months, and the

parties ultimately reached a settlement.

The Terms of the Settlement

27.     A true and correct copy of the Settlement Agreement is submitted herewith as Exhibit A (hereafter, "Settlement"). A true and correct copy of the Notice of Settlement is submitted herewith as Exhibit B. A true and correct copy of the Claim Form is filed under seal as Exhibit C.

28.     The Settlement requires Google to pay $50 million to establish a Settlement Fund that will compensate Settlement Class members; provide for any Court-approved attorneys' fees, costs, and service awards; and provide for all costs of administering the Settlement. (Settlement § III.) The fund will be distributed using an Individual Claims Resolution Process that takes into account Settlement Class Members' experiences and alleged harms. (Settlement § VIII.)

29.     Taking into consideration the potential recovery and risks of continued litigation, the Settlement Fund amount is a fair and reasonable compromise to resolve the Settlement Class Claims and is well within the range of reasonableness. Google produced extensive data regarding Google employees' compensation, job level, job family and sub-family, position, tenure, performance reviews, and qualifications such as prior experience and education, among other variables, which Class Counsel retained an expert to analyze.

30.     The parties understood that their methodological differences in statistical analysis would have surfaced in *Daubert* motions or at class certification and, likely, led to appellate review. Absent this Settlement, continued litigation of this action would be complex and lengthy, requiring the investment of considerable resources by both sides. The appropriateness of class certification and liability in this case is hotly contested, and Plaintiffs would face considerable risks should the litigation proceed.

31.     Class Counsel understands that Google denied that any racial wage disparities existed based on its regression analysis of these data, which controlled for typical factors such as position held, job level, length of service, prior experience, education and performance, among other things. Plaintiffs understood Google would argue that certification is not appropriate in part because the class covers multiple job titles and locations, and, according to Google, the employment actions at issue here such as compensation setting or performance reviews are the product of individual supervisors exercising their discretion as opposed to a companywide policy.

32.     Class Counsel's expert, in contrast, estimated wage differentials at approximately $52 million when eliminating variables from the regression analysis that the class challenged as tainted but controlling for other variables such as job level, job sub-family, tenure, location, and prior experience and education, among other factors. Class Counsel believes that this equal pay analysis that compares jobs within the same level and subfamily, although not without risk, presents the most straightforward path toward class certification and class-wide recovery.

33.     The Class also alleged that Google's leveling practices caused additional disparities that would not be captured by an analysis that compared jobs within the same level. Again, Google's analysis established that there were no disparities related to leveling. Conversely, Class Counsels' expert estimated the potential wage losses due to leveling policies and practices in a variety of ways. The highest wage loss estimated due to less favorable treatment with respect to leveling was approximately $229 million.

34.     Class Counsel also reviewed extensive information and evidence—including but not limited to information obtained through interviewing putative class members and reviewing documents produced in discovery—related to other wage claims and non-wage claims pleaded in

the Complaint and included in the release. Given the expert analysis and other evidence, I submit that the $50 million Settlement Fund is well within the range of reasonableness given the associated risks.

35.      If this putative class were certified outside of the settlement process, Plaintiffs' counsel expects Google would file a Rule 23(f) appeal and, if necessary, a petition to the Supreme Court. Even if Plaintiffs overcame these risks—even if they obtained class certification, defeated Google's merits defenses, and obtained a favorable liability verdict on behalf of the class at trial—they still would not have been guaranteed a class-based recovery, as the Court might determine that separate individual damages trials were necessary, introducing additional risk and delay for each Settlement Class Member who sought a recovery. Thus, absent a settlement, the putative class would face a class certification fight, a potential Rule 23(f) appeal, Daubert motions, a motion for summary judgment, and more years of litigation before any Settlement Class Member could potentially recover on his or her claim.

36.      In contrast to the complexity, delay, risk, and expense of continuing litigation, the proposed Settlement will produce prompt, certain, and substantial recovery for Settlement Class Members.

37.      Further, reliable industry reports compile the largest employment-discrimination class action settlements by year, and an analysis of these reports reveals that this Settlement ranks among the larger employment discrimination settlements in the last several years, particularly for race discrimination.

38.      The Settlement also provides for meaningful non-monetary relief. For three years after the Effective Date, Google will continue to analyze pay to identify unexplained differences

based on race before finalizing pay changes for the following year. Google will also maintain well-publicized methods for employees to report concerns related to the terms and conditions of their employment, including concerns regarding practices challenged in this lawsuit such as that they have been leveled or paid incorrectly for an unlawful reason or reviewed unfairly. Google will investigate any concerns raised and take remedial action where appropriate. Google will also take steps to ensure pay transparency and fairness, including by listing salary ranges in job advertisements, consistent with state and/or local law; continuing its practice of providing current employees with access to salary ranges for the position held upon request, consistent with state or local law; and by reaffirming its commitment to not ask for or base compensation decisions at hire or the salary history of applicants. Further, through and including August 2026, Google will not require any employee to enter into mandatory arbitration agreements for employment-related disputes or enforce existing mandatory arbitration agreements for employment-related disputes. (Settlement § VII.)

39.    The Settlement Class includes over 4,000 members, and is defined as: All Google employees identified in Google's records produced to Settlement Class Counsel on November 20, 2024 as Black or Black+ who worked in job levels 3, 4, 5 and/or 6 in a job located in California at any time from March 18, 2018 through December 31, 2023, and/or job levels 3, 4, 5, and/or 6 in a job located in New York at any time from October 15, 2017 through December 31, 2023, excluding employees who (a) exclusively held a job that Google's records identified as being within a Legal job family or subfamily, or (b) are identified in Google's records as having executed a general release of claims at any time between October 15, 2017 (for New York employees) or March 18, 2018 (for California employees) and the Preliminary Approval Date.

(Settlement § III.A.)

40.     The Settlement Class is modified from the class of employees pled in the complaint. This narrower class is informed by information learned in discovery and reasoned arguments presented by Defendant during negotiations. For example, as the vast majority of the class members held jobs located in California and New York, limiting the geographic scope presented a more cohesive class.

41.     Further, the employee class as pleaded includes employees working in job levels 2, 7, and 8. As with the geographic scope, Plaintiffs analyzed the risks involved in litigating the broader class and made the informed decision to narrow the job levels included in the class.

42.     The Settlement Class Representatives' claims are typical of the Settlement Class Claims because they, like the Settlement Class, are Black or Black+, meet other criteria to be members of the class, and allege they were subjected to and harmed by the same discriminatory policies and practices challenged in this litigation.

43.     Settlement Class Representatives will continue to protect the interests of the Settlement Class fairly and adequately.

44.     Each of the three Settlement Class Representatives have pending individual claims not resolved by the Settlement Agreement. (Dkt. No. 93 at ¶¶ 144–151, 157–173, 181–189, 196–204). No negotiations have taken place with respect to these individual claims, which may continue to be litigated or be settled. Additionally, the claims of one Named Plaintiff who does not meet the settlement class definition due to her geographic location remain pending, which may continue to be litigated or be settled.

45.     In sum, based on my experience and an in-depth analysis of the merits, record, and

risks of this action, I recommend this Settlement to the Court for approval.

Settlement Administration

46.    The Settlement Fund will be fairly and equitably allocated under an individualized process. The Individual Claims Resolution Process provides Settlement Class Members a meaningful opportunity to have their claims individually assessed. Unlike many other settlements, the Individual Settlement Payments for Settlement Class Members will not be computed by formula. Instead, Settlement Class Members can file a Claim Form and participate in a nuanced and detailed process through which they will receive an individualized assessment of their claims, including consideration of post-Google wage loss and any emotional distress. This program maintains the flexibility to compensate for damages resulting from forms of alleged discrimination beyond wage disparities, such as a hostile work environment or wrongful discharge.

47.    Class Counsel believes the class is best served by this Individual Claims Resolution process over a per capita distribution of the fund tied to time-in-position, which is common and done with ease, pursuant to a formula. To be sure, while the use of a formula in certain cases, such as those involving FLSA overtime claims, may fairly distribute a common fund, an individualized claims resolution process ensures that the Settlement Fund here will be distributed based on the relative merits of the released claims, as determined by a neutral Trustee.

48.    In this way, Settlement Class Members' Individual Settlement Payments will be directly tied to the damages they would allege from the claims they are releasing, which extend beyond strict wage loss and encompass all forms of employment-based race discrimination.

49.    If the Individual Settlement Payments were calculated formulaically using time in

the job, Settlement Class Members may not be equitably compensated. For example, if there was a long-tenured employee who alleged they experienced garden variety emotional distress and a former employee who alleged they resigned due to a hostile work environment within months of hire, a formulaic calculation would give the long-tenured employee one of the largest awards and the former employee one of the smallest, even though their alleged damages suggest the opposite. As one court recognized in approving a similar individualized distribution process, an employment discrimination case such as this is "the kind of case where individualized assessments can and may be necessary and appropriate to award relief." (Exhibit D, Transcript of Proceedings at 13:10–12, *Senegal v. Chase*, No 18-cv-06006 (N.D. Ill. Dec. 18, 2018).[1]

50.     If the Court approves, the Individual Claims Resolution Process will be monitored by an experienced, well-qualified Trustee, Professor Lynn P. Cohn, Co-Director of the Center on Negotiation, Mediation, and Restorative Justice at the Northwestern Pritzker School of Law, who has been appointed in a similar capacity by other courts. (Settlement § VIII.C.)

51.     If approved, Professor Cohn will review and assess the Claim Forms and make final awards, providing fairness and consistency. To ensure the best-informed decisions, Class Counsel will provide training for Professor Cohn and any independent, qualified Neutrals who assist her regarding Google's employment practices and the class claims. Class Counsel will also assist and provide support for Settlement Class Members throughout the Individual Claims Resolution Process by answering questions, advising them of their rights and options, and helping them complete and submit Claim Forms. (Settlement § VIII.C.)

---

[1] Attached as Exhibit D is a true and accurate copy of an excerpt from the transcript of the Final Approval Hearing in *Senegal v. Chase*, No 18-cv-06006 (N.D. Ill. Dec. 18, 2018).

52.     Although it is not possible to predict the claims rate, based on the Firm's 's past experiences Class Counsel estimates that as low as 50% but as high of 70% of Settlement Class Members will file Claim Forms. In Class Counsel's experience it is likely that persons with length of service below two years would be less likely to file claims, and here slightly 20% of the class have length of service below two years as of the end of the class period.

53.     Without knowing the number of claims filed or the level of detail Claimants will provide in their Claim Forms, it is difficult to determine the Trustee's costs with precision. That said, Class Counsel has taken steps to reduce costs of the Individual Claims Resolution Process, including through designing a Claim Form that will generate data allowing the Trustee and Neutrals to sort claims and through encouraging electronic submission of Claim Forms. I understand the proposed Trustee is submitting a declaration providing more detail on estimated costs..

54.     In no event will any portion of the Gross Settlement Fund revert to Defendant. If, after distribution, there remains a Residual Fund due to uncashed or undeliverable checks, the Trustee shall redistribute the Residual Fund if it is financially feasible to do so. If it is not, then any Residual Fund will be treated as unclaimed property of the corresponding Settlement Class Members. (Settlement § VIII.F.)

55.     Class Counsel solicited bids from experienced claims administrators, and the Parties agreed to use Atticus Administration, LLC ("Atticus") as the Claims Administrator, whose costs shall be paid from the Gross Settlement Fund and are estimated to be approximately $39,800.

56.     The proposed Notice of Settlement will provide clear and adequate notice so that

each Settlement Class Member can make an informed choice about whether to opt out, object, and/or seek and Individual Settlement Payment. Attached as Exhibit B is a true and accurate copy of the proposed Notice of Settlement.

57. The Claims Administrator will distribute the Notices of Settlement via U.S. mail and email, re-mail any Notices of Settlement returned as non-deliverable but with forwarding addresses, and re-mail the Notices of Settlement to any new address obtained by way of skip-trace. (Settlement § IV.C.1). The Claims Administrator will maintain a website with information about the action including the Class Action Complaint, the Settlement Agreement, the Notice of Settlement, this Motion for Preliminary Approval, and, when they are filed, the Motion for Attorneys' Fees and Costs, the Motion for Service Awards, and the Motion for Final Approval. Further, the Claims Administrator will receive and forward to the Parties' Counsel any opt outs. Should the Court finally approve the Settlement, the Claims Administrator will distribute the Final Notice via U.S. mail and email, re-mail any Final Notices returned as non-deliverable but with forwarding addresses, and re-mail the Final Notice to any new address obtained by way of skip-trace. The Claims Administrator will receive Claim Forms and supporting documentation and transmit them to the Trustee. (Settlement § VIII.D.1.) The Claims Administrator will calculate applicable payroll taxes, withholdings, and deductions, and issue disbursements to Settlement Class Members, any court-approved Service Award to Class Representatives, and Attorneys' Fees and Costs as approved by the Court. (Settlement § VIII.E.)

Comparable Cases

58. I understand the Class Action Review industry report, first compiled by Seyfarth Shaw LLP and now compiled by Duane Morris LLP, to be a reliable collection and analysis of

the highest grossing class action settlements filed in a given year.

59.    Attached as Exhibit E are true and accurate copies of sections of the Class Action Reviews published from 2018 to 2025 pertaining to employment discrimination class action settlements filed from 2017 to 2024.

60.    A settlement of $50 million ranks as the sixth highest settlement amount reported in these Class Action Reviews for employment discrimination class actions filed on behalf of employees. (*Id.*)

61.    Notably, over half of the settlements reported in the Industry Reports were for gender discrimination (including pregnancy discrimination), while less than 30% were for race discrimination. (*Id.*)

Proposed Attorneys' Fees and Costs and Service Awards

62.    Class Counsel will seek attorneys' fees of up to 25% of the Settlement Fund ($12,500,000) and reimbursement for expenses. Because of the nature of the individual claims process and Stowell and Friedman's continued involvement in the Settlement, it is not possible to set forth the lodestar. Future work includes overseeing the claims resolution process, assisting class members in filing out claim forms, conducting training sessions for the neutrals and otherwise assisting the Trustee. I have asked the Firm's bookkeeping department to provide an estimate of the Firm's current lodestar, which is estimated to be no less than $3,450,000 and of the Firm's costs, which are currently $126,281.64. I understand attorney Ben Crump's declaration provides information regarding his firm's lodestar and costs. The 25% fees that Class Counsel seeks will be the only attorneys' fees requested in this case (separate requests will not be filed by each firm).   The fees will be divided evenly between the two law firms.

63.     Class Counsel is committed to providing assistance to all Settlement Class Members throughout the Individual Claims Resolution Process, and, given the size of the class, expect to dedicate hundreds of additional hours to this case. Despite this commitment, Class Counsel will not seek additional attorneys' fees for time assisting Settlement Class Members.

64.     This amount of fees is consistent with the Ninth Circuit's "benchmark," and the timing will permit Settlement Class Members 35 days to object to the fee petition, which will be included on the Claims Administrator's website. The parties' and Class Representative's support of this Settlement Agreement is not contingent on the award of Attorneys' Fees and Costs. Class Counsel will provide additional information in support of their Attorneys' Fees and Costs at the time the Motion for Attorneys' Fees and Costs is filed with the Court.

65.     Class Counsel will petition the Court to award Service Awards of no more than $50,000 each to compensate Settlement Class Representatives for their considerable efforts on behalf of the Settlement Class.

66.     I believe my Firm's practice in litigating class cases is different from other class action law firms, particularly with respect to the role and duty we impose on class representatives.

67.     We have never been comfortable with the notion of lawyer-driven litigation. The lawyers at the Firm believe that clients must "own" their litigation and serve as partners in the litigation. As lawyers, we navigate the legal system, but we depend on our clients to arm us with the particularized knowledge necessary to prosecute their claims and to understand the needs and concerns of absent class members. We do not believe that class representatives should lend only their name to a lawsuit. They must invest considerable time and their spirit and reputation; in so doing, they also share the risk. Because of this, our Firm informs prospective class representatives

of the immense amount of work that is required of them and their fiduciary duties to the class members. Many prospective clients decline to serve as class representatives.

68.     Our Firm believes the role of a class representative in an employment discrimination class action differs markedly from service in other types of class litigation. For example, class representatives in stock-drop securities fraud class actions have little or no involvement in the litigation, and they face little or no risk as a result of their association with the case. Neither is true for class representatives like these, who lead a class of employees in suing their current or former employer.

69.     I believe that the Class Representatives worked diligently and with integrity throughout the litigation. In discussions with me and other attorneys at the Firm, they spent many hours explaining and answering questions about their workplace experiences, Google's demographics, and Google's policies and practices. They provided and reviewed documents. They learned and at all times honored their fiduciary duties as putative Class Representatives, asked their legal team important questions about options and case strategy, and provided their input on all strategic decisions.

70.     The Class Representatives devoted significant time and energy and assumed personal, professional, and financial risk in order to achieve this class settlement. They played a crucial role in the litigation and the settlement negotiations, actively participating in meetings and phone calls with Class Counsel, understanding and considering the workforce statistical analyses of relevant data, and participating in multiple mediation sessions.

71.     The Class Representatives bargained hard and exhaustively for a settlement that provides meaningful relief.

72.     The Settlement Class Representatives knew that their names would be forever connected to this lawsuit and available on the internet to prospective employers. Nonetheless, they agreed to serve as Settlement Class Representatives and to advocate zealously for absent class members. As an employment discrimination lawyer, I am aware that prospective employers often conduct internet searches before hiring new employees, and an internet or PACER search will inevitably "hit" upon the Class Representatives' role in this case. As a result, they face a considerable risk that prospective employers might be reluctant to hire Class Representatives who sued a prior employer for discrimination. I believe that, rather than view Class Representatives' role in this litigation as bold and courageous, prospective employers no doubt will label Class Representatives as troublemakers or view their applications with fear. I applaud their courage but know from experience it comes with a cost.

73.     Courts in this Circuit and around the country grant service awards of this amount and greater in employment discrimination cases in recognition of the added risks taken on by class representatives, including the "real and substantial" fear of retaliation. *Pan v. Qualcomm Inc.*, No. 16-cv-01885, 2017 WL 3252212, at *13 (S.D. Cal. July 31, 2017) (awarding $50,000 to each of the seven class representatives in race and gender discrimination action); *see also del Toro Lopez v. Uber Techs., Inc.,* No. 17-cv-06255, 2018 WL 5982506, at *3 (N.D. Cal. Nov. 14, 2018) (awarding a service award of $50,000 and $30,000 to class representatives in employment discrimination cases). For example, in granting $50,000 in service awards to two class representatives as part of a $6 million race discrimination settlement, Judge Beryl Howell explained that bringing a class action lawsuit against a "big employer" (there, a federal agency) "takes enormous courage" and carries "greater risk in terms of reputational association." (Exhibit

1
2
F, Transcript of Settlement Hearing at 36:11–22, *Jones v. Chopra*, No. 18-cv-2132 (D.D.C. Jan 18, 2024).)[2]

3
4
5
6
7
8
9
10
74.      This sentiment is shared by judges throughout the country. In a case granting $150,000 service awards per class representative, one judge explained that race discrimination "litigation is something that has particular challenges for plaintiffs who put themselves at a great deal of risk, frankly, personally and professionally by associating themselves sometimes as someone who may be branded a troublemaker if they try to sue their employer based on discrimination claims." (Exhibit G, Transcript of Proceedings at 51:9–14, *Bland v. Edward D. Jone Co., L.P.*, No. 18-cv-3673 (N.D. Ill. July 12, 2021).)[3]

11
12
13
14
15
16
17
18
19
20
21
22
75.      The Service Awards sought here are lower  than those approved by other courts. *See, e.g.*, *Chen-Oster v. Goldman Sachs & Co.*, No. 10-cv-6950, 2023 WL 7325264, at *6 (S.D.N.Y. Nov. 7, 2023) (awarding $750,000 aggregate service awards from $215 million common fund); *Senegal v. JPMorgan Chase Bank, N.A.*, No. 18-cv-6006, Dkt. 40 at 5 (N.D. Ill. Dec. 20, 2018), aff'd, 939 F.3d 878 (7th Cir. 2019) (approving $900,000 aggregate service award from $24 million common fund); *Slaughter v. Wells Fargo Advisors, LLC*, No. 13cv-06368, Dkt. 113 at 5 (N.D. Ill. May 4, 2017) (approving $1.25 million aggregate service award from $35.5 million common fund); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 05-cv6583, Dkt. 616 at 5 (N.D. Ill. Dec. 6, 2013) (approving $4.25 million aggregate service awards from $160 million common fund).

