UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL CURLEY, et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>GOOGLE LLC,<br><br>                    Defendant. | Case No.  4:22-cv-01735-KAW<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 138 |

On May 8, 2025, Plaintiffs April Curley, Desiree Mayon, and Ronika Lewis filed a motion for preliminary approval of a settlement agreement between the parties.

Having considered the parties' filings and the arguments presented at the December 4, 2025 hearing, and for the reasons set forth below, the Court GRANTS Plaintiffs' motion for preliminary approval.

## I.    BACKGROUND

### A.    Factual and Procedural Background

In 2014, Google hired Plaintiff April Curley, a Black woman, to help the company expand its outreach to Black college students. (Third Am. Compl., "TAC," Dkt. No. 93 ¶ 3.) Although she worked diligently and performed at a high level, she was terminated six years later. *Id.* at ¶ 4. Curley alleged that she experienced persistent discrimination because of her race and was wrongfully terminated. *Id.* Like Plaintiffs Desiree Mayon and Ronika Lewis, Curley alleged that she had been assigned a lower-level role, paid lower wages, rated unfairly on her performance, subjected to a hostile work environment, and denied advancement and leadership roles because she was Black. *Id.* at ¶¶ 3-4.

Believing that these experiences were consistent with companywide discriminatory

1   policies and practices, Plaintiffs retained counsel and filed this putative class action on March 18,

2   2022. (Dkt. No. 1.)  After motion practice on Plaintiffs' initial pleadings, resulting in the dismissal

3   of certain claims in Plaintiffs' Second Amended Complaint, Plaintiffs filed their Third Amended

4   Complaint on July 26, 2024. (TAC, Dkt. No. 93.)  Plaintiffs alleged, on behalf of themselves and

5   all other Google employees similarly situated, claims for: (1) Race Discrimination and Hostile

6   Work Environment in Violation of 42 U.S.C. § 1981; (2) Race Discrimination and Hostile Work

7   Environment in Violation of Title VII, U.S.C. § 2000e, et seq.; (3) Race Discrimination and

8   Hostile Work Environment in Violation of FEHA, Cal. Gov't Code § 45940, et seq.; (4) Race

9   Discrimination and Hostile Work Environment in Violation of New York State Human Rights

10  Law; (5) Race Discrimination and Hostile Work Environment in Violation of New York City

11  Human Rights Law; and (6) Pay Discrimination in Violation of California Equal Pay Act. (TAC

12  ¶¶ 132-210). Plaintiffs also alleged retaliation claims on behalf of Plaintiffs and members of the

13  putative class.

14          The parties attempted to resolve the case through mediation before embarking on formal

15  discovery. (Decl. of Linda D. Friedman, "Friedman Decl., Dkt. No. 138-1 ¶ 19.) To that end, they

16  began informally exchanging data and documents over the spring and summer of 2024. *Id.*

17  Google produced hundreds of documents regarding relevant policies as well as a significant

18  snapshot of workforce data. *Id.*  Plaintiffs engaged an expert to analyze that production. *Id.*

19  Informed by these facts and analyses, the parties engaged Hunter Hughes, an experienced

20  professional mediator who is skilled in the areas of complex class actions and employment

21  discrimination litigation, for an in-person mediation session on June 12, 2024. (Friedman Decl. ¶

22  20.)  They engaged in many follow-up meetings throughout the summer and fall to continue

23  discussions on possible settlement. *Id.*  During these sessions, the parties exchanged competing

24  data analyses prepared by experts. *Id.*  While these sessions did not resolve the case, the parties

25  were able to frame the issues for discovery and further debate. *Id.*

26          Over the next six months, the parties vigorously litigated the case and engaged in

27  substantial fact discovery. (Friedman Decl. ¶ 21.)  Plaintiffs served initial disclosures and class

28  interrogatories, issued five sets of class requests for production totaling 89 requests, and noticed

United States District Court
Northern District of California

2

1    depositions pursuant to Federal Rule of Civil Procedure 30(b)(6) covering 64 total topics. *Id.*

