UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL CURLEY, et al., | Case No. 4:22-cv-01735-KAW |
| Plaintiffs, | **ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; ORDER GRANTING ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS** |
| v. | |
| GOOGLE LLC, | |
| Defendant. | Re: Dkt. Nos. 163, 164 |

On March 18, 2022, Plaintiffs April Curley, Desiree Mayon, and Ronika Lewis filed a putative class action against Defendant Google LLC alleging race discrimination.  The parties settled and, on December 7, 2025, the Court granted preliminary approval.

On February 10, 2026, Plaintiffs filed a motion for attorneys' fees and costs, incentive award, and settlement administration costs. (Dkt. No. 163.)  On April 2, 2026, Plaintiffs filed a motion for final approval (Dkt. No. 164) and a motion for appointment of trustee.[1]

On May 7, 2026, the Court held a fairness hearing, and having carefully considered the briefs, argument of counsel, and all matters presented to the Court, GRANTS Plaintiffs' motion for attorneys' fees and motion for final approval as set forth below.

## I.   BACKGROUND

### A.   Factual Background

The factual and procedural background is more fully described in the Court's prior order approving Plaintiffs' motion for preliminary approval of settlement. (Dkt. No. 158.)  In sum, the crux of the dispute is whether Defendant unlawfully discriminated against Black employees on the

---

[1] The motion for appointment of trustee (Dkt. No. 165) is being granted by separate order.

basis of race. *See id.*  Plaintiffs bring these claims on behalf of

> All Google employees identified in Google's records produced to Settlement Class Counsel on November 20, 2024 as Black or Black+ who worked in job levels 3, 4, 5 and/or 6 in a job located in California at any time from March 18, 2018 through December 31, 2023, and/or job levels 3, 4, 5, and/or 6 in a job located in New York at any time from October 15, 2017 through December 31, 2023, excluding employees who (a) exclusively held a job that Google's records identified as being within a Legal job family or subfamily, or (b) are identified in Google's records as having executed a general release of claims at any time between October 15, 2017 (for New York employees) or March 18, 2018 (for California employees) and the Preliminary Approval Date. A list of the individuals who meet this definition are included in the Settlement Class List. If an individual is not on the Settlement Class List, then that individual is presumed ineligible for an Individual Settlement Payment and will not release any claims as a result of this Settlement Agreement.

(Settlement, Decl. of Linda D. Friedman, "Freidman Decl.," Dkt. No. 164-1 ¶ 27, Ex. A § III.A.) The Settlement Fund will be distributed using an Individual Claims Resolution Process that takes into account Settlement Class Members' experiences and alleged harms. (Settlement § VIII.) Additionally, the Settlement provides for meaningful non-monetary relief as described in the motion for preliminary approval. (*See* Dkt. No. 158 at 5.)

Notwithstanding, each of the three Settlement Class Representatives have pending individual claims not resolved by the Settlement Agreement. (Third Am. Compl., "TAC," Dkt. No. 93 ¶¶ 144–151, 157–173, 181–189, 196– 204). At the hearing, Plaintiffs' Counsel informed the Court that Ms. Lewis's individual claims have been resolved. Ms. Curley and Ms. Mayon's individual claims remain, which may continue to be litigated or be settled. (*See* Dkt. No. 158 at 5.) Moreover, at the hearing, Plaintiffs informed the Court that Plaintiff Rayna Reid, who does not meet the settlement class definition, still has individual claims, which may also continue to be litigated or settled. Given the remaining individual claims, the parties were ordered to file a joint status report regarding the status of those claims by June 8, 2026. (5/7/26 Minutes, Dkt. No. 170.)