23
24
25
26
---

[2] Attached as Exhibit F is a true and accurate copy of an excerpt from the transcript of the Final Approval Hearing in *Jones v. Chopra*, No. 18-cv-2132 (D.D.C. Jan 18, 2024).
[3] Attached as Exhibit G is a true and accurate copy of an excerpt from the transcript of the Final Approval Hearing in *Bland v. Edward D. Jone Co., L.P.*, No. 18-cv-3673 (N.D. Ill. July 12, 2021).

76.     Settlement Class Counsel did not discuss the fact or amount of Service Awards with Settlement Class Representatives until after the parties agreed to all other material terms of the Settlement Agreement, and the parties and Settlement Class Representatives fully support this Settlement Agreement regardless of whether the Court grants Service Awards. Settlement Class Counsel and Settlement Class Representatives will provide additional information in support of Service Awards at the time the Motion for Service Awards is filed with the Court.

77.     The Class Representatives understand they are not guaranteed service awards at all, much less any particular amount. The Class Representatives also understand that they will not have priority over any other Class Member in the settlement's claims resolution process, and that no amount of the fund has been set aside for monetary awards to Class Representatives, nor has a separate fund been established for these payments. The Class Representatives understand that, if the settlement is approved, it will proceed regardless of whether the Court awards service awards at all, and if so, in what amount(s).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __May 8, 2025_____          */s/ Linda D. Friedman*
                                         Linda D. Friedman

Exhibit A

1    Ben Crump (pro hac vice)
Nabeha Shaer (pro hac vice)
2    BEN CRUMP LAW, PLLC
122 S. Calhoun St.
3    Tallahassee, FL 32301
Telephone:     (800) 713-1222
4    court@bencrump.com

5    Linda D. Friedman (pro hac vice)
Suzanne E. Bish (pro hac vice)
6    George Robot (pro hac vice)
STOWELL & FRIEDMAN, LTD.
7    303 W. Madison St., Suite 2600
Chicago, Illinois 6060667
8    Telephone:     (312) 431-0888
lfriedman@sfltd.com
9
Sam Sani (SBN 2733993)
10   SANI LAW, APC
595 E. Colorado Blvd., Suite 522
11   Pasadena, CA 91101
Telephone:     (310) 935-0405
12   ssani@sanilawfirm.com

13   *Attorneys for Plaintiffs and the Putative Class*

14

                **IN THE UNITED STATES DISTRICT COURT**
15           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

16

17   **APRIL CURLEY, DESIREE MAYON,**      **CASE NO: 3:22-cv-01735-KAW**
**RONIKA LEWIS, RAYNA REID, ANIM**
**AWEH, and EBONY THOMAS,**          **SETTLEMENT AGREEMENT**
18   **individually and on behalf of all others**
**similarly situated,**
19
               **Plaintiffs,**
20
        **v.**
21
   **GOOGLE, LLC,**
22
            **Defendant.**
23

24

25

## SETTLEMENT AGREEMENT

I.    INTRODUCTION ................................................................................. 3
II.   NATURE AND RESOLUTION OF THE CASE ...................................... 3
      A. Plaintiffs' Class Claims                                              3
      B. Discovery                                                            3
      C. Settlement Negotiations                                             4
III.  GENERAL TERMS OF THE SETTLEMENT AGREEMENT ................. 4
      A. Definitions                                                         4
IV.   COURT APPROVAL, NOTICE, AND FINAL APPROVAL HEARING .......... 9
      A. Jurisdiction                                                        9
      B. Preliminary Approval                                                9
      C. Notice, Objections, and Opt Outs                                    9
      D. Final Approval                                                     12
V.    RELEASE OF CLAIMS ....................................................................... 13
VI.   NO ADMISSION, NO DETERMINATION ........................................... 13
VII.  NON-MONETARY RELIEF .............................................................. 14
      A. Duration of the Settlement                                         14
      B. Non-Monetary Relief                                                14
      C. Reporting                                                          15
VIII. MONETARY RELIEF ........................................................................ 15
      A. Claims Administrator                                               15
      B. Settlement Fund                                                    16
      C. Administration of Settlement Fund by Trustee                       16
      D. Individual Claims Resolution Process                               17
      E. Payment of Federal, State, and Local Taxes                         21
      F. Residual Fund                                                      22
IX.   ATTORNEYS' FEES AND COSTS .................................................... 22
X.    SERVICE AWARDS .......................................................................... 23
XI.   SETTLEMENT PAYMENTS DO NOT TRIGGER ADDITIONAL BENEFITS ........... 23
XII.  SETTLEMENT CONTINGENT ON COURT APPROVAL ..................... 23
XIII. STIPULATED PROTECTIVE ORDER AND MEDIATION CONFIDENTIALITY
      AGREEMENT .................................................................................... 24
XIV.  RETURN OF DOCUMENTS/DATA ................................................... 24
XV.   OTHER TERMS AND CONDITIONS OF THE SETTLEMENT ........... 24
      A. Mutual Full Cooperation                                            24
      B. Knowing and Voluntary Agreement                                    25

**C.** Notifications and Communications                                    **25**

**D.** Binding on Assigns                                                  **26**

**E.** Enforcement of Settlement Agreement and Governing Law               **26**

**F.** Settlement Agreement Form and Construction                          **26**

**G.** Parties' Authority                                                  **27**

**H.** Non-Interference with Settlement                                    **27**

# I.    INTRODUCTION

Subject to approval by the Court, this Settlement Agreement sets forth the full and final terms by which the Settlement Class Representatives on behalf of themselves and the Settlement Class Members (as those terms are defined herein) and Defendant Google LLC, have settled and resolved all Settlement Class Claims raised in the Action captioned *Curley, et al. v. Google, LLC*, Case No. 3:22-cv-01735-KAW, pending in the United States District Court for the Northern District of California (the "Court").

# II.    NATURE AND RESOLUTION OF THE CASE

## A.    <u>Plaintiffs' Class Claims</u>

Plaintiffs filed the original class action complaint in this matter on March 18, 2022. They filed the Third Amended Complaint on July 26, 2024. Among other things, the Third Amended Complaint alleges claims on behalf of subclasses of Google employees.

Specifically, the Third Amended Complaint includes the following claims on behalf of some or all of the Named Plaintiffs and all other Google employees similarly situated: (1) Race Discrimination and Hostile Work Environment in Violation of 42 U.S.C. § 1981; (2) Race Discrimination and Hostile Work Environment in Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*; (3) Race Discrimination and Hostile Work Environment in Violation of FEHA, Ca. Gov. Code & 12940, *et seq.*; (4) Race Discrimination and Hostile Work Environment in Violation of New York State Human Rights Law; (5) Race Discrimination and Hostile Work Environment in Violation of New York City Human Rights Law; and (6) Pay Discrimination in Violation of California Equal Pay Act.

## B.    <u>Discovery</u>

Before filing this lawsuit, Plaintiffs conducted an extensive investigation of the facts at issue, which continued after they filed their complaint. The parties engaged in extensive discovery. Plaintiffs served initial disclosures and interrogatories, issued several sets of requests for production, and noticed depositions pursuant to Federal Rule of Civil Procedure 30(b)(6). Defendant served initial disclosures, requests for production, and interrogatories, and noticed depositions for all six Named Plaintiffs. The parties answered each other's discovery requests and made twenty rolling productions that include nearly 200,000 pages of documents and approximately 48 million lines of data. Further, the parties met and conferred extensively regarding the protective order, production of electronically stored information, and discovery, including the exchange of several Rule 37 letters.

C.    **Settlement Negotiations**

The parties' settlement negotiations spanned many months, including multiple formal mediation sessions. On February 19, 2024, shortly after the Court ruled on Google's partial motion to dismiss and motion to strike, the parties jointly requested that the Court stay all deadlines so that the parties could engage in private mediation. The parties engaged experienced mediator Hunter Hughes and attended an all-day mediation session in person on June 12, 2024. After this session, the parties continued to negotiate, exchanging substantive information regarding analyses of alleged damages and meeting several times. These negotiations were not successful, and the parties resumed litigation in October 2024. After litigating for several months, the parties returned to mediation, engaging Mr. Hughes for an all-day, in-person mediation session on January 22, 2025. Both before and after this mediation, the parties continued to exchange information regarding their analyses of the damages. As a result of these arms-length negotiations, the parties have entered into this Settlement Agreement.

Settlement Class Counsel and counsel for Google recognize the costs and risks of prosecuting this litigation through class certification, summary judgment, trial, and appeal. Settlement Class Counsel believe that it is in the interest of all Settlement Class Members to resolve finally and completely the Settlement Class Claims against Google. Settlement Class Counsel and the Settlement Class Representatives believe that the terms of the Settlement Agreement are in the best interests of the Settlement Class and are fair, reasonable, and adequate. The parties wish to bring the litigation to a conclusion on the terms set forth in this Settlement Agreement.

Without any admission or concession by Google of any liability or wrongdoing with respect to the allegations in Plaintiffs' original and amended class action complaints, all released claims shall be finally and fully compromised, settled, and released subject to the terms and conditions of this Settlement Agreement, which were the subject of extensive, arms-length negotiation and ultimate agreement by the parties.[1]

## III.    GENERAL TERMS OF THE SETTLEMENT AGREEMENT

A.    **Definitions**

In addition to terms identified and defined elsewhere in this Settlement Agreement, as used in this Settlement Agreement, the following terms have the following meanings:

1.    **"Action"** means *Curley, et al. v. Google, LLC*, filed in the United States District Court for the Northern District of California, bearing Case Number 22-cv-01735-KAW.

2.    **"Attorneys' Fees and Costs"** means the amount to be paid to Settlement Class Counsel pursuant to Settlement Class Counsel's motion and subject to the Court's approval. Attorneys' Fees and Costs includes all attorneys' fees and expenses incurred to date and to be incurred in documenting the Settlement, securing court approval of the Settlement, attending to the administration of

---

[1] The Class Action Complaint also alleges individual claims on behalf of the Named Plaintiffs, which are not covered by this Settlement Agreement.

the Settlement, providing assistance to Settlement Class Members throughout the Settlement administration, including throughout the Individual Claims Resolution Process, obtaining a dismissal of the Settlement Class Claims, and all post-Settlement Agreement compliance procedures.

3. **"Black+"** means, for the purposes of this Settlement Agreement, the racial identity of an individual who Google's records identified as Black or African American and one or more other races or ethnicities.

4. **"CAFA Notice"** means the notice to be sent by Defendant to the appropriate federal and state officials pursuant to the requirements of 28 U.S.C. § 1715(b).

5. **"Claimant"** means a Participating Class Member who submits a Claim Form.

6. **"Claims Administrator"** means the third-party administrator to be jointly designated by Parties' Counsel to administer the Settlement.

7. **"Claims Administrator Fees and Costs"** means the amount to be paid to the Claims Administrator from the Gross Settlement Fund for administering the Settlement.

8. **"Claim Form"** means the form to be submitted by Participating Class Members who seek an Individual Settlement Payment.

9. **"Class Action Complaint"** means the Third Amended Complaint.

10. **"Court"** means the United States District Court for the Northern District of California.

11. **"Defendant" or "Google"** means Google LLC.

12. **"Depository Bank"** means a bank selected by Settlement Class Counsel to receive, hold, invest, and disburse the Settlement Fund, subject to the direction of the Claims Administrator.

13. **"Effective Date"** means: (i) thirty-one (31) days after the Court's entry of the Final Approval Order, if no appeal is taken from the Final Approval Order; or (ii) if an appeal is taken from the Final Approval Order, the date on which all such appeals (including, *inter alia,* petitions for rehearing or re-argument, petitions for rehearing *en banc,* and petitions for *certiorari,* or any other form of review) have been finally disposed and can no longer be appealed or reviewed.

14. **"Final Approval Date"** means the date the Court enters the Final Approval Order.

15. **"Final Approval Motion"** means all papers necessary to obtain final approval of this Settlement Agreement and dismissal of Settlement Class Members'

Settlement Class Claims.

16.   **"Final Approval Order"** means the Court's order entered after the Final Approval Hearing, approving and granting final approval of the terms and conditions of this Settlement Agreement, distribution of the Gross Settlement Fund in accordance with the Settlement Agreement, approval and distribution of the Notice of Final Approval to Participating Settlement Class Members, and dismissal of Settlement Class Members' Settlement Class Claims with prejudice.

17.   **"Final Approval Hearing"** means the final hearing before the Court on the Final Approval Motion and Plaintiffs' motions requesting payment of Attorneys' Fees and Costs and Service Awards, and dismissal of Settlement Class Members' Settlement Class Claims with prejudice.

18.   **"Google's Counsel"** means Paul Hastings LLP.

19.   **"Gross Settlement Fund" or "Settlement Fund"** means the payment of Fifty Million Dollars and Zero Cents ($50,000,000.00) to be made by Google to fund the Qualified Settlement Fund, together with any interest subsequently earned thereon. The Gross Settlement Fund is inclusive of payment for (i) all Individual Settlement Payments to Claimants and any associated payroll taxes; (ii) Service Awards (if any are awarded by the Court); (iii) Settlement Class Counsel Attorneys' Fees and Costs; (iv) Claims Administrator Fees and Costs; and (v) Trustee and Neutral Fees and Costs.

20.   **"Individual Claims Resolution Process" or "ICRP"** means the process established by the Settlement Agreement regarding the processing, determination, and distribution of Individual Settlement Payments.

21.   **"Individual Settlement Payment"** means any monetary award determined by the Trustee, which is to be paid to a Claimant less any applicable payroll taxes.

22.   **"Named Plaintiffs"** means April Curley, Desiree Mayon, Ronika Lewis, Rayna Reid, Anim Aweh, and Ebony Thomas.

23.   **"Net Settlement Fund"** means the Gross Settlement Fund less the amount of Attorneys' Fees and Costs, Claims Administrator Fees and Costs, Trustee and Neutral Fees and Costs, and any Service Awards approved by the Court, and shall be the amount available for Individual Settlement Payments and Participating Settlement Class Members' and Google's share of payroll taxes.

24.   **"Neutral"** means individuals with substantial training and experience with employment discrimination claims but who are not practicing employment law attorneys and who are not affiliated with any Parties' Counsel, selected by the Trustee to assist in the ICRP, who shall have the immunities and protections of Rule 53 of the Federal Rules of Civil Procedure in the performance of the duties set forth in this Settlement Agreement.

6

25. **"Notice of Settlement"** means the Court-approved notice to be distributed to Settlement Class Members after the Court enters a Preliminary Approval Order.

26. **"Notice of Final Approval"** means the Court-approved notice to be distributed to Participating Settlement Class Members after the Court enters a Final Approval Order.

27. **"Participating Settlement Class Member"** means a Settlement Class Member who does not opt out of the Settlement by returning a valid opt out.

28. **"Parties' Counsel"** means Settlement Class Counsel and Google's Counsel, together.

29. **"Preliminary Approval Date"** means the date the Court enters the Preliminary Approval Order.

30. **"Preliminary Approval Motion"** means all papers necessary to obtain preliminary approval of this Settlement and authorization to distribute Notice of the Settlement to the Settlement Class, and certification (for the sole purpose of Settlement) of the Settlement Class.

31. **"Preliminary Approval Order"** means the Court's order preliminarily approving the terms and conditions of this Settlement Agreement, and directing the manner and timing of providing Notices of Settlement.

32. **"Qualified Settlement Fund" or "QSF"** means the account to be established and administered by the Claims Administrator.

33. **"Released Parties"** means Google, along with any of its past, present, and future affiliates, subsidiaries, parent corporations, divisions, joint employers, predecessors, successors, and assigns, and each of their officers, directors, board members, trustees, shareholders, members, managers, employees, agents, attorneys, auditors, accountants, benefits administrators or third-party administrators, experts, contractors, stockholders, representatives, partners, insurers, reinsurers, and other persons acting on their behalf.

34. **"Residual Funds"** means any portion of the Net Settlement Fund that is not claimed by Claimants due to any check not being cashed after the expiration of the ninety (90) day period following the date on the face of the settlement checks issued to any Claimant, or any other reason.

35. **"Service Awards"** means the payments to Settlement Class Representatives, subject to the Court's approval described in Section X below.

36. **"Settlement Agreement," "Agreement," or "Settlement"** each mean the settlement as reflected in this Settlement Agreement.

37.    **"Settlement Class"** means all Google employees identified in Google's records produced to Settlement Class Counsel on November 20, 2024 as Black or Black+ who worked in job levels 3, 4, 5 and/or 6 in a job located in California at any time from March 18, 2018 through December 31, 2023, and/or job levels 3, 4, 5, and/or 6 in a job located in New York at any time from October 15, 2017 through December 31, 2023, excluding employees who (a) exclusively held a job that Google's records identified as being within a Legal job family or subfamily, or (b) are identified in Google's records as having executed a general release of claims at any time between October 15, 2017 (for New York employees) or March 18, 2018 (for California employees) and the Preliminary Approval Date. A list of the individuals who meet this definition are included in the Settlement Class List. If an individual is not on the Settlement Class List, then that individual is presumed ineligible for an Individual Settlement Payment and will not release any claims as a result of this Settlement Agreement.

38.    **"Settlement Class Claims"** means any suits, actions, causes of action, complaints, charges, grievances, claims, rights, demands, debts, losses, damages, punitive or statutory damages, penalties, expenses, obligations, and/or liabilities arising from alleged race-based employment discrimination, including those related to hiring, job assignment, pay, leveling, promotions, performance reviews, transfers, terminations or constructive discharges, failure to investigate, retaliation, or hostile work environment under any federal, state, or local law, including but not limited to 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); FEHA, Cal. Gov. Code § 12904, *et seq.*; the California Equal Pay Act; the New York State Human Rights Law, Executive Law §§ 296 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL").

39.    **"Settlement Class Counsel"** means Stowell & Friedman, Ltd., and Ben Crump Law, PLLC, subject to approval of the Court.

40.    **"Settlement Class List"** means the list of Google employees that meet the Settlement Class definition and their identifying information that Google will provide to the Claims Administrator as specified in Section IV.C.1.a below.

41.    **"Settlement Class Member"** means any individual who meets the criteria set forth in the definition of Settlement Class.

42.    **"Settlement Class Representatives"** means April Curley, Ronika Lewis, and Desiree Mayon, subject to approval of the Court.

43.    **"Trustee"** means the individual appointed by the Court under Rule 53 of the Federal Rules of Civil Procedure to perform certain duties in connection with this Settlement Agreement.

44.    **"Trustee Fees and Costs"** means the amount to be paid to the Trustee from

8

the Gross Settlement Fund for administering the Settlement.

## IV.    COURT APPROVAL, NOTICE, AND FINAL APPROVAL HEARING

### A.    Jurisdiction

The parties agree that the Court has jurisdiction over the parties and the subject matter of this Action and that venue is proper. The Court shall retain jurisdiction of this Action for the purpose of entering all orders and judgments authorized hereunder that may be necessary to implement and enforce the relief provided herein, including retaining jurisdiction to enforce the non-monetary relief provisions for the three-year period reflected in the Agreement.

### B.    Preliminary Approval

1.    On or before May 8, 2025, Plaintiffs shall file an unopposed motion with the Court for an order preliminarily certifying the Settlement Class for settlement purposes only; preliminarily approving this Settlement Agreement; and approving the Notice of Settlement describing the terms of the Settlement and informing Settlement Class Members of their rights to submit objections and to opt out.

2.    In connection with the Preliminary Approval Motion, the parties will submit to the Court the Settlement Agreement; the proposed Notice of Settlement; the proposed Claim Form; and a proposed Preliminary Approval Order.

3.    Google shall have reasonable time (no less than five (5) business days) to review and comment upon the Preliminary Approval Motion, the proposed Preliminary Approval Order, the proposed Claim Form, and the Notice of Settlement. Settlement Class Counsel will consider Google's comments to the motion, forms, and order in good faith.

4.    If the Court denies the Preliminary Approval Motion, the parties will work together, diligently and in good faith, to remedy any issue(s) leading to such denial, and to seek reconsideration of the ruling or order denying approval and/or Court approval of a renegotiated settlement (without any change to the Gross Settlement Fund amount or the scope of the non-monetary relief sought herein). If, despite the parties' efforts, the Court continues to deny the Preliminary Approval Motion, litigation of the Settlement Class Claims will resume as if no settlement had been attempted, subject to the reservation of rights set forth in Section XII below.