2    Defendant served 167 total requests for production and 48 total interrogatories and noticed

3    depositions for all six plaintiffs. *Id.*  The Parties timely answered each other's discovery requests

4    and issued 20 total rolling productions that include nearly 200,000 pages of documents and

5    workforce data totaling over 48 million records. (Friedman Decl. ¶ 22.)  The parties dedicated

6    significant time and effort in obtaining, producing, and reviewing these materials. *Id.*

7         Throughout this exchange of documents and data, the parties negotiated numerous

8    discovery disputes. (Friedman Decl. ¶ 23.)  The Parties met and conferred extensively regarding

9    the protective order, production of electronically stored information, and discovery, including the

10   exchange of several Rule 37 letters. *Id.*

11        Near the end of 2024, the parties agreed to further engage in formal settlement discussions

12   through mediation. (Friedman Decl. ¶ 24.)  Google produced another volume of data for mediation

13   purposes. *Id.*  Plaintiffs retained an experienced labor economist to analyze both the data sets

14   produced in advance of mediation as well as the data that had been produced pursuant to

15   Plaintiffs' discovery requests. *Id.*  Combined, the data ranged from prior work experience and

16   education history for all persons hired during the relevant period as well as comprehensive work

17   histories for their tenure at Google, including job-title histories, job-location histories,

18   compensation histories, bonus and equity awards, performance reviews, and demographic data. *Id.*

19   Plaintiffs' expert conducted statistical analyses including those on attrition, racial representation

20   across various job parameters, and compensation studies, including numerous regression models.

21   *Id.*  Plaintiffs presented their analysis of the data to Defendant and the mediator in advance of the

22   mediation. *Id.*  Defendant also presented its analysis of the same data to Plaintiffs. *Id.*

23        On January 22, 2025, the parties attended another mediation session with Hunter Hughes.

24   (Friedman Decl. ¶ 25.)  The extensive discovery and expert analyses of the data enabled both sides

25   to understand the strengths and weaknesses of their positions. *Id.*  Armed with that information,

26   the parties went back and forth and reached agreements in principle on several terms and narrowed

27   the gap on the remaining terms. (Friedman Decl. ¶ 26.)  The parties continued their negotiations

28   over the following days and months, and they ultimately reached a settlement. *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

On March 28, 2025, the parties informed the court that they had reached a settlement in principle. (Dkt. No. 129.) On April 16, 2025, the parties consented to referring this action to a magistrate judge for all purposes, and, on April 25, 2024, the case was referred to Magistrate Judge Kandis A. Westmore. (Dkt. Nos. 131-133.)

On May 8, 2025, Plaintiffs filed the instant motion for preliminary approval of the class settlement. (Mot., Dkt. No. 138.)

**B.    Settlement Agreement**

**i.    Basic Terms and Class Definition**

The Settlement establishes a Settlement Fund of $50 million to compensate Settlement Class members; provide for any Court-approved attorneys' fees, costs, and service awards; and provide for all costs of administering the Settlement. (Settlement § VIII.B, Friedman Decl. ¶ 27, Ex. A.) The Settlement Class to be certified for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23, consists of:

> All Google employees identified in Google's records produced to Settlement Class Counsel on November 20, 2024 as Black or Black+ who worked in job levels 3, 4, 5 and/or 6 in a job located in California at any time from March 18, 2018 through December 31, 2023, and/or job levels 3, 4, 5, and/or 6 in a job located in New York at any time from October 15, 2017 through December 31, 2023, excluding employees who (a) exclusively held a job that Google's records identified as being within a Legal job family or subfamily, or (b) are identified in Google's records as having executed a general release of claims at any time between October 15, 2017 (for New York employees) or March 18, 2018 (for California employees) and the Preliminary Approval Date. A list of the individuals who meet this definition are included in the Settlement Class List. If an individual is not on the Settlement Class List, then that individual is presumed ineligible for an Individual Settlement Payment and will not release any claims as a result of this Settlement Agreement.