The Settlement creates an individualized process for a fair and equitable allocation of the Settlement Fund, which requires Settlement Class Members to file a Claim Form and participate in a nuanced and detailed process through which they will receive an individualized assessment of their claims, including consideration of post-Google wage loss and any alleged emotional distress. (Settlement § VIII.D.)  Subject to court approval, the Individual Claims Resolution Process will be

monitored by an experienced Trustee, Professor Lynn P. Cohn, Co-Director of the Center on Negotiation, Mediation, and Restorative Justice at the Northwestern Pritzker School of Law. (Settlement § VIII.C.)  Professor Cohn has been appointed in a similar capacity by other courts. *See, e.g., Jones v. Chopra*, 18- cv-2132 (D.D.C. 2024), ECF. No. 182; *Creighton v. Metropolitan Life Insurance*, 15-cv-08321 (S.D.N.Y. 2017), ECF No. 108; *Slaughter v. Wells Fargo Advisors, LLC*, 13-cv-6368, (N.D. Il. 2017), ECF No. 109; *McReynolds v. Merrill Lynch*, 05-cv-6583 (N.D. Ill. 2014), ECF Nos. 585-1, 637. Professor Cohn will review and assess the Claim Forms and make final awards, providing fairness and consistency. (Settlement § VIII.D.3.)

In no event will any portion of the Gross Settlement Fund revert to Defendant. (Friedman Decl. ¶ 54; Settlement § VIII.F.)  If, after distribution, there remains a Residual Fund due to uncashed or undeliverable checks, the Trustee shall redistribute the Residual Fund if it is financially feasible to do so. *Ids.*  If it is not, then any Residual Fund will be treated as unclaimed property of the corresponding Settlement Class Members. *See ids.*

### B.    Relevant Procedural Background

On July 16, 2024, Plaintiffs filed the third amended complaint. (Third Am. Compl., "TAC," Dkt. No. 93.)  On March 28, 2025, the parties reported that the case had settled, and, thereafter, consented to magistrate judge jurisdiction. (Dkt. Nos. 129, 131, 132.)  On April 24, 2025, the case was reassigned to the undersigned. (Dkt. No. 133.)

On December 7, 2025, the Court granted preliminary approval of a class action settlement. (Dkt. No. 158.)  At this same time, the Court approved certification of a provisional Settlement Class for settlement purposes only, and appointed Plaintiffs Curley, Lewis, and Mayon as Settlement Class Representatives. *Id.* at 14.

On February 10, 2026, Plaintiffs filed an unopposed motion for an award of attorneys' fees, litigation expenses and service award to the Settlement Class Representative Plaintiffs. (Pl.'s Fees Mot., Dkt. No. 163.)

On April 2, 2026, Plaintiffs filed an unopposed motion for final approval of class action settlement and an unopposed motion to appoint trustee. (Pl.'s Mot. for Final Approval, "Pl.'s Mot.," Dkt. No. 164; Pl.'s Trustee Mot., Dkt. No. 165.)  On May 7, 2026, the Court held a

United States District Court
Northern District of California

hearing, and, thereafter, ordered Plaintiffs to file a supplemental declaration to provide additional information regarding the estimated cost of the Trustee's administration of the Individual Claims Process, because the costs are to be paid out of the Gross Settlement Fund. (Dkt. No. 171.)  On May 8, 2026, Plaintiffs filed the supplemental declaration in support of the motion for final approval. (Suppl. Decl. of Linda D. Friedman, "Suppl. Friedman Decl.," Dkt. No. 172.)

## II.    LEGAL STANDARD

"The claims, issues, or defenses of a certified class ... may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. In making that determination, the district court must balance several factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing Hanlon, 150 F.3d at 1026).

Additionally, Rule 23 now requires district courts to consider a similar list of factors, including the adequacy of representation by class representatives and class counsel, whether the proposal was negotiated at arm's length, and the adequacy of the relief and equitable treatment of class members. Fed. R. Civ. P. 23(e)(2). These factors were "not designed 'to displace any factor [developed under existing circuits' precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018), aff'd sub nom. *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

United States District Court
Northern District of California

United States District Court
Northern District of California

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, the court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (internal quotation marks and citations omitted). Such signs include: (1) counsel receiving a disproportionate distribution of the settlement, or where a class receives no monetary distribution, but class counsel is amply rewarded; (2) where the parties negotiate a "clear sailing" arrangement for the payment of attorney's fees separate and apart from class funds; and (3) where there is a reversion of fees to the defendant. *Id.* at 947.