### C.    Notice, Objections, and Opt Outs

#### 1.    Notice

a.    No later than seven (7) days after the Court enters the Preliminary Approval Order, Google will provide to the Claims Administrator the following information for each Settlement Class Member: name,

employee ID number, last known address, personal email address where known, current or last known telephone number, and Social Security / Tax Identification number. The Claims Administrator will keep this information confidential. Google will provide Settlement Class Counsel with the Settlement Class List but will exclude Social Security numbers and Tax Identification numbers.

**b.**  Within ten (10) days after Google provides the Settlement Class List to the Claims Administrator, the Claims Administrator will send to each Settlement Class Member the Notice of Settlement by first-class U.S. mail and by email. Prior to sending the Notice of Settlement, the Claims Administrator will update Settlement Class Member addresses through the United States Postal Service National Change of Address service.

**c.**  If a Settlement Class Member's Notice of Settlement is returned with a forwarding address, the Claims Administrator shall promptly re-mail the Notice of Settlement to the forwarding address. If a Settlement Class Member's Notice of Settlement is returned without a forwarding address, the Claims Administrator will perform a trace limited to using the social security number to determine if there is a more recent address. If a new address is obtained, the Claims Administrator will promptly re-mail the Notice of Settlement to the Settlement Class Member.

**d.**  The Claims Administrator will maintain a log of its activities undertaken pursuant to this Section IV.C.

**e.**  Subject to review and approval by Settlement Class Counsel and Defendant's Counsel, the Claims Administrator shall set up a website containing information about the Action, including the Class Action Complaint, the Settlement Agreement, the Notice of Settlement, the Notice of Final Approval, the Motion for Preliminary Approval, and, when they are filed, the Motion for Attorneys' Fees and Costs, the Motion for Service Awards, and the Motion for Final Approval. The website will also contain contact information for the Claims Administrator, instructions for submitting objections and opting out, and provide notice of the date and location of the final approval hearing, including any changes, as well as of final judgment, if any, and allow Participating Settlement Class Members to access and submit Claim Forms following Final Approval. The website shall go live on the date that the Claims Administrator distributes Notices of Settlement, and shall remain active at least thirty (30) days after the Claims Administrator has completed all of its duties under this Settlement Agreement. Assuming it is available for use, the URL of the settlement website shall be: www.CurleySettlement.com.

**f.**  No later than ten (10) days following Settlement Class Counsel's filing

10

SETTLEMENT AGREEMENT

Docusign Envelope ID: 67A3094C-7962-49D4-883A-70180A9C4B42

of the Settlement Agreement with the Court, Google shall cause the CAFA Notice, along with the accompanying materials, to be served upon the appropriate state and federal officials, as required by 28 U.S.C. § 1715.

**2.**    **Objecting to the Settlement Agreement**

**a.**    Settlement Class Members may object to the Settlement by following the instructions described in the Notice of Settlement. All written objections and supporting papers must (i) clearly identify the case name and number, (ii) be submitted to the Court either by filing them electronically or in person at any location of the United States District Court for the Northern District of California or by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, and (iii) be filed or postmarked within sixty (60) days after the Claims Administrator first mails the Notice of Settlement to Settlement Class Members.

**b.**    The written objection must include the words, "I object to the class settlement in Curley, *et al.* v. Google LLC," state with specificity the grounds for the objection, and state whether it applies only to the objector, to a specific subset of the Settlement Class, or the entire Settlement Class. The written objection must also include the name, address, telephone number, and signature of the Settlement Class Member making the objection. Any written objection that is not timely filed or that omits information required by this Agreement shall be invalid.

**c.**    Objectors may withdraw objections at any time. The submission of an objection does not constitute the filing of an opt out from the Settlement, and, therefore, objectors continue to be Settlement Class Members.

**3.**    **Opting Out of the Settlement Agreement**

**a.**    Settlement Class Members may opt out of the Settlement by following the instructions described in the Notice of Settlement. Individuals who opt out of the Settlement are not entitled to any monetary award under this Settlement Agreement. To be valid, an opt out must (i) be mailed to the Claims Administrator and postmarked or submitted to the website set up by the Claims Administrator within sixty (60) days after the Claims Administrator first mails the Notice of Settlement to Settlement Class Members; (ii) state "I opt out of the class action settlement in the lawsuit *Curley, et al. v. Google*;" and (iii) include the Settlement Class Member's name, address, telephone number, and signature.

**b.** The Claims Administrator shall stamp the date it received the opt out on the original document, and send to the Parties' Counsel copies of all opt outs within three (3) days of their receipt, and Settlement Class Counsel shall file opt outs (with Settlement Class Member names, addresses, and telephone numbers filed under seal) with the Court at the time of filing the Final Approval Motion. The Claims Administrator will retain the originals of all opt outs, as well as all envelopes accompanying such requests, until such time as the Claims Administrator is relieved of its duties and responsibilities under the Settlement Agreement.

**c.** Individuals who file opt outs may rescind their opt outs. To be effective, such rescissions must be submitted in writing to the Claims Administrator and must be received by the Claims Administrator at least one (1) day before the Final Approval Hearing, who upon receipt must immediately forward a copy of the rescission to the Parties' Counsel by electronic mail.

**D.** **Final Approval**

**1.** Plaintiffs will draft the Final Approval Motion and the proposed Final Approval Order. Settlement Class Counsel will provide Google with copies of the draft Final Approval Motion, and proposed Final Approval Order and allow a reasonable time (no fewer than five (5) business days) for its review and comment. Settlement Class Counsel will consider Google's comments to the motion and proposed order in good faith. Settlement Class Counsel will separately move for Attorneys' Fees and Costs and Service Awards for Settlement Class Representatives.

**2.** Within seven (7) days of the Final Approval Date, the Claims Administrator will send to each Participating Settlement Class Member the Notice of Final Approval by first-class U.S. mail and by email. Unless the Claims Administrator has received updated contact information, the Notice of Final Approval will be mailed by the Claims Administrator to the Participating Settlement Class Member at the address provided by Google. If a Participating Settlement Class Member's Notice of Final Approval is returned with a forwarding address, the Claims Administrator shall promptly re-mail the Notice of Final Approval to the forwarding address. If a Participating Settlement Class Member's Notice of Final Approval is returned without a forwarding address, the Claims Administrator will perform a trace limited to using the social security number to determine if there is a more recent address. If a new address is obtained, the Claims Administrator will promptly re-mail the Notice of Final Approval.

## V.    RELEASE OF CLAIMS

Upon the Effective Date, each Participating Settlement Class Member, all persons purporting to act on their behalf or purporting to assert a claim under or through them, including, but not limited to, their spouses, dependents, attorneys, heirs and assigns, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, and successors-in-interest, whether individual, class, collective, representative, legal, equitable, direct or indirect, or any other type or in any other capacity (collectively, the "Releasing Class Parties") fully release and discharge the Released Parties from any and all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses, and losses arising from or related to all Settlement Class Claims as defined above through the Preliminary Approval Date, including without limitation liquidated damages, interest, compensatory damages, punitive damages, penalties of any nature whatsoever, other compensation or benefits, attorneys' fees and costs (collectively, the "Released Claims"). It is the desire of the parties to fully, finally, and forever settle, compromise, and discharge all Released Claims which were or which could have been asserted in this Action against the Released Parties, whether known or unknown, liquidated or unliquidated. Releasing Class Parties may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, but upon the Effective Date, Releasing Class Parties shall be deemed to have fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. For avoidance of doubt, this Release of Claims will become effective as of the Effective Date without regard to, and without being contingent upon, the Participating Settlement Class Member submitting a valid Claim Form.

## VI.    NO ADMISSION, NO DETERMINATION

Google denies that it violated the law in any manner alleged in or related to the Action. Google further denies that the Settlement Class Representatives or Settlement Class Members were harmed as a result of any act, omission, or conduct by Google as alleged in the Class Action Complaint (or any related amendments) or otherwise. The parties enter into this Settlement Agreement to avoid the risks, uncertainty, expense, and burden of further litigation. Nothing in this Settlement Agreement shall be construed as, or deemed to be evidence of, an admission of any liability or wrongdoing on the part of Google, or as an admission that a class should be certified for any purpose other than settlement purposes. Accordingly, the parties and their counsel agree that they shall not misrepresent the Settlement Agreement in public as a favorable resolution on the merits, an admission of any liability or wrongdoing on the part of Google, or a concession by either party as to the strengths or the merits of the claims.

Notwithstanding the foregoing, this Settlement Agreement may be used in any proceeding in the Court or in mediation or arbitration to enforce or implement any provision of this Settlement Agreement, or implement any orders or judgments of the Court entered into in connection herewith.

## VII.    NON-MONETARY RELIEF

### A.    Duration of the Settlement

The obligations embodied in this Section VII shall remain binding on the parties and their agents and successors for a three-year period following the Effective Date.

### B.    Non-Monetary Relief

1.    During each annual compensation cycle, Google will continue to analyze pay to identify unexplained differences based on race before finalizing any pay changes for the following year. Analyses will be conducted under the attorney/client privilege.

2.    Google will maintain multiple, well-publicized methods for employees to report concerns related to the terms and conditions of their employment, including concerns that they have been leveled or paid incorrectly for an unlawful reason or reviewed unfairly.

    a.    Google will continue making those methods accessible to current employees on internal sites accessible to Google employees.

    b.    Google will work to ensure that these concerns are routed to the appropriate organization.

    c.    Investigations of leveling concerns will seek to ensure that leveling decisions were not motivated by any impermissible factors in violation of applicable law.

    d.    Organizations responsible for investigating these concerns will take remedial action where appropriate.

    e.    Employees raising concerns will be informed whether concerns were or were not substantiated.

3.    Google will maintain robust leveling policies and practices designed to ensure that leveling decisions at hire are and remain fair, equitable, and based on legitimate, business-related criteria, consistent with legal obligations.

4.    Google will continue to include salary ranges in job advertisements, consistent with state and/or local law, including postings for promotions and transfers.

5.    Google will continue its practice of providing current employees with access to salary ranges for the position held upon request, consistent with state or local law.

6.    Google reaffirms its years-long commitment not to ask for or base compensation decisions at hire or the salary history of applicants.

7.      Google affirms that through and including August 2026, it will not require any employee to enter into mandatory arbitration agreements for employment-related disputes or enforce existing mandatory arbitration agreements for employment-related disputes.

## C.    Reporting

At the conclusion of the three-year period referenced above in Section VII.A, Google through its counsel will report to Settlement Class Counsel with confirmation that Google has adhered to and implemented in good faith the programmatic relief. This obligation does not waive any applicable protection pursuant to the attorney-client privilege or the work product doctrine. Communications to Settlement Class Counsel pursuant to this Section VII.C are confidential and in furtherance of effectuating the settlement and protected under all applicable federal, state, and local settlement privileges, including but not limited to Federal Rule of Evidence, Rule 408.

## VIII.   MONETARY RELIEF

### A.    Claims Administrator

1.      The parties shall jointly select and retain a Claims Administrator, who subject to Court approval shall serve as the administrator of the Settlement and perform the services described in this Settlement Agreement and any other services mutually agreed to by the parties. The parties, through their counsel, will cooperate in good faith to resolve any disputes regarding the Claims Administrator's ability or need to perform certain duties under this Settlement Agreement, and any unresolved disputes shall be referred to the Court.

2.      The Claims Administrator will use the Notice of Settlement, Notice of Final Approval, Claim Form, and records provided by Google in accordance with this Settlement Agreement. The Claims Administrator will provide weekly reports to Parties' Counsel regarding the status of the mailing of the Notice of Settlement to Settlement Class Members, the status of mailing of the Notice of Final Approval to Participating Settlement Class Members, the receipt of Claim Forms, and the distribution of Individual Settlement Payments.

3.      The Claims Administrator shall prepare a declaration to be submitted with the Final Approval Motion detailing its due diligence and providing proof of mailing and emailing the Notice of Settlement. The declaration will also identify the number of opt outs.

4.      The Claims Administrator shall be paid its reasonable and actual fees and costs in connection with the Settlement Agreement, which shall be paid from the Gross Settlement Fund.

15

**B.**  **Settlement Fund**

1.  No later than sixty (60) days following (a) the filing of the Preliminary Approval Motion or (b) the date the Claims Administrator provides to Google all necessary information to make a payment to the Depository Bank (whichever is later), Google shall pay, by wire transfer to the Depository Bank, the Gross Settlement Fund of Fifty Million Dollars and Zero Cents ($50,000,000.00) to the interest-bearing Qualified Settlement Fund (as described in Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section l.468B-1, et seq.) set up by the Claims Administrator. The Gross Settlement Amount will be placed in an interest-bearing account in the name of "*Curley v. Google Settlement Fund*."

2.  This payment is made in order to satisfy the claims of the Participating Settlement Class Members, as well as for other purposes identified in this Section VIII. The Gross Settlement Fund shall constitute the total settlement cash outlay by Google in connection with the resolution of the Settlement Class Claims in this Action. This sum is inclusive of payment for: (i) all Individual Settlement Payments and any associated payroll taxes; (ii) Service Awards (if any are awarded by the Court); (iii) Attorneys' Fees and Costs; (iv) Claims Administrator Fees and Costs; and (v) Trustee Fees and Costs.

3.  If the Effective Date does not occur, the Claims Administrator shall return the Gross Settlement Fund to Google, including any interest accrued but less any Claims Administrator Fees and Costs and Trustee Fees and Costs already incurred.

**C.**  **Administration of Settlement Fund by Trustee**

1.  Plaintiffs shall move the Court to appoint, pursuant to Rule 53 of the Federal Rules of Civil Procedure, Lynn Cohn as Trustee of the Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Settlement Fund. The Trustee may select, in consultation with Settlement Class Counsel, Neutrals to assist in the Individual Claims Resolution Process. Both the Trustee and any Neutrals shall have the immunities and protections of Rule 53 of the Federal Rules of Civil Procedure in the performance of the duties set forth in this Settlement Agreement.

2.  The Claims Administrator shall serve as a Trustee of the Settlement Fund with regard to the handling, management, and distribution of the Settlement Fund, including the payment of Individual Settlement Awards and reporting and paying taxes on such awards. The Claims Administrator shall act in a manner necessary to qualify the Settlement Fund as a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section l.468B-1, et seq., and to maintain that qualification. The parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment.

**D.**     **Individual Claims Resolution Process**

      **1.**     **Submission of Claim Form**

          **a.**     All Participating Settlement Class Members who seek an Individual Settlement Payment must complete and submit to the Claims Administrator a Claim Form and W-4 and W-9 tax forms, all of which will be available on the Claims Administrator website. Participating Settlement Class Members will release all Released Claims upon the Effective Date regardless of whether they submit a Claim Form.

          **b.**     The Claim Form may be submitted to the Claims Administrator via secure electronic submission or mail and must be electronically affirmed or signed by the Participating Settlement Class Member, under penalty of perjury. To be considered timely, a Claim Form must be submitted via secure electronic submission or post-marked within forty-five (45) days after the Notice of Final Approval is first mailed to the Participating Settlement Class Members.

          **c.**     Claimants shall complete the Claim Form in accordance with the procedures and requirements set forth on the Claim Form. To seek financial recovery for any period of time after the end of the Claimant's employment with Google, Claimants must submit qualified evidence of income and work history post-employment with Google. To seek financial recovery for alleged emotional distress, Claimants must complete the section of the Claim Form regarding emotional distress and may submit any additional documentation they deem appropriate.

          **d.**     Claim Forms shall be maintained by the Claims Administrator and shall remain strictly confidential, except as required to administer the Individual Claims Resolution Process. Neither the submission of Claim Forms nor the contents thereof shall be disclosed to Google. Nothing in this Settlement Agreement prohibits any Participating Settlement Class Member from retaining his or her own attorney at his or her own expense.

          **e.**     The Claims Administrator shall submit to the Trustee all Claim Forms and any accompanying documentation submitted by Claimants.

      **2.**     **Evaluation of Claim Form by Neutrals**

          **a.**     Claim Forms will be evaluated by one or more Neutrals from a panel of qualified Neutrals, selected by the Trustee in consultation with Settlement Class Counsel. The Neutrals selected will have substantial training and experience with employment discrimination claims, but cannot be practicing employment law attorneys and cannot be affiliated with any Parties' Counsel. The Neutrals and Trustee will receive information and training from Settlement Class Counsel regarding

17

Google's policies and practices and the evidentiary record and legal theories supporting the Settlement Class Claims. Settlement Class Counsel remains bound by the confidentiality obligations set forth in the Stipulated Protective Order so-ordered by Hon. Laurel Beeler on December 20, 2024 (ECF 118) ("Stipulated Protective Order"), except that the parties agree that the Neutrals, Trustee, and any other individual the Neutrals or Trustee engage for purposes of administering the Individual Claims Resolution Process shall each be considered an "Expert" for purposes of Sections 7.2 ("Disclosure of CONFIDENTIAL Information or Items") and 7.3 ("Disclosure of HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY Information or Items") of that Stipulated Protective Order. Settlement Class Counsel agrees to promptly transmit to Google's Counsel all copies of Exhibit A of the Stipulated Protective Order, as modified per agreement between the parties, executed in connection with administering the Individual Claims Resolution Process.

b.    In evaluating individual claims, the Neutrals shall consider information in the Claim Form and any supporting documents submitted by Claimants and information and training provided by Settlement Class Counsel. Factors and information the Neutrals may weigh include but are not limited to the following:

i.    Length of service at Google;

ii.    Length of employment while meeting the criteria to be a Settlement Class Member;

iii.    Job level(s) held;

iv.    The Claimant's alleged experiences with regard to pay, leveling, performance reviews, discipline, office environment, exclusionary treatment, lack of advancement or career opportunities, and other treatment;

v.    Whether the Claimant lodged an internal complaint of race discrimination;

vi.    Whether the Claimant filed a charge of race discrimination and/or lawsuit;

vii.    Whether the Claimant believes they were retaliated against for engaging in protected activity related to race discrimination and the extent of the alleged retaliation;

viii.    Any alleged career or reputational harm;

ix.    Any alleged severe financial distress;

18

          **x.**      Any alleged emotional distress;

          **xi.**     Mitigation and earnings post-dating employment at Google, if applicable; and

          **xii.**    Such other factors as the Neutrals and Trustee agree upon.

    **c.**     After evaluating all Claim Forms, the Neutrals shall recommend an Individual Settlement Payment, if any, for each Claimant.

**3.**    <u>**Trustee**</u>

    **a.**     The Trustee shall participate in some of the assessment of Claim Forms; make reports to Settlement Class Counsel and the Court as necessary in a confidential and/or *ex parte* manner, consistent with the obligations in the Stipulated Protective Order; select Neutrals to participate in the ICRP subject to the limitations in this Settlement Agreement; review and approve any contracts and the bills of the Neutrals and others performing services in the settlement process (all of which shall be paid by the Claims Administrator out of the Gross Settlement Fund); and perform the below and other duties necessary to effectuate this Settlement Agreement, including those requested by Settlement Class Counsel or the Court.

    **b.**     The Trustee shall have the discretion whether to allow late Claim Forms submitted by Participating Settlement Class Members for good cause shown. The Trustee's decision on whether to accept a late Claim Form is final and binding.

    **c.**     The Trustee shall review all of the proposed Individual Settlement Payments recommended by the Neutrals for consistency and fairness and shall render a final determination as to the Individual Settlement Payment, if any, which should be paid to each Claimant. The total amount of the Individual Settlement Payments and associated payroll taxes shall not exceed the Net Settlement Fund.

    **d.**     The Trustee will establish, for tax purposes, the allocation of Individual Settlement Payments for each Claimant to wages, interest, compensatory damages, or other tax character as is appropriate based on the principles set forth in the IRS Regulations provided, however, that no more than 50% of the Individual Settlement Payment shall be treated as non-wages.

    **e.**     The Trustee shall prepare a report of all Individual Settlement Payments (including tax allocations thereof) for Claimants ("Individual Settlement Payments Report") and provide it to the Claims Administrator.

19

SETTLEMENT AGREEMENT

**4.    No Appeal**

    **a.**    There shall be no appeal from the final Individual Settlement Payments determined by the Trustee, which shall be final and not subject to review by, or appeal to, any court, mediator, arbitrator, or other judicial body, including without limitation this Court. Google, Google's Counsel, and Settlement Class Counsel shall have no responsibility, and may not be held liable, for any determination reached by the Trustee.