(Settlement § III.A.) A list of the individuals who meet this definition will be included in the Settlement Class List. If an individual is not on the Settlement Class List, then that individual is presumed ineligible for an Individual Settlement Payment and will not release any claims as a result of this Settlement Agreement. *Id.*

The Settlement Fund will be distributed using an Individual Claims Resolution Process that takes into account Settlement Class Members' experiences and alleged harms. (Settlement § VIII.)

4

The Settlement also provides for meaningful non-monetary relief. (Settlement § VII.) For three years after the Effective Date, Google will continue to analyze pay to identify unexplained differences based on race before finalizing pay changes for the following year. (Settlement § VII.B.1.) Google will also maintain well-publicized methods for employees to report concerns related to the terms and conditions of their employment, including concerns that they have been leveled or paid incorrectly for an unlawful reason or reviewed unfairly. (Settlement § VII.B.2.) Google will investigate any concerns raised and take remedial action where appropriate, among other things. *Id.*  Google will also take steps to ensure pay transparency and fairness, including by continuing its current practices of listing salary ranges in job advertisements, consistent with state and/or local law; continuing its practice of providing current employees with access to salary ranges for the position held upon request, consistent with state or local law; and by reaffirming its commitment to not ask for or base compensation decisions at hire or the salary history of applicants. (Settlement §§ VII.B.3-6.) Further, through and including August 2026, Google will not require any employee to enter into mandatory arbitration agreements for employment-related disputes or enforce existing mandatory arbitration agreements for employment-related disputes. (Settlement § VII.B.7.)

In exchange for the Settlement consideration, Settlement Class Members who do not opt out will release all claims of race-based employment discrimination and retaliation, including claims regarding hiring, job assignment, pay, leveling, promotions, performance reviews, transfers, terminations or constructive discharges, failure to investigate, retaliation, or hostile work environment, under any federal, state or local law. (Settlement §§ III.A, V). This release is appropriate as it is limited to claims based on "the identical factual predicate as that underlying the claims in the settled class action." *Hadley v. Kellogg Sales Co.*, No. 16-cv-04955, 2020 WL 836673, at *2 (N.D. Cal. Feb. 20, 2020) (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)).

Notwithstanding, each of the three Settlement Class Representatives have pending individual claims not resolved by the Settlement Agreement. (TAC at ¶¶ 144–151, 157–173, 181–189, 196– 204). No negotiations have taken place with respect to these individual claims, which

United States District Court
Northern District of California

may continue to be litigated or be settled. Additionally, the claims of remaining Named Plaintiff Rayna Reid, who does not meet the settlement class definition due to her geographic location, remain pending, and they may continue to be litigated or be settled. (*See* Friedman Decl. ¶ 44.)

### ii.  Proposed Allocation Plan

The Settlement creates an individualized process for a fair and equitable allocation of the Settlement Fund. The Individual Claims Resolution Process provides Settlement Class Members a meaningful opportunity to have their claims individually assessed. Unlike many other settlements, the Individual Settlement Payments for Settlement Class Members will not be computed by formula. (Friedman Decl. ¶ 46.) Instead, Settlement Class Members can file a Claim Form and participate in a nuanced and detailed process through which they will receive an individualized assessment of their claims, including consideration of post-Google wage loss and any alleged emotional distress. (Settlement § VIII.D.) This program maintains the flexibility to compensate for damages resulting from forms of alleged discrimination beyond wage disparities, such as a hostile work environment or wrongful discharge. In this way, Settlement Class Members' Individual Settlement Payments will be directly tied to the damages they would allege from the claims they are releasing, which may extend beyond strict wage loss and encompass all forms of alleged employment-based race discrimination, the harms of which cannot be measured by time-in-job. (Friedman Decl. ¶ 48.)