### III.    DISCUSSION

For the reasons set forth below, the Court will grant Plaintiffs' motion for final approval.

### A.    Adequacy of the Notice and Administrator's Costs

A "court must direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The parties must provide class members with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982).

The Court approved the parties' proposed notice plan when it granted preliminary approval. (Dkt. No. 158.) Under the approved notice plan, Plaintiffs retained Atticus Administration, LLC as the settlement administrator. *Id.* at 10. Atticus provided notice to the members of the class in the form that the Court approved previously.

Google provided Atticus with a list of 3,715 Google employees who satisfy the settlement class definition. (Decl. of Bryn Bridley, "Bridley Decl.," Dkt. No. 164-3 ¶ 4.) Ultimately, Atticus's efforts resulted in 3,662 notices being sent to class members via U.S. Mail. (Bridley Decl. ¶ 9.) 3,620 notices sent via email were successfully delivered, and, of those, 3,073 were

United States District Court
Northern District of California

opened. (Bridley Decl. ¶ 11.) Five email recipients unsubscribed. *Id.* After skip tracing, 3,714 class members received the notice by at least one of the two dissemination methods, such that only one class member did not receive the notice of settlement. (Bridley Decl. ¶ 12.) As of the date of filing, the settlement website had received 1,684 visits and remains accessible to class members. (Bridley Decl. ¶ 14.) It will remain operational until at least 30 days after the Claims Administrator duties are complete. *Id.* While no objections were received by Atticus or filed with the Court, there were 31 opt-out requests, 27 of which were valid. (Bridley Decl. ¶ 15-16.) At the hearing, Counsel reported that two more opt-outs had been cured, bringing the total number of opt-outs to 29. Class members who submitted timely and valid opt-out statements had until May 6, 2026 to rescind the opt-out statement. (Bridley Decl. ¶ 17.) As of the date of filing, no rescission requests had been received, and, at the hearing, Counsel confirmed that no rescission requests were filed by the May 6, 2026 deadline. *Id.*

In light of the above procedures, which adhere to the previously approved notice plan, the Court finds that the parties have sufficiently provided notice to the settlement class members. *See Perkins v. LinkedIn Corp.*, No. 13-cv-04303-LHK, 2016 WL 613255, at *7 (N.D. Cal. Feb. 16, 2016) (finding class notice adequate where the approved notice was sent in accordance with the approved notice plan, which was "consistent with the requirements of Rule 23 and due process.").

In making the motion, Plaintiffs estimated that Atticus's costs would not exceed $39,800. (Decl. of Linda D. Friedman, "Friedman Decl.," Dkt. No. 164-1 ¶ 53; Bridley Decl. ¶ 19.) At the hearing, Plaintiffs requested that Atticus settlement administration costs be approved in an amount not to exceed $40,000. Thus, the Court approves Atticus's costs in an amount not to exceed $40,000, which shall be paid out of the Gross Settlement Fund.

### B. Approval of Settlement

#### i. *Churchill* and *Bluetooth* Factors favor Final Approval

The Court finds that the *Churchill* factors support final approval of the Settlement.

First, Plaintiffs' case presented several risks. For example, Plaintiffs ran the risk of not certifying the class for the claims alleged, as well as the risks inherent in dispositive motion practice, trial, and possibly appeal. (Pls.' Mot. at 17.) Thus, the Court finds that the first *Churchill*

factor favors final approval.

Second, in the absence of settlement, this case would likely be subject to significant further litigation. Plaintiffs would still have to seek class certification, and disputes exist as to whether certification is appropriate because the putative class covers multiple job titles and locations and, according to Google, the employment actions at issue are the product of individual supervisors exercising their authority, rather than a companywide policy. (Pls.' Mot. at 17.)  The Court concludes that the second *Churchill* factor favors final approval.

Third, Plaintiffs faced a risk that they would not be able to obtain and maintain class certification. (Pls.' Mot. at 18.)  This factor favors final approval.