**5.    Confidentiality**

    **a.**    Before receiving any Confidential or Highly Confidential-Attorneys Eyes Only Information, the Claims Administrator, Trustee, each Neutral, and any other third party involved in the ICRP or the administration of this Settlement Agreement must sign Exhibit A to the Stipulated Protective Order, as modified per agreement of the parties.

    **b.**    All information communicated or submitted by Claimants during the ICRP, including completed Claim Forms, shall automatically be designated Confidential pursuant to the terms of the parties' Stipulated Protective Order and shall not be disclosed to Google.

**6.    Settlement Class Counsel Assistance to Settlement Class Members and Neutrals**

    **a.**    Settlement Class Counsel shall be a consistent resource to Settlement Class Members throughout the Settlement approval and ICRP.

    **b.**    Settlement Class Counsel shall answer questions and assist Settlement Class Members in understanding the Claim Form, the ICRP, or any other aspect of the Settlement Agreement.

    **c.**    Attorneys from Settlement Class Counsel are available to review and assist Participating Settlement Class Members in the preparation, review, and filing of their Claim Forms and supporting documentation, as applicable, upon timely and reasonable request from Participating Settlement Class Members.

    **d.**    Settlement Class Counsel shall conduct a training session(s) for the Neutrals, which shall, at the Trustee's discretion, be conducted via video meeting or in person.

**7.    Distribution of Individual Settlement Payments**

    **a.**    Within fourteen (14) days after the Trustee has transmitted the Individual Settlement Payments Report to the Claims Administrator, the Claims Administrator shall send payments to each Claimant in the

amounts equal to their Individual Settlement Payment as determined by the Trustee, less any applicable tax withholdings as appropriate. The face of each check issued to Claimants shall clearly state that the check must be cashed within ninety (90) days of the date on the face of the check.

b.      Unless the Claims Administrator has received updated contact information, the settlement checks will be mailed by the Claims Administrator to the Claimant at the address provided by Google. If a Claimant's settlement check is returned with a forwarding address, the Claims Administrator shall promptly re-mail the settlement check to the forwarding address. If a Claimant's settlement check is returned without a forwarding address, the Claims Administrator shall seek to contact the Claimant for an updated address via phone or email if the Claims Administrator has this information. If the Claims Administrator is unable to obtain an updated address in this manner, the Claims Administrator will perform a trace limited to using the social security number to determine if there is a more recent address. If a new address is obtained, the Claims Administrator will promptly re-mail the settlement checks to the Claimant.

c.      If a Claimant reports that their settlement check was lost, stolen, or undelivered, the Claims Administrator shall promptly issue a stop payment order on the original check and, after investigating, issue a new check to such Claimant if appropriate.

d.      Claimants, including Claimants whose checks are re-mailed, will have ninety (90) days from the date that appears on the face of the settlement checks to cash them. If a settlement check is returned as undeliverable sixty (60) days or more after it is dated and a new mailing address is obtained, the Claims Administrator will re-issue the settlement check for that Claimant. No checks will be re-issued more than ninety (90) days after the date that appears on the face of the first settlement check mailed to that Claimant.

E.      **Payment of Federal, State, and Local Taxes**

1.      The parties recognize that the Individual Settlement Payments to Claimants will be subject to applicable tax withholding and reporting.

2.      The Claims Administrator shall be responsible for withholding, remitting and reporting both the employer and the employees' share of the payroll taxes from the Net Settlement Fund. The Claims Administrator shall be responsible to satisfy from the Settlement Fund any and all federal, state, and local employment and withholding taxes, including, without limitation, federal and state income tax withholding, FICA, FUTA, SUTA, Medicare, and any state employment taxes. The Claims Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting

21

with respect to attorneys' fees and other costs subject to reporting), and any and all taxes, penalties. and other obligations with respect to the payments or distributions from the Settlement Fund not otherwise addressed herein.

**3.** All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed on Google with respect to income earned for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) any returns described herein or otherwise required to be filed pursuant to applicable authorities) (hereinafter "Settlement Fund Tax Expenses"), shall be paid out of the Settlement Fund. Further, Settlement Fund Taxes and Settlement Fund Tax Expenses shall be treated as a cost of the administration of the Settlement Fund. The parties hereto agree to cooperate with the Claims Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this paragraph.

**F.** <u>**Residual Fund**</u>

**1.** Within twenty (20) days after the expiration of the ninety (90)-day period following the date on the face of any settlement checks issued to any Claimant, the Claims Administrator shall inform the Trustee of the amount of the Net Settlement Fund remaining (the "Residual Fund").

**2.** If Trustee determines it is financially feasible to redistribute the Residual Fund, then the Trustee shall do so in her sole discretion. If it is not financially feasible to redistribute the Residual Fund, any Individual Settlement Payment check that is not timely cashed by a Claimant will be sent to the appropriate state office's Unclaimed Property Fund, in the name of the Claimant, where the Claimant can later claim their funds.

## IX. <u>ATTORNEYS' FEES AND COSTS</u>

**A.** Settlement Class Counsel shall move for Court approval of one-fourth (¼) of the Gross Settlement Fund (Twelve Million Five Hundred Thousand Dollars and Zero Cents ($12,500,000.00)) for Attorneys' Fees, plus reimbursement of reasonable costs and expenses, which shall be deducted from the Gross Settlement Fund. The Attorneys' Fees and Costs awarded to Settlement Class Counsel shall be at the sole discretion of the Court, and this Settlement Agreement is not contingent upon the Court's approval of such Attorneys' Fees and Costs. In no event will the gross sum of payments made pursuant to this Settlement Agreement exceed the total amount of the Gross Settlement Fund.

**B.**    After depositing the Gross Settlement Fund with the Claims Administrator, Google shall have no additional liability for Settlement Class Counsel Attorneys' Fees and Costs. The Claims Administrator shall pay the funds to Settlement Class Counsel no later than fourteen (14) days after the Effective Date.

## X.    SERVICE AWARDS

**A.**    Settlement Class Representatives have invested substantial time and effort assisting Settlement Class Counsel and serving as fiduciaries for the Settlement Class. As is standard in class litigation, Settlement Class Counsel intends to petition the Court for Service Awards to Settlement Class Representatives for their efforts and service to the Settlement Class, in an amount not to exceed Fifty Thousand Dollars and Zero Cents ($50,000.00) per Settlement Class Representative. Such Service Awards shall be at the sole discretion of the Court, and this Settlement Agreement is not contingent upon the Court's approval of such Service Awards.

**B.**    Any Service Awards approved by the Court in conjunction with the Settlement shall be paid from the Gross Settlement Fund and shall be in addition to each Settlement Class Representative's Individual Settlement Payments, if any. Service Awards shall be distributed by the Claims Administrator in separate checks mailed to the Settlement Class Representatives no later than fourteen (14) days after the Effective Date.

## XI.    SETTLEMENT PAYMENTS DO NOT TRIGGER ADDITIONAL BENEFITS

All payments to Participating Settlement Class Members shall be deemed to be paid to such Participating Settlement Class Members solely in the year in which such payments actually are received by the Participating Settlement Class Members. The parties agree and the Participating Settlement Class Members acknowledge that the payments provided for in this Settlement Agreement are the sole payments to be made to the Participating Settlement Class Members, and that the Participating Settlement Class Members are not entitled to any new or additional compensation or benefits as a result of having received the payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the period covered by this Settlement).

## XII.    SETTLEMENT CONTINGENT ON COURT APPROVAL

**A.**    This Settlement Agreement is contingent upon the Court's approval of the Settlement. If the Court does not grant preliminary or final approval or the Effective Date does not occur, this Settlement Agreement may be voided at either party's option, in which case this Settlement Agreement will become null and void, and will not be used for any purpose in connection with any further litigation in the Action or any other lawsuit, administrative, or other legal proceeding, claim, investigation, or complaint. No party shall be deemed to have waived any claims, objections, rights or defenses, or legal arguments or position.

**B.**    In such event, the parties shall resume litigation of the Settlement Class Claims unless the parties jointly agree to seek reconsideration or appellate review of the decision

denying final approval or attempt to renegotiate the Settlement and seek Court approval of a renegotiated settlement.

**C.**    In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved for any reason (or, if following approval by the Court, such approval is reversed or substantively modified on appellate review[2]), litigation of the Settlement Class Claims will proceed as if no settlement had been attempted. In that event, any order entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc.* Any class certified for purposes of settlement shall be decertified, and Google retains all rights and defenses, including the right to contest whether the Action should be maintained as a class or collective action and contest the merits of the claims being asserted by the Plaintiffs in this action. The fact of certification for purposes of this Settlement shall not be cited to, used, or admissible in any judicial, administrative, arbitral, or other legal proceeding for any purpose of which respect to any issue, substantive or procedural. This Settlement Agreement will not be considered an admission of liability by Google. Any portion of the Gross Settlement Fund deposited by Google will be returned to Google, including the interest earned through the date the Settlement is terminated, less any Claims Administrator Fees and Costs and Trustee Fees and Costs already incurred.

# XIII.    STIPULATED PROTECTIVE ORDER AND MEDIATION CONFIDENTIALITY AGREEMENT

Settlement Class Representatives and Settlement Class Counsel agree to remain bound by the terms of the Stipulated Protective Order (except as modified herein) and the parties' Mediation Confidentiality Agreement dated June 12, 2024.

# XIV.    RETURN OF DOCUMENTS/DATA

The parties agree that Section 13 ("FINAL DISPOSITION") of the Stipulated Protective Order remains in full force and effect, except that the parties mutually agree to extend the deadline for the Receiving Parties' return or destruction of Protected Material from sixty (60) days following the disposition of the Action to one hundred twenty (120) days after the Claims Administrator issues payment of all Individual Settlement Payments (including any from any Residual Fund).

# XV.    OTHER TERMS AND CONDITIONS OF THE SETTLEMENT

**A.**    **Mutual Full Cooperation**

**1.**    The parties will fully cooperate with each other and with the Claims Administrator and Trustee to effectuate and implement the terms and

---

[2] An award by the Court of lesser amounts than sought for the Service Awards or Attorneys' Fees and Costs, or modifications to (a) the claims process, (b) the Notice of Settlement, (c) the Notice of Final Approval, or (d) Claim Forms will not be a material modification of the Settlement Agreement. The Court's elimination of the Individual Claims Resolution Process would be a substantive and material modification to the Settlement Agreement.

Docusign Envelope ID: 67A3094C-7962-49D4-883A-70189A9C4B42

conditions of this Settlement Agreement, including but not limited to the preparation and execution of documents necessary to implement this Settlement Agreement. The Parties will use their best efforts to effectuate this Settlement Agreement, including during any motions for reconsideration or appeals, and will use their best efforts to obtain the Court's approval of the Settlement Agreement and to defend the Settlement Agreement from any legal challenge.

2.  The parties agree to accept non-material and procedural changes to this Settlement Agreement (see footnote 2, *supra*) if so required by the Court in connection with Final Approval of the Settlement, but are not obligated to accept any changes in the monetary amount of relief or the substantive non-monetary relief provided for herein, or any other substantive change.

**B.  <u>Knowing and Voluntary Agreement</u>**

The parties enter into this Settlement Agreement knowingly, voluntarily, and with full knowledge of its significance. The parties have not been coerced, threatened, or intimidated into signing this Settlement Agreement and have consulted with legal counsel regarding the Settlement Agreement.

**C.  <u>Notifications and Communications</u>**

Any notifications or communications made in connection with this Settlement Agreement shall be sent to the parties at the email or mailing addresses of their respective counsel as follows:

| *For the Settlement Class Representatives and Settlement Class Members:* | *For Defendant Google LLC* |
|---|---|
| Linda Friedman<br>303 W Madison<br>Ste. 2600<br>Chicago, IL 60606<br>lfriedman@sfltd.com | Carson H. Sullivan<br>2050 M. Street, N.W.<br>Washington, D.C. 20036<br>carsonsullivan@paulhastings.com<br><br>Felicia A. Davis<br>515 South Flower Street, 25th Floor<br>Los Angeles, CA  90071<br>feliciadavis@paulhastings.com<br><br>Emily R. Pidot<br>Sara B. Tomezsko<br>200 Park Avenue<br>New York, NY 10166<br>emilypidot@paulhastings.com<br>saratomezsko@paulhastings.com |

**D.**    **Binding on Assigns**

This Settlement Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, trustees, executors, administrators, successors and assigns. Settlement Class Counsel and Settlement Class Representatives, on behalf of the individual Settlement Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action, or any related action.

**E.**    **Enforcement of Settlement Agreement and Governing Law**

This Settlement Agreement will be governed by California law, without regard to conflict of law principles. The parties submit to the jurisdiction of the Court for all purposes relating to the review, approval, and enforcement of this Settlement Agreement.

**F.**    **Settlement Agreement Form and Construction**

**1.**    No representation, promise, or inducement has been offered or made to induce any party to enter into this Settlement Agreement, which contains the entire, complete, and integrated statement of all settlement terms and supersedes all previous oral or written agreements with regard to the subject matter contained herein.

**2.**    This Settlement Agreement may not be amended or modified except by a writing signed by the parties' authorized representatives. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Settlement Agreement shall not be deemed a waiver of future performance of the same provisions or any of the other provisions in this Settlement Agreement. Notwithstanding any such failure, such party shall have the right thereafter to insist upon the specific performance of any of the provisions of this Settlement Agreement.

**3.**    The terms and conditions of this Settlement Agreement are the result of lengthy, carefully considered, arms-length negotiations between the parties, and this Settlement Agreement shall not be construed in favor of or against any of the parties by reason of their participation in the drafting of this Settlement Agreement. All of the terms and conditions of this Settlement Agreement are material to this Settlement Agreement and have been relied upon by the parties in entering into this Settlement Agreement, unless otherwise expressly stated.

**4.**    This Settlement Agreement may be executed in electronic counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one binding Settlement Agreement.

**5.**    The Settlement Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Settlement, for a complete resolution of the Settlement Class Claims.

26

SETTLEMENT AGREEMENT

**6.**     If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, the remaining portions of this Settlement Agreement will remain in full force and effect.

**7.**     If any part of this Settlement Agreement is found to be illegal, invalid, inoperative, or unenforceable in law or equity, such finding shall not affect the validity of any other part of this Settlement Agreement, which shall be construed, reformed, and enforced to affect the purposes thereof to the fullest extent permitted by law.

**8.**     Section or paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provision hereof. Each term of this Settlement Agreement is contractual and not merely a recital.

**G.**     <u>Parties' Authority</u>

The signatories hereto hereby represent that they are fully authorized to enter into this Settlement Agreement and bind the parties hereto and the Settlement Class Members to the terms and conditions thereof.

**H.**     <u>Non-Interference with Settlement</u>

Pending the Court's decision on the final approval of the Settlement Agreement and entry of the Final Approval Order, Settlement Class Representatives and anyone acting on their behalf shall be barred and enjoined from: (i) further litigation of any claims covered by this Settlement in the Action; (ii) filing, or taking any action, directly or indirectly, to commence, prosecute, pursue, or participate, individually or on a class or collective action basis, in any action, claim, or proceeding against Google in any forum in which any of the claims to be released by the Settlement Agreement are asserted, or which in any way would prevent any such claims from being extinguished; or (iii) seeking, whether on a conditional basis or not, certification of a class or collective action that involved any such released claims.

IN WITNESS WHEREOF, the parties each voluntarily and without coercion have caused this Settlement Agreement to be signed on the dates entered below.

*[Signature Page to Follow]*

1

Dated: _5/8/2025 | 1:53 PM CDT_

_____

April Curley

2     Named Plaintiff

3

Dated: _5/8/2025 | 2:24 PM PDT_

_____

Ronika Lewis

4     Named Plaintiff

5

Dated: _5/8/2025 | 4:39 PM CDT_

_____

Desiree Mayon

6     Named Plaintiff

7

Dated: _5/8/2025 | 1:40 PM CDT_

_____

Linda D. Friedman

8     Stowell & Friedman

Counsel for Plaintiffs

9

Dated: _5/8/2025 | 11:23 AM PDT_

_____

10    Benjamin Crump

Ben Crump Law PLLC

11    Counsel for Plaintiffs

12    Dated: _____

_____

Michael Pfyl

13    Director, Employment, Google

14    Dated: May 8, 2025

_____

15    Carson H. Sullivan

Paul Hastings LLC

16    Counsel for Defendants

17

18

19

20

21

22

23

24

25

28

SETTLEMENT AGREEMENT

1   Dated: _____              _____
                                    April Curley
2                                   Named Plaintiff

3   Dated: _____              _____
                                    Ronika Lewis
4                                   Named Plaintiff

5   Dated: _____              _____
                                    Desiree Mayon
6                                   Named Plaintiff

7   Dated: _____              _____
                                    Linda D. Friedman
8                                   Stowell & Friedman
                                    Counsel for Plaintiffs
9
    Dated: _____              _____
10                                  Benjamin Crump
                                    Ben Crump Law PLLC
11                                  Counsel for Plaintiffs

12  Dated: 5/8/2025                 _Michael Pfyl_____
                                    Michael Pfyl
13                                  Director, Employment, Google

14
    Dated: May 8, 2025              _____
15                                  Carson H. Sullivan
                                    Paul Hastings LLC
16                                  Counsel for Defendants

17

18

19

20

21

22

23

24

25

Exhibit B

CLAIMANT ID #:

# UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF CALIFORNIA

**April Curley et al. v. Google, LLC., No. CASE NO: 4:22-cv-01735-KAW**

## NOTICE OF CLASS ACTION, PROPOSED SETTLEMENT
## AGREEMENT, AND FINAL APPROVAL HEARING

**If you are or were an employee of Google LLC identified in Google's records as Black or Black+ who held a level 3, 4, 5, and/or 6 job located in California at any time from March 18, 2018 through December 31, 2023, and/or a level 3, 4, 5, and/or 6 job located in New York from October 15, 2017 through December 31, 2023, you may be eligible to participate in a class action settlement, subject to certain other eligibility criteria described below. Please read this notice carefully as <u>a class action settlement will affect your rights</u>.**

*A federal court has authorized this notice. This is not junk mail, an advertisement, or a solicitation from a lawyer.*

On [*preliminary approval date*], Judge Westmore of the United States District Court for the Northern District of California granted preliminary approval of a proposed class action settlement in the lawsuit *Curley et al. v. Google, LLC*, Case No. 22-cv-01735. The Court ordered this notice to inform you of your rights and options under the proposed Settlement, which will provide a Settlement Fund of $50 million for a settlement class of certain Black and Black+ Google employees to resolve the case listed above.

| Your Options in this Settlement: | |
|---|---|
| **Do Nothing** | If you do nothing, you will be eligible to participate in the proposed Settlement, seek payment, and release claims against Google. (See Section 5.A below.) The Court still must decide whether to approve the proposed Settlement. If the Court approves the proposed Settlement, you will be mailed a separate notice about your rights and what you must do to seek money from the Settlement. |
| **Exclude Yourself (Opt Out)** | If you want to exclude yourself (or "opt out") of the proposed Settlement, you must follow the directions outlined in Section 5.B below. If you exclude yourself, you will not receive a payment and you cannot object to the proposed Settlement, but you will keep any rights to sue Google in a separate lawsuit.<br><br>You must opt out of the Settlement by [*60 days after mailing Notice*]. |
| **Object** | If you want to object to the proposed Settlement, you must write to the Court about why you believe the proposed Settlement is unfair to the class by following the instructions outlined in Section 5.C below.<br><br>Deadline to Object: [*60 days after mailing Notice*] |

These options—**and the deadlines to exercise them**—are explained in this notice.

**What This Notice Contains**
**<u>TABLE OF CONTENTS</u>**

1.  Purpose of This Notice .................................................................................... 2

2.  Background: About the Lawsuit ...................................................................... 3

3.  Class Definition ............................................................................................. 3

4.  Summary of Proposed Settlement Terms ........................................................ 4

5.  How to Proceed: Your Options ....................................................................... 4

6.  What Will Happen If the Settlement Is Approved ........................................... 6

7.  Release ........................................................................................................... 6

8.  How Will My Settlement Award Be Calculated? ............................................ 6

9.  Are There Tax Consequences for Any Money I Might Get? ............................ 7

10.  The Lawyers Representing You and the Settlement Class ............................... 7

11.  How Will the Lawyers Be Paid? ..................................................................... 8

12.  Payments Specific to the Settlement Class Representatives ............................ 8

13.  The Final Approval Hearing ........................................................................... 8

14.  Do I Have to Come to the Final Approval Hearing? ....................................... 9

15.  Getting More Information ............................................................................... 9

### 1. Purpose of This Notice

The purpose of this notice is to inform you about: (i) this lawsuit, (ii) the proposed Settlement and Settlement Class definition that the Court has preliminarily approved, and (iii) your legal rights and options in connection with the Settlement and a Final Approval Hearing to be held before the Court on [*date of Final Approval Hearing*], to consider the fairness, reasonableness, and adequacy of the Settlement and related matters. This notice also describes the steps to be taken by those who wish to be excluded from the Settlement Class or to object to the Settlement, and, for those who remain in the Settlement Class, the steps necessary to seek a share of the Settlement Fund if the Court approves the proposed Settlement.