Subject to approval of the Court, the Individual Claims Resolution Process will be monitored by an experienced, well-qualified Trustee, Professor Lynn P. Cohn, Co-Director of the Center on Negotiation, Mediation, and Restorative Justice at the Northwestern Pritzker School of Law. (Settlement § VIII.C.)  Professor Cohn has been appointed in a similar capacity by other courts. *See, e.g., Jones v. Chopra*, 18- cv-2132 (D.D.C. 2024), ECF. No. 182; *Creighton v. Metropolitan Life Insurance*, 15-cv-08321 (S.D.N.Y. 2017), ECF No. 108; *Slaughter v. Wells Fargo Advisors, LLC*, 13-cv-6368, (N.D. Il. 2017), ECF No. 109; *McReynolds v. Merrill Lynch*, 05-cv-6583 (N.D. Ill. 2014), ECF Nos. 585-1, 637. Professor Cohn will review and assess the Claim Forms and make final awards, providing fairness and consistency. (Settlement § VIII.D.3.) To ensure the best-informed decisions, Settlement Class Counsel will provide training for

United States District Court
Northern District of California

1    Professor Cohn and any independent, qualified Neutrals who assist her. (Settlement § VIII.D.2.)

2    Settlement Class Counsel will also assist and provide support for Settlement Class Members

3    throughout the Individual Claims Resolution Process by answering questions, advising them of

4    their rights and options, and helping them complete and submit Claim Forms. (Settlement §

5    VIII.D.6.)

6        In no event will any portion of the Gross Settlement Fund revert to Defendant. (Friedman

7    Decl. ¶ 54; Settlement § VIII.F.)  If, after distribution, there remains a Residual Fund due to

8    uncashed or undeliverable checks, the Trustee shall redistribute the Residual Fund if it is

9    financially feasible to do so. *Ids.*  If it is not, then any Residual Fund will be treated as unclaimed

10   property of the corresponding Settlement Class Members. *See ids.*

11           iii.    **Settlement Administration and Notice**

12       Settlement Class Counsel solicited bids from experienced claims administrators, and the

13   parties agreed to use Atticus Administration, LLC ("Atticus") as the Claims Administrator, whose

14   costs shall be paid from the Gross Settlement Fund and are estimated to be $39,800. (Friedman

15   Decl. ¶ 55.)

16       The Claims Administrator will distribute the Notices of Settlement via U.S. mail and

17   email, re-mail any Notices of Settlement returned as non-deliverable but with forwarding

18   addresses, and re-mail the Notices of Settlement to any new address obtained by way of skip-trace.

19   (Settlement § IV.C.1.) The Claims Administrator will maintain a website with information about

20   the action including the Class Action Complaint, the Settlement Agreement, the Notice of

21   Settlement, this Motion for Preliminary Approval, and, when they are filed, the Motion for

22   Attorneys' Fees and Costs, the Motion for Service Awards, the Motion for Final Approval, and the

23   Claim Form. *Id.* Further, the Claims Administrator will receive and forward to the Parties'

24   Counsel any opt outs. (Settlement § IV.C.3.)  Should the Court grant final approval, the Claims

25   Administrator will distribute the Final Notice via U.S. mail and email, re-mail any Final Notices

26   returned as non-deliverable but with forwarding addresses, and re-mail the Final Notice to any

27   new address obtained by way of skip-trace. (Settlement § IV.D.) The Claims Administrator will

28   receive Claim Forms and supporting documentation and transmit them to the Trustee. (Settlement

§ VIII.D.1.) The Claims Administrator will calculate applicable payroll taxes, withholdings, and deductions, and issue disbursements to Settlement Class Members, any court-approved the Service Award to Settlement Class Representatives, and Attorneys' Fees and Costs as approved by the Court. (Settlement § VIII.E.)

### iv.    Proposed Attorneys' Fees and Costs and Service Awards

Settlement Class Counsel will seek attorneys' fees of up to 25% of the Settlement Fund ($12,500,000) and reimbursement for expenses, currently estimated to be $211,500.82. (Mot. at 10.) Settlement Class Counsel's current lodestar is estimated to be $4,769,434.18. (Friedman Decl. ¶ 62; Crump Decl. ¶ 35; Settlement § IX.) Settlement Class Counsel is committed to providing assistance to all Settlement Class Members throughout the Individual Claims Resolution Process, and, given the size of the class, expect to dedicate hundreds of additional hours to this case. (Friedman Decl. ¶ 63.) Despite this commitment, Settlement Class Counsel will not seek additional attorneys' fees for time assisting Settlement Class Members. *Id.* Settlement Class Counsel intends to apply for service awards of up to $50,000 for each of the three Settlement Class Representatives. (Settlement § X.)