Fourth, the amount offered by the Settlement is acceptable, as the Gross Settlement Amount is $50,000,000. (Pls.' Mot. at 12.)  After consulting with a damages expert, Plaintiffs estimate that the wage differential was approximately $48,000,000, and that the highest possible wage loss estimate after leveling was approximately $215,000,000. (Pls.' Mot. at 13.)  Google, however, disputes this methodology. *Id.*  Accordingly, even considering the highest estimate of $215,000,000, the Settlement represents a recovery of approximately 23.2%, and more than 100% of the approximate wage difference without leveling. *See id.*  As a result, the Court finds that the recovery is fair and reasonable, and that this factor favors final approval.

Fifth, it appears Plaintiffs have engaged in sufficient investigation in this case.  Class Counsel engaged in motion practice, analyzed the legal positions taken by Defendants, exchanged information through discovery, and performed a thorough damages analysis. (Friedman Decl. ¶¶ 17, 19, 21.)  The Court concludes that the discovery conducted was adequate to allow the parties to make a fully informed decision on settlement.  Thus, this factor favors final approval.

Sixth, Class Counsel attests that the settlement is fair and reasonable. (Friedman Decl. ¶ 44; Decl. of Benjamin L. Crump, "Crump Decl.," Dkt. No. 164-2 ¶¶ 47-49.)  Class Counsel is experienced in this area, as the primary attorneys in this case have significant experience in securities litigation. (Friedman Decl. ¶¶ 6-9; Crump Decl. ¶¶ 15-20.)  Class Counsel's experience and support for the Settlement favors final approval.

Finally, the reaction of the class members to the proposed settlement has been positive.

Per the settlement administrator, 3,714 of the 3,715 class members received a notice either by U.S. Mail, email, or both. (Bridley Decl. ¶ 12.)  As of April 2, 2026, neither Atticus nor the Court had received any objections, and Atticus had only received 27 valid requests for exclusion. (Bridley Decl. ¶¶ 15-16; Opt-out list, Friedman Decl. ¶ 64, Ex. B.)  As there has only been 27 valid opt-outs out of 3,714 notices, and no individuals have objected to the Settlement terms, this last *Churchill* factor favors final approval.

Overall, the *Churchill* factors favor approval of the settlement.  Additionally, the Court finds that the *Bluetooth* factors are satisfied, such that there is no evidence of collusion. Specifically, Class Counsel is not receiving a disproportionate distribution of the settlement, there is no "clear sailing" arrangement, and none of the Settlement Amount reverts back to Defendant.

Thus, having reviewed both the *Churchill* and *Bluetooth* factors, the Court finds that the Settlement is fair, adequate, and reasonable.

### ii.    Allocation Plan and Settlement Administration

Next, the Court finds that the proposed allocation plan and settlement administration is fair and reasonable. (*See* Pls.' Mot. at 7.)  The Settlement creates an individualized process for a fair and equitable allocation of the Settlement Fund. The Individual Claims Resolution Process provides Settlement Class Members a meaningful opportunity to have their claims individually assessed. *Id.*  Unlike typical plans computed by formula, the Settlement Class Members can file a Claim Form and participate in a nuanced and detailed process through which they will receive an individualized assessment of their claims, including consideration of post-Google wage loss and any alleged emotional distress. *Id.* (citing Settlement § VIII.D.)  In this way, each Settlement Class Members' Individual Settlement Payments will be directly tied to the damages they would allege from the claims they are releasing, which may extend beyond strict wage loss and encompass all forms of alleged employment-based race discrimination, the harms of which cannot be measured by time-in-job. (Friedman Decl. ¶ 47.)