This notice summarizes the proposed Settlement. For the precise terms of the Settlement, please see the Settlement Agreement available:

- at www.CurleySettlement.com
- by contacting Settlement Class Counsel at 312-431-0888
- by contacting the Claims Administrator at [*insert contact info*]
- by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov or

- by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

## 2.  Background: About the Lawsuit

On March 18, 2022, Plaintiff April Curley, who is Black, filed a class action complaint alleging that Google discriminated on the basis of race with respect to hiring, job assignment, leveling, compensation, promotion and advancement, performance reviews, allocation of resources, transfers, discipline, and attrition, among other things, as well as retaliated against, failed to investigate complaints, and maintained a racially hostile work environment against Google's Black and Black+[1] employees. She brought class claims under federal, state, and local anti-discrimination laws, and later amended the complaint over the course of the litigation. Two additional named plaintiffs in the lawsuit are also part of the Settlement Class: Desiree Mayon, who is Black+, and Ronika Lewis, who is Black. Together these individuals are called "Settlement Class Representatives" because they brought the lawsuit seeking to represent a group (or "class") of allegedly similarly situated Black or Black+ employees.

The Class Action Complaint describes all the claims and can be found at www.CurleySettlement.com. The lawsuit is known as *Curley et al. v. Google, LLC*, Case No. 22-cv-01735.

Google denies all of the allegations in the lawsuit and maintains that it has fully complied with all applicable laws, rules, and regulations at all times. It also denies that the claims can proceed on a class basis or are appropriate for class treatment, except for purposes of this Settlement only. The Court has not ruled on the merits of these claims, has made no findings of fault, has not decided that the lawsuit can proceed as a class action, and has not awarded damages. The Settlement is a compromise of alleged claims and is not an admission of liability on the part of Google or anyone else. The parties have reached this Settlement in order to avoid the expense, risk, and uncertainty of further litigation.

## 3. Class Definition

You are a member of the Settlement Class affected by the Settlement if you fit within this definition:

All individuals identified in Google's records produced to Settlement Class Counsel on November 20, 2024 as Black or Black+ who worked in job levels 3, 4, 5 and/or 6 in a job located in California at any time from March 18, 2018 through December 31, 2023, and/or job levels 3, 4, 5, and/or 6 in a job located in New York at any time from October 15, 2017 through December 31, 2023, excluding employees who (a) exclusively held a job that Google's records identified as being within a Legal job family or subfamily, or (b) are identified in Google's records as having executed a general release of claims at any time between October 15, 2017 (for New York employees) or March 18, 2018 (for California employees) and [*preliminary approval date*].

---

[1] A Black+ designation refers to an individual who Google's records identified as Black or African American and one or more other races or ethnicities.

If you received this notice in a mailing addressed to you, then Google's records show that you are a Settlement Class Member, *i.e.*, that you fit the definition above. If so, you have legal rights and options that you can exercise before the Court finally approves the Settlement.

### 4. Summary of Proposed Settlement Terms

The proposed Settlement includes monetary and non-monetary terms.

Google has agreed to create a Settlement Fund in the total amount of $50 million. The Settlement Fund will cover payments to Settlement Class Members, service awards to the Settlement Class Representatives if the Court chooses to award them, Settlement Class Counsel's attorneys' fees and costs, payroll taxes, and the costs of administering the Settlement Fund.

The non-monetary terms of the Settlement are summarized below. A comprehensive list of these terms can be found in Section VII of the Settlement Agreement.

- Google will continue its practice of analyzing employee pay to identify differences by race that are not otherwise explained by legitimate criteria before finalizing any pay changes for the following year.
- Google will maintain methods for employees to report concerns about their employment, including that they believe they are paid or reviewed unfairly. Google will investigate these concerns and take remedial action where appropriate.
- Google will maintain robust leveling policies and practices designed to ensure that leveling decisions at hire are and remain fair and based on legitimate, business-related criteria.
- Google will provide information to applicants and employees regarding salary ranges and will continue its practice of not asking for applicants' salary history.
- Google will not require any employee to enter into mandatory arbitration agreements for employment-related disputes or enforce existing mandatory arbitration agreements for employment-related disputes through August 2026.

### 5. How to Proceed: Your Options

**Option A: Do Nothing (for Now) and Wait Until the Court Decides on Final Approval of the Settlement**

The Court still must decide whether to grant Final Approval of the Settlement. If you wish to participate in the Settlement, and do not wish to object, you may do nothing in response to this Notice and wait for further Notice from the Court. If the Court approves the Settlement, you will release and not be able to sue (or continue to sue) Google for the claims covered by this Settlement, and you will receive a separate Notice advising you of your rights and the process and deadlines by which you must act to receive a payment from the Settlement Fund.

**Option B: Exclude Yourself from or "Opt Out" of the Settlement**

If you do not want to participate in the Settlement, but wish to retain your own rights to sue (or continue to sue) Google separately for the claims covered by this Settlement, you must request to opt out of, or be excluded from, this Settlement. If you opt out, you will not be eligible for any

monetary award from the Settlement. However, you will keep any rights you might have to sue Google separately for the legal claims covered by this Settlement.

If you wish to opt out, you must send a written, signed statement that you are opting out of the Settlement to the Claims Administrator. You can send the opt-out statement to the address listed below or submit it online at www.CurleySettlement.com. To be effective, this opt-out statement must be (1) postmarked or submitted to www.CurleySettlement.com on or before [*sixty (60) days after Notice mailed to Class Members*], (2) state "I opt out of the class action settlement in the lawsuit *Curley, et al. v. Google*," and (3) include your name, address, telephone number, and signature.

The address of the Claims Administrator is:

Address
Address
Address
Address

If you submit an opt-out statement, you still may later rescind your opt out (*i.e.*, you may change your mind and stay in the Settlement Class). To be effective, such rescissions must be submitted in writing via mail or submitted online at www.CurleySettlement.com and received by the Claims Administrator by [*date*], which is one (1) day before the Final Approval Hearing currently scheduled for [*Final Approval Hearing Date*].

If you submit a timely and valid opt-out statement, you will have no right to object to the Settlement or to obtain a payment from the Settlement Fund, and you will no longer be represented by Settlement Class Counsel. You will not be legally bound by anything that happens in this lawsuit. You may also be able to sue (or continue to sue) Google in the future regarding the same claims asserted in this lawsuit.

**Option C: Object to the Settlement**

You can ask the Court to deny approval of the Settlement by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no settlement payments will be sent out, and the lawsuit will continue. If that is what you want to happen, you should object.

Any objection to the proposed Settlement must be in writing. Your objection must also explain specifically the grounds for your objection, and state whether the objection applies only to you, to a specific subset of the Settlement Class, or to the entire Settlement Class. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. If you or your attorney intend to speak at the Final Approval Hearing, please clearly state that in your written objection.

All written objections and supporting papers must (a) clearly identify the case name and number (*Curley et al. v. Google*, Case No. 22-cv-01735), (b) be submitted to the Court either by filing them electronically or in person at any location of the United States District Court for the Northern

5

District of California or by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, and (c) be filed or postmarked on or before [*sixty (60) days after the Notice was mailed to Class Members*]. If you or your attorney intend to speak at the Final Approval Hearing, please also explicitly state your intent to do so.

### 6. What Will Happen If the Settlement Is Approved

If you do not opt out, you will remain a part of the Settlement Class and be eligible to seek payment from the Settlement Fund. The Court will hold the Final Approval Hearing and you, as a Settlement Class Member, will be represented by Settlement Class Counsel at no cost to you. If the Court gives Final Approval to the Settlement, you will receive a separate notice advising you of your rights and the process to receive a payment from the Settlement Fund. This process is described in Section 8 of this notice.

### 7. Release

If the Court grants Final Approval of the Settlement, then all Settlement Class Members who do not opt out will release Google from all claims of race-based employment discrimination including without limitation any suits, actions, causes of action, complaints, charges, grievances, claims, rights, demands, debts, losses, damages, punitive or statutory damages, penalties, expenses, obligations, and/or liabilities arising from alleged race-based employment discrimination, including those related to hiring, job assignment, pay, leveling, promotions, performance reviews, transfers, terminations or constructive discharges, failure to investigate, retaliation, or hostile work environment under any federal, state, or local law, including but not limited to 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); FEHA, Cal. Gov. Code § 12904, *et seq.*; the California Equal Pay Act; the New York State Human Rights Law, Executive Law §§ 296 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL").

To "release" a claim means that you cannot sue Google or related parties for any of the claims covered by the release. Unless you opt out of the Settlement, you will be covered by the release, even if you do not submit a Claim Form for an Individual Settlement Payment (discussed further below).

### 8. How Will My Settlement Award Be Calculated?

Each Settlement Class Member, including you, will be eligible for an Individual Settlement Payment from the Settlement Fund if the Court approves the Settlement. You do not have to take action now, and instructions for receiving an Individual Settlement Payment will be included in the Final Approval Notice that will be sent to you if the Court approves the Settlement.

If the Court approves the Settlement, you will have to fill out and submit to the Claims Administrator a Claim Form and IRS Forms W-4 and W-9 to receive an Individual Settlement Payment. The Claim Form is available by logging in online at www.CurleySettlement.com using the Claimant ID provided at the top of this notice.

6

You must complete a Claim Form by following the Form's instructions, which request evidence of alleged (a) race discrimination and/or retaliation, (b) financial losses, and (c) emotional distress, if any. To seek financial recovery for any period after your employment with Google, you must submit documentary evidence of your post-Google income. To seek financial recovery for alleged emotional distress, you must complete the section of the Claim Form regarding emotional distress and may submit any additional documentation you deem appropriate.

The Trustee appointed by the Court, and/or a Neutral that works with the Trustee, will assess your claim and determine an Individual Settlement Payment based on all available information, including the individual facts and circumstances of your claim and all claims submitted by participating Settlement Class Members.

Settlement Class Counsel will be available to assist Settlement Class Members in the claims resolution process. You may also retain your own attorney to assist you in this process, at your own expense. Your Claim Form will remain strictly confidential and will be disclosed to only Settlement Class Counsel, the Trustee, any Neutral evaluating your claim, and the Claims Administrator. Neither your Claim Form nor the contents thereof will be disclosed to Google.

All Individual Settlement Payments will be reviewed and approved by the Trustee appointed by the Court to make sure they are fair and consistent. You will not have a right to challenge your Individual Settlement Payment approved by the Trustee, and all Individual Settlement Payments are final, binding, and non-appealable.

### 9. Are There Tax Consequences for Any Money I Might Get?

Yes, a portion of your award may be subject to lawful deductions and withholdings, like a paycheck, and a portion of your award may be taxed as non-wage income. The Trustee will be responsible for allocating any monetary payments appropriately between different types of income or monetary compensation (e.g., wages, emotional distress). The Claims Administrator will withhold, remit, and report your share of payroll taxes from the Settlement Fund based on the W-4 form you fill out. After the end of the calendar year in which the payments are made, the Claims Administrator will issue each Settlement Class Member who cashes a check the appropriate IRS forms. Ultimately, you will be responsible for any and all individual taxes owed on any Individual Settlement Payment.

Settlement Class Counsel are not tax advisors and cannot give you advice on any tax matters. Settlement Class Counsel urge you to consult your tax advisor for answers to any questions you may have about the tax implications of any potential award. Google makes and has made no representations as to the taxability of any portion of any award you receive from the Settlement Fund.

### 10.    The Lawyers Representing You and the Settlement Class

As a Settlement Class Member, you are represented in this litigation by Settlement Class Counsel:

Linda D. Friedman
Stowell & Friedman, Ltd.
303 W. Madison, Suite 2600
Chicago, IL 60606-3395

Telephone: (312) 431-0888
lfriedman@sfltd.com

Unless you opt out, you will continue to be represented by Settlement Class Counsel in connection with implementation of the Settlement at no cost to you. Although it is not required, you may, if you wish, retain your own attorney at your own expense.

### 11.     How Will the Lawyers Be Paid?

Settlement Class Counsel have pursued these claims on behalf of the Settlement Class Representatives and the Settlement Class without receiving any compensation for their services or reimbursement of the litigation expenses they incurred. If you are a Settlement Class Member and receive an award from the Settlement Fund, you will not owe any fees or expenses to the lawyers who have represented you as part of the Settlement Class. As is common in class action cases, Settlement Class Counsel will ask the Court to award them attorneys' fees of not more than 25% of the Settlement Fund, plus reimbursement of their reasonable litigation expenses. The Court will decide how much to award Settlement Class Counsel for fees and expenses, which will be paid from the Settlement Fund.

The Motion for Attorneys' Fees and Costs will be available at www.CurleySettlement.com on or before [*thirty-five (35) days before the end of the notice period*].

### 12.     Payments Specific to the Settlement Class Representatives

Settlement Class Members have been represented in this litigation by Settlement Class Representatives April Curley, Desiree Mayon, and Ronika Lewis. The Settlement Class Representatives may participate in the Settlement claims process just like any other Settlement Class Member. In addition, Settlement Class Counsel will ask the Court to grant service awards not to exceed fifty thousand dollars ($50,000) for each of the Settlement Class Representatives in recognition of the benefits the Settlement Class Representatives achieved for the Settlement Class, the risks they faced in bringing the case, and the time they spent pursuing the lawsuit and the proposed Settlement for Settlement Class Members.

### 13.     The Final Approval Hearing

The Final Approval Hearing on the proposed Settlement will be held at _____ a.m./p.m. on _____, 2025, in the courtroom of the Honorable Kandis A. Westmore at the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612. This date may change without further notice being sent out. If the date does change, the updated date will be posted online at www.CurleySettlement.com.

At this Final Approval Hearing, the Court will determine whether the proposed Settlement is fair, reasonable, and adequate, and whether it should be approved. The Court will also consider the amount of fees and expenses to award to Settlement Class Counsel, the amount of the Service Awards to grant to the Settlement Class Representatives, and whether, in accordance with the proposed Settlement, an order and judgment should be entered bringing the litigation of claims on behalf of the Settlement Class to an end.

**14.    Do I Have to Come to the Final Approval Hearing?**

No. You are not required to come to the Final Approval Hearing, but you are welcome to attend at your own expense. Settlement Class Counsel will appear at the Final Approval Hearing on behalf of all Settlement Class Members at no cost to you. If you file and serve an objection by the deadline you may, but do not have to, come to Court to talk about it. As long as you filed your written objection as explained above in Section 5, the Court will consider it. You may also hire a lawyer to attend for you at your own expense, but it is not required. If the Court gives final approval to this Settlement, the Court's judgment will be final and binding on all Settlement Class Members who have not submitted timely and valid requests to opt out.

**15.    Getting More Information**

If you have further questions, you can get free help at www.CurleySettlement.com, by calling the Claims Administrator at [*number*], or by calling or writing to Settlement Class Counsel in this case at the contact information listed in Section 10.

**<u>Again, the important deadlines are:</u>**

**Last Day to Opt Out of the Settlement Class**: [*60 days after mailing notice*]

**Last Day to Object to the Settlement**: [*60 days after mailing notice*]

**Final Approval Hearing:** [*to be set by the Court*] This date may change without further notice. If the date does change, the updated date will be posted online at www.CurleySettlement.com.

**PLEASE DO NOT CALL OR CONTACT THE COURT, THE OFFICE OF THE CLERK OF COURT, OR GOOGLE WITH QUESTIONS REGARDING THIS NOTICE.**

Exhibit C

EXHIBIT  FILED
UNDER SEAL

Exhibit D

1

```
 1                 IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3   JEROME SENEGAL, et al.,            )
                                        )
 4              Plaintiffs,             )
                                        )
 5              v.                      )   No. 18 CV 06006
                                        )
 6   JP MORGAN CHASE BANK N.A.,         )   Chicago, Illinois
                                        )   December 18, 2018
 7              Defendant.              )   10:23 a.m.

 8                    TRANSCRIPT OF PROCEEDINGS

 9               BEFORE THE HONORABLE MANISH S. SHAH

10   APPEARANCES:

11   For the Plaintiffs:        STOWELL & FRIEDMAN, LTD.
                                BY:  MS. LINDA D. FRIEDMAN
12                                   MR. GEORGE S. ROBOT
                                     MS. SUZANNE E. BISH
13                              303 West Madison Street, Suite 2600
                                Chicago, Illinois 60606
14                              (312) 431-0888

15   For the Defendant:         MORGAN LEWIS & BOCKIUS, LLP
                                BY:  MR. KENNETH J. TURNBULL
16                                   MR. BRENDAN KILLEEN
                                101 Park Avenue
17                              New York, New York 10178
                                (212) 309-6000
18
                                MR. SCOTT R. KOCH
19                              JP Morgan Chase
                                10 South Dearborn Street
20                              Chicago, Illinois 60603
                                (312) 732-3563
21

22

23

24

25
```

1    settlement.

2              THE COURT:  Mr. Gourrier, is there anything you want

3    to say about the anonymous nature of your objection and

4    whether that's proper or not proper?

5              MR. GOURRIER:  Certainly, your Honor.  As the Court

6    is aware that if you are a member of a class and you are not a

7    named plaintiff, typically, those members of the class are

8    able to remain anonymous.  The client in this particular

9    instance asked that his identity be kept anonymous if it could

10   be.  I don't have a problem revealing his identity to the

11   Court in camera if the Court, you know, wishes to determine

12   whether or not I have standing to make the objections.

13             I asked Ms. Friedman to bring a class list to this

14   hearing today so the Court could crosscheck that if someone

15   believes that I came all the way from Houston, Texas, just to

16   stand here in front of the Court and not represent anybody

17   but, you know, I really feel it's a nonissue, your Honor.  But

18   if we want to verify that I have standing, I don't have a

19   problem doing that.

20             THE COURT:  What about the timeliness of your letter?

21   Was it within the time to make an objection?

22             MR. GOURRIER:  Yes, your Honor.  We submitted the

23   objections timely to the claims administrator and sent copies

24   to class counsel and counsel for Chase as indicated in the

25   class notice.

1           THE COURT:  Does class counsel want to comment any

2      further on that?

3           MS. FRIEDMAN:  Only, your Honor, to note that we

4      repeatedly requested the identity of the objector who stayed

5      in.  I understand it's now one person.  And we were not given

6      that name.  We easily could have made those checks and looked

7      at those names, but I'm not aware of any process that allows a

8      person to have a lawyer appear in court without having filed a

9      formal appearance on behalf of that person and to object to a

10     settlement and potentially appeal from an objection to a

11     settlement that benefits hundreds of other people including

12     class representatives who courageously lent their name to the

13     litigation notwithstanding the ramifications.

14          So we would ask that the Court find that the

15     objection is not properly filed without an identification of

16     the person who filed it or an appearance filed on behalf of

17     that person or that person being present in court.

18          THE COURT:  Does the defendant have any other

19     comments about the objection?

20          MR. TURNBULL:  We -- we take the same position that

21     class counsel does.

22          MR. GOURRIER:  Your Honor, if I may be heard further.

23          THE COURT:  Go ahead.

24          MR. GOURRIER:  The Court had asked me about the

25     timeliness of it.  I didn't know that there was some question

1  about the validity of the objections that were filed on my

2  behalf.  As the class notice indicated, a layperson could file

3  objections to the class settlement or make comments.  It just

4  said that it had to be signed.  The class notice also said

5  that a class member could retain counsel.  In this particular

6  instance, the class member retained counsel.

7          Typically, under the Federal Rules of Civil

8  Procedure, an attorney retained by a client is able to sign

9  documents on behalf of the client.  That's what I did in this

10 case, your Honor.  So that's why the client didn't sign the

11 actual objections.

12         The class notice just asked to be signed.  It was

13 signed, your Honor.  And as far as that's concerned, I think

14 it's properly before the Court.  I don't know if you want to

15 take some time to go into the merits of the objections, but

16 you should have a written copy of that, and we stand by the

17 objections that we've made.