### II.    LEGAL STANDARD

Per Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The purpose of requiring court approval "is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Thus, before approving a settlement, the Court must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). This inquiry:

> requires the district court to balance a number of factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement.

United States District Court
Northern District of California

1    *Id.*; *see also Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (same).

2            Furthermore, the Ninth Circuit has recognized that where no class has been formally

3    certified, "there is an even greater potential for a breach of fiduciary duty owed the class during

4    settlement.  Accordingly, such agreements must withstand an even higher level of scrutiny for

5    evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)

6    before securing the court's approval as fair."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d

7    935, 947 (9th Cir. 2011); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012)

8    ("when . . . the settlement takes place before formal class certification, settlement approval

9    requires a 'higher standard of fairness'").  This more "exacting review" is required "to ensure that

10   class representatives and their counsel do not secure a disproportionate benefit at the expense of

11   the unnamed plaintiffs who class counsel had a duty to represent."  *Lane*, 696 F.3d at 819 (internal

12   quotation omitted); *see also Hanlon*, 150 F.3d at 1026 ("The dangers of collusion between class

13   counsel and the defendant, as well as the need for additional protections when the settlement is not

14   negotiated by a court[-]designated class representative, weigh in favor of a more probing inquiry

15   than may normally be required under Rule 23(e)").

16           When applying Rule 23(e), the courts use a two-step process for the approval of class

17   action settlements.  First, the Court decides whether the class action settlement deserves

18   preliminary approval.  Second, after notice is given to class members, the Court determines

19   whether final approval is warranted.  *See O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110,

20   1121-22 (N.D. Cal. 2016).  At the preliminary approval stage, courts in this district "have stated

21   that the relevant inquiry is whether the settlement falls within the range of possible approval or

22   within the range of reasonableness."  *Cotter v. Lyft*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016)

23   (internal quotation omitted).  "In determining whether the proposed settlement falls within the

24   range of reasonableness, perhaps the most important factor to consider is plaintiff's expected

25   recovery balanced against the value of the settlement offer."  *Id.*; *see also O'Connor*, 201 F. Supp.

26   3d at 1122.  This determination "requires evaluating the relative strengths and weaknesses of the

27   plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not

28   reasonable to settle a strong claim for the same amount."  *Cotter*, 176 F. Supp. at 936 (citing *In re*

United States District Court
Northern District of California

1    *High-Tech Emp. Antitrust Litig.*, Case No: 11-cv-2509-LHK, 2014 WL 3917126, at *4 (N.D. Cal.

2    Aug. 8, 2014).

3          In addition to considering whether the settlement falls within the range of reasonableness,

4    courts in this district also consider whether the settlement: "(1) appears to be the product of

5    serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; [and] (3) does not

6    improperly grant preferential treatment to class representatives or segments of the class." *In re*

7    *Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation

8    omitted). With respect to the level of scrutiny applied to this determination, "district courts often

9    state or imply that scrutiny should be more lax." *Cotter*, 193 F. Supp. 3d at 1035-36. Several

10   courts in this district have begun to question that "lax review" as "mak[ing] little practical sense."

11   *Id.* at 1036. Instead, these courts suggest that "scrutinizing the agreement carefully at the initial

12   stage and identifying any flaws that can be identified . . . allows the parties to decide how to

13   respond to those flaws (whether by fixing them or opting not to settle) before they waste a great

14   deal of time and money in the notice and opt-out process." *Id.*

15                                **III.    DISCUSSION**

16        **A.    Class Certification**

17         Before determining the fairness of a class action settlement, the Court must as a threshold

18   matter "ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of

19   the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2)

20   commonality, (3) typicality, and (4) adequacy of representation." *Hanlon*, 150 F.3d at 1019. The

21   Court must also find that at least one requirement of Rule 23(b) is satisfied. *Id.* at 1022.

22         The Court finds that for the purposes of approval of the class action settlement, the Rule

23   23(a) requirements are satisfied. First, numerosity exists as the Settlement Class includes over