The Individual Claims Resolution Process will be monitored by Professor Lynn P. Cohn, Co-Director of the Center on Negotiation, Mediation, and Restorative Justice at the Northwestern Pritzker School of Law, who has been appointed in a similar capacity by other courts. *See, e.g.,*

United States District Court
Northern District of California

*Jones v. Chopra,* 18-cv-2132 (D.D.C. 2024), ECF No. 182; *Creighton v. Metropolitan Life Insurance*, 15-cv-08321 (S.D.N.Y. 2017), ECF No. 108; *Slaughter v. Wells Fargo Advisors, LLC*, 13-cv-6368, (N.D. Il. 2017), ECF No. 109, *McReynolds v. Merrill Lynch*, 05-cv-6583 (N.D. Ill. 2014), ECF Nos. 585-1, 637. As more fully described in Plaintiffs' motion for appointment, as Trustee, Professor Cohn will review and assess the Claim Forms and make final awards, providing fairness and consistency. (*See* Dkt. No. 165; *see also* Settlement § VIII.D.3.)  Settlement Class Counsel will also assist and provide support for Settlement Class Members throughout the Individual Claims Resolution Process by answering questions, advising them of their rights and options, and helping them complete and submit Claim Forms. (*Id.* § VIII.D.6.)  In no event will any portion of the Gross Settlement Fund revert to Defendant. (*Id.* § VIII.F.)

The Individual Claims Resolution Process is extensive.  Professor Cohn's fee schedule provides for a special master fee of $950 per hour for Professor Cohn, and additional neutral fees for training and payment per 100 claims assigned. (Trustee Fee Schedule, Suppl. Friedman Decl. ¶ 3, Ex. 1 at 1.)  The training cost is $20,000 per neutral for up to five days of training, and the number of neutrals depends on the number of claims filed, but it shall not exceed 12 neutrals. *Id.* Neutrals are then paid $45,000 per hundred claims assigned with a maximum of 250, if possible, from a common group. *Id.*  Based on the fee schedule, Plaintiffs estimate that the maximum cost for the neutral work—should 100% of the remaining 3,686 class members eligible to file claim forms do so—is $1,978,700. (Suppl. Friedman Decl. ¶ 5.) At the hearing, Plaintiffs indicated that they expected a 50-75% participation rate based on prior settlements using similar claims resolution processes.  75% participation (or 2,765 claims) would cost approximately $1,464,250, and 50% participation (1,843 claims) would cost approximately $989,350. (Suppl. Friedman Decl. ¶ 5.)  These estimated costs do not include Professor Cohn's hourly fee of $950. (Suppl. Friedman Decl. ¶ 6.)  As a result, Plaintiffs request that the Court approve Trustee administration costs in an amount not to exceed $2,000,000. (Suppl. Friedman Decl. ¶ 7.)

As drafted, the Individual Claims Resolution Process is a fair and reasonable method for allocating the proceeds of the Settlement among eligible claimants and treats all Class Members equitably, as required by Rule 23(e)(2)(D).  The standard for approval of a plan of allocation in a

9

class action under Federal Rule of Civil Procedure 23 is the same as the standard applicable to the settlement as a whole—the plan must be fair, reasonable, and adequate. *See Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1284-85 (9th Cir. 1992).

Accordingly, the Court finds that the Allocation Plan and Individual Claims Resolution Process is fair, reasonable, and adequate under Rule 23, and approves Trustee administration costs in an amount not to exceed $2,000,000.

### C.    Attorneys' Fees and Costs

#### i.    Requested Fee Award

"[T]he court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  The Ninth Circuit has found, however, that courts still "have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941.  Where a settlement, such as this one, "produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942.  Under the percentage method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award . . . ." *Id.* Courts may diverge from the benchmark based on factors that include "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco*, Inc., No. CIV-F-09-0704-AWI-JLT, 2013 WL 1222058, at *2 (E.D. Cal. Mar. 25, 2013); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award); *In re Pac. Enter. Secs. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995).

Here, Class Counsel seeks a benchmark award of 25% of the common fund, or $12,500,000. (Pls.' Fees Mot. at 15-16.)  If the court applies the percentage method, then it typically calculates the lodestar as a "crosscheck to assess the reasonableness of the percentage award." *See*, *e.g.*, *Weeks v. Kellogg Co.,* No. CV-09-8102-MMM-RZx, 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters.*, *Inc.*, 111 Cal. App. 3d 215, 226–27 (1980). "The lodestar . . . is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate."

10

*Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000).  Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id*.; *accord Laffitte v. Robart Half Internet, Inc*., 1 Cal. 5th 480, 503–06 (2016) (under California law, "the percentage method to calculate [attorney's] fees in a common fund case" is appropriate and the trial court has "discretion to conduct a lodestar cross-check on a percentage fee").