18         THE COURT:  And I did receive the written copy of the

19 letter that you had sent.  The objection is overruled.  I do

20 conclude that the form of the objection that attempted to

21 maintain anonymity on behalf of the objector is not

22 appropriate.  Litigation generally is not conducted

23 anonymously.  In fact, the strong preference is, absent some

24 compelling reason, the preference is anonymous litigation is

25 not permitted and disfavored, and the manner in which the

1    objection was presented was anonymously, and that was not an

2    appropriate objection.

3         The points raised in the letter are, on the merits,

4    not persuasive in any event.  The class members, as I alluded

5    to earlier, are sophisticated individuals, and 45 days, even

6    including the holiday, Thanksgiving, is and was enough time to

7    learn about the case and make decisions.

8         The notice and settlement did not disclose the

9    precise amount that claimants might receive, but that's not a

10   reason to reject the settlement.  This is the kind of case

11   where individualized assessments can and may be necessary and

12   appropriate to award relief, and the settlement and notice

13   explained that.

14        The value of the settlement is comparable to other

15   discrimination cases, and class counsel having been class

16   counsel in the *McReynolds* case is in a better position than

17   objector's counsel to make those comparisons, and I find the

18   objection not persuasive.  So the objection is overruled for

19   those reasons.

20        So let me then turn to the other aspects of final

21   approval that I ought to address.  The parties have laid out

22   everything in their submissions.  In light of any further

23   information that maybe the claims administrator has provided,

24   is there any other information that either side would like to

25   present?

Exhibit E

# SEYFARTH SHAW

14th ANNUAL

# Workplace Class Action Litigation

## REPORT



Seyfarth Shaw LLP

# II.  Significant Class Action Settlements In 2017

While 2016 was a blockbuster year for class action settlement recoveries, overall settlement figures sharply increased in nearly all categories in 2017. The plaintiffs' bar and government enforcement attorneys obtained many significant settlements in a wide range of areas. The "top ten" settlement values in 2017 in workplace class actions were significantly higher than those from 2016. Other than wage & hour class action settlements, which saw a slight drop-off in settlement amounts in 2017, areas such as employment discrimination class actions, ERISA class actions, governmental enforcement lawsuits, and other workplace statutory class actions saw bigger settlement amounts than in past years.

This Chapter evaluates the top ten private plaintiff-initiated monetary settlements, government-initiated monetary settlements, and noteworthy injunctive relief provisions in class action settlements.

## A.    *Top Ten Private Plaintiff-Initiated Monetary Settlements*

Plaintiffs' lawyers and governmental enforcement attorneys secured many large settlements in 2017 for employment discrimination, wage & hour, and ERISA class actions, as well as governmental enforcement lawsuits. The top ten settlements from these categories totaled $2.23 billion in 2017. This represented a significant jump as compared to both 2016 and 2015, when the top ten settlements from these categories totaled $1.67 billion and $1.58 billion, respectively.

As the plaintiffs' bar has aggressively pursued various statutory workplace class actions, the Workplace Class Action Report has recently expanded Chapter 2 to include this category, which encompasses workplace antitrust laws, the Fair Credit Reporting Act, and other various workplace-related statutory laws. The top ten settlements in this category saw a sharp four-fold increase over the past year, totaling $487.28 million in 2017 as opposed to $114.7 million in 2016.

In sum, based on all categories, the top ten aggregate settlement numbers in 2017 increased to $2.72 billion, a significant climb when compared with $1.75 billion in 2016.

### *Settlements In Private Plaintiff Employment Discrimination Class Action Lawsuits*

For employment discrimination class actions, the monetary value of the top ten private plaintiff settlements entered into or paid in 2017 totaled $293.5 million. This represents nearly a four-fold increase from 2016, where the total was $79.81 million.

1.  $90 million – Twenty-First Century Fox, Inc.

2.  $45 million – Family Dollar Stores, Inc.

3.  $35.5 million – Wells Fargo Advisors, LLC

4.  $32.5 million – Metropolitan Life Insurance Co.

5.  $24 million – U.S. Department Of Homeland Security

6.  $20 million – U.S. Department Of Justice

7.  $19.5 million – Qualcomm Inc.

8.  $13 million – State Of Washington

9.  $7.5 million – Wal-Mart Stores, Inc.

10.  $6.5 million – Washington Metropolitan Area Transit Authority

The biggest settlements in 2017 involved pay and promotions class actions. By category, there were five gender discrimination class actions, four race discrimination class actions, and one veterans discrimination class action.

1. **$90 million – *City Of Monroe Employees' Retirement System, et al. v. Twenty-First Century Fox Inc.*, Case No. 2017-833 (Del. Ch. Nov. 20, 2017)** (request for settlement approval of claims stemming from workplace sexual harassment incidents and gender discrimination allegations at Fox News).

2. **$45 million – *Scott, et al. v. Family Dollar Stores, Inc.*, Case No. 08-CV-540 (W.D.N.C. Nov. 14, 2017)** (preliminary approval granted for a class action settlement of gender discrimination claims involving female store managers who alleged discrimination with respect to their pay).

3. **$35.5 million – *Slaughter, et al. v. Wells Fargo Advisors, LLC*, Case No. 13-CV-6368 (N.D. Ill. May 4, 2017)** (final approval granted for a class action settlement of race discrimination claims involving a group of financial advisers and trainees who alleged the bank limited pay and advancement opportunities for African-American employees).

4. **$32.5 million – *Creighton, et al. v. Metropolitan Life Insurance Co.*, Case No. 15-CV-8321 (S.D.N.Y. June 27, 2017)** (final approval granted for a class action settlement for race discrimination claims involving African-American financial services representatives alleging that the company provided very few chances to work with colleagues, which restricted their training opportunities and precluded them from getting favorable accounts).

5. **$24 million – *Moore, et al. v. U.S. Department Of Homeland Security*, Case No. 00-CV-953 (D.D.C. May 3, 2017)** (final approval granted for a race discrimination class action brought by a group of African-American Secret Service agents who alleged they were denied promotions for the highest ranks in the agency).

6. **$20 million – *White, et al. v. Department Of Justice*, Case No. 510-2012-77 (EEOC Jan. 17, 2017)** (preliminary approval granted for a class action settlement involving current and former female prison workers who alleged they were assigned to work in areas of the prison where they were forced to experience sexual harassment from inmates).

7. **$19.5 million – *Pan, et al. v. Qualcomm Inc.*, Case No. 16-CV-1885 (S.D. Cal. July 31, 2017)** (final approval granted for a gender discrimination class action settlement involving 3,300 current and former female employees who claimed they were not paid and promoted on the same scale as men).

8. **$13 million – *Martin, et al. v. State Of Washington*, Case No. 14-2-00016-7 (Wash. Super. Ct. May 5, 2017)** (preliminary approval granted for a class action settlement involving state patrol troopers claiming that Defendant engaged in discrimination in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA") by depriving Washington State Patrol employees and applicants of various benefits of employment while they were away on military duty).

9. **$7.5 million – *Cote, et al. v. Wal-Mart Stores, Inc.*, Case No. 15-CV-12945 (D. Mass. May 16, 2017)** (final approval granted for a gender discrimination class action settlement where Wal-Mart was accused of failing to provide spousal health benefits to employees who had lawful marriages to same-sex spouses).

10. **$6.5 million – *Little, et al. v. Washington Metropolitan Area Transit Authority*, Case No. 14-CV-1289 (D.D.C. Dec. 7, 2017)** (preliminary approval granted for a race discrimination class action involving railroad workers who asserted that the employer's criminal background check policy disproportionately discriminated against African-Americans).



# SEYFARTH SHAW

15th ANNUAL
# Workplace Class Action Litigation
REPORT



2019 EDITION

Seyfarth Shaw LLP

# II. Significant Class Action Settlements In 2018

While 2018 was a blockbuster year for class action settlement recoveries, overall settlement figures decreased in nearly all categories in 2018. Nonetheless, the plaintiffs' bar and government enforcement attorneys obtained many significant settlements in a wide range of areas. Yet, overall, the "top ten" settlement values in 2018 in workplace class actions were significantly lower than those from 2017. All five categories, including employment discrimination class actions, wage & hour class actions, ERISA class actions, governmental enforcement lawsuits, and other workplace statutory class actions all saw substantially lower settlement amounts than in past years.

This Chapter evaluates the top ten private plaintiff-initiated monetary settlements, government-initiated monetary settlements, and noteworthy injunctive relief provisions in class action settlements.

## A.      Top Ten Private Plaintiff-Initiated Monetary Settlements

Plaintiffs' lawyers and governmental enforcement attorneys secured many large settlements this past year for employment discrimination, wage & hour, and ERISA class actions, as well as governmental enforcement lawsuits. The top ten settlements from these categories totaled $909.69 million in 2018. This represented a significant decline as compared to both 2017 and 2016, when the top ten settlements from these categories totaled $2.23 billion and $1.67 billion, respectively.

As the plaintiffs' bar has aggressively pursued various statutory workplace class actions, the Workplace Class Action Report recently expanded Chapter 2 to include this category, which encompasses workplace personal injuries, the Fair Credit Reporting Act, and other various workplace-related statutory laws. The top ten settlements in this category, which totaled $411.15 million, largely mirrored the $487.28 million total in 2017, and substantially eclipsed the $114.7 million in 2016.

In sum, based on all categories, the top ten aggregate settlement numbers in 2018 totaled $1.32 billion, a decrease from $2.72 billion in 2017 and $1.75 billion in 2016.

### Settlements In Private Plaintiff Employment Discrimination Class Action Lawsuits

For employment discrimination class actions, the monetary value of the top ten private plaintiff settlements entered into or paid in 2018 totaled $216.09 million. This represented a decrease from 2017, when the total was $293.5 million. At the same time, the overall value of the top ten private plaintiff employment discrimination settlements was significantly higher than in 2016, where the total was $79.81 million.

1. $90 million – Twenty-First Century Fox, Inc.

2. $45 million – Family Dollar Stores, Inc.

3. $24 million – JPMorgan Chase Bank, N.A.

4. $22.5 million – Nucor Corp.

5. $10 million – Twenty-First Century Fox, Inc.

6. $10 million – Uber Technologies, Inc.

7. $4 million – Forest Laboratories, Inc.

8. $3.75 million – Koch Foods Of Mississippi LLC

9. $3.74 million – Target Corp.

10. $3.1 million – Chadbourne & Park

The biggest settlements in 2018 involved gender and race discrimination. By category, there were five gender discrimination class action (based on either sexual harassment or pay practices), four race discrimination class actions, one hybrid gender and race discrimination class action.

1. **$90 million – *Twenty-First Century Fox, Inc., et al. v. Murdoch, et al.*, Case No. 2017-833 (Del. Ch. Feb. 9, 2018)** (final approval granted for a class action settlement of claims brought by multiple Fox news employees alleging violations for sexual harassment and a hostile work environment).

2. **$45 million – *Scott, et al. v. Family Dollar Stores, Inc.*, Case No. 08-CV-540 (W.D.N.C. Mar. 14, 2018)** (final approval granted for a class action settlement of gender discrimination claims involving female store managers who alleged discrimination with respect to their pay).

3. **$24 million – *Senegal, et al. v. JPMorgan Chase Bank, N.A.*, Case No. 18-CV-6006 (N.D. Ill. Sept. 12, 2018)** (preliminary approval granted for a class action settlement involving African-American financial advisers who claimed the company discriminated against them on the basis of their race).

4. **$22.5 million – *Brown, et al. v. Nucor Corp.*, Case No. 04-CV-22005 (D.S.C. Feb. 22, 2018)** (final approval granted for a class action involving African-American workers who claimed they were subjected to race discrimination and a hostile work environment).

5. **$10 million – *Brown, et al. v. Twenty-First Century Fox, Inc., et al.*, Case No. 22446-2017 (N.Y. Sup. May 15, 2018)** (settlement reached in a class action involving current and former employees of the network alleging violations of racial discrimination).

6. **$10 million – *Del Toro Lopez v. Uber Technologies, Inc.*, Case No. 17-CV-6255 (N.D. Cal. Nov. 14, 2018)** (final approval granted for a class action settlement of claims brought against Uber on behalf of women and minority software engineers who accused the ride-service company of gender and race discrimination).

7. **$4 million – *Barrett, et al. v. Forest Laboratories, Inc.*, Case No. 12-CV-5224 (S.D.N.Y. June 29, 2018)** (final approval granted for settlement of a class action alleging gender discrimination for pay and promotions).

8. **$3.75 million – *Cazorla, et al. v. Koch Foods Of Mississippi LLC, et al.*, Case No. 10-CV-135 (S.D. Miss. July 31, 2018)** (final approval granted in a class action settlement involving Hispanic female employees who claimed they were subjected to a hostile work environment and disparate treatment).

9. **$3.74 million – *Times, et al. v. Target Corp.*, Case No. 18-CV-2993 (S.D.N.Y. May 14, 2018)** (preliminary approval granted for a class action settlement involving African-American and Latino applicants who claimed that the company's hiring process discriminated against them on the basis of their criminal background).

10. **$3.1 million – *Campbell, et al. v. Chadbourne & Parke, et al.*, Case No. 16-CV-6832 (S.D.N.Y. Mar. 20, 2018)** (settlement approval granted for an Equal Pay Act class/collective action brought by females against their employer).

## *Settlements In Private Plaintiff Wage & Hour Class Actions*

For wage & hour class actions, the monetary value of the top ten private plaintiff settlements entered into or paid in 2018 totaled $253.5 million. This represented a substantial decrease from 2017 and 2016, when the totals were $574.49 and $695.5 million respectively.

1. $65 million – Wal-Mart Stores, Inc.

2. $54.5 million – Bloomberg L.P.



# 16th Annual Workplace Class Action Litigation Report

**2020** EDITION



**Seyfarth Shaw LLP**

# II. Significant Class Action Settlements In 2019

While 2018 was not a "blockbuster year" for class action settlement recoveries as compared with 2017, overall aggregate settlement figures increased slightly in 2019. The plaintiffs' bar and government enforcement attorneys obtained many significant settlements in a wide range of areas, and the overall "top ten" settlement values in 2019 in workplace class actions rose from the 2018 totals. Many of the major categories of workplace class actions – particularly ERISA class actions and wage & hour class actions (which more than doubled in value) – saw settlement amounts increase from the prior year. However, settlement totals for employment discrimination class actions, government enforcement actions, and other workplace statutory class actions declined substantially and pulled the overall aggregate numbers well below the 2017 total.

This Chapter evaluates the top ten private plaintiff-initiated monetary settlements, government-initiated monetary settlements, and noteworthy injunctive relief provisions in class action settlements.

## A. Top Ten Private Plaintiff-Initiated Monetary Settlements

Plaintiffs' lawyers and governmental enforcement attorneys secured many large settlements this past year for employment discrimination, wage & hour, and ERISA class actions, as well as governmental enforcement lawsuits. The top ten settlements from these categories totaled $1.022 billion in 2019. This represented an uptick as compared to 2018, when the top ten settlements from these categories totaled $909.69 million. However, the 2019 figures remained far below the 2017 total of $2.23 billion.

As the plaintiffs' bar has aggressively pursued various statutory workplace class actions over the past several years, the Workplace Class Action Report recently expanded Chapter 2 to include this category, which encompasses workplace personal injuries, the Fair Credit Reporting Act, and other various workplace-related statutory laws. The top ten settlements in this category, which totaled $319.65 million, declined from $411.15 million in 2018 and from $487.2 million in 2017.

In sum, based on all five categories, the top ten aggregate settlement numbers in 2019 totaled $1.34 billion, which was an increase from $1.32 billion in 2018, but a substantial decrease from $2.72 billion in 2017.

Comparatively, the figures in 2019 were the second lowest total for aggregate settlements over the decade of 2010 to 2019, with only 2018 having a lower aggregate total.

### Settlements In Private Plaintiff Employment Discrimination Class Action Lawsuits

For employment discrimination class actions, the monetary value of the top ten private plaintiff settlements entered into or paid in 2019 totaled $139.20 million. This represented a substantial decrease from 2018, when the total was $216.09 million, and 2017, when the total was $293.5 million.

1. $41 million – Wynn Resorts Ltd.

2. $24 million – JPMorgan Chase Bank NA

3. $15.5 million – State Of Florida, Department Of Education

4. $14 million – Wal-Mart, Inc.

5. $11 million – Google, Inc.

6. $11 million – City Of New York

7. $7.75 million – Western Digital Corp.

8. $6.2 million – Merck & Co.

9. $5 million – JPMorgan Chase Bank NA

10. $3.75 million – Sarbanand Farms, LLC

The top ten settlement were spread out across the country, with California leading the way with two settlements in federal court and one in state court. Seven of the top ten settlements involved gender discrimination allegations in areas such as pay, pregnancy and sexual misconduct.

1. **$41 million – *In Re Wynn Resorts, Ltd. Derivative Litigation*, Case No. A-18-769630 (Nev. Cty. Ct. Nov. 27, 2019)** (settlement approval sought for a shareholder class action alleging sexual misconduct by senior company officials).

2. **$24 million – *Senegal, et al. v. JPMorgan Chase Bank*, N.A., Case No. 19 CV-6006 (N.D. Ill. Sept. 26, 2019)** (final approval for a class action settlement became effective after an appeal involving African-American financial advisors who claimed the company discriminated against them on the basis of their race).

3. **$15.5 million – *Florida Education Association, et al. v. State Of Florida, Department Of Education*, Case No. 17-CV-414 (N.D. Fla. Nov. 4, 2019)** (preliminary approval granted for a class action settlement of race discrimination claims involving a group of teachers who alleged that a state program paid bonuses to certain teachers who were rated "highly effective" while disadvantaging African-American and Hispanic educators).

4. **$14 million – *Borders, et al. v. Wal-Mart, Inc.*, Case No. 17-CV-506 (S.D. Ill. Nov. 14, 2019)** (preliminary approval granted for a class action settlement of pregnancy discrimination claims involving pregnant workers who claimed they were denied the benefits offered to other workers similar in their ability or inability to work).

5. **$11 million – *Heath, et al. v. Google LLC*, Case No. 15-CV-1824 (N.D. Cal. Aug. 15, 2019)** (final approval granted for settlement of a class action alleging age discrimination).

6. **$11 million – *Local 1180, Communications Workers Of America, AFL-CIO, et al. v. City Of New York*, Case No. 17-CV-3048 (S.D.N.Y. Aug. 7, 2019)** (final approval granted for settlement of a class action alleging race and gender discrimination for pay and promotions).

7. **$7.75 million – *Chen, et al. v. Western Digital Corp.*, Case No. 19-CV-909 (C.D. Cal. May 14, 2019)** (settlement approval sought for a class action alleging gender discrimination relative to pay and promotions).

8. **$6.2 million – *Smith, et al. v. Merck & Co.*, Case No. 13-CV-2970 (D.N.J. July 19, 2019)** (preliminary approval granted for settlement of a class action alleging gender discrimination for pay and promotions).

9. **$5 million – *Rotondo, et al. v. JPMorgan Chase Bank, NA*, Case No. 19-CV-2328 (S.D. Ohio Nov. 20, 2019)** (preliminary approval granted for a settlement of a class action alleging gender discrimination relative to parental leave).

10. **$3.75 million – *Rosas, et al. v. Sarbanand Farms, LLC*, Case No. 18-CV-112 (W.D. Wash. Dec. 31, 2019)** (preliminary approval granted for settlement of a class action brought by farm workers from Mexico alleging that they were subjected to a hostile work environment based on their national origin).

## Settlements In Private Plaintiff Wage & Hour Class Actions

For wage & hour class actions, the monetary value of the top ten private plaintiff settlements entered into or paid in 2019 totaled $449.05 million. This amount was nearly double the 2018 total of $253.5 million, and only slightly below the 2017 total of $574.49 million. Of all the five categories of workplace class action settlements, wage & hour settlements had the most robust increase over the past year.



# 17th Annual Workplace Class Action Litigation Report

**2021** EDITION



**Seyfarth Shaw LLP**

# II.  Significant Class Action Settlements In 2020

While 2019 and 2018 were not "blockbuster years" for class action settlement recoveries, as overall aggregate settlement figures dropped in both years, the major increase in class action settlement values in 2020 represent a return to prominence for these "bet the company" cases. This was all the more remarkable given that the COVID-19 pandemic had its grip on society and the legal system for nearly 10 months of the year. The plaintiffs' bar and government enforcement attorneys obtained many significant settlements in a wide range of areas, and the overall "top ten" settlement values in 2020 in workplace class actions increased from those in 2019 in every area except for wage & hour claims.