24   4,000 members (Friedman Decl. ¶ 39), making joinder impracticable. Second, commonality exists

25   because there are "questions of fact and law which are common to the class" regarding the

26   challenged practices, which include Google's policies and practices for leveling, compensation,

27   promotion, and performance reviews. Fed. R. Civ. P. 23(a)(2); *see also Hanlon*, 150 F.3d at 1019-

28   20 (noting that the commonality requirement is "permissive" and "has been construed

1   permissively"). Third, typicality exists because the Settlement Class Representatives' claims are

2   "reasonably co-extensive with those of absent class members," as they, like the Settlement Class

3   Members, are Black or Black+, meet other criteria to be members of the Settlement Class, and

4   allege they were subjected to and harmed by the same discriminatory policies and practices

5   challenged in this litigation. *See Hanlon*, 150 F.3d at 1020. Finally, adequacy exists because there

6   is no evidence that the Settlement Class Representatives and Class Counsel have any conflicts of

7   interest with the proposed class, or that they will not vigorously prosecute the case on behalf of the

8   class. *See id.* ("Resolution of two questions determines legal adequacy: (1) do the named

9   plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the

10  named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?").

11          The Court also concludes that, at the preliminary approval stage, the Rule 23(b)(3)

12  requirement is satisfied. Under Rule 23(b)(3), the Court must find that "the questions of law or

13  fact common to class members predominate over any questions affecting only individual

14  members, and that a class action is superior to other available methods for fairly and efficiently

15  adjudicating the controversy." Here, the Court finds that predominance is satisfied because the

16  Settlement Class Representatives' claims arise from similar policies and discrimination. Further,

17  the Court finds that superiority is satisfied because the alternative method to a class action likely

18  involves "individual claims for a small amount of . . . damages," resulting in most cases involving

19  "litigation costs [that] dwarf potential recovery." *Hanlon*, 150 F.3d at 1023.

20          The Court, therefore, provisionally certifies the class for settlement purposes.

21      **B.    Preliminary Approval Factors**

22          **v.    Range of Reasonableness**

23          In considering whether the Settlement Agreement falls within the range of possible

24  approval, the Court "primarily consider[s] plaintiffs' expected recovery balanced against the value

25  of the settlement offer." *Viceral v. Mistras Grp., Inc.*, Case No. 15-cv-2198-EMC, 2016 WL

26  5907869, at *7 (N.D. Cal. Oct. 11, 2016).

27          Here, the proposed Settlement provides for a certain and immediate all-cash Settlement

28  Fund of $50,000,000, and it ensures that Settlement Class Members will be equitably compensated

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1    for the claims they are releasing.  While the total amount of damages is complex and subject to

2    genuine dispute amongst the parties, after consulting with their damages expert, Settlement Class

3    Counsel's expert estimated wage differentials at approximately $52 million when eliminating

4    variables from the regression analysis that the Settlement Class challenged as tainted, but

5    controlling for other variables such as job level, job sub-family, tenure, location, and prior

6    experience and education, among other factors. (Friedman Decl. ¶ 32.)  The expert estimated that

7    the highest wage loss estimated due to less favorable treatment with respect to leveling was

8    approximately $229 million. (Friedman Decl. ¶ 33.)  Google contested that its leveling practices

9    caused any additional disparities. *Id.*

10        The parties also identify significant risks that make the proposed settlement fall within a

11    range of reasonableness.  Specifically, the parties' methodological differences in statistical

12    analysis and damages calculation, which would have surfaced in *Daubert* motions or at class

13    certification and, likely, led to appellate review. (Mot. at 17.)

14        Based on the foregoing, the Court finds that this factor weighs in favor of preliminary

15    approval.