As to the lodestar cross-check, Counsel's current lodestar is $5,463,375.50, although that number does not take into account significant future work, including overseeing the Individual Claims Resolution Process, running training for the Trustee and Neutrals, and assisting Settlement Class Members with Claim Forms. (Decl. of Linda D. Friedman ISO of Pls.' Fees Mot., "Friedman Fees Decl.," Dkt. No. 163-1 ¶¶ 71-72; Decl. of Benjamin C. Crump ISO Pls.' Fees Mot., "Crump Fees Decl.," Dkt. No. 163-2 ¶ 46.)  The Court finds that the billing rates are normal and customary (and thus reasonable) for lawyers of comparable experience doing similar work.[2] *Cuviello v. Feld Entm't, Inc*., No. 13-cv-04951-BLF, 2015 WL 154197, at *2–3 (N.D. Cal. Jan. 12, 2015) ("court has broad discretion in setting the reasonable hourly rates used in the lodestar calculation"); *Ketchum v. Moses,* 24 Cal. 4th 1122, 1132 (2001) (court can rely on its own experience); *accord Open Source Sec. v. Perens*, 803 F. App'x 73, 77 (9th Cir. 2020).

Based on counsel's submissions, the fee award is appropriate as a percentage of the common fund and is supported by a lodestar cross-check, given the results obtained, the case itself, the lack of objections to the settlement, and counsel's litigating the case on a contingency basis. *Cf. e.g., Bellinghausen*, 306 F.R.D. at 259–65 (N.D. Cal. Mar. 20, 2015) (approving attorney's fees equal to the benchmark 25 percent of the common fund); *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966-LB, 2013 WL 3988771, at *4–5 (N.D. Cal. Aug. 2, 2013) (awarding 33 percent of the settlement fund as attorney's fees "given the extensive litigation in the case[,] [] the successful results achieved[,]" and the contingency risk); *Villalpando v. Excel Direct Inc.*, Nos.

---

[2] *See ids.*

11

United States District Court
Northern District of California

12-cv-04137-JCS, 13-cv-03091-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016) (awarded one-third of the settlement fund as reasonable attorney's fees because of "the contingent risk, [c]ounsel's documented lodestar, the complex and protracted nature of the case, and strong result for the case").

Thus, applying the percentage method, as cross-checked by the lodestar method, the Court finds that the attorneys' fees sought by Class Counsel are reasonable. The Court, therefore, GRANTS Plaintiffs' request for an award of attorneys' fees in the amount of $12,500,000.

### ii.    Costs

Plaintiffs seek $183,346.17 in costs to be paid from the Gross Settlement Fund. (Pls.' Fees Mot. at 23; Decl. of George S. Robot, "Robot Decl.," Dkt. No. 163-6 ¶ 3; Crump Fees Decl., ¶ 47.) The Court notes that not all of the costs incurred are being billed to the class. (*See* Robot Decl. ¶ 3.) The costs billed include experpt fees, mediation fees, travel, filing fees, and court reporter fees. (Crump Fees Decl. ¶ 48.) Defendant does not oppose Class Counsel's request. The Court finds that the costs requested were reasonably incurred, and GRANTS Plaintiffs' request for reimbursement of costs in the amount of $183,346.17.

### D.    Settlement Class Representative Plaintiffs' Request for Service Award

Finally, Plaintiffs move for an incentive award and general release payment in the amount of $50,000. (Pls.' Fee Mot. at 6.) "Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). The decision to approve such an award is a matter within the Court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). An incentive award is designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. "[D]istrict courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives. ... [C]oncerns over potential conflicts may be especially pressing where, ... the proposed service fees greatly exceed the payments to absent class members." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal citation and quotation marks omitted).