This Chapter evaluates the top ten private plaintiff-initiated monetary settlements, government-initiated monetary settlements, and noteworthy injunctive relief provisions in class action settlements.

## A.    Top Ten Private Plaintiff-Initiated Monetary Settlements

Plaintiffs' lawyers and governmental enforcement attorneys secured many large settlements this past year for employment discrimination, wage & hour, and ERISA class actions, as well as governmental enforcement lawsuits. The top ten settlements from these categories totaled $1.338 billion in 2020. This represented a major uptick as compared to 2019, when the top ten settlements from these categories totaled $1.036 billion, and from 2018, when the top ten settlements from these categories totaled $909.69 million.

As the plaintiffs' bar has aggressively pursued various statutory workplace class actions over the past several years, the Workplace Class Action Report recently expanded Chapter 2 to include this category, which encompasses workplace personal injuries, the Fair Credit Reporting Act, and other various workplace-related statutory laws. The top ten settlements in this category, which totaled $244.55 million, substantially decreased from 2019, when it totaled $319.65 million.

In sum, based on all categories, the top ten aggregate settlement numbers in 2020 totaled $1.58 billion, a significant increase from $1.34 billion in 2019 and $1.32 billion in 2018.

### Settlements In Private Plaintiff Employment Discrimination Class Action Lawsuits

For employment discrimination class actions, the monetary value of the top ten private plaintiff settlements entered into or paid in 2020 totaled $422.68 million. This represented a substantial increase from 2019, when the total was $139.2 million, and 2018, when the total was $216.09 million.

1. $310 million – Alphabet Inc.

2. $41 million – Wynn Resorts Ltd.

3. $15.5 million – State Of Florida, Department Of Education

4. $14 million – Wal-Mart, Inc.

5. $14 million – Cook County, Illinois

6. $11.63 million – PricewaterhouseCoopers

7. $7.75 million – Western Digital Corp.

8. $3 million – Los Angeles Times Communications

9. $3 million – Pipefitters Association Local Union 597

10. $2.8 million – Raley's Family of Fine Stores

The top ten settlement were spread out across the country, with California leading the way with two settlements in federal court and two in state court. Eight of the top ten settlements involved gender discrimination allegations in areas such as pay, pregnancy and sexual misconduct.

1. **$310 million – *In Re Alphabet Inc. Shareholder Derivative Litigation*, Case No. 19-CV-341522 (Cal. Super. Ct. Nov. 30, 2020)** (final approval granted for a shareholder class action lawsuit over allegations of sexual misconduct involving executives).

2. **$41 million – *In Re Wynn Resorts, Ltd. Derivative Litigation*, Case No. A-18-769630 (Nev. Cty. Ct. Mar. 10, 2020)** (final approval granted for a shareholder class action alleging sexual misconduct by senior company officials).

3. **$15.5 million – *Florida Education Association, et al. v. State Of Florida, Department Of Education*, Case No. 17-CV-414 (N.D. Fla. Mar. 31, 2020)** (final approval granted for a class action settlement of race discrimination claims involving teachers who alleged that a state program paid them unequal bonuses based on race).

4. **$14 million – *Borders, et al. v. Wal-Mart Stores, Inc.*, Case No. 17-CV-506 (S.D. Ill. April 29, 2020)** (final approval granted for a class action settlement of pregnancy discrimination claims involving pregnant workers who claimed they were denied the benefits offered to other workers similar-situated in their ability or inability to work).

5. **$14 million – *Brown, et al. v. Cook County, Illinois*, Case No. 17-CV-8085 (N.D. Ill. Sept. 18, 2020)** (final approval granted for settlement of a class action brought by female public defenders and law clerks alleging the county did not protect them from regularly wrongful sexual harassment inflicted by detainees and other men in the county lockup).

6. **$11.63 million – *Rabin, et al. v. PricewaterhouseCoopers, LLP*, Case No. 16-CV-2276 (N.D. Cal. Aug. 19, 2020)** (preliminary approval granted for an employment discrimination class action involving older job applicants alleging they were denied employment because of their age).

7. **$7.75 million – *Chen, et al. v. Western Digital Corp.*, Case No. 19-CV-909 (C.D. Cal. April 3, 2020)** (preliminary approval granted for a class action brought by 1,370 females employees against their employer alleging violations of the California Equal Pay Act).

8. **$3 million – *Bokall, et al. v. Los Angeles Times Communications, LLC*, Case No. 10-CV-0984 (Cal. Super. Ct. Oct. 25, 2020)** (preliminary approval granted for settlement of a class action lawsuit brought by employees alleging violations of the California Equal Pay Act).

9. **$3 million – *Porter, et al. v. Pipefitters Association Local Union 597*, Case No. 12-CV-9844 (N.D. Ill. Nov. 24, 2020)** (final approval granted for settlement of a race discrimination class action where 350 African-American workers alleged they were provided fewer job opportunities by a union.).

10. **$2.8 million – *Borrego, et al. v. Raley's Family Of Fine Stores*, Case No. 34-2015-177687 (Cal. Super. Ct. Jan. 17, 2020)** (final approval granted for settlement of an employment discrimination class action involving grocery store workers who claimed the company discriminated against them based on pregnancy).

## Settlements In Private Plaintiff Wage & Hour Class Actions

For wage & hour class actions, the monetary value of the top ten private plaintiff settlements entered into or paid in 2020 totaled $294.6 million. This amount represents a sharp decline from the 2019 total of $449.05 million, and is more on par with the 2018 total of $253.5 million.

1. $78 million – Air Methods Corp.



# 18th Annual Workplace Class Action Litigation Report

**2022** EDITION



**Seyfarth Shaw LLP**

# II.  Significant Class Action Settlements In 2021

On the heels of two "down years" in 2019 and 2018 for class action settlement recoveries, 2020 marked a return to prominence for these "bet the company" cases, which was a remarkable feat given the impact of the COVID-19 pandemic on society and the legal system.

Despite the lingering pandemic, this momentum continued into 2021. The level of money over the past year – measured by the "top ten" settlements in the various categories of workplace class action litigation – constituted a record-setting "blockbuster" year for recoveries. The plaintiffs' bar and government enforcement attorneys obtained many significant settlements in a wide range of areas, and the overall "top ten" settlement values in 2021 in workplace class actions increased from those in 2020 in every area except for employment discrimination and government-initiated enforcement actions. For the first time ever, class action settlement recoveries in all categories exceeded the $3.19 billion threshold.

This Chapter analyzes the "top ten" private plaintiff-initiated monetary settlements, government-initiated monetary settlements, and noteworthy injunctive relief provisions in class action litigation in 2021.

## A.    Top Ten Private Plaintiff-Initiated Monetary Settlements

Plaintiffs' lawyers and governmental enforcement attorneys secured many large settlements this past year for employment discrimination, wage & hour, and ERISA class actions, as well as governmental enforcement lawsuits. In 2021, class action recoveries outpaced settlements in every other previous year. Based on all categories, the top 10 aggregate settlement numbers in 2021 totaled a jaw-dropping record of $3.19 billion, over $1.5 billion greater than the total amount of $1.56 billion in 2020 and the total amount of $1.34 billion in 2019.

To place this development in context, the top 10 settlements from these categories totaled $1.95 billion in 2021. This represented a major uptick as compared to 2020, when the top 10 settlements from these categories totaled $1.338 billion, and from 2019, when the top 10 settlements from these categories totaled $1.036 billion.

As the plaintiffs' bar has aggressively pursued various statutory workplace class actions over the past several years, the Workplace Class Action Report recently expanded Chapter 2 to include this category, which encompasses workplace personal injuries, the Fair Credit Reporting Act, biometric privacy class actions, and other various workplace-related statutory laws. The top 10 settlements in this category, which totaled $1.67 billion, exponentially increased from 2020, when it totaled $222.05 million.

### Settlements In Private Plaintiff Employment Discrimination Class Action Lawsuits

For employment discrimination class actions, the monetary value of the top 10 private plaintiff settlements entered into or paid in 2021 totaled $323.45 million. This represented a decrease from 2020, when the total was $422.68 million, but remains a significant increase from the 2019 total of $139.2 million.

1. $100 million – Riot Games, Inc.

2. $90 million – Wexner

3. $44 million – Federal Aviation Administration

4. $34 million – Edward D. Jones & Co.

5. $14 million – Wal-Mart, Inc.

6. $12 million – PricewaterhouseCoopers LLP

7. $10 million – KPMG LLP

8. $8 million – Prince George's County

9.  $7.75 million – Western Digital Corp.

10. $3.7 million – Syracuse University

The top 10 settlements were spread out across the country, with California leading the way with two settlements in federal court and one in state court, and Massachusetts with two in federal court. Five of the top 10 settlements involved gender discrimination allegations, including three that involved allegations of pay disparity.

1.  **$100 million –** *McCracken, et al. v. Riot Games, Inc.***, Case No. 18STCV03957 (Cal. Super. Ct. Dec. 27, 2021)** (settlement agreement reached in class action involving allegations of gender discrimination and sexual harassment).

2.  **$90 million –** *Rudi, et al. v. Wexner***, Case No. 20-CV-3068 (S.D. Ohio Aug. 25, 2021)** (preliminary approval granted for a class action settlement of shareholder lawsuits alleging a toxic culture of sexual harassment and misogyny).

3.  **$44 million –** *Breen, et al. v. Buttigieg***, Case No. 05-CV-654 (D.D.C. Aug. 13, 2021)** (settlement agreement reached in class action involving allegations that the Federal Aviation Administration discriminated against nearly 700 older flight service specialists).

4.  **$34 million –** *Bland, et al. v. Edward D. Jones & Co.***, Case No. 18-CV-3673 (N.D. Ill. July 12, 2021)** (final approval granted for class action settlement involving allegations of race discrimination brought by Black financial advisers).

5.  **$14 million –** *Tsui, et al. v. Wal-Mart, Inc.***, Case No. 20-CV-12309 (D. Mass. Oct. 15, 2021)** (final approval granted for a class action settlement involving allegations relative to military-related leaves of absence).

6.  **$12 million –** *Rabin, et al. v. PricewaterhouseCoopers LLP***, Case No. 16-CV-2276 (N.D. Cal. Feb. 3, 2021)** (final approval granted for settlement of a class action involving allegations that older job applicants were denied employment on the basis of their age).

7.  **$10 million –** *Kassman, et al. v. KPMG LLP***, Case No. 11-CV-3743 (S.D.N.Y. April 12, 2021)** (final approval granted for an Equal Pay Act class and collective action brought by female employees against their employer).

8.  **$8 million –** *Hispanic National Law Enforcement Association NCR, et al. v. Prince George's County***, Case No. 18-CV-3821 (D. Md. July 20, 2021)** (settlement agreement reached in class action involving allegations that a police department's promotional system discriminated against Black and Hispanic officers).

9.  **$7.75 million –** *Chen, et al. v. Western Digital Corp.***, Case No. 19-CV-909 (C.D. Cal. Jan. 5, 2021)** (final settlement approval granted for settlement of an Equal Pay Act class and collective action brought by females against their employer).

10. **$3.7 million –** *Chew, et al. v. Syracuse University***, Case No. 525007/2021 (N.Y. Oct. 1, 2021)** (settlement agreement reached for a class action alleging gender pay disparities between female and male professors at a university).

## *Settlements In Private Plaintiff Wage & Hour Class Actions*

For wage & hour class actions, the monetary value of the top 10 private plaintiff settlements entered into or paid in 2021 totaled $641.3 million. This amount represents a near doubling in the amount from the 2020 total of $294.6 million, as well as the 2019 total of $449.05 million.

# DuaneMorris®



# CLASS ACTION REVIEW - 2023



## Top Discrimination Class Action Settlements In 2022

In 2022, the top ten settlements were clustered in California (three settlements), New York (three settlements), Illinois (two settlements), Pennsylvania (one settlement), and Ohio (one settlement). The settlements emanated from nine gender discrimination class actions and one religious discrimination class action.



**TOP DISCRIMINATION CLASS ACTION SETTLEMENTS IN 2022**

1. *Jock, et al. v. Sterling Jewelers, Inc.* - **$175 million**
2. *Ellis, et al. v. Google, LLC* - **$118 million**
3. *McCracken, et al. v. Riot Games, Inc.* - **$100 million**
4. *Rudi, et al. v. Wexner, Inc.* - **$90 million**
5. *Howard, et al. v. Cook County Sheriff's Office* - **$31 million**
6. *Morgan, et al. v. U.S. Soccer Federation, Inc.* - **$24 million**
7. *Haggan, et al. v. Google, LLC* - **$22 million**
8. *Construction Laborers Pension Trust For Southern California, et al. v. CBS Corp.* - **$14.7 million**
9. *DeBlock, et al. v. Speedway, Inc.* - **$12.3 million**
10. *Doe, et al. v. NorthShore University HealthSystem* - **$10 million**

1. **$175 million –** *Jock, et al. v. Sterling Jewelers, Inc.,* **Case No. 11-160-655-11 (A.A.A. Nov. 15, 2022)** (settlement approval granted for a class action alleging gender discrimination in pay and promotions).

2. **$118 million –** *Ellis, et al. v. Google, LLC,* **Case No. CGC 17 561299 (Cal. Super. Ct. Oct. 25, 2022)** (final settlement approval granted for a class action alleging claims of gender pay discrimination).

3. **$100 million –** *McCracken, et al. v. Riot Games, Inc.,* **Case No. 18-STCV-2957 (Cal. Super. Ct. July 22, 2022)** (preliminary settlement approval granted for a class action alleging claims of sexual harassment and gender discrimination).

© Duane Morris LLP 2023

4. **$90 million – *Rudi, et al. v. Wexner, Inc.*, Case No. 20-CV-3068 (S.D. Ohio May 16, 2022)** (final settlement approval granted for class action claims alleging systemic sexual harassment).

5. **$31 million – *Howard, et al. v. Cook County Sheriff's Office*, Case No. 17-CV-8146 (N.D. Ill. Sept. 8, 2022)** (preliminary settlement approval granted for class action claims alleging sex discrimination).

6. **$24 million – *Morgan, et al. v. U.S. Soccer Federation, Inc.,* Case No. 19-CV-1717 (C.D. Cal. Aug. 12, 2022)** (preliminary settlement approval granted for class action claims of gender pay discrimination against female soccer players).

7. **$22 million – *Haggan, et al. v. Google LLC*, Case No. 518739/22 (N.Y. Super. Ct. June 30, 2022)** (settlement agreement reached for a class action settlement of claims alleging discrimination against women and employees of color by assigning them low job levels upon hire than those for which they were qualified).

8. **$14.7 million – *Construction Laborers Pension Trust For Southern California, et al. v. CBS Corp.*, Case. No. 18-CV-7796 (S.D.N.Y. Apr. 15, 2022)** (settlement agreement reached for a class action settlement of claims alleging that sexual harassment by the company's CEO led to the decline in stock value).

9. **$12.3 million – *DeBlock, et al. v. Speedway, Inc.,* Case No. 20-CV-824 (E.D. Penn. May 31, 2022)** (settlement approval reached for a class action settlement of claims alleging gender pay discrimination against female general managers).

10. **$10 million – *Doe, et al. v. NorthShore University HealthSystem*, Case No. 21-CV-83 (N.D. Ill. Dec. 19, 2022)** (final settlement approval granted for a class action settlement of claims of religious discrimination in healthcare company's COVID-19 vaccine requirements).

© Duane Morris LLP 2023



# DuaneMorris

# CLASS
# ACTION
# REVIEW
# 2024











## VI.    Top Discrimination Class Action Settlements In 2023

In 2023, the top ten settlements were $762.2 million. This was a significant increase over 2022, when the top ten discrimination class action settlements totaled $597 million.



1. **$215 million – *Chen-Oster, et al. v. Goldman, Sachs & Co.,* Case No. 10 Civ. 6950 (S.D.N.Y Nov. 7, 2023)** (final settlement approval granted in a class action alleging intentional discrimination, disparate impact discrimination, retaliation, and pregnancy bias).

2. **$175 million – *Jock, et al. v. Sterling Jewelers, Inc.,* Case No. 08 Civ. 2875 (S.D.N.Y. Mar. 14, 2023)** (final settlement approval granted in a class action alleging gender discrimination in pay and promotions).

3. **100 million – *McCracken, et al. v. Riot Games*, Case No. 18-STCV-03957 (Cal. Super. Ct. May 16, 2023)** (final settlement approval granted in a class action alleging claims that the company subjected female workers to systemic sex discrimination and harassment).

4. **$100 million – *Doe 16, et al. v. Columbia University*, Case No. 20 Civ. 1791 (S.D.N.Y. Nov. 13, 2023)** (settlement approval sought for university to establish a "survivors' settlement fund" for victims of a former university obstetrician-gynecologist convicted of sexual abuse and discrimination).

5. **$40 million – *Tatum, et al. v. Commonwealth Of Massachusetts*, Case No. 0984-CV-00576 (Mass. Super. Ct. May 11, 2023)** (final settlement approval granted in a class action alleging that Black and Hispanic police officers throughout Massachusetts were subjected to racially biased promotional exams).

6. **$31 million – *Howard, et al. v. Cook County Sheriff's Office*, Case No. 17- CV-8146 (N.D. Ill. Jan. 7, 2023)** (final settlement approval granted for class action claims alleging sex discrimination).

7. **$30 million – *Employees' Retirement System Of Rhode Island, et al. v. Marciano*, Case No. 2022-0839 (Del. Chan. Sept. 29, 2023)** (settlement reached in a class action alleging that employees were subjected to sexual harassment from the company's co-founder for more than four decades, which harmed the company and its shareholders through their continued inaction).

8. **$29.2 million – *Chalmers, et al. v. City Of New York*, Case No. 20 Civ. 2289 (S.D.N.Y. Aug. 29, 2023)** (settlement reached in a class action alleging that white fire protection inspectors were subjected to the same racist pay disparities their non-white colleagues alleged they faced).

9. **$24 million – *Morgan, et al. v. U.S. Soccer Federation, Inc.,* Case No. 19-CV- 1717 (C.D. Cal. Jan. 4, 2023)** (final settlement approval granted for class action claims of gender pay discrimination against female soccer players).

10. **$18 million – *Forsyth, et al. v. HP Inc.,* Case No. 16-CV-4775 (N.D. Cal. Oct. 26, 2023)** (preliminary approval granted in a class action to resolve a claims alleging that the company discriminated against employees on the basis of their age).

© Duane Morris LLP 2024                    Duane Morris Class Action Review – 2024





DuaneMorris®

# CLASS ACTION REVIEW 2025

## VII. Top Discrimination Class Action Settlements In 2024

In 2024, the top ten settlements totaled $356.8 million. This was a significant decrease over 2023, when the top ten discrimination class action settlements totaled $762.2 million.



1. **$70 million – *Ferris, et al. v. Wynn Resorts Ltd.*, Case No. 18-CV-479 (D. Nev. Oct. 15, 2024)** (preliminary settlement approval granted in a class action alleging that the company's former executive vice president and general counsel Kimmarie Sinatra, former CEO Matthew Maddox and former Chief Financial Officer Stephen Cootey knew about or recklessly disregarded sexual misconduct allegations).

2. **$54 million – *California Civil Rights Department v. Activision Blizzard Inc.*, Case No. 21-STCV-26571 (Cal. Super. Jan. 17, 2024)** (consent decree entered for an action to resolve claims that the company engaged in gender discrimination, pay inequities, and fostered a culture of sexual harassment in the workplace).

3. **$45 million – *Gabaldon, et al. v. Secretary Alejandro Mayorkas, U.S. Department Of Homeland Security*, Case No. 450-2017-00086X (EEOC Aug. 13, 2024)** (consent decree entered in a class action to resolve claims of over 1,000 workers who claimed the agency forced them into light duty positions because they became pregnant).

4. **$43.3 million – *Rasmussen, et al. v. The Walt Disney Co.*, Case No. 19-STCV-10974 (Cal. Super. Nov. 25, 2024)** (settlement reached in a class action to resolve claims alleging that the company's female employees in California earned $150 million less than their male counterparts over an eight-year period).

5. **$30 million - *Employees' Retirement System Of Rhode Island v. Paul Marciano, et al.*, Case No. 2022-0839 (Del. Chan. Jan. 4, 2024)** (final settlement approval granted for a class action to resolve claims of decades of alleged sexual misconduct by one of the company's co-founders).