16            **vi.    Serious, Informed Negotiations**

17        Next, the Court considers how the parties arrived at the settlement, specifically whether the

18    settlement was "the product of an arms-length, non-collusive, negotiated resolution."  *Rodriguez v.*

19    *W. Publ'g Co.*, 563 F.3d 948, 965 (9th Cir. 2009).  Here, the parties engaged in extensive formal

20    and informal discovery to analyze and evaluate the case.  (Friedman Decl. ¶¶ 19, 21-23.)  The

21    parties engaged mediator Hunter Hughes, who facilitated further negotiations, which ultimately

22    resulted in the parties reaching a settlement. (Friedman Decl. ¶¶ 20-24-26.)  The Court finds that

23    the parties reached the settlement via an arms-length, non-collusive, negotiated resolution, and that

24    this factor weighs in favor of preliminary approval.

25            **vii.    No Obvious Deficiencies**

26        The Court finds no obvious deficiencies at this time. The CAFA notice was completed on

27    May 16, 2025. (*See* Sullivan Decl., Dkt. No. 142 ¶ 3.)

28        While attorneys' fees have yet to be submitted, and counsel expects to request the 25%

benchmark of the total settlement amount, the Court expects counsel to provide additional information at the final approval stage, including the breakdown of hours spent by each attorney and substantive information regarding their legal experience to support their billing rates under a lodestar analysis. (*See* Mot. at 24.)  Such information is necessary to fulfill the Court's "independent obligation to ensure that the [attorney's fees] award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth*, 654 F.3d at 941.

Similarly, while Settlement Class Counsel indicated its intent to request up to $50,000 in Service Awards for each of the three Settlement Class Representatives, approval of this Settlement Agreement is not contingent upon the Court's granting of Service Awards of any particular amount if at all. (*See* Settlement § X.A.)  Thus, the Court defers consideration of the awards until final approval.

### viii.   Preferential Treatment

Finally, the Court considers whether the Settlement provides preferential treatment to any class members.  The Court concludes that the Settlement does not.  The Plan of Allocation treats all Class Members equitably based on the merits of the individual claims they are releasing as determined by the Individual Claims Resolution Process. (*See* Friedman Decl. ¶ 47.)  Thus, this factor weighs in favor of preliminary approval.

### ix.   Notice Procedure

The Court has reviewed the content of the proposed notice submitted on May 8, 2025 (Friedman Decl., Ex. B), and modifies it as follows:

1.   On page 5, add the name and address for the Claims Administrator.

With the addition of all the bracketed information and this change, the Court finds that the notice is sufficient.

### x.   Claims Process

Finally, The Court approves the Individual Claims Resolution Process set forth in the Settlement Agreement for Settlement Class Members, and it directs the parties and the Claims Administrator to implement the Individual Claims Resolution Process.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.    CONCLUSION

For the reasons set forth above, the Court finds that preliminary approval is warranted, subject to the additional changes to the notice being made. The Court, therefore, GRANTS preliminary approval of the parties' proposed Settlement Agreement, including the provisional certification of the class action.

The Court APPOINTS, for settlement purposes only, April Curley, Ronika Lewis, and Desiree Mayon as Settlement Class Representatives to represent the Settlement Class; Stowell & Friedman, Ltd., Ben Crump Law, PLLC, and Sani Law, APC, as Settlement Class Counsel; and Atticus Administration, LLC as Claims Administrator. The Court APPROVES the notice provided by the parties, and sets the following schedule:

| | |
|---|---|
| Deadline for Defendant to provide the Settlement Class List to the Claims Administrator | Seven (7) days of the date of this order |
| Deadline for Claims Administrator to mail the Notice of Settlement to Settlement Class Members | Within 17 days of the date of this order |
| Deadline for filing Motion for Attorneys Fees' and Costs and Motion for Service Awards | February 10, 2026 |
| Deadline for Settlement Class Members to opt-out or file objections to the Settlement | March 20, 2026 |
| Deadline for filing Final Approval Motion | April 2, 2026 |
| Final Approval Hearing | May 7, 2026 |
| Deadline for Claims Administrator to mail the Notice of Final Approval | Within seven (7) days of filing the Order Granting Final Approval |
| Claim Deadline | Fifty-two (52) days after the filing of the Order Granting Final Approval |

IT IS SO ORDERED.

Dated: December 7, 2025

_____
KANDIS A. WESTMORE
United States Magistrate Judge