12

Courts have recognized that named plaintiffs in employment discrimination class actions bear a "real and substantial" fear and risk of retaliation. *Pan v. Qualcomm Inc.*, No. 16-cv-01885, 2017 WL 3252212, at *143 (S.D. Cal. July 31, 2017) (awarding $50,000 to each of the seven class representatives in race and gender discrimination action). To compensate for these risks, service awards in employment discrimination cases tend to be higher than in other types of class actions. *See, e.g.,* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. REV. 1303, 1307–08, 1333, 1339 (2006) (analyzing reported class actions from 1993–2002 and finding a $69,850.20 mean incentive award in employment discrimination cases, over $40,000 higher than the mean of the next highest category, and positing that "employment discrimination case class representatives bear unusually high costs" and that courts recognize the "risks of stigmatization or retaliation on the job").

Here, Plaintiffs Curley, Lewis, and Mayon spent significant amounts of time overseeing this case, talking to class members, working with counsel, and participating in protracted negotiations at great personal and professional cost. (Decl. of April Curley, Dkt. No. 163-3 ¶¶ 6-16; Decl. of Ronika Lewis, Dkt. No. 163-4 ¶¶ 6-17; Decl. of Desiree Mayon, Dkt. No. 163-5 ¶¶ 6-15.) Thus, the Court finds these Service Awards reasonable considering the burden undertaken by Plaintiffs in this action and for their time and effort in prosecuting this matter on behalf of the Settlement Class.

### IV.    CONCLUSION

For the reasons set forth above, Plaintiffs' motion for final approval of the class action settlement is GRANTED, and the Court (1) certifies the class for settlement purposes only; (2) approves the settlement agreement and authorizes the distribution of funds as set forth in the Plan of Allocation; (3) confirms the appointment of Plaintiffs Curley, Lewis, and Mayon as Settlement Class Representatives, Stowell & Friedman, Ltd., Ben Crump Law, PLLC, and San Law, APC as Settlement Class Counsel, and Atticus Administration, LLC as Claims Administrator; (4) appoints Lynn Cohn as Trustee, as set forth in a separate order, and approves the Trustee's administration costs in an amount not to exceed $2,000,000; (5) approves $12,500,000 in attorneys' fees and $183,346.17  in costs, to Settlement Class Counsel; (6) approves Atticus Administration's

United States District Court
Northern District of California

settlement administration costs in an amount not to exceed $40,000; (7) approves $50,000 each to Plaintiffs Curley, Lewis, and Mayon as incentive awards; and (8) approves the Individual Claims Resolution Process set forth in the Settlement Agreement orders the parties, Atticus Administration, and Trustee Cohn to carry out all of their respective obligations as set forth in the Settlement Agreement. All of these approved awards and costs are to be paid out of the Gross Settlement Fund.

Neither the Settlement Agreement, nor any ancillary documents, actions, statements, or filings in furtherance of settlement will be admissible or offered into evidence in this Action or other action as: establishing, supporting, or defending against any claims that were raised or could have been raised in this Action or are similar to such claims; an admission of any liability or wrongdoing on the part of Google; or an admission that a class should be certified for any purpose other than settlement.

Other than such proceedings as may be necessary to carry out the terms and conditions of the Settlement Agreement, all proceedings in the Action related to the Settlement Class Claims are hereby dismissed with prejudice.

Additionally, the Court retains jurisdiction over this Action to consider all further matters arising out of or connected with the Settlement, including enforcement of the Release provided for in the Settlement Agreement.

Finally, in accordance with the Northern District's Procedural Guidance for Class Action Settlements, within 21 days after all funds have been paid to class members, the parties shall file a Post-Distribution Accounting (and post it on the settlement website), which provides the total settlement fund, the total number of class members, the total number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of claim forms submitted, the number and percentage of opt-outs, the number and percentage of objections, the average, median, maximum, and minimum recovery per claimant, the method(s) of notice and the method(s) of payment to class members, the number and value of checks not cashed, the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, plaintiffs' counsel's updated lodestar total, and the lodestar multiplier.  If the

14

parties believe that a compliance hearing is necessary, they may file a stipulation or administrative motion requesting that one be set on the Court's regular law and motion calendar.

The case shall remain open until the remaining individual claims are resolved.

IT IS SO ORDERED.

Dated: May 14, 2026

_____
KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California

15