6. **$29 million – *Chalmers, et al. v. City Of New York*, Case No. 20 Civ. 3389 (S.D.N.Y. Nov. 26, 2024)** (preliminary settlement approval granted in a class action to resolve claims from fire inspectors accusing the city of paying them less than its predominantly White building inspectors, despite performing

comparable work).

7. **$25 million – *Jewett, et al. v. Oracle America Inc.*, Case No. 17-CIV-2669 (Cal. Super. Ct. Apr. 22, 2024)** (preliminary settlement agreement granted in a class action to resolve claims that female employees were paid less than male employees).

8. **$22.5 million – *Bird, et al. v. Garland*, Case No. 19-CV-1581 (D.D.C. Oct. 16, 2024)** (preliminary settlement approval granted in a class action alleging that alleging the Federal Bureau of Investigation discriminated against female trainees on the basis of their sex by targeting them with unfair discipline).

9. **$20 million – *Council, et al. v. Merrill Lynch Pierce Fenner*, Case No. 24-CV-534 (M.D. Fla. May 24, 2024)** (settlement approval sought in a class action to resolve claims alleging discrimination and retaliation against a proposed class of nearly 1,400 Black financial advisers who alleged they received less pay and promotions compared to their white counterparts).

10. **$18 million – *Forsyth, et al. v. HP Inc.*, Case No. 16-CV-4775 (N.D. Cal. Mar. 29, 2024)** (final settlement approval granted in a class action to resolve claims alleging that the company unlawfully pushed out hundreds of older workers as part of a workforce reduction plan in violation of the ADEA).

Exhibit F

```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
        *  *  *  *  *  *  *  *  *  *  *  *  *  *
CARZANNA JONES, et al.,              )  Civil Action
              Plaintiffs,            )  No. 18-2132
vs.                                  )
                                     )  January 18, 2024
ROHIT CHOPRA, et al.,                )  9:39 a.m.
              Defendants.            )  Washington, D.C.
                                     )
        *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

                  TRANSCRIPT OF SETTLEMENT HEARING
             BEFORE THE HONORABLE BERYL A. HOWELL,
               UNITED STATES DISTRICT COURT JUDGE

**APPEARANCES**:

```
FOR PLAINTIFFS:       GEORGE ROBOT
                      CAITLIN KEARNEY
                      Stowell & Friedman, Ltd.
                      West Madison Street, Suite 2600
                      Chicago, Illinois 60606
                      (312) 431-0888

                      JUSTIN L. LEINENWEBER
                      120 North LaSalle Street, Suite 2000
                      Chicago, Illinois 60602
                      (866) 786-3705

FOR DEFENDANTS:       DERICK SOHN
                      STEVEN BRESSLER
                      ALLISON ZIEGLER
                      THOMAS MCCRAY-WORRALL
                      RYAN COOPER
                      1700 G Street, NW
                      Washington, D.C. 20552
                      (202) 435-7873
                      Email:  derick.sohn@cfpb.gov

ALSO PRESENT:         Heynard Paz-Chow
                      Carzanna Jones (appearing telephonically)
                      Nicole Heiser, CFPB
                      Sonya White, CFPB

Court Reporter:       Elizabeth Saint-Loth, RPR, FCRR
                      Official Court Reporter
```

            Proceedings reported by machine shorthand.
         Transcript produced by computer-aided transcription.

1          In deciding whether to grant incentive awards and

2     the amounts of such awards, courts consider factors such as

3     the action the plaintiff has taken to protect the interests

4     of the class, the degree to which the class has benefited

5     from those actions, and the amount of time and effort the

6     plaintiff expended in pursuing litigation.  See the same

7     case, *Lorazepam*; also quoting *Cook v Niedert*, 142 F.3d 1004,

8     jump cite 1016, Seventh Circuit 1998.

9          In this case, all those factors generally support

10    the requested $50,000 service fee to each of the two named

11    plaintiffs.  First of all, they took actions to protect the

12    interests of the class and spent enormous amounts of their

13    time and effort in pursuing, first, the administrative

14    charges before the EEOC and also pursuing litigation.

15         They initiated the counseling with CFPB's Office

16    of Civil Rights.  And after retaining class counsel, they

17    aided counsel in understanding the CFPB's policies and

18    practices.

19         They were involved in drafting and mediation.

20    They made the risky decision to publicly sue their past, in

21    the case of Paz-Chow, and their current, in the case of

22    Jones -- their employer.

23         During the litigation they -- according to class

24    counsel, they were intimately involved in strategic

25    decisions; learning and assisting in drafting the complaint

1    and helping in the discovery requests, and in all of the

2    other significant stages to make this litigation successful.

3         They also sat for depositions after days of

4    preparation, and they met with class counsel before each day

5    of the mediation sessions.

6         They helped in the review of the statistical

7    analyses of the CFPB's workplace data.  And in addition to

8    participating in both different mediations, they were

9    involved in all sorts of other things that are described in

10   plaintiffs' papers.

11        And I have to say it is always risky for people to

12   become named plaintiffs in a class action lawsuit against

13   not just a small individual employee -- employer.  But the

14   CFPB, a federal agency -- since the federal government is

15   such a -- has so many different arms, can be such a big

16   employer.

17        Suing a federal agency has, to my mind, even a

18   greater risk in terms of the reputational association that

19   comes with suing a federal government agency, and so I do

20   think that takes enormous courage.  And in this case, that

21   courage has produced the settlement agreement which has

22   benefited everybody in the class.

23        In terms of comparators, the defendants don't

24   object to a service fee here; they just object to the

25   amount.  To the extent that they, defense, can be pinned

1     down in terms of the number, I think that $7500, which is an

2     example from *Little v Washington Metropolitan Transit*

3     *Authority*, a D.D.C. case from 2018, is the most comparable,

4     where the class representatives received $7500, out of

5     $6.5 million settlement fund.  But, to my mind, *Little* is

6     not a particularly good comparator.

7            The class in *Little* was significantly larger, with

8     the claims administrator mailing out over 4100 notices, such

9     that each class member in *Little* received less than what

10    each class member will receive here.  I just don't think

11    that that case is particularly comparable.

12           The plaintiffs cite a case that, also, I don't

13    think is directly comparable, citing *Ingram v. Coca-Cola*, a

14    Northern District of Georgia case from 2001, in which the

15    named plaintiffs received $300,000 each.  But that

16    compensation was in lieu of, not in addition to the

17    compensation they would otherwise receive as members of the

18    class.  I don't think that that is a particularly good

19    comparator.

20           So put differently, while looking to comparators

21    may be a helpful first step, it's limited here because class

22    action settlements, to my mind, vary across so many

23    different axes.

24           Perhaps recognizing this limited usefulness of

25    comparators, courts in this District have not been

Exhibit G

1

```
 1                  UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3   WAYNE BLAND,                  )
     FELICIA SLATON-YOUNG, and     )
 4   NYISHA BELL, on behalf of     )
     themselves and all others     )
 5   similarly situated,           ) No. 18-cv-03673
                                   )
 6          Plaintiffs,            ) Chicago, Illinois
                                   ) July 12, 2021
 7          vs.                    ) 9:56 a.m.
                                   )
 8   EDWARD D. JONES AND CO.,      )
     L.P.,                         )
 9                                 )
            Defendant.             )
10

11        TRANSCRIPT OF PROCEEDINGS - TELEPHONIC HEARING

12        BEFORE THE HONORABLE ANDREA R. WOOD

13
     APPEARANCES:
14
     For the Plaintiffs:   STOWELL & FRIEDMAN, LTD.
15                         BY:  MS. LINDA D. FRIEDMAN
                           MS. SUZANNE E. BISH
16                         MR. GEORGE S. ROBOT
                           303 West Madison Street, Suite 2600
17                         Chicago, Illinois 60606
                           (312) 431-0888
18                         Lfriedman@sfltd.com

19   For the Defendant:    EDWARD D. JONES AND CO., L.P.
                           BY:  MR. JOHN J. REHMANN, II
20                         12555 Manchester
                           St. Louis, Missouri 63131
21                         (314) 515-0431
                           John.rehmann@edwardjones.com
22

23

24

25
```

2

```
 1   APPEARANCES:  (Continued)

 2   For the Defendant:   BRESSLER, AMERY & ROSS, P.C.
                          BY:  MR. BRIAN F. AMERY
 3                        325 Columbia Turnpike
                          Florham Park, New Jersey  07932
 4                        (973) 514-1200
                          Bamery@bressler.com
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22   Court Reporter:    Brenda S. Tannehill, CSR, RPR, CRR
23                      Official Court Reporter
                        219 South Dearborn Street, Suite 1928
24                      Chicago, Illinois 60604
                        (312) 554-8931
25                      brenda_tannehill@ilnd.uscourts.gov
```

3

```
 1            (Proceedings held remotely, via videoconference:)

 2            THE COURT:  Okay.  I believe we are ready to get

 3   started, so I am going to have my courtroom deputy call the

 4   case this morning, and then we will go around, hopefully in a

 5   very organized manner, and get appearances from everyone on

 6   the videoconference from whom we need appearances.

 7            David.

 8            THE CLERK:  18-CV-3673, Bland versus Edward Jones &

 9   Company, LP, et al., for final hearing on approval of class

10   action settlement.

11            THE COURT:  Okay.  Who do we have representing the

12   plaintiffs this morning?

13            I believe Counsel is still on mute.  David, can she

14   unmute herself?

15            THE CLERK:  They're using a separate phone line,

16   Your Honor.

17            MS. BISH:  I apologize.

18            THE COURT:  After initially being able to hear for

19   just a couple of words, we've lost Counsel again.

20            MS. BISH:  Good morning, Your Honor.  This is

21   Suzanne Bish for class counsel and the class representatives.

22            Can you hear me now?

23            THE COURT:  Yes.  Thank you.

24            MS. BISH:  My apologies.

25            THE COURT:  And do we have other counsel on the line
```

4

```
 1   for the plaintiff class?

 2            THE CLERK:  Counsel, I believe we're not able to hear

 3   you as well.

 4            MR. ROBOT:  George Robot for the plaintiff class.

 5            Did that work?

 6            THE COURT:  Yes, Mr. Robot.  Thank you.

 7            Okay.  Do we have any other plaintiff class counsel

 8   on the line that would like to make an appearance this

 9   morning?

10            MS. BISH:  Your Honor, we would like to introduce the

11   class representatives who are also present this morning.

12            THE COURT:  Yes.  Let me just ask as you're

13   introducing them if they could just raise their hand so that I

14   can put a face to a name.

15            MS. BISH:  Thank you, Your Honor.

16            We have Mr. Wayne Bland whose name I'm sure you are

17   all quite familiar with.  Nyisha Bell is also on the line from

18   California, and Felicia Slaton-Young from right here in

19   Chicago.

20            THE COURT:  Thank you.

21            Okay.  Anybody else from the plaintiffs' side who

22   needs to make an appearance this morning?

23            MS. BISH:  No, Your Honor.

24            THE COURT:  Thank you, Ms. Bish.

25            And do we have defense counsel?
```

49

1  African American FAs over the next three years complemented by
2  the actions and initiatives Edward Jones is already taking
3  toward meaningful increases in diverse representation render
4  the settlement agreement fair, adequate, and reasonable.
5  (11:12:36)    THE COURT:  Thank you.
6          Give me a moment to make sure that I don't have any
7  other questions that weren't addressed here.
8          Just one point that I want to make sure that I
9  understand clearly with respect to the reduction in training
10 (11:12:59) costs.
11         In terms of the prospective relief, this is a
12 reduction in training costs for all current employees, not
13 just class members?  This is a firm-wide change in policy with
14 respect to training class?  Am I understanding that correctly?
15 (11:13:22)    MR. REHMANN:  That's correct, Your Honor.  Both with
16 respect to the waiver of obligations prior to January 1, 2021,
17 and the reduction in training costs going forward, it would
18 apply to all financial advisors.
19         THE COURT:  So again, in advance of the hearing, I
20 (11:13:59) did go back and review the record here, including previous
21 filings, and reminded myself of the course of the history of
22 the case on the docket.  And I also reviewed the submissions
23 in support of final approval of the settlement, took a close
24 look at the objections that were summarized in the submissions
25 (11:14:22) as well as the anonymous objection that was sent directly to

50

1  the Court as well as the response that was prepared to those
2  objections.
3          I also received a confidential in camera submission
4  from class counsel to help understand how they evaluated the
5  (11:14:46) case to get a sense of if this case were to go forward in
6  litigation what sorts of arguments and relief might be --
7  request for relief might be presented.  So that was very
8  helpful.
9          In considering all of those things, the goal, of
10 (11:15:11) course, is, to the best that I'm able, to make sure that the
11 settlement here is fair, reasonable, and adequate.
12         It is not for me to say that it is the best outcome
13 for one side or the other because that's going to have
14 different meanings for different people involved in the case,
15 (11:15:33) and certainly, as was pointed out by class counsel here,
16 certain of the objectors prefer or might have initially
17 preferred an approach that was more focused on numbers and
18 what they no doubt would consider to be more objective
19 measures of progress in terms of diversity at the defendant
20 (11:16:00) entities as opposed to the more organic approach, for want of
21 a better word, that has been incorporated by class counsel
22 here.
23         Those differences, I think, are both -- they're
24 reasonable positions.  Both would be within the range of
25 (11:16:19) reasonable approaches to trying to resolve the dispute at the

51

1  core of this litigation.
2          I certainly don't find that difference in view to
3  undermine the reasonableness, the fairness, or the adequacy of
4  the approach that was taken by the parties here; and, to the
5  (11:16:40) contrary, I think the approach taken here is creative,
6  innovative, and takes into account the particular things about
7  employment discrimination lawsuits that make them challenging
8  on both sides, frankly.
9          This sort of litigation is something that has
10 (11:17:07) particular challenges for plaintiffs who put themselves at a
11 great deal of risk, frankly, personally and professionally by
12 associating themselves sometimes as someone who may be branded
13 a troublemaker if they try to sue their employer based on
14 discrimination claims.
15 (11:17:28)    I also appreciate that on the defense side, there is
16 a lot of concern and sometimes difficulty within the
17 organization with respect to acknowledging that those sort of
18 issues are present, whether it's an acknowledgment that there
19 is actually a discriminatory impact or policy or just the fact
20 (11:17:53) that you have a significant number of employees who have that
21 concern.
22         I think that most organizations want a workplace
23 where everyone does feel valued, and when you have a situation
24 where you have it publicly disclosed that a portion of your
25 (11:18:18) workforce doesn't feel that way, I think that raises a lot of

52

1  challenges, concerns on the defendants' side as well even in
2  the situation where the defendants are very comfortable that
3  their policies and practices are not actually discriminatory.
4  Nobody wants to be in a situation of knowing that a portion of
5  (11:18:48) their workforce feels otherwise.
6          And so this sort of litigation has a lot of unique
7  challenges that may not be found in other types of class
8  action lawsuits, and that's before you even get to the
9  difficulty of the litigation itself, the proceedings, the
10 (11:19:04) procedural issues that both sides have to deal with in
11 particular with respect to class actions.
12         So I appreciate the effort of Counsel here, of your
13 clients, particularly of lead plaintiffs here who, as I said
14 before, I believe it is apparent they've put in a great deal
15 (11:19:28) of effort and went above and beyond in fulfilling their role
16 in this case.
17         After considering the full record here, I am of the
18 view that a proper showing has been made that this is a fair,
19 reasonable, and adequate settlement that should be approved.
20 (11:19:53)    In reaching the decision to grant final approval, I
21 have considered the factors set out in Federal Rule of Civil
22 Procedure 23(e)(2) including whether the class representatives
23 and class counsel have adequately represented the class,
24 whether the proposal was negotiated at arm's length, whether
25 (11:20:14) the relief provided for the class is adequate, taking into

53

1  account the costs, risks, and delay of trial and appeal, the
2  effectiveness of any proposed method of distributing relief to
3  the class including the claims-processing method, the terms of
4  the proposed attorneys' fee award including the timing of
11:20:39  5  payments and whether the proposal treats class members
6  equitably relative to each other which, as you heard from my
7  questioning, is something that I was inially not concerned
8  about but wanted to make sure that the considerations had been
9  taken into account.
11:21:05  10       There's guidance that's been provided by the
11  Seventh Circuit in considering a proposed class settlement
12  agreement.  That Court has instructed that I should be looking
13  at the strength of the class's case, the complexity and
14  expense of further litigation, the amount of opposition to the
11:21:25  15  action, class members to the settlement, the opinion of
16  competent counsel, and the stages of proceedings and the
17  amount of discovery that has been completed, among other
18  things.
19       I conclude that, overall, all of those factors and
11:21:41  20  the related guidance weighs in favor of approving the
21  settlement.
22       As I said, I think it's clear here that the class
23  representatives and class counsel have worked diligently and
24  performed more than adequately in their roles with respect to
11:21:59  25  the class.  I have no reason to think that there was any

54

1  collusion here.
2       It appears that this was a good faith, hard-fought
3  settlement that was negotiated at arm's length.  And I'll note
4  the involvement of the impartial third-party mediators and the
11:22:19  5  experience and expertise that I have no doubt they brought to
6  this process to help the parties reach this agreement.
7       And I also very much appreciate you have taken into
8  account in considering the class representative services or
9  the fact that the individual class representatives were very
11:22:42  10  involved in that process, which is not always the case.
11       I think here, this is also a situation where there
12  would likely have been a significant amount of litigation risk
13  on both sides, and I think both sides were certainly aware of
14  the likelihood that pursuing this to a jury verdict, for
11:23:10  15  example, on the merits or some other resolution on the merits
16  would likely be very time consuming, would cost quite a bit of
17  money and resources, and that given the litigation risk,
18  either side might have ended up making that investment with a
19  result that would have been very frustrating or unsatisfying
11:23:40  20  for them.
21       So I think looking at the nature of the case, the
22  strength of the case at least based on what I knew of it, of
23  the allegations and how things were proceeding in front of me,
24  the nature of the defenses that would likely be raised, and
11:23:59  25  just the cost of litigating this on both sides that all of

55

1  those things point in favor of approving the settlement.  So I
2  am going to approve the settlement.
3       I'm also going to approve the service awards for the
4  class representatives.  Each class representative will receive
11:24:18  5  a service award of $150,000.  And that's in recognition of the
6  personal and professional sacrifices that come with making
7  oneself the face of a class action claiming discrimination in
8  an industry such as this one where professional relationships
9  are key and it is likely to discourage people from raising
11:24:40  10  concerns.
11       The award also recognizes the very active
12  participation revealed in the record by each of the named
13  plaintiffs here.  The record shows that each of the named
14  plaintiffs was extraordinarily involved in working with and
11:25:07  15  educating class counsel regarding the industry, preparing for
16  and participating in mediation and also helping to explain the
17  settlement to other class members including the ones who
18  objected and who participated in the Zoom call.
19       And finally, I am inclined also to go ahead and grant
11:25:31  20  the motion for attorneys' fees and costs here.  Counsel
21  requests an attorneys' fee award of $8.5 million which is
22  approximately 25 percent of the $34 million common monetary
23  fund.  There are also additional expenses and costs that would
24  be reimbursed.
11:25:54  25       The percentage of 25 percent is certainly in line

56

1  with, if not below, the percentage fees that I often see
2  requested and that courts frequently approve in class action
3  cases.  Though it's objectively quite a bit of money, I think
4  that it is reasonable in light of the effort that went into
11:26:16  5  reaching the settlement.  I think as a proportion of the
6  common monetary fund, it is well within the range that one
7  would expect in cases like this, and that is before taking
8  into account any value associated with the programmatic
9  changes.  It's difficult such that they are to completely put
11:26:41  10  a monetary value on.
11       Whether it's the training costs or the other
12  programmatic changes, I think they clearly are valuable
13  aspects of the settlement, and Counsel has earned their fees
14  by reaching a settlement that incorporates -- (audio
11:27:09  15  interference).
16       THE CLERK:  Excuse me.  This is the courtroom deputy.
17  We'd ask that everybody keep their phones muted.
18       THE COURT:  You know, I didn't, but I don't know if
19  that was somebody who wanted to speak before final settlement
11:27:26  20  approval was granted or if that was just a mistake and you
21  didn't realize your phone was on.
22       The interruption actually reminded me that before I
23  enter the final approval order, I do want to offer one last
24  time the opportunity for anyone who's called in who may desire
11:27:46  25  to speak, now that you've heard the presentation from Counsel